FILED
CLERK, U.S. DISTRICT COURT

JUL 1 3 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2007 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 07- **07-00689** |
| Plaintiff, | I N D I C T M E N T |
| v. | [21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B): Conspiracy to Manufacture and to Possess with Intent to Distribute and to Distribute Marijuana and THC; 21 U.S.C. § 859: Distribution of Marijuana to Person Under 21; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B): Possession with Intent to Distribute Marijuana; 21 U.S.C. § 856: Maintaining Drug-Involved Premises; 18 U.S.C. § 2: Aiding and Abetting and Causing an Act to be Done; 21 U.S.C. § 853: Criminal Forfeiture] |
| CHARLES C. LYNCH, and ARMOND TENNYSON TOLLETTE, JR., | |
| Defendants. | |

The Grand Jury charges:

///

///

///

///

DPK:dpk

COUNT ONE

[21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B), 856, 859]

[Defendants LYNCH and TOLLETTE]

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown and continuing to on or about March 29, 2007, in San Luis Obispo County and Los Angeles County, within the Central District of California, and elsewhere, defendants CHARLES C. LYNCH ("LYNCH") and ARMOND TENNYSON TOLLETTE, JR. ("TOLLETTE"), and others known and unknown to the Grand Jury, conspired and agreed with each other to commit the following offenses:

1.   To knowingly and intentionally possess with intent to distribute, and to distribute, 100 kilograms and more of a mixture or substance containing a detectable amount of marijuana, a schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B);

2.   To knowingly and intentionally manufacture more than 100 marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B);

3.   To knowingly and intentionally possess with intent to distribute, and to distribute, a mixture or substance containing a detectable amount of tetrahydrocannabinol ("THC"), a schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1); and

4.   To knowingly maintain a drug premises, that is, a place for the purpose of distributing marijuana and THC, both schedule I controlled substances, in violation of 21 U.S.C. § 856;

5.   Being at least eighteen years of age, to knowingly and intentionally distribute marijuana to persons under the age of

2

1  twenty-one, in violation of 21 U.S.C. § 859.

2  B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
3       ACCOMPLISHED

4       The objects of the conspiracy were to be accomplished in
5  substance as follows:

6       1.   LYNCH, who at all relevant times was older than
7  eighteen years of age, owned and operated for profit a marijuana
8  store at 780 Monterey Avenue, Suite B, Morro Bay, California,
9  which he named "Central Coast Compassionate Caregivers" (the
10 "marijuana store").  LYNCH typically employed approximately ten
11 employees at the marijuana store.  The marijuana store grew
12 marijuana plants and sold marijuana, live marijuana plants and
13 clones, and products containing THC to individuals.

14      2.   LYNCH supplied marijuana to be sold for a profit at the
15 marijuana store.  In addition, LYNCH and his employees purchased
16 marijuana from other suppliers for sale at the store.

17      3.   LYNCH's employees grew marijuana plants at the
18 marijuana store.

19      4.   TOLLETTE, a licensed physician, who at all relevant
20 times was older than eighteen years of age, provided people,
21 including individuals under the age of twenty-one, with written
22 physician's statements to be used to obtain marijuana at LYNCH's
23 marijuana store and other locations.

24      5.   LYNCH and his employees maintained at the marijuana
25 store records and information regarding each customer which
26 included the customer's birth date, as reflected on the
27 customer's driver's license and other documents.  The marijuana
28 store's customers included minors under the age of twenty-one and

                                3

1  under the age of eighteen.

2  C.    OVERT ACTS

3      In furtherance of the conspiracy, and to accomplish the
4  objects of the conspiracy, on or about the dates listed below,
5  LYNCH and TOLLETTE, and other co-conspirators known and unknown
6  to the Grand Jury, committed various overt acts within the
7  Central District of California and elsewhere, including but not
8  limited to the following:

9      1.    On February 22, 2006, LYNCH signed a lease to rent the
10  premises occupied by the marijuana store.

11     2.    On April 1, 2006, LYNCH and marijuana store employees
12  opened the marijuana store.

13     3.    Between April 2006 and March 29, 2007, LYNCH and
14  marijuana store employees sold over $2.1 million in marijuana and
15  THC products.

16     4.    Between April 2006 and March 29, 2007, LYNCH and
17  marijuana store employees sold marijuana and THC products to
18  approximately 281 different individuals under the age of twenty-
19  one, including individuals under the age of eighteen.

20     5.    On May 20, 2006, TOLLETTE provided a signed physician
21  statement to R.W., a person twenty years of age, and to B.W., a
22  person nineteen years of age, approving their use of marijuana.

23     6.    On May 21, 2006, marijuana store employees sold
24  marijuana to B.W.

25     7.    On or about June 1, 2006, a marijuana store employee
26  provided a confidential source working undercover for law
27  enforcement ("CS-1") with a list of physicians, including
28  TOLLETTE, who would write statements approving CS-1's use of

4

1  marijuana.

2      8.    On June 2, 2006, in a telephone conversation, TOLLETTE
3  told CS-1 that CS-1 would not need to bring medical records to
4  TOLLETTE in order to obtain a physician's statement approving
5  CS-1's use of marijuana.

6      9.    On June 2, 2006, at his residence in Culver City,
7  California, without conducting a physical examination, TOLLETTE
8  accepted a $200 fee from CS-1 for providing a signed physician's
9  statement approving CS-1's use of marijuana.

10     10.   On June 2, 2006, TOLLETTE offered to pay CS-1 $100 for
11 each person CS-1 referred to TOLLETTE.

12     11.   On June 5, 2006, marijuana store employees sold $40
13 worth of marijuana to CS-1.

14     12.   On June 10, 2006, marijuana store employees sold
15 approximately 17.5 grams of marijuana and approximately 0.5 grams
16 of hashish to J.S., a person nineteen years of age.

17     13.   On June 19, 2006, without conducting a physical
18 examination, TOLLETTE accepted a $150 fee from a confidential
19 source working undercover for law enforcement ("CS-2") for
20 providing a signed physician's statement approving CS-2's use of
21 marijuana.

22     14.   On June 19, 2006, TOLLETTE supplied marijuana to and
23 smoked marijuana with CS-2.

24     15.   Between June 22, 2006 and August 9, 2006, on at least
25 five different occasions, marijuana store employees distributed
26 marijuana and hashish to J.S., a person under the age of twenty-
27 one, including approximately 3 grams of marijuana provided to
28 J.S. for no charge on J.S.'s twentieth birthday.

16.   On June 23, 2006, TOLLETTE gave CS-1 approximately 2 grams of marijuana for referring CS-2 to TOLLETTE.

17.   Sometime prior to July 12, 2006, while at the marijuana store, the chief security officer of the marijuana store asked CS-1 whether CS-1 would be interested in purchasing marijuana outside of the premises of the marijuana store and without a physician statement.

18.   On July 12, 2006, the chief security officer of the marijuana store sold CS-1 and an undercover police officer ("UC-1") approximately 300 grams of marijuana for $3,200.

19.   On July 14, 2006, marijuana store employees sold CS-2 approximately 3 grams of marijuana and approximately one gram of hashish.

20.   On July 14, 2006, a marijuana store employee told CS-2 that the marijuana store was interested in purchasing high grade marijuana.

21.   On August 27, 2006, a marijuana store employee sold J.S. approximately 14 grams of marijuana.

22.   On October 5, 2006, marijuana store employees sold CS-2 approximately 3.5 grams of marijuana, one marijuana plant, and one gram of hashish.

23.   On November 11, 2006, a marijuana store employee sent a facsimile from the marijuana store to TOLLETTE warning that CS-1 was working for law enforcement.

24.   On December 5, 2006, a security guard at the marijuana store transported three marijuana plants from the marijuana store to a residence in San Luis Obispo, California.

25.   On December 8, 2006, without conducting a physical

1 examination, TOLLETTE accepted a $150 fee from an undercover
2 police officer ("UC-2") for providing a signed physician's
3 statement approving UC-2's use of marijuana.

4      26.  On December 21, 2006, marijuana store employees sold
5 CS-2 approximately 3.5 grams of marijuana and one marijuana
6 plant.

7      27.  On December 26, 2006, marijuana store employees sold
8 marijuana to J.H., a person seventeen years of age, who
9 was accompanied by one of J.H.'s parents.

10      28.  On January 2, 2007, marijuana store employees sold UC-2
11 one marijuana plant and approximately one gram of marijuana.

12      29.  On January 19, 2007, LYNCH supplied approximately
13 $15,900 worth of marijuana to the marijuana store.

14      30.  On January 19, 2007, marijuana store employees
15 permitted at least five customers under the age of twenty-one to
16 visit the marijuana store.

17      31.  On January 23, 2007, marijuana store employees sold
18 UC-2 a marijuana plant and approximately one gram of hashish.

19      32.  On February 6, 2007, marijuana store employees sold
20 marijuana to R.S., a person seventeen years of age, who was
21 accompanied by one of R.S.'s parents.

22      33.  On March 16, 2007, without conducting a physical
23 examination, TOLLETTE accepted a $160 fee for providing a
24 seventeen year-old person working undercover for law enforcement
25 with a signed physician's statement approving the seventeen year-
26 old's use of marijuana.

27      34.  On March 29, 2007, LYNCH possessed at his residence in
28 Arroyo Grande, California $27,328 in U.S. currency, and

1  approximately 66 grams of marijuana.

2      35.  On March 29, 2007, LYNCH and marijuana store employees
3  possessed at the marijuana store approximately 14 kilograms of a
4  mixture or substance containing a detectable amount of marijuana,
5  over 200 grams of a mixture or substance containing THC, and
6  approximately 104 marijuana plants.

7      36.  On March 29, 2007, TOLLETTE possessed at his residence
8  approximately 1,861 grams of a mixture or substance containing
9  marijuana.

COUNTS TWO AND THREE

[21 U.S.C. §§ 841(a)(1), 859(a), 18 U.S.C. § 2]

[Defendant LYNCH]

On or about the dates listed below, in San Luis Obispo County, within the Central District of California, defendant CHARLES C. LYNCH, a person at least eighteen years of age, knowingly and intentionally aided, abetted, counseled, commanded, induced, and procured the distribution of more than five grams, that is, the following approximate amounts, of a mixture and substance containing a detectable amount of marijuana, a schedule I controlled substance, to J.S., a person under twenty-one years of age:

| COUNT | DATE | AMOUNT |
|-------|------|--------|
| TWO | June 10, 2006 | 17.5 grams |
| THREE | August 27, 2006 | 14 grams |

9

1

COUNT FOUR

2

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)]

3

[Defendant LYNCH]

4     On or about March 29, 2007, in San Luis Obispo County,

5 within the Central District of California, defendant CHARLES C.

6 LYNCH, knowingly and intentionally possessed with intent to

7 distribute approximately 14 kilograms of a mixture or substance

8 containing a detectable amount of marijuana, a schedule I

9 controlled substance, and approximately 104 marijuana plants, a

10 schedule I controlled substance.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

COUNT FIVE

2

[21 U.S.C. § 856(a)(1)]

3

[Defendant LYNCH]

4      Beginning in or about February 22, 2006 and continuing to in

5  or about March 29, 2007, in San Luis Obispo County, within the

6  Central District of California, defendant CHARLES C. LYNCH

7  knowingly opened, leased, rented, used, and maintained the

8  premises located at 780 Monterey Avenue, Suite B, Morro Bay,

9  California, which operated under the name "Central Coast

10  Compassionate Caregivers," for the purpose of manufacturing, that

11  is, growing and cultivating, and distributing controlled

12  substances, namely, marijuana, a schedule I controlled substance,

13  and tetrahydrocannabinol ("THC"), a schedule I controlled

14  substance.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT SIX

[21 U.S.C. § 853]

[Defendants LYNCH and TOLLETTE]

1.    Counts One through Five of this indictment allege acts
or activities constituting offenses involving conspiracy to
possess with intent to distribute marijuana and THC, and to
manufacture marijuana (in violation of 21 U.S.C. §§ 846,
841(a)(1), 841(b)(1)(A)), distribution of marijuana to persons
under the age of twenty-one (in violation of 21 U.S.C. §§ 841(a),
859(a)), possession with intent to distribute marijuana (in
violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)), and
maintaining a drug-involved premises (in violation of 21 U.S.C. §
856).   Pursuant to Title 21 U.S.C. § 853, each defendant who is
convicted of such an offense shall forfeit to the United States
the following property:

a.    All right, title, and interest in --

(i)   any and all property, real or personal,
constituting, or derived from, any proceeds
obtained, directly or indirectly, as a result
of said offenses;

(ii)  any property, real or personal, used, or
intended to be used, in any manner or part,
to commit, or to facilitate the commission
of, each such offense; and

b.    A sum of money equal to the total value of the
property described in paragraph 1(a)(i) and (ii),
inclusive.

2.    Pursuant to Title 21, United States Code, Section

12

1  853(p), as incorporated by Title 28, United States Code, Section
2  2461(c), each defendant so convicted shall forfeit substitute
3  property, up to the value of the amount described in paragraph 1,
4  above, if, by any act or omission of said defendant, the property
5  described in paragraph 1, or any portion thereof, cannot be
6  located upon the exercise of due diligence; has been transferred,
7  sold to, or deposited with a third party; has been placed beyond
8  the jurisdiction of this court; has been substantially diminished
9  in value; or has been commingled with other property which cannot
10 be divided without difficulty.

11

12                                     A TRUE BILL

13

14                                     _____
                                       Foreperson

15

16
   GEORGE S. CARDONA
17 United States Attorney

18

19
   THOMAS P. O'BRIEN
20 Assistant United States Attorney
   Chief, Criminal Division
21

22

23 DAVID P. KOWAL
   Assistant United States Attorney
24 Organized Crime Drug Enforcement Task Force

25

26

27

28

                                      13