THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
DAVID P. KOWAL (Cal. Bar No. 188651)
RASHA GERGES (Cal. Bar No. 218248)
Assistant United States Attorneys
OCEDTF Section
        1400 United States Courthouse
        312 North Spring Street
        Los Angeles, California  90012
        Telephone:  (213) 894-5136/6530
        Facsimile:  (213) 894-0142
        E-mail:  david.kowal@usdoj.gov
                 rasha.gerges@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | CR No. 07-689-GW |
|---|---|---|
| Plaintiff, | ) | GOVERNMENT'S OPPOSITION TO DEFENDANT CHARLES C. LYNCH'S MOTION FOR DISCOVERY AND/OR DISMISSAL OF INDICTMENT ON THE BASIS THAT THE CONTROLLED SUBSTANCES ACT IS UNCONSTITUTIONAL AND VIOLATIVE OF THE ANTI-COMMANDEERING PRINCIPLE AS APPLIED TO THIS CASE |
| v. | ) | |
| CHARLES C. LYNCH, and ARMOND TENNYSON TOLLETTE, JR., | ) | |
| Defendants. | ) | |
| | ) | Hearing Date: July 7, 2008 |
| | ) | Hearing Time: 8:00 a.m. |

Plaintiff United States of America, by and through its attorney of record, the United States Attorney for the Central District of California, hereby files its opposition to the Motion for Discovery and/or Dismissal of Indictment on the Basis that the Controlled Substances Act is Unconstitutional and Violative of the Anti-

Commandeering Principle as Applied to this Case filed by defendant Charles C. Lynch ("defendant").

This Opposition is based on the attached memorandum of points and authorities, the files and records of this case, and any additional evidence or argument the Court may consider at the hearing on this matter.


Dated: June 23, 2008            Respectfully submitted,

                                THOMAS P. O'BRIEN
                                United States Attorney

                                CHRISTINE C. EWELL
                                Assistant United States Attorney
                                Chief, Criminal Division


                                _____/S/_____
                                DAVID P. KOWAL
                                RASHA GERGES
                                Assistant United States Attorney
                                OCEDTF Section

                                Attorneys for Plaintiff
                                United States of America

2

**TABLE OF CONTENTS**

**PAGE**

I.   INTRODUCTION AND BACKGROUND. . . . . . . . . . . . . . . . . 1

II.  ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.   The Controlled Substances Act Does Not Implicate
          the Tenth Amendment.. . . . . . . . . . . . . . . . . . 3

     B.   The Controlled Substances Act Does Not Violate The
          Anti-Commandeering Principle. . . . . . . . . . . . . . 5

     C.   The Voluntary Cooperation Of State Officials In This
          Investigation Does Not Violate The Anti-Commandeering
          Principle.. . . . . . . . . . . . . . . . . . . . . . . 8

     D.   Defendant Is Not Entitled To Any Discovery In
          Connection With His Meritless Motion... . . . . . . .  11

III. CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . .  14

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**                                                    **PAGE(S)**

3   <u>Allender v. Scott</u>,
          379 F. Supp. 2d 1206 (D.N.M. 2005). . . . . . . . . . . .  9
4
    <u>Brady v. Maryland</u>,
5         373 U.S. 83 (1963). . . . . . . . . . . . . . . . .  12, 13

6   <u>City of New York v. United States</u>,
          179 F.3d 29 (2d Cir. 1999). . . . . . . . . . . . . . .  9
7
    <u>Conant v. Walters</u>,
8         309 F.3d 629 (9th Cir. 2002). . . . . . . . . . . 9, 10, 11

9   <u>Giglio v. United States</u>,
          405 U.S. 150 (1972).. . . . . . . . . . . . . . . . . .  12
10
    <u>Gonzales v. Raich</u>,
11        545 U.S. 1 (2005).. . . . . . . . . . . . . . . . . . .  4

12  <u>Gregory v. Ashcroft</u>,
          501 U.S. 452 (1991).. . . . . . . . . . . . . . . . . .  5
13
    <u>Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.</u>,
14        452 U.S. 264 (1981).. . . . . . . . . . . . . . . . . .  4

15  <u>McConnell v. FEC</u>,
          540 U.S. 93 (2003). . . . . . . . . . . . . . . . . . .  7
16
    <u>New York v. United States</u>,
17        505 U.S. 144 (1992).. . . . . . . . . . . . . . 4, 6, 7, 10

18  <u>Ogden v. United States</u>,
          303 F.2d 724 (9th Cir. 1962). . . . . . . . . . . . . .  13
19
    <u>Pearson v. McCaffrey</u>,
20        139 F. Supp. 2d 113 (D.D.C. 2001).. . . . . . . . . .  8, 9

21  <u>Pennsylvania v. Ritchie</u>,
          480 U.S. 39 (1987). . . . . . . . . . . . . . . . . . .  13
22
    <u>Printz v. United States</u>,
23        521 U.S. 898 (1997).. . . . . . . . . . . . . . 6, 7, 9, 10

24  <u>Raich v. Ashcroft</u>,
          248 F. Supp. 2d 918 (N.D. Cal. 2003). . . . . . . . 5, 7, 8
25
    <u>Raich v. Gonzales</u>,
26        500 F.3d 850 (9th Cir. 2007). . . . . . . . . . . . . 5, 8

27  <u>Reno v. Condon</u>,
          528 U.S. 141 (2000).. . . . . . . . . . . . . . . . . .  7
28

1

**TABLE OF AUTHORITIES**
**(cont'd)**

2

**FEDERAL CASES**                                                    **PAGE(S)**

3

4

<u>United States v. Cadet,</u>
        727 F.2d 1453 (9th Cir. 1984).. . . . . . . . . .   11

5

<u>United States v. Jones,</u>
        231 F.3d 508 (9th Cir. 2000). . . . . . . . . . .  4, 7

6

7

<u>United States v. Little,</u>
        753 F.2d 1420 (9th Cir. 1984).. . . . . . . . . .   12

8

<u>United States v. Mandel,</u>
        914 F.2d 1214 (9th Cir. 1990).. . . . . . . . . .   12

9

10

<u>United States v. Nathan,</u>
        202 F.3d 230 (4th Cir. 2000). . . . . . . . . . . . 9

11

<u>United States v. Santiago,</u>
        46 F.3d 885 (9th Cir. 1995).. . . . . . . . . . .   12

12

13

<u>United States v. Spagnuolo,</u>
        515 F.2d 818 (9th Cir. 1975). . . . . . . . . . .   13

14

<u>United States v. United States District Court,</u>
        717 F.2d 478 (9th Cir. 1983). . . . . . . . . . .   11

15

16

<u>Weatherford v. Bursey,</u>
        429 U.S. 545 (1977).. . . . . . . . . . . . . . .   11

17

18

**FEDERAL STATUTES**

19

18 U.S.C. § 2.. . . . . . . . . . . . . . . . . . . . .    2

20

18 U.S.C. § 3500. . . . . . . . . . . . . . . . . . . .   12

21

21 U.S.C. § 841(a)(1).. . . . . . . . . . . . . . . . .    2

22

21 U.S.C. § 846.. . . . . . . . . . . . . . . . . . . .    2

23

21 U.S.C. § 856(a)(1).. . . . . . . . . . . . . . . . .    2

24

21 U.S.C. § 801.. . . . . . . . . . . . . . . . . . . .    3

25

**FEDERAL RULES**

26

Fed. R. Crim. P. 16(a)(1)(E)(i).. . . . . . . . . . . . 12, 13

27

28

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION AND BACKGROUND

Defendant has been indicted for several narcotics crimes in connection with his owning and operating of a marijuana store in Morro Bay, California.  As set fort in the DEA reports produced in discovery in this case, in early 2006, the San Luis Obispo Sheriff's Department began investigating defendant in connection with a marijuana store that he operated in Atascadero, California.  (<u>See</u> Exhibit A (excerpt of DEA report relating to origin of investigation).)  Business owners located near defendant's prior marijuana store complained that customers exiting the dispensary were giving marijuana to other people waiting outside, and that some customers who exited the dispensary were smoking marijuana inside their vehicles in the parking lot.  (<u>Id.</u> at 1.)  Defendant's marijuana store in Atascadero was subsequently closed by the City of Atscadero due to zoning violations.  (<u>Id.</u> at 1-2.)

The San Luis Obispo Sheriff's Department continued to investigate defendant when he opened the marijuana store in Morro Bay, California.  (<u>Id.</u>)  In January 2006, the San Luis Obispo Sheriff's Department sought assistance from the Ventura Resident Office of the Drug Enforcement Administration ("DEA") to investigate defendant's marijuana.  (<u>Id.</u> at 1.)  The DEA participated in the investigation, and eventually sought and obtained search warrants for the marijuana store and defendant's residence.  The search warrants were executed on March 29, 2007, and officials seized approximately 14 kilograms of marijuana, over 200 grams of THC, and 104 marijuana plants from the marijuana store, and approximately 66

1

1  grams of marijuana and $27,328 in U.S. currency from defendant's
2  residence.  Officials also seized business records from the
3  locations, which establish that from the opening of defendant's
4  marijuana store until federal agents executed the search warrants,
5  defendant sold marijuana products to more than 2,000 different
6  customers, including 281 different minors under the age of
7  twenty-one and under the age of eighteen.  Sales during this period
8  were in excess of $2.1 million, with defendant controlling the
9  store's bank accounts and the significant quantities of cash
10 generated by the operation.

11      On July 13, 2007, the grand jury returned a six-count
12 indictment against defendant, charging: a narcotics conspiracy, in
13 violation of 21 U.S.C. §§ 846, 841(a)(1), 856, and 859 (Count One);
14 aiding and abetting in the sale of marijuana to minors, in violation
15 of 21 U.S.C. §§ 841(a)(1), 859(a), and 18 U.S.C. § 2 (Counts Two and
16 Three); possession of marijuana with intent to distribute, in
17 violation of 21 U.S.C. 841(a)(1) (Count Four); operation and use of
18 a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1)
19 (Count Five); and criminal forfeiture (Count Six).

20      Defendant has moved to dismiss the indictment because "the
21 federal government, by and through the Drug Enforcement
22 Administration, has adopted a policy that, as applied in this case,
23 violates the anti-commandeering principles that inhere in the United
24 States Constitution."  (Mot. at 2).  In the alternative, defendant
25 seeks discovery relating to the cooperation amongst between the
26 federal government and local law enforcement in this case, and
27 information as to whether the DEA has "abandoned major organized
28 crime investigations."  (Id.)

Defendant's motion must be denied in its entirety.  Established law demonstrates that the Controlled Substances Act, under which defendant is charged, is a valid exercise of Congressional authority under the Commerce Clause, and thus, it does not violate the States' sovereignty under the Tenth Amendment.  Defendant's claim that there has been a violation of "anti-commandeering principles" is both legally and factually defective.  As a general matter, the Controlled Substances Act does not compel the States to do anything and, therefore, defendant's claim fails as a matter of law. Furthermore, in this particular case, defendant has not showed that the federal government compelled or conscripted state officials. Rather, the investigation of defendant began as a state matter, with the federal government later assisting.  Finally, defendant has made no showing that he is entitled to any of the sweeping discovery requested in his motion.  These requests, rather than setting forth a valid basis for discovery, merely highlight defendant's interest in using the upcoming trial as a forum for political debate and argument, rather than proper litigation of the charged crimes.

## II.

## ARGUMENT

Defendant's contention that the Controlled Substances Act, 21 U.S.C. § 801 et seq. ("CSA"), as applied in this case, is unconstitutional and violative of the anti-commandeering principle is meritless.

## A.   The Controlled Substances Act Does Not Implicate The Tenth Amendment.

The Tenth Amendment to the United States Constitution provides that "[t]he powers not delegated to the United States by the

1  Constitution, nor prohibited by it to the States, are reserved to
2  the States respectively, or to the people." U.S. Const. amend. X.
3  Federal statutes that are validly enacted under one of Congress'
4  enumerated powers cannot violate the Tenth Amendment. See Hodel v.
5  Virginia Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264, 291
6  (1981)("The Court long ago rejected the suggestion that Congress
7  invades areas reserved to the States by the Tenth Amendment simply
8  because it exercises its authority under the Commerce Clause in a
9  manner that displaces the States' exercise of their police
10 powers."); see also United States v. Jones, 231 F.3d 508, 515 (9th
11 Cir. 2000)("We have held that if Congress acts under one of its
12 enumerated powers, there can be no violation of the Tenth
13 Amendment."). Indeed, as the Supreme Court noted, "[a]lthough such
14 congressional enactments obviously curtail or prohibit the States'
15 prerogatives to make legislative choices respecting subjects the
16 States may consider important, the Supremacy Clause permits no other
17 result." Hodel, 452 U.S. at 290. Thus, "[i]f a power is delegated
18 to Congress in the Constitution, the Tenth Amendment expressly
19 disclaims any reservation of that power to the States . . . ." New
20 York v. United States, 505 U.S. 144, 156 (1992).

21       Defendant cannot challenge the CSA's prohibition of the
22 manufacture and possession of marijuana as exceeding Congress'
23 authority. As the Supreme Court held in Gonzales v. Raich, 545 U.S.
24 1 (2005), the CSA's categorical prohibition of the manufacture and
25 possession of marijuana, as applied to the intrastate manufacture
26 and possession of marijuana for medical purposes under California
27 law, is a valid exercise of Congress' authority under the Commerce
28 Clause. Id. at 8-9 (reversing Ninth Circuit's ruling that

4

1  plaintiffs demonstrated a strong likelihood of success on their

2  claim that the CSA is an unconstitutional exercise of Congress'

3  Commerce Clause authority, as applied to the intrastate, non-

4  commercial cultivation and possession of cannabis for medical

5  purposes pursuant to California state law).

6       Because the CSA's prohibition on the cultivation, distribution,

7  and possession of marijuana is a valid exercise of Congressional

8  authority under the Commerce Clause, it does not infringe upon state

9  sovereignty protected by the Tenth Amendment.  See, e.g., Raich v.

10 Ashcroft, 248 F. Supp. 2d 918, 927 (N.D. Cal. 2003)("As the

11 promulgation of the CSA was a legitimate exercise of Congressional

12 power under the Commerce Clause, the Tenth Amendment is not

13 implicated."), rev'd on other grounds, 352 F.3d 1222 (9th Cir.

14 2003), vacated and remanded, 545 U.S. 1 (2005).

15      As the Ninth Circuit held in Raich v. Gonzales, upon remand

16 from the Supreme Court:

17          The Supreme Court held in Gonzales v. Raich that
            Congress acted within the bounds of its Commerce Clause
18          authority when it criminalized the purely intrastate
            manufacture, distribution, or possession of marijuana
19          in the Controlled Substances Act.  Thus, after Gonzales
            v. Raich, it would seem that there can be no Tenth
20          Amendment violation in this case.

21 Raich v. Gonzales, 500 F.3d 850, 867 (9th Cir. 2007)(internal

22 citation omitted).

23
   **B.   The Controlled Substances Act Does Not Violate The**
24      **Anti-Commandeering Principle.**

25      As a general rule, "[a]s long as it is acting within the powers

26 granted it under the Constitution, Congress may impose its will on

27 the States [and] Congress may legislate in areas traditionally

28 regulated by the States."  Gregory v. Ashcroft, 501 U.S. 452, 460

(1991).  The only exception to this general rule is where the federal government has intruded on the sovereignty of the States by "compel[ling] the States to implement, by legislation or executive action, federal regulatory programs."  Printz v. United States, 521 U.S. 898, 925 (1997).  As the Supreme Court has found, Congress may neither "compel the States to enact or administer a federal regulatory program," New York, 505 U.S. at 188, nor "conscript the State's officers directly" by assigning to them responsibility for enforcing federal laws, Printz, 521 U.S. at 935.

In New York, the Supreme Court struck down provisions of the Low-Level Radioactive Waste Policy Amendments Act that required the states either to enact legislation providing for the disposal of radioactive waste or take title to the waste.  502 U.S. at 176. The Court found that "'the Act commandeers the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program.'"  Id. (citation omitted).  "No matter which path the State chooses, it must follow the direction of Congress."  Id. at 177.

Likewise, in Printz, the Supreme Court struck down provisions of the Brady Handgun Violence Protection Act that required state and local officers to perform background checks on those seeking to buy a handgun.  521 U.S. at 935.  The Court held that the federal government "may neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program."  Id.  The Court found that the Act "effectively transfers [the President's] responsibility [to enforce federal law] to thousands of [law enforcement officers] in the 50

states . . . ." <u>Id.</u> at 922.

New York and Printz are inapposite here.  The commandeering doctrine is inapplicable in this case because defendant has made no showing that the federal government has "commandeered the state legislative process by requiring a state legislature to enact a particular kind of law." <u>Reno v. Condon</u>, 528 U.S. 141, 149 (2000). Rather, like the federal statute regulating possession of firearms which the Ninth Circuit upheld as constitutional in <u>United States v. Jones</u>, 231 F.3d 508 (9th Cir. 2000), the Controlled Substances Act is "a federal criminal statute to be implemented by federal authorities; it does not attempt to force the states or state officers to enact or enforce any federal regulation." <u>Id.</u> at 515; <u>see also</u> <u>McConnell v. FEC</u>, 540 U.S. 93, 186 (2003)(holding that Title I of Bipartisan Campaign Reform Act, which prohibited election fund-raising techniques that were legal in some states, did not run afoul of the Tenth Amendment because it "only regulates the conduct of private parties" and "imposes no requirements whatsoever upon States or state officials").  Like <u>Jones</u> and <u>McConnell</u>, the commandeering doctrine is not applicable in this case because the Controlled Substances Act regulates individual behavior, and does not force state legislatures or executives to take any action.

The district court in <u>Raich v. Ashcroft</u>, a marijuana case in which users of "medical marijuana" sought to enjoin enforcement of the Controlled Substances Act, expressly came to the same conclusion:  "This type of 'commandeering' is not at issue in this case, for the federal government is not forcing California, or any other State, to take any action.  The CSA regulates individual behavior, and plaintiffs are asking the Court to prevent the

1  government from applying those regulations to their conduct."

2  Raich, 248 F. Supp. 2d at 927.  On remand from the Supreme Court,

3  the Ninth Circuit concurred, albeit in a footnote, that the case did

4  not implicate the "commandeering" line of cases because "[t]he

5  Controlled Substance Act, by contrast, 'does not require the [state

6  legislature] to enact any laws or regulations, and it does not

7  require state officials to assist in the enforcement of federal

8  statutes regulating private individuals.'"  Raich, 500 F.3d at 867

9  n.17 (alteration in original)(quoting Condon, 528 U.S. at 151).

10  **C.   The Voluntary Cooperation Of State Officials In This
        Investigation Does Not Violate The Anti-Commandeering**
11      **Principle.**

12       Defendant's further claim that the federal government has

13  somehow "commandeered" or "conscripted" state officials, simply

14  because state officials were involved in this investigation, is both

15  factually and legally meritless.

16       Defendant has shown no federal "directive" or "command" issued

17  to the State of California or its agents.  Quite the contrary, the

18  discovery produced to defendant demonstrates that state officials

19  sought and received assistance by federal officials in this

20  investigation.  (See Exhibit A, at 1.)  State and federal law

21  enforcement routinely cooperate in the investigation of narcotics

22  trafficking, but such cooperation is purely voluntary, and in no way

23  conflicts with the Tenth Amendment.  For example, in Pearson v.

24  McCaffrey, 139 F. Supp. 2d 113 (D.D.C. 2001), the district court

25  considered whether the federal policy in favor of prosecuting

26  "medical" marijuana cases "forces state law enforcement officers to

27  enforce federal drug laws, thus ignoring applicable state law."  Id.

28  at 123.  The district court found that it did not:

> [A]s the Defendants note, the federal policy merely
> encourages state enforcement officers to both execute
> state laws and notify and cooperate with federal DEA
> officials.  State officials are not required to
> enforce federal law, and the federal government is not
> prohibited from asking state officials to voluntarily
> cooperate with their efforts.

Id.; see also Printz, 521 U.S. at 936 (O'Connor, J., concurring)
(noting that while Congress could not compel state law enforcement
officers to comply with the Brady Act, such officers may choose to
voluntarily comply); United States v. Nathan, 202 F.3d 230, 233 (4th
Cir. 2000)(finding cooperative federal-state venture under which
firearm-related offenses are prosecuted federally did not violate
Tenth Amendment because the venture is based on voluntary assistance
of Commonwealth police officers and prosecutors, and "[n]o part of
the arrangement involves federal compulsion of the Commonwealth or
its law enforcement officials."); City of New York v. United States,
179 F.3d 29, 35 (2d Cir. 1999)("[S]tates do not retain under the
Tenth Amendment an untrammeled right to forbid all voluntary
cooperation by state or local officials with particular federal
programs."); Allender v. Scott, 379 F. Supp. 2d 1206, 1212 (D.N.M.
2005)("[T]he fact that Congress does not have power to compel the
states to permit something does not preclude state officials from
doing it voluntarily.").

Nor is this law altered by the opinion in Conant v. Walters,
309 F.3d 629 (9th Cir. 2002).  There, a Ninth Circuit panel
affirmed, on First Amendment free speech grounds, an injunction
against DEA investigation or sanctions against California medical
doctors who counseled regarding or recommend marijuana use by their
patients that did not rise to the level of a criminal offense.  Id.
at 634, 637-39.  In a separate concurrence, not commanding a binding

9

majority of the court, Judge Kozinski wrote that the enjoined
federal actions also violated the "commandeering doctrine" of New
York v. Untied States and Printz. Id. at 646. He reasoned that
doctors played a crucial and indispensable role in applying
California's Proposition 215, that the federal actions at issue
prevented doctors from fulfilling that role, and therefore the
federal actions in effect forced the doctors, and thereby the State
of California, into enforcing federal narcotics laws with its
prohibition on marijuana use rather than Proposition 215. Id. at
646-47. He also found the federal conduct in effect forced the
state to regulate its licensing of physicians and the doctor-patient
relationship "to advance federal policy." Id. at 647.

In the government's view, and contrary to this concurring
opinion, the federal regulation of doctors at issue in Conant fell
far short of proscription against federal commandeering of state
actors set forth in New York v. United States and Printz. However,
even the attenuated connection between federal action and state
impact in that case, provided no basis for prohibiting voluntary
state enforcement of federal regulatory schemes.

In any event, the investigation of defendant began as a state
investigation by the San Luis Obispo Sheriff's Department. (See
Exhibit A, at 1.) The San Luis Obispo Sheriff's Department sought
assistance from the Ventura Resident Office of the DEA to
investigate defendant's marijuana store in Morro Bay, California.
(Id.) Prior to the federal government's involvement in this case,
business owners located near defendant's prior marijuana store
complained that customers exiting the store were giving marijuana to
other people waiting outside, and that some customers who exited the

store were smoking marijuana before driving away in their vehicles.
(Id.)  Because state officials were investigating these complaints,
as well as other violations of state law, prior to the federal
government's involvement in this case, there can be no claim that
the federal government commandeered or conscripted state officials.
Thus, defendant's claim fails both legally and factually.

**D.   Defendant Is Not Entitled To Any Discovery In Connection With His Meritless Motion.**

In the alternative to seeking dismissal of the Indictment in
connection with his motion, defendant seeks discovery of information
relating to whether the DEA "has abandoned major organized crime
investigations" and all communications relating to the cooperation
of state and federal officials in this investigation.  (Mot. at 2).
Despite making these sweeping requests, defendant cites no legal
authority entitling him to such discovery.

"There is no general constitutional right to discovery in a
criminal case."  Weatherford v. Bursey, 429 U.S. 545, 559 (1977).
To obtain discovery, the defendant has the burden to make a prima
facie showing that the requested information would be material to
preparation of the defense; a mere conclusory allegation of
materiality is insufficient.  United States v. Cadet, 727 F.2d 1453,
1466, 1468 (9th Cir. 1984); United States v. United States District
Court, 717 F.2d 478, 480 (9th Cir. 1983).

The Court's authority over discovery in a criminal case stems
from three sources.  First, Rule 16 of the Federal Rules of Criminal
Procedure establishes guidelines for pretrial production by the
government, as well as reciprocal discovery by the defendant, of
certain limited material, including items "material to preparing the

defense."  Fed. R. Crim. P. 16(a)(1)(E)(i).  Second, under Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), the government is obliged to turn over to the defense evidence in its possession that is favorable for the defense or that may be used by the defense for impeachment purposes.  Finally, under 18 U.S.C. §§ 3500, et seq. (the Jencks Act), statements by a government witness that relate to the subject matter of the witness's testimony are required to be disclosed to the defense after the witness has testified.  The government has complied, and continues to comply with all its discovery obligations in this case. However, none of these three sources of discovery authorizes defendant's discovery requests in his motion.

While the government has turned over documents related to the interaction between local and state law enforcement in this investigation, such as the attached DEA report, defendants have failed to make a prima facie showing that the further requested documents are material under Rule 16.  See, e.g., United States v. Santiago, 46 F.3d 885, 894 (9th Cir. 1995) ("Rule 16 also requires a party seeking discovery to make a showing of materiality of the information sought."); United States v. Mandel, 914 F.2d 1214, 1219 (9th Cir. 1990) ("Neither a general description of the information sought nor conclusory allegations of material suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense."); United States v. Little, 753 F.2d 1420, 1445 (9th Cir. 1984).  As demonstrated above, defendant's anti-commandeering arguments lack legal merit, and defendant has not otherwise provided any showing that the government possesses any material relevant to an even

1  potentially valid part of the defendant's case.

2      The limited right to criminal discovery does not permit

3  defendant's rummaging through the government's files in an effort to

4  find evidence that may be helpful or useful.  See Pennsylvania v.

5  Ritchie, 480 U.S. 39, 59 (1987).  Moreover, any argument that these

6  documents are relevant to a pre-trial motion does not alter the

7  parameters of the government's discovery obligations.  See United

8  States v. Spagnuolo, 515 F.2d 818, 820 (9th Cir. 1975).  In

9  Spagnuolo, the Ninth Circuit refused to expand the government's

10 discovery obligations for similar pre-trial motions:

11     Appellants argue that the district court should have
       ordered the Government to produce the F.B.I.
12     investigative files on the ground that these files
       would demonstrate that the Stuart investigation was
13     tainted. . . . They suggest that disclosure should be
       required on the basis of either the constitutional
14     right of compulsory process to obtain the appearance of
       witnesses or the disclosure requirements of Brady v.
15     Maryland, . . . .

16     Their arguments are not well taken.  Both assume that
       material indicative of a taint existed.  No evidence in
17     the record supports this assumption.  Appellants have
       embarked on the type of fishing expedition condemned
18     by this court in Ogden v. United States, 303 F.2d 724
       (9th Cir. 1962).  The district court properly denied
19     their motion.  See Fed. R. Crim. P. 16(a)(2).

20 Spagnuolo, 549 F.2d at 712-13 (emphasis added).

21     As with Spagnuolo, defendant suggests that discovery of the

22 requested material is necessary to determine whether the

23 investigation was tainted, here by alleged improper interaction

24 between federal and state law enforcement.  As in Spanguolo, the

25 request must be denied.

26     Most lacking is defendant's discovery request regarding the

27 DEA's enforcement priorities, specifically whether it has "abandoned

28 major organized crime investigations," a topic apparently taken by

13

defendant from Congressional testimony in the United States Senate. (See Def. Mot. at 5-6).  This request is overbroad as it is not limited as to time, is vague as to subject matter, and not connected by defendant in any way to the facts or charges in this case. Indeed, the apparent basis for this request for discovery is to make an argument about the wisdom, as a matter of policy, of federal enforcement of marijuana laws under the Controlled Substance Act. Defendant's interest in making such arguments, rather than addressing the relevant factual or legal issues relating to the charged criminal conduct, only reinforces the need (set forth further in the Government's In Limine Motion To Exclude Evidence and Argument RE: Medical Marijuana Issues) for this Court to use jury instructions and other rulings at and before trial to prevent defendant from seeking jury nullification or to curry sympathy by making improper political arguments during the trial.

### III.

### CONCLUSION

For the foregoing reasons, defendant's motion for discovery and/or dismissal of the indictment should be denied in its entirety.

Dated: June 23, 2008            Respectfully submitted,

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

_____/S/_____
DAVID P. KOWAL
RASHA GERGES
Assistant United States Attorney
OCEDTF Section

Attorneys for Plaintiff
United States of America

14