# EXHIBIT A

U.S. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 6

| 1. Program Code | 2. Cross File | Related Files | 3. File No. | 4. G-DEP Identifier |
|---|---|---|---|---|
| 5. By: SA Rachel Burkdoll<br>At: Ventura Resident Office<br>Los Angeles Field Division | ☐<br>☐<br>☐<br>☐ | | 6. File Title<br>Central Coast Compassionate Caregivers | |
| 7. ☐ Closed  ☐ Requested Action Completed<br>☐ Action Requested By: | ☐ | | 8. Date Prepared<br>01/19/07 | |

9. Other Officers: Det. Nick Fontecchio

10. Report Re: Case Initiation on 01/19/2006

### BASIS OF INVESTIGATION

1. On January 8, 2007, RAC Mike Quinn informed SAs William Torrence and Rachel Burkdoll that San Luis Obispo (SLO) Sheriff's Department had requested assistance from the Ventura Resident Office to investigate a medical marijuana dispensary located in Morro Bay, CA.

2. On January 18, 2007, SA Burkdoll met with Det. Nick Fontecchio at the San Luis Obispo Sheriff's Department. Below is the information provided by Det. Fontecchio during this meeting.

3. In April of 2006, the SLO Sheriff's Department began an investigation into the activities of the CENTRAL COAST COMPASSIONATE CAREGIVERS (CCCC) marijuana dispensary at 780 Monterey Avenue, Morro Bay, CA. The owner of the dispensary is listed as Charles LYNCH of 589 Rosemary Lane in Arroyo Grande, CA. By June 2006, LYNCH had filed a revised use permit through the City of Morro Bay to grow marijuana for medicinal use as well as the CCCC.

4. LYNCH had previously opened a marijuana dispensary at 7425 El Camino Real in Atascadero, California in January of 2006. Several local businesses located nearby 7425 El Camino Real complained about people outside of the business selling marijuana to other people on the street, as well as customers of the dispensary smoking marijuana inside their vehicles in the parking lot. This dispensary was

| 11. Distribution:<br>Division<br>District<br>Other  SARI, EPIC | 12. Signature (Agent)<br>Special Agent Rachel Burkdoll | 13. Date |
|---|---|---|
| | 14. Approved (Name and Title)<br>Mike Quinn<br>Resident Agent in Charge | 15. Date |

Form -6
(Jul. 1996)

RB - Case Initiation

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

0271

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION<br>*(Continuation)* | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| | 3. File Title<br>Central Coast Compassionate Caregivers | |
| 4.<br>Page 2 of 6 | | |
| 5. Program Code | 6. Date Prepared<br>01/19/07 | |

subsequently closed down by the City of Atascadero due to zoning violations.

5. From June to December 2006, the SLO Sheriff's Department utilized two confidential sources (CS-1 and CS-2) and one detective acting in an undercover capacity to purchase marijuana from the CCCC dispensary.

6. On June 1, 2006, CS-1 was instructed by a female employee at the dispensary to contact a doctor to obtain a recommendation or a medical marijuana physician's statement, and she provided CS-1 with a list of doctors. Shortly thereafter, CS-1 contacted Doctor Armond Tennyson TOLLETTE, Jr. TOLLETTE was using a cellular phone (310-505-0002) and instructed CS-1 to meet him at TOLLETTE's apartment in order to supply CS-1 with the recommendation. CS-1 asked if he/she needed to bring any medical records, and TOLLETTE stated that it would not be necessary.

7. CS-1 met with TOLLETTE on June 6, 2006 and stated that no physical examination had occurred. CS-1 informed TOLLETTE that he/she had Graves disease. TOLLETTE told CS-1 that he/she also suffered from anorexia, sleeplessness, and anxiety. CS-1 did not complain about any of these conditions to TOLLETTE. TOLLETTE also demonstrated to CS-1 how to properly smoke marijuana before providing CS-1 with the recommendation. CS-1 paid TOLLETTE $200 (funds provided by SLO Sheriff's Department) for the recommendation. On another occasion, CS-1 stated that TOLLETTE gave him/her marijuana as a referral fee for recommending CS-2 to schedule an appointment with TOLLETTE. As payment for the referral, TOLLETTE gave CS-1 $100.00 worth of marijuana. CS-1 also stated that TOLLETTE had a Home Depot five-gallon bucket which was full of marijuana.

8. TOLLETTE scheduled appointments with the second CS (CS-2) and the undercover (UC) detective from SLO Sheriff's Department. During CS-2's appointment with TOLLETTE, TOLLETTE told CS-2 what his/her blood pressure and heart rate were without any physical examination. TOLLETTE also showed CS-2 how to inhale marijuana during the visit. The UC did not receive an examination during the appointment, and

Form - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

0272