THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
DAVID P. KOWAL (Cal. Bar No. 188651)
RASHA GERGES (Cal. Bar No. 218248)
Assistant United States Attorneys
OCEDTF Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California  90012
     Telephone:  (213) 894-5136/6530
     Facsimile:  (213) 894-0142
     E-mail:  david.kowal@usdoj.gov
              rasha.gerges@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 07-689-GW |
| Plaintiff, | |
| v. | GOVERNMENT'S OPPOSITION TO DEFENDANT CHARLES C. LYNCH'S MOTION FOR DISCOVERY AND/OR DISMISSAL OF INDICTMENT FOR SELECTIVE ENFORCEMENT |
| CHARLES C. LYNCH, and ARMOND TENNYSON TOLLETTE, JR., | |
| Defendants. | Hearing Date: July 7, 2008 Hearing Time: 8:00 a.m. |

     Plaintiff United States of America, by and through its attorney of record, the United States Attorney for the Central District of California, hereby files its opposition to the Motion for Discovery and/or Dismissal of Indictment for Selective Enforcement filed by defendant Charles C. Lynch ("defendant").

     This Opposition is based on the attached memorandum of points

1  and authorities, the files and records of this case, and any

2  additional evidence or argument the Court may consider at the

3  hearing on this matter.

4

5  Dated: June 23, 2008        Respectfully submitted,

6                            THOMAS P. O'BRIEN
                            United States Attorney

7

8                            CHRISTINE C. EWELL
                            Assistant United States Attorney
                            Chief, Criminal Division

9

10                                     /S/
                            DAVID P. KOWAL

11                            RASHA GERGES
                            Assistant United States Attorney

12                            OCEDTF Section

13                            Attorneys for Plaintiff
                            United States of America

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

PAGE

I.   INTRODUCTION AND BACKGROUND. . . . . . . . . . . . . . . . . . 1

II.  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     A.   The Standard For Analyzing Selective Prosecution
          Claims, And Requests For Discovery. . . . . . . . . . . 4

     B.   Defendant Has Failed To Make A Prima Facie Case Of
          Selective Prosecution. . . . . . . . . . . . . . . . . 7

          1.   Defendant's "Selective Enforcement" Claim Is,
               In Reality, A "Selective Prosecution" Claim. . . . . 7

          2.   Defendant's Claim Must Fail Because He Cannot
               Establish That The United States Attorney's
               Office Targeted Him Based On An Impermissible
               Motive. . . . . . . . . . . . . . . . . . . . . . . 8

          3.   This Court Lacks Authority To Review Defendant's
               Claim That His Prosecution Is Irrational,
               Malicious, And Arbitrary. . . . . . . . . . . . . . 10

          4.   Defendant's "Class Of One" Equal Protection Claim
               Is Not Legally Cognizable In This Criminal
               Prosecution. . . . . . . . . . . . . . . . . . . . 13

     C.   Defendant Has Not Satisfied The "Rigorous" Standard
          To Entitle Him To Any Discovery. . . . . . . . . . . . 16

III. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . 18

**TABLE OF AUTHORITIES**

**FEDERAL CASES**                                              **PAGE(S)**

American-Arab Anti-Discrimination Committee v. Reno,
    70 F.3d 1045 (9th Cir. 1995). . . . . . . . . . . . . . 6

Bordenkircher v. Hayes,
    434 U.S. 357 (1978). . . . . . . . . . . . . . . . . . 4

Engquist v. Oregon Department of Agriculture,
    __ U.S. __, 2008 WL 2329768 (June 9, 2008). . . . . . 14, 16

Franks v. Delaware,
    438 U.S. 154 (1978). . . . . . . . . . . . . . . . . . 17

Gonzalez v. Raich,
    545 U.S. 1 (2005). . . . . . . . . . . . . . . . . . . 9

National Wildlife Federation v. United States Forest Serv.,
    861 F.2d 114 (9th Cir. 1988). . . . . . . . . . . . . 17

Nunes v. Ramirez-Palmer,
    485 F.3d 432 (9th Cir. 2007). . . . . . . . . . . . . 5

Oyler v. Boles,
    368 U.S. 448, 456 (1962). . . . . . . . . . . . . . . 5

Reno v. American-Arab Anti-Discrimination Committee,
    525 U.S. 471 (1999). . . . . . . . . . . . . . . . . . 6

United States v. Arenas-Ortiz,
    339 F.3d 1066 (9th Cir. 2003). . . . . . . . . . . . . 6

United States v. Armstrong,
    517 U.S. 456 (1996). . . . . . . . . . . . . 4, 6, 7, 8, 12

United States v. Armstrong,
    48 F.3d 1508 (9th Cir. 1995). . . . . . . . . . . . . 12

United States v. Barlow,
    310 F.3d 1007 (7th Cir. 2002). . . . . . . . . . . . . 8

United States v. Bass,
    536 U.S. 862 (2002). . . . . . . . . . . . . . . . 6, 16

United States v. Bauer,
    84 F.3d 1549 (9th Cir. 1996). . . . . . . . . . . . . 11

United States v. Chemical Foundation,
    272 U.S. 1 (1926). . . . . . . . . . . . . . . . . . . 4

United States v. DeTar,
    832 F.2d 1110 (9th Cir. 1987). . . . . . . . . . . . 6, 8

ii

1

**TABLE OF AUTHORITIES (cont'd)**

2    **FEDERAL CASES**                                **PAGE(S)**

3

United States v. Erne,
4        576 F.2d 212 (9th Cir. 1978). . . . . . . . . . . . . 10

5    United States v. Fernandez,
       231 F.3d 1240 (9th Cir. 2000).. . . . . . . . . . . . 17

6

7    United States v. Fernandez,
       388 F.3d 1199 (9th Cir. 2004).. . . . . . . . . . . . 18

8    United States v. Greene,
       698 F.2d 1364 (9th Cir. 1983). . . . . . . . . . . . . 9

9

United States v. Hastings,
10       126 F.3d 310 (4th Cir 1997). . . . . . . . . . . . . 10

11    United States v. Hooton,
       662 F.2d 628 (9th Cir. 1981). . . . . . . . . . . . . 10

12

United States v. Lichenstein,
13       610 F.2d 1272 (5th Cir. 1980). . . . . . . . . . . . . 5

14    United States v. Marshall,
       56 F.3d 1210 (9th Cir. 1995). . . . . . . . . . . . . 9

15    United States v. Oakes,
       11 F.3d 897 (9th Cir. 1993).. . . . . . . . . . . . . 11

16

United States v. Oakland Cannabis Buyer's Cooperative,
17       532 U.S. 483 (2001). . . . . . . . . . . . . . . . . . 9

18    United States v. Palmer,
       3 F.3d 300 (9th Cir. 1993). . . . . . . . . . . . . . 11

19

20    United States v. Perdomo,
       800 F.2d 916 (9th Cir. 1986). . . . . . . . . . . . . 18

21    United States v. Redondo-Lemos,
       955  F.2d 1296 (9th Cir. 1992).. . . . . . . . . .   11, 12, 13

22

United States v. Spears,
23       159 F.3d 1081 (7th Cir. 1999). . . . . . . . . . . . 10

24    United States v. Sustaita,
       1 F.3d 950 (9th Cir. 1993). . . . . . . . . . . . . . 11

25

United States v. Wayte,
26       710 F.2d 1385 (9th Cir. 1983).. . . . . . . . . . .  4, 5

27    United States v. Wilson,
       639 F.2d 500 (9th Cir. 1981). . . . . . . . . . . . . 5

28

**TABLE OF AUTHORITIES (cont'd)**

**FEDERAL CASES**                                                          **PAGE(S)**

Village of Willowbrook v. Olech,
      528 U.S. 562 (2000).. . . . . . . . . . . . . .  14, 15, 16

Wayte v. United States,
      470 U.S. 598 (1985).. . . . . . . . . . . . . . . . .  4, 5


**FEDERAL STATUTES**

18 U.S.C. § 2  . . . . . . . . . . . . . . . . . . . . . . .  2

21 U.S.C. § 841(a)(1).. . . . . . . . . . . . . . . . . . .  2

21 U.S.C. § 846.. . . . . . . . . . . . . . . . . . . . . .  2

21 U.S.C. § 856(a)(1).. . . . . . . . . . . . . . . . . .  2, 3

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.**

**INTRODUCTION AND BACKGROUND**

Defendant has been indicted for several narcotics crimes in connection with his owning and operating a marijuana store in Morro Bay, California.  As set forth in DEA reports produced in discovery in this case, in early 2006, the San Luis Obispo Sheriff's Department began investigating defendant in connection with a marijuana store that he operated in Atascadero, California.  (<u>See</u> Exhibit A (excerpt of DEA report relating to origin of investigation)).  Business owners located near defendant's prior marijuana store complained that customers exiting the dispensary were giving marijuana to other people waiting outside, and that some customers who exited the dispensary were smoking marijuana inside their vehicles in the parking lot.  (<u>Id.</u> at 1).  Defendant's marijuana store in Atascadero was subsequently closed by the City of Atascadero due to zoning violations.  (<u>Id.</u> at 1-2).

The San Luis Obispo Sheriff's Department continued to investigate defendant when he opened the marijuana store in Morro Bay, California.  (<u>Id.</u>)  In January 2006, the San Luis Obispo Sheriff's Department sought assistance from the Ventura Resident Office of the Drug Enforcement Administration ("DEA") to investigate defendant's marijuana.  (<u>Id.</u> at 1).  The DEA participated in the investigation, and eventually sought and obtained search warrants for the marijuana store and defendant's residence.  The search warrants were executed on March 29, 2007, and officials seized approximately 14 kilograms of marijuana, over 200 grams of THC, and 104 marijuana plants from the marijuana store, as well as

approximately 66 grams of marijuana and $27,328 in U.S. currency from defendant's residence.  Officials also seized business records from the locations, which establish that from the opening of defendant's marijuana store until federal agents executed the search warrants, defendant sold marijuana products to more than 2,000 different customers, including 281 different minors under the age of twenty-one and under the age of eighteen.  Sales during this period were in excess of $2.1 million, with defendant controlling the store's bank accounts and the significant quantities of cash generated by the operation.

On July 13, 2007, the grand jury returned a six-count indictment against defendant, charging: a narcotics conspiracy, in violation of 21 U.S.C. §§ 846, 841(a)(1), 856, and 859 (Count One); aiding and abetting in the sale of marijuana to minors, in violation of 21 U.S.C. §§ 841(a)(1), 859(a), and 18 U.S.C. § 2 (Counts Two and Three); possession of marijuana with intent to distribute, in violation of 21 U.S.C. 841(a)(1) (Count Four); operation and use of a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1) (Count Five); and criminal forfeiture (Count Six).

In the present motion, defendant moves to dismiss the indictment on the ground that defendant "is a victim of selective enforcement of the laws." (Mot. at 2).  In the alternative, defendant asks for discovery on a long list of documents regarding the federal government's decision to prosecute medical marijuana dispensaries, including documents responding to the host of questions posed by United States Representative John Conyers, Jr. to Acting Administrator Michele Leonhart of the DEA, as well as documents to support various statements made in DEA Special Agent

("SA") Rachel Burkdoll's affidavit in support of search warrants. (Id. at 3-5).

Defendant claims that he has received disparate treatment because the government treated him differently from others who are similarly situated, and the government's decision to target him was irrational, malicious, and arbitrary. (Id. at 11-12). According to defendant, he "premises his equal protection claim upon unique treatment rather than upon an impermissible classification, a claim that the Supreme Court has characterized as a 'class of one' action." (Id. at 10).

This Court should deny defendant's baseless motion because he cannot, as a matter of law, base a selective enforcement or prosecution claim on "unique treatment." Rather, defendant must demonstrate both a discriminatory motive and discriminatory effect to establish a selective prosecution claim. Defendant has not attempted to -- nor can he successfully -- make such a showing. Without evidence of a discriminatory motive and discriminatory effect, the Court must presume that defendant was not improperly targeted for prosecution. Further, defendant is not entitled to his sweeping requests for discovery on his selective enforcement claim because he has failed to meet the rigorous standard of establishing at least "some evidence" of a discriminatory motive and discriminatory effect. For all of these reasons, which are set out more fully below, the Court should deny defendant's motion.

## II.

### ARGUMENT

**A.  The Standard For Analyzing Selective Prosecution Claims, And Requests For Discovery**

The Supreme Court has long recognized that "[t]he presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." <u>United States v. Chemical Foundation</u>, 272 U.S. 1, 14-15 (1926).  In the criminal context, "the Government retains 'broad discretion' as to whom to prosecute." <u>Wayte v. United States</u>, 470 U.S. 598, 607 (1985) (citation omitted); <u>see also</u> <u>United States v. Armstrong</u>, 517 U.S. 456, 464 (1996)("The Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws.")(citation omitted).  Thus, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." <u>Bordenkircher v. Hayes</u>, 434 U.S. 357, 364 (1978).

Broad prosecutorial discretion exists because of the "recognition that the decision to prosecute is particularly ill-suited to judicial review." <u>Wayte</u>, 470 U.S. at 607.  As the Supreme Court explained in <u>Wayte</u>:

> Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.  Judicial supervision in this area, moreover, entails systemic costs of particular concern.  Examining the basis of a

1  prosecution delays the criminal proceeding, threatens to
   chill law enforcement by subjecting the prosecutor's
2  motives and decisionmaking to outside inquiry, and may
   undermine prosecutorial effectiveness by revealing the
3  Government's enforcement policy.  All these are
   substantial concerns that make the courts properly
4  hesitant to examine the decision whether to prosecute.

5  Id. at 607-08.

6      Given the various considerations that underlie prosecutorial

7  decisions, "[a]ll prosecutions are to some degree 'selective.'"

8  United States v. Wilson, 639 F.2d 500, 504 (9th Cir. 1981).  "[T]he

9  conscious exercise of some selectivity in enforcement is not in

10 itself a federal constitutional violation so long as the selection

11 was not deliberately based upon an unjustifiable standard such as

12 race, religion, or other arbitrary classification."  Nunes v.

13 Ramirez-Palmer, 485 F.3d 432, 441 (9th Cir. 2007)(internal quotation

14 marks omitted)(quoting Oyler v. Boles, 368 U.S. 448, 456 (1962));

15 United States v. Wayte, 710 F.2d 1385, 1387 (9th Cir. 1983)

16 ("Selectivity in prosecution is not impermissible.");  United States

17 v. Lichenstein, 610 F.2d 1272, 1281 (5th Cir. 1980) ("Though

18 selective prosecution, if based on improper motives, can violate

19 constitutional guarantees of equal protection, selective enforcement

20 in and of itself is not a constitutional violation.").

21     Selective prosecution claims are judged "according to ordinary

22 equal protection standards," and require a claimant to establish

23 that the "enforcement system had a discriminatory effect and that it

24 was motivated by a discriminatory purpose."  Wayte, 470 U.S. at 608.

25 Thus, to state a prima facie claim of selective prosecution,

26 defendant has the burden of demonstrating "(1) others similarly

27 situated have not been prosecuted (disparate impact) and (2) the

28 prosecution is based on an impermissible motive (discriminatory

motive)." American-Arab Anti-Discrimination Committee v. Reno, 70
F.3d 1045, 1062 (9th Cir. 1995)(internal quotation marks omitted).
An impermissible motive is one that is based on "an unjustifiable
standard such as race, religion, or other arbitrary classification."
Armstrong, 517 U.S. at 464 (citation omitted); see also United
States v. DeTar, 832 F.2d 1110, 1112 (9th Cir. 1987)(stating
claimant of selective prosecution claim needed to demonstrate "(1)
that similarly situated persons have not been prosecuted and (2)
that he was selected for prosecution on the basis of an
impermissible ground such as race, religion or the exercise of
constitutional rights."). The Supreme Court has emphasized that "in
the criminal-law field, a selective prosecution claim is a rara
avis." Reno v. American-Arab Anti-Discrimination Comm., 525 U.S.
471, 489 (1999). Moreover, because selective prosecution claims
"invade a special province of the Executive -- its prosecutorial
discretion . . . the standard for proving them is particularly
demanding, requiring a criminal defendant to introduce 'clear
evidence' displacing the presumption that a prosecutor has acted
lawfully." Id. Thus, in the absence of clear evidence to the
contrary, courts are to presume that prosecutors have properly
discharged their duties. Armstrong, 517 U.S. at 465.

        Likewise, a defendant seeking discovery on a claim of selective
prosecution "must show some evidence of both discriminatory effect
and discriminatory intent." United States v. Bass, 536 U.S. 862,
863 (2002). The standard for obtaining discovery "is a 'rigorous'
one designed to minimize interference with the prosecutorial
function." United States v. Arenas-Ortiz, 339 F.3d 1066, 1069 (9th
Cir. 2003); see also Armstrong, 517 U.S. at 468 ("The justifications

1    for a rigorous standard for the elements of a selective-prosecution

2    claim . . . require a correspondingly rigorous standard for

3    discovery in aid of such a claim.").  This is because ordering the

4    government to produce discovery "imposes many of the costs present

5    when the Government must respond to a prima facie case of selective

6    prosecution."  <u>Armstrong</u>, 517 U.S. at 468.  As the Supreme Court

7    explained in <u>Armstrong</u>, discovery "will divert prosecutors'

8    resources and may disclose the Government's prosecutorial strategy."

9    <u>Id.</u>  For these reasons, "the showing necessary to obtain discovery

10   should itself be a significant barrier to the litigation of

11   insubstantial claims."  <u>Id.</u> at 464.

**B.  <u>Defendant Has Failed To Make A Prima Facie Case Of Selective
     Prosecution.</u>**

    **1.  <u>Defendant's "Selective Enforcement" Claim Is, In Reality,
         A "Selective Prosecution" Claim.</u>**

15        Perhaps in an attempt to circumvent the broad discretion

16   that inheres in the government's decision to prosecute defendant in

17   this case, defendant styles his motion to dismiss as one for

18   "selective enforcement," rather than "selective prosecution."  It is

19   obvious, however, from a review of his motion that defendant's

20   ultimate complaint is that the government has decided to prosecute

21   him for his ownership and operation of the marijuana store.  (<u>See,</u>

22   <u>e.g.,</u> Mot. at 5 (seeking "[a]ny and all information in the

23   government's possession, custody, or control that the government

24   might (or could) adduce at the hearing on this motion related to

25   whether there exists a rational basis for the prosecution of Charles

26   Lynch."); <u>id.</u> at 7 ("To the extent the DEA has a reason to prosecute

27   him as opposed to the myriad of other dispensary owners in the

28   Central District of California, Mr. Lynch would like to hear it.");

1    Id. at 10 ("[B]ased upon the evidence allegedly seized pursuant to

2    the search warrant that Special Agent Burkdoll secured, it is

3    unclear why the federal government sought an indictment in this case

4    . . . ."); id. at 12 ("[H]ad Mr. Lynch been an ordinary marijuana

5    dealer, the prosecution of his case would have ben left to the

6    States . . . .It is only because Mr. Lynch held out the marijuana

7    that he distributed to be medicinal that the federal government has

8    intervened.")).  Because defendant's motion attacks the government's

9    decision to prosecute defendant, not merely to investigate him, it

10   should properly be construed as a motion for selective prosecution,

11   not for selective enforcement.[1]

12          **2.   Defendant's Claim Must Fail Because He Cannot Establish**
                 **That The United States Attorney's Office Targeted Him**
13               **Based On An Impermissible Motive.**

14        Defendant concedes that his equal protection claim is not

15   premised "upon an impermissible classification."  (Mot. at 10).  As

16   explained above, a selective enforcement claim cannot survive

17   without a showing that the government's prosecution was based on an

18   impermissible motive.  See, e.g., DeTar, 832 F.2d at 1112 (selective

19   prosecution claimant must demonstrate "(1) that similarly situated

20   persons have not been prosecuted and (2) that he was selected for

21   prosecution on the basis of an impermissible ground such as race,

22   religion or the exercise of constitutional rights.").  Because

23   ─────────────────

24        [1]  In any event, selective enforcement claims are governed
     by the same standards as selective prosecution claims.  See
25   United States v. Barlow, 310 F.3d 1007, 1010 (7th Cir. 2002)("[A]
     defendant seeking discovery on a selective enforcement claim must
26   meet the same 'ordinary equal protection standards' that
     Armstrong outlines for selective prosecution claims.").
27

28

1    defendant does not even attempt to demonstrate that his prosecution
2    was based on an impermissible motive, his selective prosecution
3    claim fails as a matter of law.

4         Moreover, defendant's references to the possible motivations of
5    the DEA are irrelevant to the determination of whether defendant's
6    prosecution was based on improper motives.  Firstly, defendant does
7    not attribute any "impermissive motive" to the DEA, such as
8    targeting defendant based on his race, religion, or exercise of
9    constitutional rights.  Rather, the only motive defendant appears to
10   attribute to the DEA is that the DEA targeted defendant because of
11   his "distribution of medicinal marijuana." (Mot. at 12).  The
12   distribution of marijuana, whether for purportedly medical purposes
13   or otherwise is clearly a violation of federal law, and therefore,
14   cannot be an "impermissible motive."  See Gonzalez v. Raich, 545
15   U.S. 1 (2005); United States v. Oakland Cannabis Buyer's
16   Cooperative, 532 U.S. 483 (2001).

17        Further, even if defendant had attributed an impermissible
18   motive to the DEA, which he did not, he would still not establish a
19   selective prosecution claim.  This is because selective prosecution
20   claims based on the activities of law enforcement agents fail
21   because agents do not make the decision to prosecute, the prosecutor
22   does.  See United States v. Marshall, 56 F.3d 1210, 1211-12 (9th
23   Cir. 1995)(focusing question of discovery in selective prosecution
24   case on the United States Attorney's decision to prosecute); United
25   States v. Greene, 698 F.2d 1364, 1368 (9th Cir. 1983)(holding that
26   even though agent's role in referring matter for prosecution
27   involved an improper discriminatory motive, it would be insufficient
28   because "the ultimate decision to prosecute is several steps removed

1   from the [agent]"); <u>United States v. Hooton</u>, 662 F.2d 628, 634 (9th

2   Cir. 1981)(upholding denial of motion to dismiss for vindictive

3   prosecution where only alleged animus was that of agent, who had no

4   charging authority, and defendant "failed to show even an appearance

5   of vindictiveness on the part of those members of United States

6   Attorney's office who made the prosecutive decision"); <u>United States</u>

7   <u>v. Erne</u>, 576 F.2d 212, 216 (9th Cir. 1978)(alleged discriminatory

8   investigation does not taint prosecution where prosecutor's decision

9   is independent and based on nondiscriminatory policies); <u>see also</u>

10  <u>United States v. Spears</u>, 159 F.3d 1081, 1087 (7th Cir. 1999)(holding

11  that "it is well settled that the actions of an investigating agency

12  will not be imputed to a federal prosecutor"); <u>United States v.</u>

13  <u>Hastings</u>, 126 F.3d 310, 314 (4th Cir 1997)("We will not impute the

14  unlawful biases of the investigating agents to the persons

15  ultimately responsible for the prosecution."). And just as he

16  brought forth no evidence of impermissible motive by law enforcement

17  agencies, so to has defendant not provided evidence of an

18  impermissible motive by the prosecuting agency in this case.

19      **3.   This Court Lacks Authority To Review Defendant's Claim
           That His Prosecution Is Irrational, Malicious, And**
20         **Arbitrary.**

21      Contrary to well-accepted principles of the narrow scope of

22  judicial review of prosecutorial decisions, defendant seeks to have

23  this Court review the reasonableness of the government's prosecution

24  of defendant. Even though defendant concedes that he was not

25  targeted based on an "impermissible classification" (such as race,

26  gender, religion, or exercise of a constitutional right), he asks

27  this Court to find that his prosecution is irrational, malicious,

28  and arbitrary. The Court has no jurisdiction to make such a

1   determination.

2        It is well-settled that courts lack authority to review

3   prosecutorial charging decisions where no improper motive is

4   suspected.  See United States v. Oakes, 11 F.3d 897, 898-99 (9th

5   Cir. 1993)(refusing to review defendant's claim that "the random

6   decision to prosecute him in federal court [rather than state court]

7   was arbitrary and unfair").  As the Ninth Circuit explained in

8   Oakes:

9        [W]e have no jurisdiction to review prosecutors'
         charging decisions, absent proof of discrimination based
10       on suspect characteristics such as race, religion,
         gender or personal beliefs.  This is true, even where
11       the prosecutor's decision to file in federal court was
         not made pursuant to written policy, was motivated
12       primarily by a desire to impose a harsher sentence, and
         was inconsistent with the treatment given other
13       defendants.

14  Id. at 899 (internal citations omitted); see also United States v.

15  Bauer, 84 F.3d 1549, 1560 (9th Cir. 1996)("A prosecutor's decision

16  to bring charges is beyond judicial review unless the defendants can

17  make a prima facie showing that the decision rested on an

18  impermissible basis."); United States v. Palmer, 3 F.3d 300, 305

19  (9th Cir. 1993)("[S]eparation of powers concerns prohibit us from

20  reviewing a prosecutor's charging decisions absent a prima facie

21  showing that it rested on an impermissible basis, such as gender,

22  race or denial of a constitutional right.")(footnote omitted);

23  United States v. Sustaita, 1 F.3d 950, 952 (9th Cir. 1993)(refusing

24  to consider defendant's claim that his due process rights were

25  "violated by the prosecutor's arbitrary exercise of his discretion"

26  and holding that "[p]utting aside the factual question whether

27  [defendant] was arbitrarily selected for prosecution, there is no

28  legal basis for his claim"); United States v. Redondo-Lemos, 955

11

F.2d 1296, 1301 n.9 (9th Cir. 1992)("Inquiry into prosecutorial affairs is allowed to pursue claims of selective prosecution based on suspect characteristics, but not those based on arbitrariness, because in the former case the inquiry is likely to be less intrusive and the violation more offensive"), <u>overruled en banc on other grounds by</u> <u>United States v. Armstrong</u>, 48 F.3d 1508 (9th Cir. 1995), <u>rev'd by</u> <u>United States v. Armstrong</u>, 517 U.S. 456 (1996).

In <u>Redondo-Lemos</u>, the district court believed that it observed the United States Attorney's Office being arbitrary in selecting those among similarly situated drug "mules" who were allowed to plead guilty to lesser offenses that did not carry a statutory minimum sentence.  955 F.2d at 1298.  The Ninth Circuit held that, in the absence of any improper motive such as race or gender, the district court had no authority to review such decisions of the prosecutor, explaining in practical terms why this had to be:

> Prosecutorial charging and plea bargaining decisions are particularly ill-suited for broad judicial oversight.  In the first place, they involve exercises of judgment and discretion that are often difficult to articulate in a manner suitable for judicial evaluation.  Such decisions are normally made as a result of careful professional judgment as to the strength of the evidence, the availability of resources, the visibility of the crime and the likely deterrent effect on the particular defendant and others similarly situated.  Even were it able to collect, understand and balance all of these factors, a court would find it nearly impossible to lay down guidelines to be followed by prosecutors in future cases.  We would be left with prosecutors not knowing when to prosecute and judges not having time to judge.

<u>Id.</u> at 1299 (internal citations and footnotes omitted).  The Ninth Circuit also observed that, in addition to the practical difficulties inherent in such judicial review, the separation of powers doctrine prevented such review:

> [J]udicial entanglement in the core decisions of
> another branch of government - especially as to those
> bearing directly and substantially on matters
> litigated in federal court - is inconsistent with the
> division of responsibilities assigned to each branch
> by the Constitution.  The Office of the United States
> Attorney cannot function as prosecutor before the
> court while also serving under its general
> supervision.  The court, in turn, cannot both
> supervise the exercise of prosecutorial discretion
> and act as an impartial arbiter of the cases
> presented to it.  In the end, the type of intense
> inquiry that would enable a court to evaluate whether
> or not a prosecutor's charging decision was made in
> an arbitrary fashion would destroy the very system of
> justice it was intended to protect.

Redondo-Lemos, 955 F.2d at 1300.

Accordingly, because the defendant conceded that the present prosecution was not based on an impermissible motive or classification, this Court has no jurisdiction to review defendant's claim that his prosecution is arbitrary, irrational and malicious.

**4.  Defendant's "Class Of One" Equal Protection Claim Is Not Legally Cognizable In This Criminal Prosecution.**

Despite the Court's lack of jurisdiction to review the reasonableness of the government's decision to prosecute defendant, defendant claims entitlement to raise a "class of one" equal protection claim, which employs a "rational basis" standard of review.  (Mot. at 10-11).  Defendant, however, cites no legal authority authorizing a "class of one" claim in the criminal context.  Quite the contrary, the "class of one" claim is antithetical to the broad discretion given to prosecutor's decision to bring charges, and to the ample legal authority set forth above that limit judicial review to only those prosecutorial decisions that are based on an impermissible motive.

The inappropriateness of a "class of one" claim in the criminal

1   context is supported by the Supreme Court's recent decision in

2   Engquist v. Oregon Dep't of Agriculture, __ U.S. __, 2008 WL 2329768

3   (June 9, 2008).  Although Engquist involved a "class of one" equal

4   protection claim brought in the public employment context, the

5   Court's reasoning as to why such a claim was not legally cognizable

6   is applicable here.  Id. at *2.  At issue in Engquist was a former

7   public employee who brought a "class of one" claim, alleging that

8   she was fired not because she was a member of a protected class, but

9   for "arbitrary, vindictive, and malicious reasons."  Id.  The Court

10  found that such a claim does not apply in the public employment

11  context.  Id. at *4.  The Court distinguished its prior holding in

12  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), which

13  authorized a "class of one" claim against a village that required

14  the claimant to grant a 33-foot easement in order to connect her

15  property to the municipal water supply while other property owners

16  were required to give only a 15-foot easement, on the basis of

17  whether the decision was based on "subjective, individualized

18  determinations."  Id. at *7.  The Court explained:

19      What seems to have been significant in Olech and the cases
        on which it relied was the existence of a clear standard
20      against which departures, even for a single plaintiff,
        could be readily assessed.  There was no indication in
21      Olech that the zoning board was exercising discretionary
        authority based on subjective, individualized
22      determinations at least not with regard to easement length
        . . . . Rather, the complaint alleged that the board
23      consistently required only a 15-foot easement, but
        subjected Olech to a 33-foot easement.  This differential
24      treatment raised a concern of arbitrary classification,
        and we therefore required that the State provide a
25      rational basis for it.

26  Id.

27      While a "class of one" claim may be applicable to

28  determinations that are not subjective or individualized, such a

14

claim is not applicable to the highly discretionary determination of

a prosecutor to bring charges against a defendant.  As the Court

found:

> There are some forms of state action, however, which by
> their nature involve discretionary decisionmaking based on
> a vast array of subjective, individualized assessments.
> In such cases the rule that people should be 'treated
> alike, under like circumstances and conditions' is not
> violated when one person is treated differently from
> others, because treating like individuals differently is
> an accepted consequence of the discretion granted.  In
> such situations, allowing a challenge based on the
> arbitrary singling out of a particular person would
> undermine the very discretion that such state officials
> are entrusted to exercise.

Id. at *8.

The example the Supreme Court used to illustrate this point is

particularly instructive here because it involves the inherent

discretionary authority that exists in enforcing the criminal laws,

which makes a "class of one" claim inappropriate:

> Suppose, for example, that a traffic officer is
> stationed on a busy highway where people often drive
> above the speed limit, and there is no basis upon which
> to distinguish them.  If the officer gives only one of
> those people a ticket, it may be good English to say
> that the officer has created a class of people that did
> not get speeding tickets, and a 'class of one' that did.
> But assuming that it is in the nature of the particular
> government activity that not all speeders can be stopped
> and ticketed, complaining that one has been singled out
> for no reason does not invoke the fear of improper
> government classification.  Such a complaint, rather,
> challenges the legitimacy of the underlying action
> itself - the decision to ticket speeders under such
> circumstances . . . allowing an equal protection claim
> on the ground that a ticket was given to one person and
> not others, even if for no discernible or articulable
> reason, would be incompatible with the discretion
> inherent in the challenged action.  It is no proper
> challenge to what in its nature is a subjective,
> individualized decision that it was subjective and
> individualized.

Id.

1    Even the dissenters in <u>Engquist</u> concluded that no Equal
2    Protection claim could succeed based on this hypothetical because "a
3    random choice among rational alternatives does not violate the Equal
4    Protection Clause." <u>Id.</u> at *14 (Stevens, J., dissenting).  The
5    example given in <u>Engquist</u> is directly analogous to the present case.
6    Defendant was indicted for operating a marijuana store in violation
7    of federal law.  That others who also operate marijuana stores in
8    violation of federal law may have not yet been indicted is
9    irrelevant.  Because the decision to prosecute defendant involved a
10   "subjective and individualized" determination, inherent in all
11   prosecutorial decisions, a "class of one" claim is incompatible in
12   this context.  Accordingly, defendant's "class of one" equal
13   protection claim fails as a matter of law.

14   **C.   <u>Defendant Has Not Satisfied The "Rigorous" Standard To Entitle</u>**
     **<u>Him To Any Discovery</u>**
15

16   As mentioned above, the rigorous standard for discovery in aid
17   of a selective prosecution claim requires a defendant to "show some
18   evidence of both discriminatory effect and discriminatory intent."
19   <u>Bass</u>, 536 U.S. at 863.  Because defendant has not shown -- or even
20   attempted to show -- that the decision to prosecute him was based on
21   an improper motive, he has not satisfied his burden of showing "some
22   evidence" of discrimination.  Accordingly, defendant is not entitled
23   to the long list of requested discovery.

24   In addition, a number of defendant's discovery requests seek
25   information relating to the government's analysis of policy
26   considerations for prosecuting marijuana dispensaries purporting to
27   operate in accordance with California law.  Such requests should be
28   denied for the additional reason that they seek information

protected by the deliberative process privilege.

The deliberative process privilege prevents discovery of documents that are (1) pre-decisional or antecedent to the adoption of agency policy, and (2) deliberative, meaning related to the process by which policies are formulated.  See National Wildlife Fed'n v. United States Forest Serv., 861 F.2d 114, 117 (9th Cir. 1988).  "By shielding such documents from discovery, the deliberative process privilege encourages forthright and candid discussions of ideas and, therefore, improves the decisionmaking process."  United States v. Fernandez, 231 F.3d 1240, 1246 (9th Cir. 2000); see also Wildlife Fed'n, 861 F.2d at 1117 ("It would be impossible to have any frank discussions of legal or policy matters in writing if all such writings were to be subjected to public scrutiny.")(internal quotation marks omitted).

Finally, a number of defendant's discovery requests seek information to support various statements in DEA SA Rachel Burkdoll's affidavit.  Although defendant does not explain exactly how such information would assist with a selective prosecution claim, it appears that defendant disagrees with some of the statements made in the affidavit.  Filing a selective prosecution claim, however, does not provide any basis for discovery or a hearing for defendant to challenge SA Burkdoll's statements.

Under Franks v. Delaware, 438 U.S. 154, 171-72 (1978), a defendant must meet five requirements in order to obtain a hearing on alleged false statements or omissions in an affidavit: (1) he must allege specifically which portions of the affidavit are allegedly false or misleading due to omissions; (2) he must contend that the false statements or omissions were deliberately or

17

1    recklessly made; (3) he must present a detailed offer of proof,

2    including affidavits, to support his allegations; (4) he must

3    challenge only the veracity of the affiant (and not an informant);

4    and (5) the challenged statements must be necessary to find probable

5    cause or necessity.  See also United States v. Fernandez, 388 F.3d

6    1199, 1238 (9th Cir. 2004); United States v. Perdomo, 800 F.2d 916,

7    920 (9th Cir. 1986).  Here, defendant has not even challenged the

8    statements in the agent's affidavit, or claim that there were

9    material misrepresentation or omissions.  Moreover, defendant has

10   not made any detailed offer of proof, nor set forth any specific

11   information regarding how the information requested could in any way

12   impeach SA Burkdoll's statements.

13                                  **III.**

14                               **CONCLUSION**

15        For the foregoing reasons, defendant's motion for discovery

16   and/or dismissal of the indictment should be denied in its entirety.

17   Dated: June 23, 2008           Respectfully submitted,

18

19                                  THOMAS P. O'BRIEN
                                    United States Attorney

20                                  CHRISTINE C. EWELL
                                    Assistant United States Attorney
21                                  Chief, Criminal Division

22

                                    _____/S/_____
23                                  DAVID P. KOWAL
                                    RASHA GERGES
24                                  Assistant United States Attorney
                                    OCEDTF Section
25
                                    Attorneys for Plaintiff
26                                  United States of America

27

28

                                     18