SEAN K. KENNEDY (No. 145632)
Federal Public Defender
(E-mail: Sean_Kennedy@fd.org)
REUVEN L. COHEN (No. 231915)
Deputy Federal Public Defender
(E-mail: Reuven_Cohen@fd.org)
JOHN LITTRELL (No. 221601)
(E-mail: John_Littrell@fd.og)
321 East 2nd Street
Los Angeles, California  90012-4202
Telephone (213) 894-4454
Facsimile (213) 894-0081

Attorneys for Defendant
CHARLES C. LYNCH



RECEIVED
BUT NOT FILED

JUN - 9 2008

FILED
CLERK, U.S. DISTRICT COURT

JUN - 9 2008

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION
BY ____ 4:02 P.M DEPUTY

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 07-689-GW |
| Plaintiff, | NOTICE OF MOTION; MOTION FOR DISCOVERY AND/OR DISMISSAL OF INDICTMENT ON THE BASIS THAT THE CONTROLLED SUBSTANCES ACT IS UNCONSTITUTIONAL AND VIOLATIVE OF THE ANTI-COMMANDEERING PRINCIPLE AS APPLIED TO THIS CASE; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS |
| v. | |
| CHARLES C. LYNCH, | |
| Defendant. | |

NTC OF LODGING EXHIBIT A - DISK

Hearing Date: 7/7/08
Time: 8:00 a.m.

TO:   UNITED STATES ATTORNEY THOMAS P. O'BRIEN, AND ASSISTANT UNITED STATES ATTORNEY DAVID P. KOWAL:

PLEASE TAKE NOTICE that on July 7, 2008, at 8:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable George Wu, United States District Judge, defendant Charles C. Lynch, will move as follows:

///

1

1                                        <u>MOTION</u>

2

3          Defendant, Charles C. Lynch, by and through his attorney of record, Deputy

4    Federal Public Defender Reuven L. Cohen, hereby moves this Honorable Court for

5    an order dismissing the indictment in this case on the ground that the federal

6    government, by and through the Drug Enforcement Administration, has adopted a

7    policy that, as applied in this case, violates the anti-commandeering principles that

8    inhere in the United States Constitution.  In the alternative, Mr. Lynch moves the

9    Court for an order compelling the government to provide him with certain

10   documentary evidence so that Mr. Lynch may adduce further justification for the

11   ultimate sanction of dismissal sought herein.

12          The requested evidence includes the following:

13          1.     All documentation in the federal government's possession, custody, or

14   control concerning whether the Drug Enforcement Administration has abandoned

15   major organized crime investigations.

16          2.     Any all communications of any kind in the government's possession,

17   custody, or control, concerning coordination and cooperation between and among the

18   federal government and local law enforcement in the investigation, arrest, and

19   prosecution of Charles Lynch.

20          This motion is premised upon the Federal Rules of Criminal Procedure, United

21   States Constitution, *Printz v. United States*, 521 U.S. 898, 117 S. Ct. 2365, 138 L.

22   Ed.2d 914 (1997) and *New York v. United States*, 505 U.S. 144, 112 S. Ct. 2408, 120

23   L.Ed. 2d 120 (1992), the attached Memorandum of Points and Authorities and

24   ///

25   ///

26   ///

27   ///

28

1 exhibit, all files and records in this case, and any further evidence as may be adduced
2 at the hearing on this motion.

3                                                      Respectfully submitted,

4                                                      SEAN K. KENNEDY

5                                                      Federal Public Defender

6 DATED:  June 9, 2008                 By

7                                                      REUVEN L. COHEN
                                                       Deputy Federal Public Defender
8

9 DATED:  June 9, 2008                 By

10                                                    JOHN LITTRELL
                                                       Deputy Federal Public Defender
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### FACTS

"We have federal laws that we have to adhere to in California; that is why we are here."

"It is against the law federally; that is why we are here."

"We have federal laws that we have to enforce as well."

These are not the words of an agent of the Drug Enforcement Administration; rather, these are the perspicacious words of a state law enforcement officer. Specifically, these are the words of Deputy Harvey of the San Luis Obispo Sheriff's Department. *See* Government's Exhibit N-9, attached hereto as Exhibit A.

Deputy Harvey broke this news to several employees of the Central Coast Compassionate Caregivers (hereinafter, the "medical marijuana dispensary" or "CCC"), during a raid on the medical marijuana dispensary in April of 2007. Deputy Harvey informed the CCC employees that federal law obtained even though the employees believed that "they were operating under Prop 215."[1]

Deputy Harvey explained his obligations under federal law to each of these employees during the execution of a federal search warrant. *See id.* Deputy Harvey, like his hard-working colleagues in the San Luis Obispo Sheriff's Department, offered empathetic words to the fellow Californians whom he had detained as he patiently explained that he had no choice in the matter.

Deputy Harvey and his colleagues in the Sheriff's Department had been

---

[1]     Prop 215 is the vernacular for Proposition 215.  California voters passed Proposition 215 in 1996, which is codified as the Compassionate Use Act of 1996 (hereinafter, the "Compassionate Use Act" or, the "Act").  *See* Cal. Health and Safety Code § 11362.5.  The California State Legislature promulgated the Act to permit Californians to use marijuana for certain medical purposes.  The Compassionate Use Act also exempted certain persons, including patients, primary caregivers, and physicians from liability under the State's drug laws.  The Act strives "[t]o encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana."  *Id.* § 11362.5(b)(1)(C).

1  monitoring and investigating Mr. Lynch and his efforts to provide legal and safe

2  medical marijuana dispensary for more than one year. *See* DEA Report of

3  Investigation, Bates 271-276, attached hereto as Ex. B. The federal investigation of

4  Mr. Lynch relied greatly upon the work of the Sheriff's Department. *See* Ex. B.

5      It is unclear (at this stage of the litigation) how word of the persistent efforts of

6  local law enforcement made its way down to the Ventura Field Office of the DEA.

7  The extent and duration of the cooperation between the Sheriff's Department and the

8  DEA, and the command and control hierarchy between the two, is also unclear.

9  **II.**

10  **ARGUMENT**

11      As Chief Judge Kozinski has noted, "[f]ollowing the passage of California's

12  medical marijuana initiative [in 1996], federal officials expressed concern that the

13  measure would seriously affect the federal government's drug enforcement effort."

14  *Conant v. Walters*, 309 F.3d 629, 645 n. 10 (9th Cir. 2002). Judge Kozinski also

15  noted how then-DEA Administrator Thomas A. Constantine explained to the Senate

16  Judiciary Committee how "federal drug policies rely heavily on the states'

17  enforcement of their own drug laws to achieve federal objectives." *Id.* Indeed,

18  Administrator Constantine presciently told the Judiciary how "the federalization of

19  crime is very difficult to carry out" and that smaller-scale drug operations (like, for

20  instance, Charles Lynch's operation) "would be beyond our capacity to conduct . . .

21  without abandoning the major organized crime investigations." *Prescription for*

22  *Addiction? The Arizona and California Medical Drug Use Initiatives: Hearing*

23  *Before the S. Comm. on the Judiciary*, 104th Cong. 42-43, 45 (1996) (statement of

24  Thomas A. Constantine); *see also* Tim Golden, Doctors Are Focus of Plan To Fight

25  New Drug Laws: Officials Deal with Narcotics' Medical Use, N.Y. Times, Dec. 23,

26  1996 at A10 ("In most districts, officials said, United States Attorneys bring Federal

27  charges only if a marijuana case involves the cultivation of at least 500 plants grown

28  indoors, 1,000 plants grown outdoors, or the possession of more than 1,000

1   pounds.").

2       The United States Supreme Court has made it plain that "[t]he Federal

3   Government may neither issue directives requiring the States to address particular

4   problems, nor command the States' officers, or those of their political subdivisions,

5   to administer or enforce a federal regulatory program." *Printz v. United States*, 521

6   U.S. 898, 117 S. Ct. 2365, 138 L.Ed.2d 914  (1997).  Under the anti-commandeering

7   principle set forth in *Printz* and in *New York v. United States*, 505 U.S. 144, 112 S.

8   Ct. 2408, 120 L.Ed.2d 120 (1992), it is also plain that "much as the federal

9   government may prefer that California keep medical marijuana illegal, it cannot force

10  the state to do so." *Conant v. Walters*, 309 F.3d 629, 645 (9th Cir. 2002).

11      Proposition 215 regulates the behavior of California citizens.  By conscripting

12  local law enforcement agents like Deputy Harvey to enforce federal laws, the federal

13  government has run afoul of the commandeering principle embedded in the United

14  States Constitution. *See Reno v. Condon*, 528 U.S. 141, 150 (2000); *but see Raich v.*

15  *Gonzales*, 500 F.3d 850, 867 n.17 (9th Cir. 2007) (noting in *dicta* that the appellant

16  had conceded the commandeering issue).

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

### III.

2

### CONCLUSION

3   For the above reasons, Mr. Lynch asks that the Court dismiss the indictment

4   or, in the alternative, permit further discovery in order to allow the defense to

5   develop and present further evidence on the matter.

6

7                                                  Respectfully submitted,

8                                                  SEAN K. KENNEDY
                                                   Federal Public Defender
9

10  DATED:  June 9, 2008              By

11                                                  REUVEN L. COHEN
                                                   Deputy Federal Public Defender
12

13  DATED:  June 9, 2008              By

14                                                  JOHN LITTRELL
                                                   Deputy Federal Public Defender

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT B**

U.S. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 6

| rogram Code | 2. Cross File | Related Files | 3. File No. ▓▓▓ | 4. G-DEP Identifier |
|---|---|---|---|---|
| 5. By: SA Rachel Burkdoll | ☐ | | 6. File Title | |

5. By: SA Rachel Burkdoll

At: Ventura Resident Office
Los Angeles Field Division

7. ☐ Closed ☐ Requested Action Completed
☐ Action Requested By

6. File Title
Central Coast Compassionate Caregivers

8. Date Prepared
01/19/07

9. Other Officers: Det. Nick Fontecchio

10. Report Re: Case Initiation on 01/19/2006

## BASIS OF INVESTIGATION

1. On January 8, 2007, RAC Mike Quinn informed SAs William Torrence and Rachel Burkdoll that San Luis Obispo (SLO) Sheriff's Department had requested assistance from the Ventura Resident Office to investigate a medical marijuana dispensary located in Morro Bay, CA.

2. On January 19, 2007, SA Burkdoll met with Det. Nick Fontecchio at the San Luis Obispo Sheriff's Department. Below is the information provided by Det. Fontecchio during this meeting.

3. In April of 2006, the SLO Sheriff's Department began an investigation into the activities of the CENTRAL COAST COMPASSIONATE CAREGIVERS (CCCC) marijuana dispensary at 780 Monterey Avenue, Morro Bay, CA. The owner of the dispensary is listed as Charles LYNCH of 589 Rosemary Lane in Arroyo Grande, CA. By June 2006, LYNCH had filed a revised use permit through the City of Morro Bay to grow marijuana for medicinal use as well as the CCCC.

4. LYNCH had previously opened a marijuana dispensary at 7425 El Camino Real in Atascadero, California in January of 2006. Several local businesses located nearby 7425 El Camino Real complained about people outside of the business selling marijuana to other people on the street, as well as customers of the dispensary smoking marijuana inside their vehicles in the parking lot. This dispensary was

| 11 Distribution: Division District Other SARI, EPIC | 12. Signature (Agent) Special Agent Rachel Burkdoll | 13. Date |
|---|---|---|
| | 14. Approved (Name and Title) Mike Quinn Resident Agent in Charge | 16. Date |

Form - 6
(Jul. 1996)
RE - Case Initiation

**DEA SENSITIVE**
Drug Enforcement Administration
This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| *(Continuation)* | 3. File Title | |
| 4. | Central Coast Compassionate | |
| Page 2 of 6 | Caregivers | |
| 5. Program Code | 6. Date Prepared | |
| | 01/19/07 | |

subsequently closed down by the City of Atascadero due to zoning violations.

5. From June to December 2006, the SLO Sheriff's Department utilized two confidential sources (CS-1 and CS-2) and one detective acting in an undercover capacity to purchase marijuana from the CCCC dispensary.

6. On June 1, 2006, CS-1 was instructed by a female employee at the dispensary to contact a doctor to obtain a recommendation or a medical marijuana physician's statement, and she provided CS-1 with a list of doctors. Shortly thereafter, CS-1 contacted Doctor Armond Tennyson TOLLETTE, Jr. TOLLETTE was using a cellular phone (310-505-0002) and instructed CS-1 to meet him at TOLLETTE's apartment in order to supply CS-1 with the recommendation. CS-1 asked if he/she needed to bring any medical records, and TOLLETTE stated that it would not be necessary.

7. CS-1 met with TOLLETTE on June 6, 2006 and stated that no physical examination had occurred. CS-1 informed TOLLETTE that he/she had Graves disease. TOLLETTE told CS-1 that he/she also suffered from anorexia, sleeplessness, and anxiety. CS-1 did not complain about any of these conditions to TOLLETTE. TOLLETTE also demonstrated to CS-1 how to properly smoke marijuana before providing CS-1 with the recommendation. CS-1 paid TOLLETTE $200 (funds provided by SLO Sheriff's Department) for the recommendation. On another occasion, CS-1 stated that TOLLETTE gave him/her marijuana as a referral fee for recommending CS-2 to schedule an appointment with TOLLETTE. As payment for the referral, TOLLETTE gave CS-1 $100.00 worth of marijuana. CS-1 also stated that TOLLETTE had a Home Depot five-gallon bucket which was full of marijuana.

8. TOLLETTE scheduled appointments with the second CS (CS-2) and the undercover (UC) detective from SLO Sheriff's Department. During CS-2's appointment with TOLLETTE, TOLLETTE told CS-2 what his/her blood pressure and heart rate were without any physical examination. TOLLETTE also showed CS-2 how to inhale marijuana during the visit. The UC did not receive an examination during the appointment, and

Form - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| *(Continuation)* | 3. File Title | |
| 4. Page 3 of 6 | Central Coast Compassionate Caregivers | |
| 5. Program Code | 6. Date Prepared 01/19/07 | |

both CS-2 and the UC were charged $150 for the recommendations by TOLLETTE.

9. CS-1, CS-2, and the UC were able to purchase marijuana from the CCCC dispensary once they had obtained their recommendations from TOLLETTE. During these buys, neither the UC nor the CSs were asked about their symptoms, current health, treated them in any way or if asked if they needed shelter or housing.

10.    During the course of the investigation, the SLO detectives were able to identify several employees and vendors of CCCC.

11.    Three individuals were identified as security guards for the dispensary, John CANDELARIA, Abraham BAXTER, and Ryan Patrick DOHERTY. On May 11, 2006, CANDELARIA was observed transferring a brown paper package to an unknown male in a 2005 white Toyota with California license plate 5NSM209 (registered owner is Jonathan Halas of 292 Olive Street, Morro Bay, California.) The package was consistent with the size of approximately a half pound of marijuana. Later that evening, CANDELARIA was seen leaving the CCCC carrying a package consistent with the size of two pounds of marijuana. CANDELARIA drove the package in a 1981 yellow Mercedes Benz with California license plate 5CPY775 (registered owner is Toni Thompson of 14257 Torrey Pines, Auburn, California) to 292 Olive Street where he took the package inside of the residence.

12.    On July 12, 2006, CS-1 introduced another SLO detective working in an undercover capacity (UC-2) to BAXTER who met with CS-1 and UC-2 in the parking lot of Big 5 Sporting Goods Store on Madonna Road in San Luis Obispo where BAXTER sold UC-2 eight ounces of marijuana for $2,100, and CS-1 four ounces for $1,100. UC-2 specifically requested that BAXTER sell them a strain of marijuana that CS-1 had previously bought from CCCC called "Diesel." Both bags were labeled as such during the buy.

13.    DOHERTY was observed on December 5, 2006 leaving the dispensary with a paper bag containing three marijuana plants. DOHERTY was stopped for a traffic violation and informed the officer that he had

Form - 6a (Jul. 1996)
**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

0273

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION *(Continuation)* | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| | 3. File Title Central Coast Compassionate Caregivers | |
| 4. Page  4  of  6 | | |
| 5. Program Code | 6. Date Prepared 01/19/07 | |

marijuana plants in the vehicle but that he did not have a recommendation.  DOHERTY stated that he was delivering the plants to a vendor of the CCCC who was unable to drive.  Surveillance units followed DOHERTY to 1769 Frederick Street in San Luis Obispo, CA, and detectives observed DOHERTY enter the residence with the paper bag containing the marijuana plants.

14.    A female working as a receptionist at the CCCC was identified as Gina LNU.

15.    Another vendor was also identified on December 21, 2006 as Gregory Randolph MCDOWELL of 1551 Kenneth Drive, Cambria, CA. MCDOWELL was observed by detectives meeting with BAXTER at the back of MCDOWELL's Ford SUV (California license plate 4AAG180) looking inside.  The SUV was parked in the lot for the CCCC.  Detectives believed that MCDOWELL was showing BAXTER marijuana that he wanted to sell to the dispensary.


TARGET(S)

This investigation will seek to investigate further the business conducted at CCCC dispensary and Charles LYNCH's involvement in these activities. Agents also will also focus on the distribution efforts of the vendors detailed in this report as well as investigate the legitimacy of Doctor Armond TOLLETTE's practice.


INDEXING

1. CENTRAL COAST COMPASSIONATE CAREGIVERS - NADDIS Negative
Address:  780 Monterey Avenue, Morro Bay, California, 93442. Telephone: (805) 772-4879  Owner:  Charles LYNCH (NADDIS Negative.)

2. LYNCH, Charles - NADDIS
W/M, 5'10" tall, 145 lbs., brown hair, hazel eyes, DOB:  05/15/1962, CDL# A4448929, FBI#          , CII#          SSN:  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, Alternate SSN:  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.

DEA SENSITIVE
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION *(Continuation)* | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| | 3. File Title Central Coast Compassionate Caregivers | |

4.
Page  5  of  6

5. Program Code

6. Date Prepared
01/19/07

Address:  589 Rosemary Lane, Arroyo Grande, California 93420. Vehicle:
2005 Silver Nissan Murano  License plate # 5NWS347.
REMARKS:  Owner of Central Coast Compassionate Caregivers (NADDIS
Negative.)

3. TOLLETTE Jr, Armond Tennyson - NADDIS ▮▮▮▮
B/M, 6'3" tall, 225 lbs., black hair, brown eyes, DOB: 08/12/1951, CDL#
S0590409, FBI# ▮▮▮▮▮▮ Cellular phone (310) 505-0002. SSN: 568-84-
5647  DEA Registration # ▮▮▮▮
Address:  8419 Hannum Avenue, Culver City, California, 90305.
REMARKS:  Sells medical marijuana recommendations without examinations
for $150-$200.

4. DOHERTY, Ryan Patrick - NADDIS ▮▮▮▮
W/M, 5'10" tall, 195 lbs., brown hair, brown eyes, DOB: 09/16/1975,
CDL# B7704365, California license plate 4YUH535.  SSN: ▮▮▮▮
Address:  27 Bower Lane, Ladera Ranch, California, 92694
REMARKS:  Employed as a security guard for Central Coast Compassionate
Caregivers (NADDIS Negative.)

5. BAXTER, Abraham - NADDIS ▮▮▮▮
W/M, 6'3" tall, 230 lbs., black hair, brown eyes, DOB: 11/24/1980, CDL#
B7999507, FBI# ▮▮▮▮, CII # ▮▮▮▮, SSN: ▮▮▮▮
Last Known Address:  1251 Los Olivos Avenue, Apt. 3, Los Osos,
California 93402
REMARKS:  Employed as a security guard for Central Coast Compassionate
Caregivers (NADDIS Negative) and sold UC eight ounces of marijuana for
$2,100.

6. MCDOWELL, Gregory Randolph - NADDIS ▮▮▮▮
W/M, 5'04" tall, 120 lbs., brown hair, brown eyes, DOB: 11/11/1977 CDL#
B5016313 California license plate 4AAG180.  Vehicle:  1997 Ford SUV.
FBI# 209857WB3 CII# ▮▮▮▮ SSN: ▮▮▮▮ Alternate SSNs: ▮▮▮▮
Addresses:  1551 Kenneth Drive, Cambria, CA 93428
REMARKS:  Vendor for Central Coast Compassionate Caregivers (NADDIS
Negative.)

---

A Form  - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION *(Continuation)* | 1. File No | 2. G-DEP Identifier |
|---|---|---|
| | 3. File Title Central Coast Compassionate Caregivers | |
| 4. Page 6 of 6 | | |
| 5. Program Code | 6. Date Prepared 01/19/07 | |

7. CANDELARIA II, John Victor - NADDIS ▮▮▮▮▮
W/M, 6'0" tall, 280 lbs., black hair, hazel eyes, DOB: 05/11/1979 CDL#
B6133421, California license plate 5NSM209 Vehicle: 1981 yellow
Mercedes Benz (R/O Toni Thompson of 14257 Torrey Pines Drive, Auburn,
CA)  FBI# ▮▮▮▮▮, CII# ▮▮▮▮▮, SSN: ▮▮▮▮▮
Address:  14257 Torrey Pines Drive, Auburn, California 95602
REMARKS:  Observed during surveillance delivering ½ pound and 2-pound
packages of marijuana to people outside of the Central Coast
Compassionate Caregivers (NADDIS ▮▮▮▮▮   Works as a security guard
for the CCCC.

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

PROOF OF SERVICE

I, the undersigned, declare that I am a resident or employed in Los Angeles County, California; that my business address is the Office of the Federal Public Defender, 321 East 2nd Street, Los Angeles, California 90012-4202; that I am over the age of eighteen years; that I am not a party to the above-entitled action; that I am employed by the Federal Public Defender for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, and at whose direction I served the:

**NOTICE OF MOTION; MOTION FOR DISCOVERY AND/OR DISMISSAL OF INDICTMENT ON THE BASIS THAT THE CONTROLLED SUBSTANCES ACT IS UNCONSTITUTIONAL AND VIOLATIVE OF THE COMMANDEERING PRINCIPLE AS APPLIED TO THIS CASE; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS.**

On June 9, 2008, following ordinary business practice, service was:

[X] Placed in a closed envelope, for collection and hand-delivery by our internal staff, addressed as follows:

[ ] By hand-delivery addressed as follows:

[ ] Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows:

[ ] By facsimile as follows:

[ ] By e-mail as follows:

David P. Kowal
United States Pretrial Officer
United States Court House
312 North Spring Street, 14th Fl
Los Angeles, California 90012

William S Kroger, Jr
William S Kroger Jr Law Offices
8888 Olympic Blvd, 1st Fl
Beverly Hills, CA 90211
Attorney for Armond Tennyson Tollette, Jr.

This proof of service is executed at Los Angeles, California, on June 9th, 2007.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Tatiana A. Craven