SEAN K. KENNEDY (No. 145632)
Federal Public Defender
(E-mail: Sean_Kennedy@fd.org)
REUVEN L. COHEN (No. 231915)
Deputy Federal Public Defender
(E-mail: Reuven_Cohen@fd.org)
JOHN LITTRELL (No. 221601)
(E-mail: John_Littrell@fd.org)
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone (213) 894-4454
Facsimile (213) 894-0081

Attorneys for Defendant
CHARLES C. LYNCH

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>CHARLES C. LYNCH, et. al.,<br>Defendants. | NO. CR 07-689-GW<br><br>DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT FOR DESTRUCTION OF EVIDENCE |

Defendant Charles C. Lynch, by and through his counsel of record, Deputy Federal Public Defenders Reuven L. Cohen and John Littrell, hereby submits his

//

//

//

//

//

//

reply to the Government's Opposition to his Motion to Dismiss Indictment for Destruction of Evidence.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: June 30, 2008

By /s/
REUVEN L. COHEN
Deputy Federal Public Defender

DATED: June 30, 2008

By /s/
JOHN LITTRELL
Deputy Federal Public Defender

## II.

## ARGUMENT

In its opposition to Mr. Lynch's motion to dismiss the indictment for destruction of evidence, the government admits that it has destroyed nearly all of the bulk marijuana (20 kilos) and all of the marijuana plants (approximately 104) upon which it has based its case against Mr. Lynch. The government authorized the destruction of the marijuana plants without ever consulting defense counsel. It authorized the destruction of the bulk marijuana over the specific objections of defense counsel.

The reasons that the government offers for destroying all of the evidence – the alleged presence of mold and insects on the plants and the need for storage space at the DEA – seem particularly unpersuasive in this case. Indeed, the government's view of Mr. Lynch's constitutional rights is particularly troubling given that the precise quantity of marijuana Mr. Lynch allegedly possessed – a quantity that Mr. Lynch now has no meaningful opportunity to challenge – is the sole fact that will determine whether he will be subject to a mandatory minimum sentence if he is convicted at trial.

The gravamen of Mr. Lynch's challenge in his motion was, of course, the government's destruction of the marijuana plants. It goes without saying that because representative samples of the bulk marijuana were, in fact, preserved and made available for testing, and because 20 kilos of marijuana does not trigger a mandatory minimum sentence, the destruction of that evidence does not have nearly the drastic impact on Mr. Lynch's criminal exposure as does the destruction of the marijuana plants.

The story of the marijuana plants allegedly found at Mr. Lynch's medical marijuana dispensary would be a comical one -- were a mandatory minimum sentence not on the line. Here, the government's initial representation that the marijuana plants had been destroyed, and its sudden discovery, nearly a year later, that the plants were not destroyed after all, but that they will not be made available for testing

now, makes it virtually impossible for Mr. Lynch to defend Counts One and Four of the indictment. As set forth below, the Court, at a minimum, should dismiss those counts.

**A. The Destruction And Resurrection of the Marijuana Plants**

The government concedes that Special Agent Burkdoll authorized the destruction of all of the marijuana plants that form the basis for a mandatory minimum sentence in Counts One and Four, only one month after they were seized. See Govt. Opp. at 4. According to discovery produced by the government, a DEA chemist requested permission to destroy the marijuana plants for "health and safety reasons." See Motion to Dismiss Indictment, Exhibit A (8/3/07 Report of Investigation prepared by Special Agent Rachel Burkdoll). Special Agent Burkdoll agreed to the destruction of the plants. Id.[1]

The government produced Agent Burkdoll's report to defense counsel on August 8, 2007. Because the report indicates that a DEA chemist requested permission to destroy the evidence, and because the report indicates that Special Agent Burkdoll agreed to the request, defense counsel assumed that the evidence had, in fact, been destroyed. So apparently did Special Agent Burkdoll. See Declaration of SA Burkdoll at ¶ 9. Reasonably believing that the plants were destroyed, defense counsel did not seek to inspect them or hire an expert to conduct an independent count of the root balls.

As it turns out, and as the government disclosed for the first time in its opposition to Mr. Lynch's motion to dismiss, the plants have allegedly not been destroyed. Id. at ¶ 10. But now, in part because of the passage of nearly one year, the DEA chemist will not permit any testing on the plants, because he considers the marijuana plants to be a "bio-hazard." Id. Mr. Lynch respectfully requests that he be

[1] The government argues that Special Agent Burkdoll consented to the destruction of plants on April 30, 2008. See Govt. Opp. at 4. Mr. Lynch had been under the assumption that Agent Burkdoll consented to the plants' destruction one year previously, as noted in her reports and in her declaration.

permitted to have an expert count the root balls on the plants, just as Special Agent Burkdoll allegedly did. If the government refuses to make the plants available for counting, then they are of no more use than they would be had they actually been destroyed by the DEA chemist, as Special Agent Burkdoll suggested that they were in her Report of Investigation.

**B. The Government Destroyed the Marijuana Plants and Failed to Preserve Any Depiction of the Root Balls, Knowing That An Accurate Inspection and Count of the Root Balls Was Essential To Defending Counts One And Four**

The government cites to a footnote in United States v. Belden, 957 F.2d 671, 674 n.1 (9th Cir. 1992) for the proposition that there is no exculpatory value to bulk quantities of marijuana plants. The government reads the footnote far too broadly. Belden, upon closer scrutiny, cannot bear the interpretive weight that the government places upon it.

In Belden, the government cut down and ultimately destroyed a crop of well over 1,000 marijuana plants -- enough to support a mandatory minimum sentence in that case -- prior to trial. Mr. Belden moved for dismissal under Arizona v. Youngblood, 488 U.S. 51 (1988) and California v. Trombetta, 467 U.S. 479 (1984), arguing (as Mr. Lynch does here) that the destruction of the marijuana plants made it impossible for him to meaningfully challenge the government's claim as to how many plants there were. The court held that Mr. Belden failed to establish that the marijuana was destroyed in bad faith. The Belden case is factually distinguishable from this one, as set forth below. And the analysis of the case strongly favors dismissal.

First, in Belden, the government did not completely destroy the plants. Law enforcement officers merely cut off the plants at the base of the stalk and discarded the root system. As they stored the plants, law enforcement agents in some cases cut off the tops of the plants in order to fit them into the space in which they were stored. *Id*. at 675. By contrast, in this case, Special Agent Burkdoll agreed to the destruction

of the plants in their entirety -- root balls, stalks, and all. Because the plants cannot be inspected or tested now, it is as if they had been destroyed anyway.

Second, in Belden, the Ninth Circuit found that there was "no evidence that the officials making the counts were aware that they were destroying evidence by saving plants but breaking off the tops and not preserving roots." In this case, Special Agent Burkdoll knew, at the time she authorized the destruction of the plants, that an accurate count of the root balls of the plants was necessary to determine the number of plants. See Government Opposition to Motion to Dismiss at 3 ("[Special Agent Burkdoll's] count of the plants was based on looking at their root balls, for looking merely at the number of containers or number of stems would not give the specific number of plants."). Special Agent Burkdoll also knew that it was necessary to remove the plants from their containers and view the root balls directly in order to get an accurate count of the marijuana plants for the purposes of counting them under federal law. She describes her thought process as follows:

> During the execution of the warrant, after the photographs and video documentation were complete, I removed all of the marijuana plants that were growing in the area, counted them based on the root ball, and placed them in a large evidence bag so that they could be transported back to the Ventura Resident Office later that day for processing. Based on each root ball, I counted that there were 104 marijuana plants total. Sometimes there was more than one root ball in a container, and sometimes there were multiple stems leading to only one root ball.

Declaration of Special Agent Rachel Burkdoll at ¶ 5.[2] Special Agent Burkdoll's declaration thus raises this question: How should this Court interpret the government's argument that "photographs and video" of the plants (which show them only in their containers) would "confirm their appearance and quantity[?]" Gov.

---

[2] Mr. Lynch respectfully requests that, prior to the hearing on his motion, the government produce any memoranda, rough notes, or other writings generated by Special Agent Burkdoll related to her calculation of the number of marijuana plants.

Opp. at p. 14. The root balls are, after all, all that matters for the purpose of counting the marijuana plants. And, by the government's own admission, "[t]he exact details of SA Burkdoll's root ball count has not been preserved by photographs or video." Id.

Third, the Belden court reasoned that Mr. Belden was not deprived of an accurate count of the marijuana plants because "law enforcement officials counted the plants in the grow operation twice." Id. at 675. In this case, by contrast, the plants were counted only once, during the course of a raid, by a relatively inexperienced Special Agent. See Declaration of SA Burkdoll at ¶ 5.

Fourth, the Belden court suggested that the multiple counts of the plants were less biased because they were conducted for two purposes other than prosecution: to secure a search warrant and to provide statistical data on the cultivation of marijuana. Id. at 675. In this case, the plants were counted during the execution of a search warrant, and only for the purpose of prosecuting Mr. Lynch.

Fifth, the Belden court noted that the number of plants that the two counts yielded clearly exceeded the necessary number (1,000 plants) necessary to trigger a mandatory ten year sentence. Id. "One count was 1100 to 1200 plants, and the other count was 1165 plants." Id. In this case, the number of plants (104) determined by Agent Burkdoll during her mid-raid count barely exceeded the threshold to trigger a mandatory minimum sentence. See Declaration of SA Burkdoll at ¶ 5.

Sixth, the court in Belden noted that the destruction of the marijuana plants was effectuated primarily by state actors, who acted independently of the federal government and consistently with their established protocols for the destruction of contraband. Belden, 957 F.2d at 675. The opposite is true in this case. The plants were destroyed by a DEA chemist, acting on the authority of DEA Special Agent Rachel Burkdoll. And unlike the local law enforcement officers in Belden, who were acting according to their standard operating procedures, Agent Burkdoll violated nearly every applicable Department of Justice protocol when she unilaterally

authorized the destruction of the marijuana plants without first consulting with the United States Attorney's Office, and without retaining a representative sample. See 28 C.F.R. 50.21(e)(1) (requiring DEA to "immediately notify . . . Assistant United States Attorney" prior to destroying evidence); id. (requiring that Assistant United States Attorney be given 60 days to request preservation of evidence); 28 C.F.R. 50.21(e)(2) (requiring DEA to ensure that appropriate testing is performed prior to destruction of evidence); 28 C.F.R. 50.21(e)(3) (requiring DEA to "photographically depict" evidence "so as to create evidentiary exhibits for use at trial); 28 C.F.R. 50.21(e)(4) (requiring DEA to keep a representative sample of contraband).

The government euphemistically asserts that "[a]t most, the government could be found to have been negligent in not transferring [the plants] to the laboratory more quickly before the marijuana plants decomposed." Govt. Opp. at 19. Nowhere in the twenty pages that the government devotes to opposing Mr. Lynch's "baseless" motion does the government's position seem less credible. Indeed, the government acknowledges, on the one hand, that "fault can be found for not taking photographs of the root balls." Id. at 11. The government argues, on the other hand, that it did not need to take photographs because "there was never any intent or reasonable expectation that such a count would not be done a second time." Id.

Mr. Lynch respectfully submits that perishable plants are called perishable because sometimes they perish. The government's circular reasoning cannot conceal the fact that something in this case stinks -- and it is not the marijuana plants that may or may not have been seized in Mr. Lynch's medical marijuana dispensary and may or may not have been destroyed by the DEA. The government, by its own acts and omissions, has made Mr. Lynch's requisite bad faith showing for him.

//

//

//

## II.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Counts One and Four of the indictment.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: June 30, 2008

By /s/
REUVEN L. COHEN
Deputy Federal Public Defender

DATED: June 30, 2008

By /s/
JOHN LITTRELL
Deputy Federal Public Defender