THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
DAVID P. KOWAL (Cal. Bar No. 188651)
RASHA GERGES (Cal. Bar No. 218248)
Assistant United States Attorneys
OCEDTF Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California  90012
    Telephone:  (213) 894-5136/6530
    Facsimile:  (213) 894-0142
    E-mail:   david.kowal@usdoj.gov
    E-mail:   rasha.gerges@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 07-689-GW |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S TRIAL MEMORANDUM |
| | ) | |
| v. | ) | |
| | ) | Trial Date: July 22, 2008 |
| CHARLES LYNCH, | ) | Trial Time: 8:30 a.m. |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Plaintiff United States of America, through its attorney of record, the United States Attorney's Office for the Central District of California, hereby respectfully submits its trial memorandum for the trial of Charles Lynch ("defendant").

# TABLE OF CONTENTS

PAGE

I.   CASE SCHEDULING MATTERS . . . . . . . . . . . . . . . 1

II.  THE INDICTMENT . . . . . . . . . . . . . . . . . . . 1

III. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . 2

IV.  ELEMENTS OF THE CHARGED OFFENSES AND DEFINITIONS . . . . . 5

     A.   Count One - Narcotics Conspiracy [21 U.S.C. § 846] . 5

     B.   Counts Two and Three - Aiding and Abetting In the
          Distribution of Marijuana to Person Under 21 Years
          of Age [21 U.S.C. §§ 841(a)(1), 859(a),
          18 U.S.C. § 2] . . . . . . . . . . . . . . . . . . 6

     C.   Counts Four Possession with Intent to Distribute
          Marijuana [21 U.S.C. §§ 841(a)(1)] . . . . . . . . 7

     D.   Counts Five - Maintaining a Drug-Involved Premises
          [21 U.S.C. §§ 856(a)(1)] . . . . . . . . . . . . . 8

V.   PERTINENT LAW . . . . . . . . . . . . . . . . . . . . 8

     A.   LAW CONCERNING NARCOTICS CONSPIRACY COUNT . . . . . 8

          1.   Pinkerton Liability . . . . . . . . . . . . . 8

          2.   Participation in the Conspiracy . . . . . . . 9

          3.   Co-conspirator Declarations . . . . . . . . . 11

          4.   Status of Charges Against Co-Conspirators . . 14

     B.   LAW RELATING TO DISTRIBUTION TO MINORS COUNTS . . . 15

     C.   LAW RELATING TO POSSESSION WITH INTENT TO
          DISTRIBUTE . . . . . . . . . . . . . . . . . . . . 15

     D.   LAW RELATING TO MAINTENANCE OF NARCOTICS PLACE
          COUNT . . . . . . . . . . . . . . . . . . . . . . 16

     E.   DRUG QUANTITIES . . . . . . . . . . . . . . . . . . 17

     F.   DEFENSES . . . . . . . . . . . . . . . . . . . . . 18

VI.  EVIDENTIARY ISSUES . . . . . . . . . . . . . . . . . . 19

     A.   CROSS-EXAMINATION . . . . . . . . . . . . . . . . . 19

          1.   Generally . . . . . . . . . . . . . . . . . . 19

i

**TABLE OF CONTENTS (cont'd)**

PAGE

2. Cross-Examination of Defendant . . . . . . . .   19

3. Cross-Examination of Defendant's Character
Witnesses  . . . . . . . . . . . . . . . . . .   20

B. EXPERT TESTIMONY  . . . . . . . . . . . . . . .   20

C. OPINION TESTIMONY OF GOVERNMENT AGENTS  . . . . .   21

D. ADMISSION OF BUSINESS RECORDS RECOVERED FROM
MARIJUANA STORE . . . . . . . . . . . . . . . .   22

1. Party Admissions . . . . . . . . . . . . . .   23

2. Co-Conspirator Statements  . . . . . . . . .   24

3. Residual Hearsay Exception . . . . . . . . .   25

4. Authentication . . . . . . . . . . . . . . .   26

E. STATEMENTS BY DEFENDANT, HIS EMPLOYEES, AND CO-
CONSPIRATORS  . . . . . . . . . . . . . . . . .   27

F. CHARTS AND SUMMARIES  . . . . . . . . . . . . .   28

G. SURVEILLANCE OBSERVATIONS . . . . . . . . . . .   30

H. RECORDED CONVERSATIONS  . . . . . . . . . . . .   30

1. Foundation . . . . . . . . . . . . . . . . .   30

2. Transcripts for Jury . . . . . . . . . . . .   32

I. PHOTOGRAPHS . . . . . . . . . . . . . . . . . .   33

J. IDENTIFICATION OF DEFENDANT . . . . . . . . . .   33

K. DUPLICATES  . . . . . . . . . . . . . . . . . .   34

L. CHAIN OF CUSTODY  . . . . . . . . . . . . . . .   34

M. REDACTION OF EXHIBITS FROM DEFENDANT'S BUSINESS . .   35

N. PUBLIC RECORDS  . . . . . . . . . . . . . . . .   36

O. TESTIMONY OF WHAT LISTENER UNDERSTOOD DECLARANT
TO MEAN . . . . . . . . . . . . . . . . . . . .   36

P. EFFECT ON THE LISTENER - NON-HEARSAY USE OF
OUT-OF-COURT STATEMENTS . . . . . . . . . . . .   36

ii

TABLE OF CONTENTS (cont'd)

PAGE

VII.  CONCLUSION . . . . . . . . . . . . . . . . . . . .   36

iii

# I.

## CASE SCHEDULING MATTERS

A.   Trial is set for July 22, 2008, at 8:30 a.m. before the Honorable George Wu, United States District Judge.

B.   The estimated time for the government's case-in-chief is three to four days.

C.   The defendant is on bond.

D.   Trial by jury has not been waived.

E.   Co-defendant Tollette has pled guilty and is awaiting sentencing.

E.   The government anticipates calling 12-14 witnesses in its case-in-chief.   Forensic chemists will be offered as experts.

F.   An interpreter is not required for defendant.

G.   Defendant has subpoenaed approximately a dozen members of the San Luis Obispo Sheriff's Department (SLOSD) for trial. The SLOSD is hours away from the courtroom, and taking 12 members of SLOSD away from their duties at one time will cause tremendous disruption to that agency.   Defense counsel has agreed to work with the government to avoid needless disruption to the SLOSD.

# II.

## THE INDICTMENT

Defendant is charged in all counts five counts of the redacted indictment.   Count One charges a narcotics conspiracy with five objects, in violation of 21 U.S.C. §§ 846, 841(a)(1), 856, and 859.   Counts Two and Three charge aiding and abetting in the sale of marijuana to a minor under the age of twenty-one, in violation of 21 U.S.C. §§ 841(a)(1), 859(a), and 18 U.S.C. § 2. Count Four charges possession of marijuana with intent to

1

distribute, in violation of 21 U.S.C. 841(a)(1).  Count Five
charges operation and use of a drug-involved premises, in
violation of 21 U.S.C. § 856(a)(1).  Count Six charges criminal
forfeiture, in violation of 21 U.S.C. § 853.

As all forfeiture issues have been resolved in other fora
prior to trial, the government will seek to dismiss Count Six and
proceed to trial on Counts One through Five.

A copy of a redacted indictment is attached to this Trial
Memorandum.  The indictment has been redacted to remove
references to the forfeiture count, Dr. Tollette's activities,
and to eliminate other unnecessary references to allegations that
the government does not intend to prove at trial.  Such redaction
by limiting overt acts and removing charges against a co-
conspirator is permissible.  See United States v. Shibani, 513
U.S. 10, 15-16 (1994) (government need not prove any overt acts
to sustain conviction for drug conspiracy under 21 U.S.C. § 846);
see also United v. Miller, 471 U.S. 130 (1985) (permitting
variance between indictment and proof at trial so long as proof
does not broaden basis of conviction beyond what is charged);
United States v. Frank, 156 F.3d 332, 337 (2nd Cir. 1998) (no
violation of defendant's right unless proof altered an essential
element of charge).

### III.

### STATEMENT OF FACTS

The government intends to prove at trial the following
facts, among others:

Defendant entered into a lease on February 22, 2006 for
office space at 780 Monterey Avenue, Suite B, Morro Bay,

1 | California.  Starting on April 1, 2006, defendant owned and
2 | operated a marijuana store at that location called the "Central
3 | Coast Compassionate Caregivers" (the "marijuana store").  At any
4 | given time, until DEA agents and members of SLOSD executed a
5 | search warrant on March 29, 2007 at the marijuana store and at
6 | defendant's home, defendant employed approximately ten employees
7 | to help him run the marijuana store, such as security guards,
8 | people to help grow the marijuana, and to sell it to customers.
9 | In addition to hiring employees, defendant played a central role
10 | in the operation of the enterprise.  Surveillance, records
11 | recovered from the store, and video footage from the store's
12 | surveillance cameras will show that defendant worked at the store
13 | most days, supplied marijuana to the store himself, and
14 | personally assisted in sales to customers.  He also controlled
15 | the store's bank account, and personally carried a large backpack
16 | full of cash between the store and his home each day until it was
17 | seized by law enforcement.

18 | Defendant and his employees sold marijuana, live marijuana
19 | plants, and products containing tetrahydrocannabinol ("THC") to
20 | numerous customers.  They also cultivated and sold marijuana
21 | plants in a nursery area of the store, which was near the
22 | customer the sales counter.  104 live marijuana plants and more
23 | than 10 kilograms of marijuana were seized during execution of
24 | the March 29, 2008 warrants.  In addition, records from the
25 | store, as corroborated by surveillance, security footage, and
26 | undercover purchases, demonstrate that during the time period of
27 | the conspiracy, the store's operations involved more than 100
28 | kilograms of marijuana and the cultivation of more than 1,000

3

marijuana plants.  As to plants, these records include documents
assigning certain numbers of plants to specific customers,
"vendor" reports showing the store's obtaining plants from
different suppliers in specific amounts, and plant inventories.
Quantities of bulk marijuana are also reflected in the vendor
reports as well as in cash and credit receipts from sales at the
store, and sales records demonstrating over $2.0 in sales at the
store during the course of the conspiracy.

The distribution of marijuana by defendant and his employees
occurred both outside and inside the store.  Through, among other
things, the testimony of surveillance officers, photographs, and
recorded phone conversations, the government will show multiple
instances during which store employees distributed marijuana from
the store to people outside the store.  This will include a July
12, 2006 example in which a security officer working at the store
that day, and seen on many other occasions working closely with
defendant, sold approximately 300 grams of marijuana to an
undercover officer.  It will also include a December 5, 2006
incident when another security officer transported three plants
to a home where he stayed overnight after being stopped by a
police officer and informing the officer that he was doing a
favor for the owner of the marijuana store.  In these and other
instances, the distributed marijuana will be tied directly to the
store or defendant through surveillance, physical evidence, or
through the statements of these employees.

Defendant and his agents also sold marijuana to numerous
individuals under twenty-one years of age.  These transactions
will be shown through receipts from individual transactions,

4

1  surveillance video of sales, and records maintained at the store
2  such as photographs and copies of driver's licenses of individual
3  customers, as well as sign-in sheets for customers entering the
4  store.   At trial, the government will prove the distribution of
5  marijuana to approximately a dozen such underage people,
6  including to underage store employees.   Summaries of records will
7  further show that during the relevant period defendant and his
8  agents sold to over 200 people under 21.

9                                   **IV.**

10            **ELEMENTS OF THE CHARGED OFFENSES AND DEFINITIONS**

11  A.   Count One - Narcotics Conspiracy [21 U.S.C. § 846]

12        Count One charges a narcotics conspiracy beginning on a date
13  unknown and continuing to on or about March 29, 2007, in
14  violation of 21 U.S.C. § 846.[1]   The objects of the Count one
15  conspiracy are to: (1) possess with intent to distribute and to
16  distribute at least 100 kilograms of a mixture or substance
17  containing a detectable amount of marijuana, a schedule I
18  controlled substance; (2) manufacture at least 100 marijuana
19  plants, a schedule I controlled substance; (3) possess with
20  intent to distribute and distribute a mixture or substance
21  containing a detectable amount of tetrahydrocannabinol ("THC"), a
22  schedule I controlled substance; (4) maintain a drug premises for
23  the purposes of distributing marijuana and THC, schedule I
24  controlled substances; and (5) distribute marijuana to person

25  _____

26        [1]      "Any person who attempts or conspires to commit any
    offense defined in this subchapter shall be subjected to the same
27  penalties as those prescribed for the offense, the commission of
    which was the object of the attempt or conspiracy."   21 U.S.C. §
28  846.

                                     5

1  under the age of twenty-one.

2      The essential elements of a narcotics conspiracy are: (1) an
3  agreement between two or more persons to commit at least one of
4  the objects of the conspiracy as charged in the indictment; and
5  (2) the defendant became a member of the conspiracy knowing of at
6  least one of its objects and intending to help accomplish it.
7  See Ninth Circuit Model Jury Instruction 8.16 (2003); United
8  States v. Mesa-Farias, 53 F.3d 258, 260 (9th Cir. 1995); United
9  States v. Litteral, 910 F.2d 547, 550 (9th Cir. 1990).   The
10 government need not charge or prove an overt act.   United States
11 v. Shabani, 513 U.S. 10, 15 (1994).

12     "Manufacturing" is defined as the planting, cultivating,
13 growing, or harvesting of marijuana plants.   21 U.S.C. § 802(15),
14 (22).

15 B.   Counts Two and Three - Aiding and Abetting In the
        Distribution of Marijuana to Person Under 21 Years of Age
16      [21 U.S.C. §§ 841(a)(1), 859(a), 18 U.S.C. § 2]

17     Defendant is charged in each of Counts Two and Three with
18 aiding and abetting the distribution of more than five grams of
19 marijuana, specifically to J.S., in violation of 21 U.S.C. §§
20 841(a)(1)[2] and, 859(a), 18 U.S.C. § 2.[3]

21     In order to prove someone guilty of distribution of
22 marijuana to a person under twenty-one years of age, the

23 _____

24     [2]    "[I]t shall be unlawful for any person knowingly or
25 intentionally - (1) to manufacture, distribute, or dispense, or
   possess with intent to manufacture, distribute, or dispense, a
26 controlled substance . . . ."   21 U.S.C. § 841(a)(1).

27     [3]    "Whoever commits an offense against the United States
   or aids, abets, counsels, commands, induces or procures its
28 commission, is punishable as a principal."   18 U.S.C. § 2.

1  government must prove each of the following elements: (1) someone
2  knowingly delivered marijuana to J.S.; (2) the person who
3  delivered the marijuana knew that it was marijuana or some other
4  prohibited drug; (3) the person who delivered the marijuana was
5  at least eighteen years of age; and (4) J.S. was under twenty-one
6  years of age.

7      In order for defendant to be guilty of aiding and abetting
8  this crime, the government must prove: (1) the crime in question
9  was committed by someone; (2) the defendant knowingly and
10 intentionally aided, counseled, commanded, induced or procured
11 that person to commit the offense; and (3) the defendant acted
12 before the crime was completed.  See Ninth Cir. Model Jury
13 Instruction 5.1 (2003).

14     Aiding and abetting liability also applies to the other
15 counts, although not specifically charged in the indictment.  Id.
16 (comment) ("An aiding and abetting instruction is proper even
17 where the indictment does not specifically charge that offense,
18 since all indictments are read to embody that offense in each
19 count.") (collecting cases).

20
21 C.  Counts Four Possession with Intent to Distribute Marijuana
        [21 U.S.C. §§ 841(a)(1)]

22     Count Four charges defendant with possession with intent to
23 distribute a mixture and substance containing marijuana, and
24 marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1).  In
25 order to be guilty of possession with intent to distribute a
26 controlled substance, the government must prove: (1) the
27 defendant knowingly possessed the controlled substance; and (2)
28 the defendant possessed it with the intent to deliver it to

7

1    another person.  <u>See</u> Ninth Cir. Model Jury Instruction 9.13

2    (2003).

3    D.    <u>Counts Five - Maintaining a Drug-Involved Premises</u>
             <u>[21 U.S.C. §§ 856(a)(1)]</u>

4

5        Defendant is charged in Count Five with maintaining a drug-

involved premises, in violation of 21 U.S.C. § 856(a)(1)[4].  In

6

7   order to be guilty of maintaining a drug-involved premise, the

government must prove:  (1) the defendant knowingly opened,

8

9   leased, rented, used, or maintained the premises located at 780

Monterey Avenue, Suite B, Morro Bay, California; and (2) the

10

11   defendant did so for the purpose of manufacturing or distributing

marijuana.

12

13                           **V.**

**PERTINENT LAW**

14

15   A.    LAW CONCERNING NARCOTICS CONSPIRACY COUNT

16        1.    <u>Pinkerton Liability</u>

17        The government may prove that defendant is guilty of Counts

Two through Five, not only by proof that defendant himself

18

19   committed the acts necessary to satisfy the elements of those

crimes, or alternatively though his aiding and abetting others in

20

21   the commission of those crimes, but also though his involvement

in the conspiracy charged in Count One.

22

23        It is a well settled tenet of conspiracy law, known as

<u>Pinkerton</u> liability, that "a party to an unlawful conspiracy may

24

25   be held responsible for substantive offenses committed by his co-

26       [4]    "[I]t shall be unlawful to - (1) knowingly open, lease,

27   rent, use, or maintain any place, whether permanently or
temporarily, for the purpose of manufacturing, distributing, or

28   using any controlled substance."

conspirators in furtherance of the unlawful project, even if the party himself did not participate directly in the commission of the substantive offense."  Ninth Cir. Model Jury Instruction 8.20 (2003); <u>United States v. Vasquez</u>, 858 F.2d 1387, 1393 (9th Cir. 1988).  <u>See also</u> <u>Pinkerton v. United States</u>, 328 U.S. 640, 646-47 (1946); <u>United States v. Olano</u>, 62 F.3d 1180, 1199 (9th Cir. 1995).  For <u>Pinkerton</u> liability to apply, it is necessary that the substantive offense was within the scope of the unlawful agreement, was committed in furtherance of the conspiracy, and was reasonably foreseeable as a natural consequence of the unlawful confederation.  <u>Pinkerton</u>, 328 U.S. at 647-48. <u>See also</u> <u>United States v. Lewis</u>, 787 F.2d 1318, 1323 (9th Cir. 1986)("A co-conspirator is responsible for any act done in furtherance of the conspiracy unless it could not reasonably be foreseen as a natural consequence of the agreement"); <u>United States v. Reed</u>, 726 F.2d 570, 580 (9th Cir. 1984)("The law is clear that a defendant may be convicted of the substantive acts of his co-conspirators, as long as those acts are committed pursuant to and in furtherance of the conspiracy").

A conspirator who joins a pre-existing conspiracy is bound by all that has gone on before in the conspiracy.  <u>See</u> <u>United States v. Umagat</u>, 998 F.2d 770, 772 (9th Cir. 1993) ("One may join a conspiracy already formed and in existence, and be bound by all that has gone before in the conspiracy, even if unknown to him").  <u>See also</u> <u>United States v. Bibero</u>, 749 F.2d 586, 588 (9th Cir. 1984); <u>United States v. Saavedra</u>, 684 F.2d 1293, 1301 (9th Cir. 1982).

    2.   <u>Participation in the Conspiracy</u>

9

The government must show that a conspiracy between at least
two people existed and that the defendant was a member of the
conspiracy charged. <u>See, e.g.</u>, <u>United States v. Reese</u>, 775 F.2d
1066, 1071 (9th Cir. 1985). "The government does not have to
present <u>direct</u> evidence. Circumstantial evidence and the
inferences drawn from that evidence will sustain a conspiracy
conviction." <u>United States v. Castro</u>, 972 F.2d 1107, 1110 (9th
Cir. 1992) (emphasis in original). Once a conspiracy is
established only "slight evidence" is needed to connect defendant
or a co-conspirator to it. <u>United States v. Stauffer</u>, 922 F.2d
508, 514-515 (9th Cir. 1990); <u>United States v. Crespo De Llano</u>,
838 F.2d 1006, 1017 (9th Cir. 1987); <u>United States v. Fleishman</u>,
684 F.2d 1329, 1338 (9th Cir. 1982); <u>United States v. Dixon</u>, 562
F.2d 1138, 1141 (9th Cir. 1977). A defendant need not
participate in all phases of a conspiracy to be part of a single
conspiracy. <u>See, e.g.</u>,<u>United States v. Burreson</u>, 643 F.2d 1344,
1348 (9th Cir. 1981). Moreover, every member of a conspiracy
need not know every other member nor be aware of all acts
committed in furtherance of the conspiracy. <u>See, e.g.</u>, <u>United
States v. Taren-Palma</u>, 997 F.2d 525, 530 (9th Cir. 1993). When a
defendant is charged with conspiracy, evidence tending to show
the existence of a conspiracy is admissible even though such
evidence does not implicate the defendant as the defendant's
conviction is conditioned upon proof of the conspiracy.

<u>United States v. Vega-Limon</u>, 548 F.2d 1390, 1391 (9th Cir.
1977). A conspiracy is presumed to continue until there is
affirmative evidence of abandonment, withdrawal, disavowal, or
defeat of the purposes of the conspiracy. <u>United States v.</u>

10

1 | Bloch, 696 F.2d at 1215; United States v. Krasn, 614 F.2d 1229,
2 | 1236 (9th Cir. 1980).

3 |      3.   Co-conspirator Declarations

4 |      The government intends to offer several statements by co-
5 | conspirators of defendant, such as his employees.  These will
6 | include statements made by co-conspirator to undercover officers
7 | and government informants.

8 |      Declarations by one co-conspirator during the course of and
9 | in furtherance of the conspiracy may be used against another
10 | conspirator because such declarations are not hearsay.  See Fed.
11 | R. Evid. 801(d)(2)(E).  Further, statements made in furtherance
12 | of a conspiracy were expressly held by the Supreme Court in
13 | Crawford v. Washington, 541 U.S. 36, 56 (2004) to be "not
14 | testimonial" such that their admission does not violate the
15 | Confrontation Clause.  As such, the admission of co-conspirator
16 | statements pursuant to Fed. R. Evid. 801(d)(2)(E) requires only a
17 | foundation that: (1) the declaration was made during the life of
18 | the conspiracy; (2) it was made in furtherance of the conspiracy;
19 | and (3) there is, including the co-conspirator's declaration
20 | itself, sufficient proof of the existence of the conspiracy and
21 | of the defendant's connection to it.  See Bourjaily v. United
22 | States, 483 U.S. 171, 173, 181 (1987).  The existence of the
23 | conspiracy may be proven by the statements themselves.  Id.

24 |      The government must prove by a preponderance of the evidence
25 | that a statement is a co-conspirator declaration in order for the
26 | statement to be admissible under Rule 801(d)(2)(E).  Bourjaily,
27 | 483 U.S. at 176; United States v. Crespo de Llano, 838 F.2d 1006,
28 | 1017 (9th Cir. 1987).  Whether the government has met its burden

1  is to be determined by the trial judge, and not the jury.  United
2  States v. Zavala-Serra, 853 F.2d 1512, 1514 (9th Cir. 1988).  The
3  trial court has discretion to determine whether the government
4  may introduce co-conspirator declarations before establishing the
5  conspiracy and the defendant's connection to it.  United States
6  v. Loya, 807 F.2d 1483, 1490 (9th Cir. 1987).  It also has the
7  discretion to vary the order of proof in admitting a co-
8  conspirator's statement.  Id.  The court may allow the government
9  to introduce co-conspirator declarations before laying the
10 required foundation under the condition that the declarations
11 will be stricken if the government fails to ultimately establish
12 by independent evidence that the defendant was connected to the
13 conspiracy.  Id.; United States v. Spawr Optical Research, Inc.,
14 685 F.2d 1076, 1083 (9th Cir. 1982); Fleishman, 684 F.2d at 1338.

15     It is not necessary for the defendant to be present at the
16 time a co-conspirator statement was made for it to be introduced
17 as evidence against that defendant.  Sendejas v. United States,
18 428 F.2d 1040, 1045 (9th Cir. 1970).  Similarly, declarations of
19 an unindicted co-conspirator made in furtherance of the
20 conspiracy may be used against a charged conspirator.  United
21 States v. Nixon, 418 U.S. 683, 701 (1974); United States v.
22 Williams, 989 F.2d 1061, 1067 (9th Cir. 1993).

23     To be admissible under Fed. R. Evid. 801(d)(2)(E) as a
24 statement made by a co-conspirator in furtherance of the
25 conspiracy, a statement must "further the common objectives of
26 the conspiracy," or "set in motion transactions that [are] an
27 integral part of the [conspiracy]."  United States v. Arambula-
28 Ruiz, 987 F.2d 599, 607-08 (9th Cir. 1993); United States v.

12

Yarbrough, 852 F.2d 1522, 1535 (9th Cir. 1988).  Such statements

are admissible whether or not they actually result in any benefit

to the conspiracy.  Williams, 989 F.2d at 1068; United States v.

Schmit, 881 F.2d 608, 612 (9th Cir. 1989).

Thus, co-conspirator declarations need not be made to a

member of the conspiracy to be admissible under Rule 810(d)(2)(E)

and can be made to government informants and undercover agents.

Zavala-Serra, 853 F.2d at 1516 (statements to informants and

undercover agents); United States v. Kearns, 61 F.3d 1422, (9th

Cir. 1995 (statements to informant); United States v. Tille, 729

F.2d 615, 620 (9th Cir. 1984) (same); United States v. Echeverry,

759 F.2d 1451, 1457 (9th Cir. 1985) (statements to undercover

agent); United States v. Taylor, 802 F.2d 1108, (9th Cir.

1986)(same).

Courts have interpreted the "in furtherance of" requirement

broadly and have considered, among others, the following

co-conspirator declarations as being made "in furtherance of the

conspiracy":

- statements by a person involved in the conspiracy to
  induce a buyer's purchase of contraband by assuring the
  buyer of the person's ability to consummate the
  transaction.  Echeverry, 759 F.2d at 1457;

- statement identifying another co-conspirator as source
  for the contraband to be sold to purchaser.  United
  States v. Lechuga, 888 F.2d 1472, 1480 (5th Cir. 1989);

- "puffing", boasts and other conversation designed to
  obtain the confidence of another conspirator (or
  apparent conspirator who actually was an undercover
  agent).  United States v. Santiago, 837 F.2d 1545, 1549
  (11th Cir. 1988); United States v. Lechuga, 888 F.2d
  1472, 1480 (5th Cir. 1989); United States v. Miller,
  664 F.2d 94, 98 (5th Cir. 1981);

- statements made to induce enlistment in the conspiracy

13

1          (<u>United States v. Arias-Villanueva</u>, 998 F.2d 1491, 1502
           (9th Cir. 1993);

2

3     •    statements made to prompt action in furtherance of the
           conspiracy by either of the participants to the
4          conversation.  <u>United States v. Layton</u>, 720 F.2d 548,
           556 (9th Cir. 1983);

5     •    statements related to the concealment of the criminal
           enterprise.  <u>Tille</u>, 729 F.2d at 620; <u>Garlington v.</u>
6          <u>O'Leary</u>, 879 F.2d 277, 283 (7th Cir. 1989);

7     •    statements seeking to control damage to an ongoing
           conspiracy.  <u>Garlington</u>, 879 F.2d at 283;
8

9     •    statements made to reassure members of the conspiracy's
           continued existence. <u>United States v. Yarbrough</u>, 852
           F.2d 1522, 1535 (9th Cir. 1988); and
10

11    •    statements that refer to another conspirator as the
           boss, the overseer, or sir (<u>United States v. Barnes</u>,
           604 F.2d 121, 157 (2d Cir. 1979).
12

13    4.   <u>Status of Charges Against Co-Conspirators</u>

14        Most of defendant's co-conspirators -- in particular,

15   employees and customers of the marijuana store -- are not charged

16   in the indictment.  That fact, however, is irrelevant to

17   determining the guilt of defendant in this case.  Although

18   defendant may wish to reference his co-conspirators' unindicted

19   status in order to suggest that the government's prosecution of

20   defendant is unfair, or to show bias against him, such evidence

21   or argument is improper.  <u>See</u> Fed. R. Evid. 402, 403; <u>United</u>

22   <u>States v. Miller</u>, 874 F.2d 1255, 1266 (9th Cir. 1989) (precluding

23   attempt to introduce FBI interrogation manual to show

24   governmental bias against defendant, because manual was never

25   used on defendant); <u>Plumbers and Steamfitters Union, Local No.</u>

26   <u>598 v. W. C. Dillion</u>, 255 F.2d 820, 824 (9th Cir. 1958) ("A

27   verdict based on the bias, passion, or sympathy of the jury

28   cannot be permitted to stand.").

                                14

1   The decision whether, or when, to indict an individual lies
2   firmly within the discretion of the executive branch, and
3   therefore is generally not a proper matter for courts or juries
4   to review.   See Wayte v. United States, 470 U.S. 598, 607 (1985)
5   ("This broad discretion rests largely on the recognition that the
6   decision to whether or not to prosecute is particularly ill-
7   suited to judicial review."); see also United States v. Duran, 41
8   F.3d 540, 544 (9th Cir. 1994) ("If the prosecutor has probable
9   cause to believe a defendant committed a crime, the decision of
10  whether to prosecute and the charges to be filed rests with the
11  prosecutor.").   Just as the government generally may not refer to
12  a co-defendant's pleading guilty in the middle of trial, see,
13  e.g., United States v. Carraway, 108 F.3d 745, 755 (1997), so too
14  would it be improper here for defendant to be allowed to refer to
15  the fact that any particular co-conspirator is not charged in the
16  indictment.

17  B.   LAW RELATING TO DISTRIBUTION TO MINORS COUNTS

18      Knowledge by the defendant that the person to whom the
19  controlled substance is distributed is under twenty-one years of
20  age is not an essential element.   United States v. Valencia-
21  Roldan, 893 F.2d 1080, 1083 (9th Cir. 1990).

22  C.   LAW RELATING TO POSSESSION WITH INTENT TO DISTRIBUTE

23      A person has possession of something if the person knows of
24  its presence and has physical control of it, or knows of its
25  presence and has the power and intention to control it.   9th Cir.
26  Crim. Jury Instr. No. 3.18.   "A defendant's exclusive dominion
27  over property on which contraband is found is strong
28  circumstantial evidence of possession."   United States v.

15

1 <u>Savinovich</u>, 845 F.2d 834, 837 (9th Cir. 1984).

2      To "possess with intent to distribute" means to possess with
3 intent to deliver or transfer possession of a controlled
4 substance to another person, with or without any financial
5 interest in the transaction.  <u>United States v. Ramirez</u>, 608 F.2d
6 1261, 1264 (1979) (holding that defendant engaged in distribution
7 in violation of 21 U.S.C. § 841(a)(1) by sharing cocaine with
8 friends); <u>see also</u> 9th Cir. Crim. Jury Instr. No. 9.13 (2003
9 ed.).

10      Intent to distribute a controlled substance may be inferred
11 from such facts as the amount of drugs, their purity, the
12 presence of firearms, and the existence of scales.  <u>Savinovich</u>,
13 845 F.2d at 837-38.  Even a small quantity of drugs will support
14 a conviction for possession with intent to distribute where there
15 is additional evidence of intent to distribute.  <u>Ramirez</u>, 608
16 F.2d at 1264; <u>see, e.g., United States v. Martinez</u>, 54 F.3d 1040,
17 1043 (2d Cir. 1995) (defendant's possession of a scale, cutting
18 agent, and a loaded firearm supported conviction even though he
19 possessed only 1/8 oz. of cocaine); <u>United States v. Wood</u>, 57
20 F.3d 913, 919 (10th Cir. 1995) (presence of scales and baggies
21 supported reasonable inference of intent to distribute even

22 D.   <u>LAW RELATING TO MAINTENANCE OF NARCOTICS PLACE COUNT</u>

23      "Maintaining" a place with in the meaning of 21 U.S.C. §
24 856(a)(1) means that over a period of time, the defendant
25 directed the activities of and the people in the place.  The
26 government is not required to prove that the drug activity was
27 the primary purpose of defendant's opening, leasing, renting,
28 using, or maintaining a place, but instead must prove that drug

16

1  activity was a significant reason why defendant opened, leased,

2  rented, used, or maintained the place. 21 U.S.C. § 856(a)(1);

3  Eighth Circuit Model Jury Instructions No. 6.21.856A

4  [Establishment of Manufacturing Operations (Maintaining Any Place

5  For Manufacturing)(modified); Fifth Circuit Model Jury

6  Instructions No. 2.91 controlled Substance - Manufacturing

7  Operations).

8  E.   DRUG QUANTITIES

9        In order to prove that defendant is guilty of the offenses

10  charged in Counts One, Two, Three, or Four of the indictment, the

11  government is not required to prove that the amount or quantity

12  of marijuana or marijuana plants involved in the offenses was the

13  amount or quantity charged in the indictment.   The government

14  need only prove beyond a reasonable doubt that there was a

15  measurable or detectable amount of marijuana. See Ninth Circuit

16  Model Criminal Jury Instructions No. 9.30 (2003 ed.) [Controlled

17  Substance -- Actual Amount Charged Need Not Be Proved]; Apprendi

18  v. New Jersey, 530 U.S. 466 (2000); United States v. Thomas, 355

19  F.3d 1191, 1195 (9th Cir. 2004); United States v. Carranza, 289

20  F.3d 634, 633 (9th Cir. 2002).

21        However, Counts One and Four carry potential five-year

22  mandatory minimum sentences (see 21 U.S.C. § 841(a)(1),

23  (b)(1)(B)(vii) (minimum five year sentence for 100 kilograms or

24  more of marijuana, or 100 or more marijuana plants), and Counts

25  One, Two, and Three each carry a potential one-year mandatory

26  minimum sentence (see 21 U.S.C. § 859 (one-year mandatory

27  sentence for distribution of more than five grams of marijuana to

28  person under twenty-one years of age)).   If the jury returns a

17

1  verdict of guilty on any one of these counts, the jury must also
2  make a unanimous finding that the government has proven beyond a
3  reasonable doubt that the controlled substance involved in
4  defendant's commission of the offense was, in fact, marijuana or
5  marijuana plants, and, if so, whether the amount of the substance
6  involved exceeded a specified quantity.  See Apprendi v. New
7  Jersey, 530 U.S. 466 (2000); Thomas, 355 F.3d at 1195 ("drug type
8  and quantity are not elements of the offense, but rather are
9  material facts that must be submitted to the jury and proved
10 beyond a reasonable doubt"); United States v. Becerra, 992 F.2d
11 960, 967 n.2 (9th Cir. 1993).  The government will file a
12 proposed special verdict form for this purpose.

13      The Court has issued an in limine ruling excluding evidence
14 or arguments to the jury regarding any potentially applicable
15 mandatory minimum sentence.

16 F.   DEFENSES

17      Defendant has not given notice of his intent to rely on any
18 defense such as public authority, entrapment, mental incapacity,
19 duress or alibi.[5]  Therefore, to the extent defendant may attempt
20 to rely on any such defenses, the Government reserves the right
21 to object and to seek to have defendant precluded from asserting
22 such defenses.  The Court has also already ruled in limine to
23 exclude several defenses relating to medical marijuana issues.

24
25

26      [5]  Many potential defenses, and the evidence supporting
27 them, such as advice of counsel and mistake of law have also been
   excluded by the Court in limine during its ruling on July 7,
28 2008.

18

1          VI.

2     EVIDENTIARY ISSUES

3  A.   CROSS-EXAMINATION

4       1.   Generally

5       The scope of a cross-examination is within the discretion of

6  the trial court.  Fed. R. Evid. 611(b).  Cross-examination should

7  be limited to the subject matter of the direct examination and

8  matters affecting the credibility of the witness.  The court may,

9  in the exercise of its discretion, permit inquiry into additional

10 matters as if on direct examination.  Fed. R. Evid. 611(b).

11      2.   Cross-Examination of Defendant

12      A defendant who testifies at trial may be cross-examined as

13 to all matters reasonably related to the issues he puts in

14 dispute during cross-examination.  A defendant has no right to

15 avoid cross-examination on matters which call into question his

16 claim of innocence.  United States v. Mehrmanesh, 682 F.2d 1303,

17 1310 (9th Cir. 1982); United States v. Miranda-Uriarte, 649 F.2d

18 1345, 1353-54 (9th Cir. 1981).  A defendant who testifies at

19 trial waives his Fifth Amendment privilege and may be cross-

20 examined on matters made relevant by his direct testimony.

21 United States v. Black, 767 F.2d 1334, 1341 (9th Cir.), cert.

22 denied, 474 U.S. 1022 (1985).  The scope of the defendant's

23 waiver is co-extensive with the scope of relevant cross-

24 examination.  The extent of the waiver is determined by whether

25 the question reasonably relates to subjects covered by

26 defendant's direct testimony.  United States v. Hearst, 563 F.2d

27 1331, 1340 (9th Cir. 1977), cert. denied, 435 U.S. 1000 (1978).

28

                        19

1    3.    <u>Cross-Examination of Defendant's Character Witnesses</u>

2         If the defendant should call a character witness to testify,

3    there may be a question concerning the scope of the direct and

4    cross-examinations.  As a general rule, character witnesses

5    called by the defendant may not testify about specific acts

6    demonstrating a particular trait or other information acquired

7    only by personal observation and interaction with the defendant;

8    the witness must summarize the reputation or opinion of the

9    defendant as known in the community.  Fed. R. Evid. 405(a);

10   <u>Michelson v. United States</u>, 335 U.S. 469, 477 (1948); <u>United</u>

11   <u>States v. Hedgcorth</u>, 873 F.2d 1307, 1313 (9th Cir. 1989).

12        On cross-examination of a defendant's character witness,

13   however, the government may inquire into specific instances of

14   defendant's past conduct relevant to the character trait at

15   issue.  Fed. R. Evid. 405(a).  In particular, a defendant's

16   character witnesses may be cross-examined about their knowledge

17   of the defendant's past crimes, wrongful acts, and arrests.

18   <u>Michelson</u>, 335 U.S. at 479, 481 n.18.  The only prerequisites are

19   (1) that there be a good faith basis that the incidents inquired

20   about occurred and (2) that the incidents are relevant to the

21   character trait at issue.  <u>United States v. McCollom</u>, 664 F.2d

22   56, 58 (5th Cir. 1981).

23   B.   <u>EXPERT TESTIMONY</u>

24        If specialized knowledge will assist the trier of fact in

25   understanding the evidence or determining a fact in issue, a

26   qualified expert witness may provide opinion testimony on the

27   issue in question.  Fed. R. Evid. 702.  An expert's opinion may

28   be based on hearsay or facts not in evidence, where the facts or

1 data relied upon are of the type reasonably relied upon by
2 experts in the field. Fed. R. Evid. 703. An expert may provide
3 opinion testimony even if it embraces an ultimate issue to be
4 decided by the trier of fact. Fed. R. Evid. 704. The court has
5 broad discretion to determine whether to admit expert testimony.
6 United States v. Andersson, 813 F.2d 1450, 1458 (9th Cir. 1987).

7     The government anticipates calling two forensic chemists to
8 testify about testing and weighing of the controlled substances
9 at issue in the case. Defendant has noticed an expert to discuss
10 financial aspects of the marijuana store.

11 C.   OPINION TESTIMONY OF GOVERNMENT AGENTS

12     Opinion testimony by lay witnesses is admissible if it is
13 rationally based on the perception of the witness and helpful to
14 a clear understanding of the witness' testimony or to the
15 determination of a fact in issue. Fed. R. Evid. 701; United
16 States Henderson, 241 F.3d 638, 650-51 (9th Cir. 2000) (police
17 officer's identification of individual depicted in photograph).

18     An experienced government agent may testify as to his
19 opinions and impressions of what he observed. As the court in
20 United States v. Skeet, 665 F.2d 983, 985 (9th Cir. 1982),
21 stated:

22     Opinions of non-experts may be admitted where the facts
    could not otherwise be adequately presented or
23     described to the jury in such a way as to enable the
    jury to form an opinion or reach an intelligent
24     conclusion. If it is impossible or difficult to
    reproduce the data observed by the witnesses, or are of
25     a combination of circumstances and appearances which
    cannot be adequately described and presented with the
26     force and clearness as they appeared to the witness.
    The witness may state his impressions and opinions
27     based upon what he observed. It is a way of conveying
    to the jury what the witness has seen or heard.
28

1   Id.   Thus, an officer who is familiar with a controlled
2   substance may identify an observed controlled substance, such as
3   marijuana.   United States v. Ferguson, 555 F.2d 1372, 1373 (9th.
4   Cir. 1977)(officer with experience could testify that debris was
5   marijuana); United States v. Almada-Aldama, 462 F.2d 952, 952
6   (9th Cir. 1972) (chemist not required to identify substance as
7   marijuana; experienced agent may make identification); see also
8   United States v. Von Willie, 59 F.3d 922, 929 (9th Cir.
9   1995)(police officer experience in drug investigations allowed to
10  give lay opinion on traffickers use of drugs and guns based on
11  perceptions during prior investigations); United States v.
12  Santana, 342 F.3d 60, 69 (1st Cir. 2003) (DEA agent qualified to
13  offer lay opinion that he had smelled marijuana based on
14  experience from work); United States v. Espino, 317 F.3d 788, 797
15  (8th Cir. 2003) (lay witness could testify about weight of
16  narcotics personally observed even when not weighed based on
17  extensive experience with substance).   An experienced government
18  agent may provide opinion testimony even if that opinion is based
19  in part on information from other agents familiar with the issue.
20  United States v. Andressan, 813 F.2d 1450, 1458 (9th Cir. 1987);
21  United States v. Golden, 532 F.2d 1244, 1248 (9th Cir. 1976).
22  D.   ADMISSION OF BUSINESS RECORDS RECOVERED FROM MARIJUANA STORE
23      The government intends to introduce a variety of documents
24  that were seized from the marijuana store and defendant's
25  residence during the execution of the search warrant, which
26  relate to the business operations of the marijuana store.   These
27  documents include, among others, customer files, sales receipts,
28  vendor records, etc.   These documents are admissible as non-

                                  22

1  hearsay because they constitute party admissions by defendant and
2  his employees during the course of their employment, co-
3  conspirator statements, and otherwise fall within the residual
4  exception to the hearsay rule.

5       1.   <u>Party Admissions</u>

6       Because defendant is the owner and operator of the marijuana
7  store, the business records of the marijuana store (whether
8  created by defendant or his employees) constitute party
9  admissions under Rules 801(d)(2)(A) and 801(d)(2)(D) of the
10 Federal Rules of Evidence.

11      A statement is not hearsay if the statement is offered
12 against a party and is the party's own statement in either an
13 individual or representative capacity.  Fed. R. Evid.
14 801(d)(2)(A); <u>United States v. Burreson</u>, 643 F.2d 1344, 1349 (9th
15 Cir. 1981).  Likewise, under Rule 801(d)(2)(D), a statement is
16 not hearsay when made "by the party's agent or servant concerning
17 a matter within the scope of the agency or employment [and]
18 during the existence of the relationship."  Thus, statements or
19 documents made by defendant's employees are admissible as party
20 admissions if three foundational facts are established: (1) an
21 agency relationship existed; (2) the statement/document was made
22 during the course of the relationship; and (3) the
23 statement/document relates to a matter within the scope of the
24 employment.  <u>See</u> <u>United States v. Chang</u>, 207 F.3d 1169, 1176 (9th
25 Cir. 2000); <u>see also</u> <u>In re Sunset Bay Associates</u>, 944 F.2d 1503,
26 1519 (9th Cir. 1991)("[T]he statements need only *concern* matters
27 within the scope of the agency; they need not be made within the
28 scope of the agency.")(emphasis in original).

23

1     The business documents of the marijuana store, which were
2  made by defendant or his employees during the course of their
3  employment and relate to the operations of the marijuana store,
4  satisfy each of these foundational requirements.  See e.g.,
5  United States v. Boling, 869 F.2d 965, 974 (9th Cir.
6  1989)(statements made by defendant's employee admissible under
7  Rule 801(d)(2)(D) because they were made in the course of
8  employment under direction and control of defendant); see also
9  United States v. Wolfson, 322 F. Supp. 798, 824 n.28 (D.Del.
10  1971)(holding that the "cover notes which were purportedly
11  prepared by the defendants or their employees would be admissible
12  under the 'party admissions' exception to the hearsay rule").

13        2.    Co-Conspirator Statements

14     The business documents of the marijuana store are also
15  admissible as co-conspirator statements.  The standards for co-
16  conspirator statements under Fed. R. Evid. 801(d)(2)(E) generally
17  have already been set forth above.  The business documents of the
18  marijuana store, which were made by defendant or his co-
19  conspiring employees during and in furtherance of the conspiracy
20  to distribute marijuana, satisfy the foundational requirements
21  for admissibility under the co-conspirator exception.  See, e.g.,
22  United States v. Gil, 58 F.3d 1414, (9th Cir. 1995)(drug ledgers
23  found in defendants' residences admissible as party admissions
24  and co-conspirator statements); United States v. King, 472 F.2d
25  1, 10 (9th Cir. 1972)(drug ledgers found in co-conspirator's
26  "business storeroom" in attached garage admissible against the
27  defendants because "[t]he contents of the ledgers and other
28  papers appear on their face to have been written during the

                              24

1 | course of the conspiracy and in furtherance of the objects of the
2 | conspiracy.").

3 |     3.  <u>Residual Hearsay Exception</u>

4 |      Although the records qualify under the two exceptions set
5 | forth above, the business documents of the marijuana store the
6 | government may also rely on the residual hearsay exception.
7 | Under Rule 807 of the Federal Rules of Evidence, a statement that
8 | has "equivalent circumstantial guarantees of trustworthiness" is
9 | admissible as an exception to the hearsay rule if the court
10 | determines that: (1) the statement is relevant; (2) the statement
11 | is more probative than any other evidence which can be procured
12 | through reasonable efforts; and (3) the general purposes of the
13 | Federal Rules of Evidence and the interests of justice will best
14 | be served by admission of the statement.  Fed. R. Evid. 807.  The
15 | business documents of the marijuana store, which were seized from
16 | the marijuana store and defendant's residence, fall within this
17 | catchall exception.  <u>See, e.g.</u>, <u>United States v. Bachsian</u>, 4 F.3d
18 | 796, 798-99 (9th Cir. 1993)(shipping records had particularized
19 | guarantees of trustworthiness and were admissible under the
20 | residual hearsay exception, even though district court found that
21 | they did not fall within business records exception).
22 | Furthermore, defendant has had ample notice that the government
23 | intends to introduce these documents into evidence, as the
24 | documents (and charts summarizing the documents) were made
25 | available to defendant well before the trial.  <u>Id.</u> at 799.
26 | Specifically, the government made these and other documents
27 | available for inspection and/or copying on August 8, 2007.
28 | Defendant inspected the records from the store on June 8, 2008,

1  and, at defense request and government expense, copies of these

2  documents were provided on June 20, 2008.

3      4.   Authentication

4      Through testimony of where the documents were found and

5  through the labels and content on the documents, the government

6  will also be able to meet the minimal standards for

7  authentication of these documents.  Proof of authenticity

8  requires only a prima facie showing that the item offered is what

9  the proponent claims it is, here records from the transaction

10  records of the marijuana store.  See Fed. R. Evid. 901(a); United

11  States v. Edwards, 235 F.3d 1173, 1178 (9th Cir. 2000).  The

12  location where the documents were found, and their content and

13  character is sufficient to authenticate these documents.  See,

14  e.g. Burges v. Premier Corp., 727 F.2d 826, 835-86 (9th Cir.

15  1984) (all exhibits found in defendant's warehouse adequately

16  authenticated by virtue of having been found there); United

17  States v. Whitworth, 856 F.2 1268, 1282 (9th Cir. 1998)

18  (anonymous letters authenticated, in part, by postmarks that

19  corresponded to defendant's location when letters were mailed).

20  E.   STATEMENTS BY DEFENDANT, HIS EMPLOYEES, AND CO-CONSPIRATORS

21      The government will not offer statements made by defendant

22  in its case-in-chief, but will likely introduce statements made

23  by his employees and co-conspirators to law enforcement and

24  undercover agents as non-hearsay party admissions by employees

25  and/or co-conspirators.  See Fed. R. Evid. 801(d)(2)(D), (E).

26  The government may also offer defendant's statements for

27  impeachment if defendant testifies.  However, should defendant

28  seek to introduce statements by his employees or co-conspirators

26

1  on cross-examination or otherwise, or should defendant take the
2  stand, defendant may not offer into evidence any statements he,
3  his employees or co-conspirator made to law enforcement, or
4  others.  Such statements would be hearsay subject to no
5  exception.  A defendant's statement, the statements of his
6  employees, or those of his co-conspirators are admissible only if
7  offered against him by the government; a defendant may not elicit
8  his own prior statements or those of his conspirators in support
9  of his own case.  See Fed. R. Evid. 801(d)(2)(A), (D), (E);
10  United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).
11  Even if the government admits some of a defendant's statements,
12  the door is not thereby opened to the defendant to put in all of
13  his out-of-court statements, because when offered by the
14  defendant, the statements are hearsay.  See id.; United States v.
15  Ortega, 203 F.3d 675, 681-82 (9th Cir. 2000) (Rule 106 does not
16  compel the admission of otherwise inadmissible hearsay evidence
17  and court properly excluded defendant from eliciting his own
18  exculpatory statements in cross-examination of agent who took his
19  statement); United States v. Fernandez, 839 F.2d 639, 640 (9th
20  Cir. 1988).  To permit a defendant to elicit exculpatory or other
21  statements through another would permit him to "back-door" his
22  defense into the case without subjecting himself to cross-
23  examination.  Ortega, 203 F.3d at 682.

24      Thus, to the extent that defendant and his employees and co-
25  conspirators made admissions, either orally or in documents,
26  these admissions are not admissible when offered by defendant.
27  Furthermore, the government asks the Court to instruct
28

27

1  defendant's counsel not to attempt to elicit this statement from
2  any witness without the permission of the Court.

3  F.   CHARTS AND SUMMARIES

4      In order to shorten the trial and to present the voluminous
5  business records of the marijuana store to the jury in an
6  understandable from, the government indents to offer various
7  charts and summaries of the records including summarizing the age
8  of customers, the amount of sales, and the quantity of narcotics
9  sold or purchased by the store.  These charts will be based on
10 the records made available to defendant in discovery, and many of
11 the charts themselves have also been produced.  As the records
12 themselves are admissible, for the reasons set forth above, so to
13 are these charts.

14     A chart or summary may be admitted as evidence where the
15 proponent establishes that the underlying documents are
16 voluminous, admissible and available for inspection.  Fed. R.
17 Evid. 1006; see United States v. Meyers, 847 F.2d 1408, 1411-1412
18 (9th Cir. 1988); United States v. Johnson, 594 F.2d 1253, 255-
19 1257 (9th Cir. 1979).  In addition, summary charts are admissible
20 under Fed. R. Evid. 611(a), which permits a court to "exercise
21 reasonable control over the mode and order of interrogating
22 witnesses and presenting evidence so as to (1) make the
23 interrogation and presentation effective for ascertainment of the
24 truth, (2) avoid needless consumption of time, and (3) protect
25 witnesses from harassment or undue embarrassment."  United States
26 v. Poschwatta, 829 F.2d 1477, 1481 (9th Cir. 1987), cert. denied,
27 484 U.S. 1064 (1988); United States v. Gardner, 611 F.2d 770, 776
28 (9th Cir. 1980).

28

1    Summary charts need not contain the defendant's version of
2  the evidence and may be given to the jury while a government
3  witness testifies concerning them.   See United States v. Radseck,
4  718 F.2d 233, 239 (7th Cir. 1983); Barsky v. United States, 339
5  F.2d 180, 181 (9th Cir. 1964).

6    Summary charts may be used by the government in opening
7  statement.   Indeed, "such charts are often employed in complex
8  conspiracy cases to provide the jury with an outline of what the
9  government will attempt to prove."   United States v. De Peri, 778
10  F.2d 963, 979 (3d Cir. 1985) (approving government's use of
11  chart); United States v. Rubino, 431 F.2d 284, 290 (6th Cir.
12  1970) (same).   A chart summarizing unavailable documents is also
13  admissible under Fed. R. Evid. 1004 if the underlying materials
14  are "lost or destroyed" or "not obtainable."   Fed. R. Evid.
15  1004(1) and 1004(2).

16    A summary witness may properly testify about, and use a
17  chart to summarize, evidence that has already been admitted.   The
18  court and jury are entitled to have a witness "organize and
19  evaluate evidence which is factually complex and fragmentally
20  revealed."   United States v. Shirley, 884 F.2d 1130, 1133-34 (9th
21  Cir. 1989) (agent's testimony regarding her review of various
22  telephone records, rental receipts, and other previously offered
23  testimony held to be proper summary evidence, as it helped jury
24  organize and evaluate evidence; summary charts properly
25  admitted); United States v. Lemire, 720 F.2d 1327, 1348 (D.C.
26  Cir. 1983.   A summary witness may rely on the analysis of others
27  where she has sufficient experience to judge another person's
28  work and incorporate as her own the fact of its expertise.   The

29

1    use of other persons in the preparation of summary evidence goes
2    to its weight, not its admissibility.   United States v. Soulard,
3    730 F.2d 1292, 1299 (9th Cir. 1984); see Diamond Shamrock Corp.
4    v. Lumbermens Mutual Casualty Co., 466 F.2d 722, 727 (7th Cir.
5    1972) ("It is not necessary . . . that every person who assisted
6    in the preparation of the original records or the summaries be
7    brought to the witness stand").

8    G.   SURVEILLANCE OBSERVATIONS

9        The government anticipates the testimony of several
10   surveillance officers.   Some may relay information they received
11   over police radio from other surveillance officers.   Reported
12   observations made by surveillance officers are admissible as
13   present sense impression under Federal Rule of Evidence 803(1).
14   United States v. Gil, 58 F.3d 1414, 1422 (9th Cir. 1995)
15   (affirming admission of testimony of "note-takers" who testified
16   as to observations reported by other surveillance officers).

17   H.   RECORDED CONVERSATIONS

18       The government intends to introduce at trial at least one
19   recorded conversation between a co-conspirator and employee of
20   the marijuana store and an informant.   The government also
21   intends to play recordings for the surveillance cameras at the
22   marijuana store and show still images from these cameras.   As to
23   the audio recordings, a government witnesses will provide the
24   foundation for the call and identify the voices of the persons.

25       1.   Foundation

26       There is no rigid set of foundational requirements for
27   recorded conversations.   Rather, the Ninth Circuit has held that
28   recordings:

30

1    [A]re sufficiently authenticated under Federal Rule of

2    Evidence 901(a) if 'sufficient proof has been

3    introduced so that a reasonable juror could find in

4    favor of authenticity or identification. [Citing

5    cases.]   This is done by proving a connection between

6    the evidence and the party against whom the evidence is

7    admitted, and can be done by both direct and

8    circumstantial evidence.

9    United States v. Matta-Ballesteros, 71 F.3d 754, 768 (9th Cir.

10   1995), modified, 98 F.3d 1100 (9th Cir. 1996) (allowing into

11   evidence recordings of the torture of DEA Special Agent Camarena

12   which were in the possession of a co-defendant).   The

13   foundational requirements for videotapes are generally assessed

14   using the same flexible criteria as used for audiotapes.

15   5 Weinstein's Federal Evidence, § 901.05[1] (2d Ed. 2006) ("The

16   rules for authenticating audio recordings in each circuit are

17   also generally applicable to video recordings").

18       Witnesses may testify competently as to the identification

19   of a voice on a recording.   A witness's opinion testimony in this

20   regard may be based upon his having heard the voice on another

21   occasion under circumstances connecting it with the alleged

22   speaker.   Fed. R. Evid. 901 (b) (5); United States v. Torres, 908

23   F.2d 1417, 1425 (9th Cir. 1990) ("Testimony of voice recognition

24   constitutes sufficient authentication."); United States v.

25   Bassey, 613 F.2d 198, 202 n.2 (9th Cir. 1979); United States v.

26   Turner, 528 F.2d 143, 163 (9th Cir. 1975).   Circumstantial

27   evidence may also be introduced to identify the speaker in an

28   intercepted conversation.   Fed. R. Evid. 901(b)(5), (6).

1    Recorded conversations are competent evidence even when they
2 are partly inaudible, unless the unintelligible portions are so
3 substantial as to render the recording as a whole untrustworthy.
4 United States v. Rrapi, 175 F.3d 742 (9th Cir. 1999) (court
5 listens to recordings and admits portion of one recording and
6 denies admissibility of two others in Albanian language that were
7 very poor quality); United States v. Carlson, 423 F.2d 431, 440
8 (9th Cir. 1970).  A person who monitored the conversation is
9 entitled to testify as to the contents of the conversation, not
10 withstanding the fact that the conversation was recorded.  United
11 States v. Gonzales-Benitez, 537 F.2d 1051, 1053-54 (9th Cir.
12 1976).

13    All duly admitted recorded conversations must be played in
14 open court.  Allowing jurors to take into the jury deliberation
15 room recorded conversations that were not played in open court is
16 structural error requiring automatic reversal if a defendant
17 objects to allowing the jurors to have the un-played calls in the
18 jury room.  United States v. Noushfar, 78 F.3d 1442, 1445-46 (9th
19 Cir. 1996).

20    A lay witness, such as an undercover agent or informant, may
21 explain unfamiliar terms contained in a recorded conversation
22 involving the intricacies of drug trafficking or money
23 laundering, even when such matters are central to the facts at
24 issue.  Fed. R. Evid. 701; United States v. Awan, 966 F.2d 1415,
25 1429-30 (11th Cir. 1992).

26    2.   Transcripts for Jury

27    For audio recorded in the English language, the recording
28 itself is the evidence and a transcript of the recording may be

provided to the jury in open court as an aid in following the
conversation.  United States v. Chen, 754 F.2d 817, 824 (9th Cir.
1985); United States v. Phillips, 577 F.2d 495, 501 (9th Cir.
1978).

I.    PHOTOGRAPHS

     The government intends to introduce numerous photographs in
the case including from the search of the marijuana store, from
surveillance, and stills from the store's surveillance cameras.
Photographs are admissible as substantive as well as illustrative
evidence." United States v. May, 622 F.2d 1000, 1007 (9th Cir.
1980).  Foundation for the admissibility of photographs is the
testimony of a witness, who was present at the time of the taking
of the photograph, and who testifies that the photograph is a
fair and accurate representation of the event.  See United States
v. Brannon, 616 F.2d 413, 416 (9th Cir. 1980); United States v.
Oaxaca, 569 F.2d 518, 524-25 (9th Cir. 1978).

J.    IDENTIFICATION OF DEFENDANT

     The government may ask the witnesses it calls at trial to
identify the defendant.  Opinion testimony as to the
identification of a defendant is admissible when the testimony is
based on contacts between the defendant and witness over a period
of time, even if the contacts are of limited duration.  The
amount of time that a witness has to observe the defendant goes
to the weight of the evidence, not admissibility.  United States
v. Butcher, 557 F.2d 666, 669 (9th Cir. 1977).

     Under Federal Rule of Evidence 801(d)(1)(C), the testimony
of a declarant testifying at trial and subject to cross-
examination as to a prior identification of a person after

33

1  perceiving him is not hearsay, even if the witness cannot

2  identify the defendant at trial or the prior identification is

3  equivocal.  See United States v. Owens, 484 U.S. 554, 562-63

4  (1988); United States v. Shyrock, 342 F.3d 948, 982 (2003);

5  United States v. Cueto, 611 F.2d 1056, 1063 (5th Cir. 1980).

6  K.   DUPLICATES

7       A duplicate is admissible to the same extent as an original

8  unless (1) a genuine question is raised as to the authenticity of

9  the original, or (2) under the circumstances, it would be unfair

10  to admit the duplicate instead of the original.  Fed. R. Evid.

11  1003; United States v. Smith, 893 F.2d 1573, 1579 (9th Cir.

12  1990); United States v. Leal, 509 F.2d 122, 125-26 (9th cir.

13  1975); United States v. Pacheco-Lovio, 463 F.2d 232, 233-34 (9th

14  Cir. 1972).

15  L.   CHAIN OF CUSTODY

16       The test of admissibility of physical objects connected with

17  the commission of a crime requires a showing that the object is

18  in substantially the same condition as when the crime was

19  committed (or the object seized).  Factors to be considered are

20  the nature of the article, the circumstances surrounding its

21  preservation and custody and the likelihood of intermeddlers

22  tampering with it.  There is, however, a presumption of

23  regularity in the handling of exhibits by public officials.

24  United States v. Kaiser, 660 F.2d 724, 733 (9th Cir. 1981),

25  overruled on other grounds, United States v. De Bright, 730 F.2d

26  1255, 1259 (9th Cir. 1984) (en banc); United States v. Jefferson,

27  714 F.2d 689, 696 (7th Cir. 1983).

28

34

1  The government is not required to establish all links in the
2  chain of custody or call all persons who may have come into
3  contact with the piece of evidence.  <u>Gallego v. United States</u>,
4  276 F.2d 914, 917 (9th Cir. 1960).  Gaps or defects in chain of
5  custody go to the weight of the evidence rather than its
6  admissibility. <u>United States v. Matta-Ballesteros</u>, 71 F.3d 754,
7  769-70 (9th Cir. 1995); <u>United States v. Robinson</u>, 967 F.2d 287,
8  292 (9th Cir. 1992).  If the trial judge finds that there is a
9  reasonable possibility that the piece of evidence has not changed
10 in a material way, the court has discretion to admit the
11 evidence.  <u>Kaiser</u>, 660 F.2d at 733.
12 M.   REDACTION OF EXHIBITS FROM DEFENDANT'S BUSINESS
13      On or about July 7, 2008, the Court granted the government's
14 in limine ruling excluding from the trial evidence and argument
15 on medical marijuana issues such as, among other things,
16 references to state law or the medicinal use of marijuana.  At
17 trial, the government will introduce exhibits containing (along
18 with relevant infromation) references to topics covered by the
19 Court's in limine ruling such as forms with references to
20 provisions of California law or receipts stating the purchased
21 marijuana was for "medical use."  Where the government seeks to
22 introduce such exhibits, it will offer a version of the document
23 redacted to remove such references.  In the exhibit book, the
24 government will include an unredacted version of the document
25 marked for identification as the "A" version of the exhibit
26 (e.g., Exhibit 10 (redacted) and Exhibit 10 A. (unredacted)), so
27 that the Court can examine the redactions.  Should the Court rule
28 that the unredacted verison be admitted, or other evidence is

35

1 admitted with references to issues covered by the Court's in
2 limine order, the government would respectfully request a
3 limiting instruction.  A proposed limiting instruction along
4 these lines is included in the governments proposed jury
5 instructions in this case.  (See Government's Proposed Jury
6 Instruction No. 36 filed on or about July 17, 2008).

7 N.   PUBLIC RECORDS

8     Domestic public documents under seal or certified copies of
9 public records do not require extrinsic evidence of authenticity
10 as a condition precedent to admissibility.  Fed. R. Evid. 902.

11 O.   TESTIMONY OF WHAT LISTENER UNDERSTOOD DECLARANT TO MEAN

12     A witness may testify to what he or she understood a
13 declarant to mean with respect to a statement made by the
14 declarant to the witness.  United States v. Brooks, 473 F.2d 817,
15 818 (9th Cir. 1973)(per curiam).

16 P.   EFFECT ON THE LISTENER - NON-HEARSAY USE OF OUT-OF-COURT
17     STATEMENTS

18     An out-of-court statement offered to show the effect on the
19 listener, rather then the truth of the matter asserted, is not
20 hearsay.  United States v. Payne, 944 F.2d 1458, 1472 (9th Cir.
21 1991).  To be admissible, such evidence must be relevant to an
22 issue at trial.  United States v. Dean, 980 F.2d 1286, 1288 (9th
23 Cir. 1992).

24
25
26
27
28

36

1    VII.

2    CONCLUSION

3       The government seeks leave to file such supplemental

4    memoranda as may be necessary before or during trial.

5

6    DATED: January 17, 2008   Respectfully submitted,

7                              THOMAS P. O'BRIEN
                               United States Attorney
8
                               CHRISTINE C. EWELL
9                              Assistant United States Attorney
                               Chief, Criminal Division
10

11
                                       /s/
12                             DAVID P. KOWAL
                               RASHA GERGES
13                             Assistant United States Attorney

14                                Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA
15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    37