THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
DAVID P. KOWAL (State Bar No. 188651)
Assistant United States Attorneys
OCDETF Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5136
     Facsimile: (213) 894-0142
     E-mail:   David.Kowal@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | No. CR 07-689-GW |
|---|---|---|
| Plaintiff, | ) | GOVERNMENT'S SENTENCING POSITION PAPER FOR DEFENDANT ARMOND TENNYSON TOLLETTE, JR. |
| v. | ) | |
| ARMOND TENYSON TOLLETTE JR., et al., | ) | Date: January 8, 2007 Time: 9:00 a.m. |
| Defendants. | ) | |

     The government respectfully files its sentencing position

paper for defendant Armond Tennyson Tollette, Jr. ("defendant").

Dated:  December 8, 2008          Respectfully submitted,

                                  THOMAS P. O'BRIEN
                                  United States Attorney

                                  CHRISTINE C. EWELL
                                  Assistant United States Attorney
                                  Chief, Criminal Division

                                          /s/
                                  _____
                                  DAVID P. KOWAL
                                  Assistant United States Attorney

                                    Attorneys for Plaintiff
                                    United States of America

1

**I**

2

**GOVERNMENT'S SENTENCING POSITION**

3
A.    GOVERNMENT'S RESPONSE TO THE PRESENTENCE REPORT

4
      1.    Factual Findings

5
      The government adopts the factual findings of the Pre-

6
Sentence Report ("PSR") of the United States Probation Office

7
("USPO").  As set forth in the PSR, defendant pled guilty to

8
Count One of the indictment pursuant to a written plea agreement

9
with the government filed on July 2, 2008.[1]

10
      2.    Sentencing Guidelines Calculation and Calculation of

11
            Statutory Maximum and Minimum Sentences

12
      As set forth in United States v. Booker, 125 S. Ct. 738

13
(2005), the Guidelines, along with other factors set forth in 18

14
U.S.C. § 3553(a), must be considered by the Court in sentencing a

15
defendant.  With respect to the Guidelines, the PSR concluded

16
that, consistent with the stipulations of the parties, defendant

17
has a base offense level of 13 and, after a reduction for

18
acceptance of responsibility, a total offense level of 11.  (PSR

19
¶¶ 36-44).  Defendant is criminal history category II, due to his

20
prior health care fraud conviction.  (PSR ¶¶ 50-56).  Defendant

21
does not dispute either of these calculations.  (Def.'s Position

22
at 2-3, 6), and the government also concurs with them.

23
      The government also agrees with the PSR that the statutory

24
maximum sentence is 10 years pursuant to 21 U.S.C. §§

25

26
      [1]    Due to a copying error, the version of the signed plea

27
agreement previously filed in this matter lacked page 10.  In
order to complete the record, a full unsigned copy of the plea is

28
attached hereto as Exhibit A.

1

841(b)(1)(D) and 859, which is a lower maximum sentence than set forth in the plea agreement.  (Compare PSR ¶ 112 (5 year maximum pursuant to 21 U.S.C. § 841(b)(1)(D) doubled to ten years by 21 U.S.C. § 859(a) with Plea Agreement ¶ 4; PSR ¶ 113).  No mandatory minimum sentence applies. (PSR ¶ 115).[2]  The government also notes that because defendant was convicted under 21 U.S.C. § 841(a)(1) there is no maximum period of supervised release. See United States v. Johnson, 331 F.3d 962, 967 n.4 (DC Cir. 2003); United States v. Cortes-Claudio, 312 F.3d 17, 21 (1st Cir. 2002).  However, because, due to government error, defendant was incorrectly advised during his plea hearing and in his plea agreement, that his maximum period of supervised release would be five years (see Plea Agreement ¶ 4; PSR ¶ 113), any period of supervised release beyond five years would be unfair.

> 3.   Analysis Under Section 3553(a) and Sentencing Recommendation

The government adopts the sentencing recommendation of the USPO, including the 12-month term of imprisonment, three year period of supervised release,[3] and $100 special assessment, and

[2]    The factual basis for the plea is sufficient to support application of USSG § 2D1.2(a)(4) for a drug offense involving individuals under the age of 21.  (See Plea Agreement at 4-5; PSR ¶¶ 12, 15). However, the statutory mandatory minimum sentence further requires facts demonstrating that the marijuana transactions with minors (as opposed to all marijuana transactions) exceeded five grams of marijuana.  21 U.S.C. 859 (a), last sentence.  As there is no such stipulation in the factual basis of the plea, or in the PSR, the mandatory minimum does not apply.

[3]    The USPO recommends three years of supervised release on page 3 of its recommendation letter, but four years on page 5. (See USPO Letter at 3,5).

the other sentencing recommendations including admission to a drug treatment program.  The government would recommend, however, that defendant be sentenced to one year and one day in prison to afford him eligibility for early release based on good behavior.[4]

The government agrees with the bulk of the analysis of the USPO in it justification for its sentencing recommendation. Defendant recommended marijuana to numerous people, so that the quantity determination in his sentencing guideline range "substantially under-represent the seriousness of his offense." (December 22, 2008 USPO Letter ("USPO Letter") at 4).  In addition, the suggested prison sentence is warranted by the fact that defendant committed the instant violation while on federal pretrial supervision for his participation in a medicare fraud, demonstrating the need to afford adequate deterrence and to promote respect for the law.  (Id. at 4; PSR 51-53); 21 U.S.C. § 3553(a)(2).

Contrary to defendant's arguments, defendant was not merely one of many doctors who have recommended marijuana to patients as permitted by California state law.  (Def.s' Position at 3-6). Here, as admitted in the factual basis for the plea, defendant acted far beyond the scope of any legitimate medical practice, even assuming that a marijuana recommendation can be an acceptable part of such a practice.  Defendant, by his own admission, "maintained no medical equipment at his home" where he saw his purported patients and "typically provided his

_____

[4]   The government understands that an inmate is not eligible for such "good time" credits unless their sentence is at least one day greater than a year.

physician's statement for marijuana customers without conducting
any physical examination or requesting to see any medical
records." (Plea Agreement at 4-5). Defendant also arranged for
payment of referral fees to customers who brought him more
"patients" and paid for at least one referral fee from his own
supply of marijuana. (Id. at 5). Defendant even smoked
marijuana with his customers. (Id.). As revealed in the
undercover investigation in this case, defendant also made no
effort to confirm or evaluate the statements of his purported
patients regarding their asserted medical condition. He simply
provided his recommendation, so long as the price was right.
(See Search Warrant Affidavit at ¶¶ 26, 32, 39, attached hereto
as Exhibit B).

     In sum, it appears that, as with his medicare fraud
activities in 2003 and 2004, in this case too, defendant sold his
medical license for profit, while abandoning the calling and
standards of his profession. (See PSR ¶ 53). Indeed, the fact
that defendant would so readily engage in such dishonest and
illegal conduct while under supervision for another clear abuse
of his medical license further supports the USPO's
recommendation. The one year sentence is thus necessary to
reflect the seriousness of the offense, to afford deterrence, and
to protect the public from further similar crimes. See 18 U.S.C.
§ 3553(a)(2)(A)-(C).

     4.   Defendant's Argument for a Concurrent Sentence and
          Leniency Are Unfounded

     In addition to the flawed argument regarding his role as a
doctor, defendant also argues (1) for his sentence to run

4

concurrently with his prior conviction for medicare fraud in the Northern District of California, and (2) for leniency based on purported sentencing disparity between himself and other defendants in the medicare fraud case.  The Court should reject both of these arguments.

A district court's choice of a concurrent or consecutive term is governed by 18 U.S.C. § 3584(a).  The first sentence of Section 3584(a) provides:

> If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms <u>may</u> run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole object of the attempt.

18 U.S.C. § 3584(a) (emphasis added).  As the emphasized word makes clear, § 3584(a) "confers discretion on the district court as to whether to impose a consecutive or a concurrent sentence." <u>United States v. Williams</u>, 291 F.3d 1180, 1192 (9th Cir. 2002). Here, the government concurs with the recommendation of the USPO that defendant's sentence in the present case should be ordered to run consecutively to his sentence for medicaid fraud imposed by the district court in the Northern District of California. (See USPO Letter at 1, 5).

First, as the USPO notes, a consecutive sentence is necessary to promote respect for the law.  (<u>Id.</u> at 5). Defendant's medicaid fraud conduct was entirely seperate in time and place from his instant offense, as it took place in the Northern District of California almost two years before defendant's activities in the present case.  (<u>Id.</u> at 5; PSR ¶ 53

5

1   (medicare fraud occurred in 2003 and 2004 in Milpitas,

2   California)). While the conduct in both cases was similar in the

3   general sense that they both involved egregious and criminal

4   abuses of defendant's medical license, that is a reason for a

5   more harsh sentence, not a more lenient one. Defendant's

6   willingness to offend again after being charged in the medicare

7   case demonstrates that defendant did not learn any lessons from

8   his Northern California indictment, and also afforded little

9   respect for court orders when he committed the instant crimes

10  while on pretrial release. Given that the two crimes involved

11  completely seperate conduct, a concurrent sentence would be

12  nothing more than an unjustified windfall, in essence providing

13  judicial sanction for a defendant to commit multiple crimes until

14  incarcerated, with no consequence for any crime after the first.

15      Nor should the Court be influenced by defendant's contention

16  that the sentence in the medicare fraud case was a result of the

17  indictment in this matter. Preliminarily, a thirty month

18  sentence for a doctor who abused his position of trust by

19  exploiting his medical license as part of a scheme to defraud the

20  government of over $1,000,000 is far from unreasonable, even

21  without reference to the instant offense. This appears

22  especially true where, rather than fully accepting

23  responsibility, defendant contended to the USPO in the Northen

24  District that his role in this serious medicaid fraud was a

25  result of being "naive and gullible in trusting people too much."

26  (PSR ¶¶ 53-54). Defendant also provides no sentencing transcript

27  or court order indicating the extent to which the charges here

28  influenced the sentence in the fraud case, if at all. In any

6

event, it would be entirely rational for the district courts in both cases to impose greater punishment on defendant due to the fact that defendant had committed multiple crimes within a period of a few years.

The related allegation that defendant's conviction in this case deprived him of the "substantial probability" of a departure for assisting the government in the Northern District matter is also misguided.  (Def. Position at 7).  It was defendant's knowing and willful choice to commit further crimes after presumably promising the government that he would not do so, that resulted in a loss of this potential benefit, just as any further crimes committed by defendant now would deprive him of the benefits of his plea in the current case.  (See Plea Agreement ¶ 16 (d)).  Again, the fact that defendant committed the instant crimes when he clearly should have been on his best behavior serves as an aggravating, rather than mitigative, factor in sentencing.[5]

Nor has defendant made a persuasive case that his sentence in this case should be reduced because he was sentenced to more prison time than other defendants in the fraud case.  First, defendant provides no information about how his conduct, criminal history, or other relevant sentencing circumstances, were similar or different from his co-defendants in the Northern District.  He

---

[5]   Moreover, the assumption that defendant would have received any sentencing benefit for his alleged cooperation had he not re-offended is entirely speculative, as evidenced by the fact that defendant himself can only characterize this benefit as a "probability."

7

1   provides no information as to whether co-defendants cooperated

2   with the government, had different roles in the offense, or like

3   him, abused his position of trust and used his special skill as a

4   licensed doctor to commit the fraud.  See USSG § 3B1.3.  Second,

5   defendants sentences do not seem grossly different from his co-

6   defendant's in any event.  Even from the information provided by

7   defendant, it appears defendant received only six more months

8   than one co-defendant and nine more months than another.  (Def.'s

9   Position, Ex. B at 2-3.  Third, and most importantly, defendant

10  does not explain whether other defendants, like him, clearly

11  violated court orders in the Northern District by committing

12  additional crimes while on pretrial release, thus emphasizing the

13  need for defendant's sentence in that district to promote respect

14  for the law and to afford additional deterrence.

15  B.   CONCLUSION

16       For the foregoing reasons, the government respectfully

17  recommends that the Court sentence defendant in accord with the

18  recommendations of the USPO, with the exception that defendant be

19  sentenced to an extra day of imprisonment beyond the recommended

20  12 month term to afford him the opportunity for good time credit.

21  Dated:  December 8, 2008        Respectfully submitted,

22                                  THOMAS P. O'BRIEN
                                    United States Attorney
23
                                    CHRISTINE C. EWELL
24                                  Assistant United States Attorney
                                    Chief, Criminal Division
25
                                    _____/s/_____
26                                  DAVID P. KOWAL
                                    Assistant United States Attorney
27
                                     Attorneys for Plaintiff
28                                   United States of America

                                    8