SEAN K. KENNEDY (No. 145632)
Federal Public Defender
(E-mail: Sean_Kennedy@fd.org)
REUVEN COHEN (No. 231915)
Deputy Federal Public Defender
(E-mail: Reuven_Cohen@fd.org)
JOHN LITTRELL (No. 221601)
Deputy Federal Public Defender
(E-mail: John_Littrell@fd.org)
MICHAEL TANAKA (No. 85026)
Deputy Federal Public Defender
(E-mail: Michael_Tanaka@fd.org)
GUY C. IVERSEN (No. 150833)
Deputy Federal Public Defender
(E-mail: Guy_Iversen@fd.org)
321 East 2nd Street
Los Angeles, California  90012-4202
Telephone: (213) 894-5310
Facsimile: (213) 894-0081

Attorneys for Defendant
CHARLES LYNCH

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>     v.<br><br>CHARLES LYNCH,<br><br>              Defendant. | NO. CR 07-689-GW<br><br>CHARLIE LYNCH'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES RE: SENTENCING; EXHIBITS |

Defendant Charles Lynch, through his counsel, Deputy Federal Public
Defenders John Littrell, Reuven Cohen, Michael Tanaka and Guy C. Iversen,
hereby submits his Memorandum of Points and Authorities Re: Sentencing.

//

Mr. Lynch respectfully requests leave to present additional argument and evidence at the hearing in this matter.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: June 2, 2009              By      /s/
                                    REUVEN L. COHEN
                                    Deputy Federal Public Defender

DATED: June 2, 2009              By      /s/
                                    JOHN LITTRELL
                                    Deputy Federal Public Defender

DATED: June 2, 2009              By      /s/
                                    MICHAEL TANAKA
                                    Deputy Federal Public Defender

DATED: June 2, 2009              By      /s/
                                    GUY C. IVERSEN
                                    Deputy Federal Public Defender

# I.

## The Mandatory One-Year Minimum Sentencing Provision in 21 U.S.C. § 859 Does Not Apply to Mr. Lynch Because A "Greater Minimum Sentence Is Otherwise Provided By Section 841(b)" For His Conviction in Count One.

21 U.S.C. § 859 provides, in relevant portion, as follows:

Except as provided in Section 860 of this title, any person at least eighteen years of age who violates section 841(a)(1) of this title by distributing a controlled substance to a person under twenty-one years of age is (except as provided in subsection (b) of this section) subject to (1) twice the maximum punishment authorized by section 841(b) of this title, and (2) at least twice any term of supervised release authorized by section 841(b) of this title, for a first offense involving the same controlled substance and schedule. Except to the extent a greater minimum sentence is otherwise provided by section 841(b) of this title, a term of imprisonment under this subsection shall be not less than one year.

21 U.S.C. § 859. By its plain language, 21 U.S.C. § 859 only calls for a mandatory minimum sentence of one year of imprisonment if a "greater minimum sentence" is NOT "otherwise provided by section 841(b) of this title." In this case, Mr. Lynch was also convicted, in Count One, of violating 21 U.S.C. §§ 846, 841(a), (b)(1). Because 21 U.S.C. § 841(b) provides a "greater minimum sentence" than the one set forth in 21 U.S.C. § 859, that is, a sentence of five years, the one-year mandatory sentence provision in § 859 does not apply.

In United States v. Williams, 558 F.3d 166 (2nd Cir. 2009), the defendant was convicted of, among other things, distributing crack cocaine, 21 U.S.C. § 841(a), (b)(1)(A), which called for a ten-year minimum sentence, and possessing or carrying a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c), which called for a five-year mandatory minimum sentence. The sentencing

provision of 18 U.S.C. § 924(c) provided in relevant part as follows:

> Except to the extent that a greater minimum sentence is otherwise
> provided by this subsection or by any other provision of law, any
> person who, during and in relation to any crime of violence or drug
> trafficking crime . . . uses or carries a firearm, or who, in furtherance
> of any such crime, possesses a firearm, shall, in addition to the
> punishment provided for such crime of violence or drug trafficking
> crime . . . be sentenced to a term of imprisonment of not less than 5
> years.

18 U.S.C. § 924(c) (quoted in Williams, 558 F.3d at 167-68).  Pursuant to 18
U.S.C. § 924(c), the defendant was sentenced to five years imprisonment in
addition to the 135 months imprisonment for the drug trafficking crime.  On
appeal, the Court held that the five-year mandatory minimum sentencing provision
in 18 U.S.C. § 924(c) did not apply to the defendant.  The court noted that the
plain language of § 924(c) stated that it would not apply to a defendant where "a
greater minimum sentence is otherwise provided by this subsection or by any other
provision of law."  Id.  Because the defendant was also convicted of 21 U.S.C. §
841, and because that statute provided a greater minimum sentence, the Second
Circuit held that the mandatory five-year minimum sentencing provision in 924(c)
did not apply.  See also United States v. Whitley, 529 F.3d 150 (2d Cir. 2008)
(holding that the "except" clause of Section 924(c) "means what it literally says" –
that the minimum sentences it requires do not apply where "a greater minimum
sentence is otherwise provided by . . . any other provision of law").[1]

---

[1]     The First, Fourth, Sixth and Eighth Circuits have interpreted the "except"
provision of 18 U.S.C. § 924 contrary to Williams.  See United States v. Parker,
549 F.3d 5 (1st Cir. 2008); United States v. Studifin, 240 F.3d 415 (4th Cir. 2001);
United States v. Jolivette, 257 F.3d 581 (6th Cir. 2001); United States v. Alaniz,
235 F.3d 386 (8th Cir. 2000).  The Ninth Circuit has not ruled on the issue, nor has
it addressed the issue in the context of the "except" clause in 21 U.S.C. § 859.

1    21 U.S.C. § 859 must also be interpreted to mean "exactly what it says."

2  After all, the sentencing provision in 21 U.S.C. § 859 is even more precise than

3  the parallel language in 18 U.S.C. § 924(c).  Whereas the "except" clause of §

4  924(c) indicates that it does not apply where a greater punishment is provided "by

5  any other provision of law," the "except" clause in § 859 indicates only that it does

6  not apply only where a greater punishment is specifically provided by § 841(b), as

7  it is in this case.  Moreover, as the Court noted in Williams, there is conflicting

8  language in the text of § 924(c) that at least arguably made it unclear whether

9  Congress intended that it should not result in mandatory consecutive sentences.

10  See id. at 172 (noting that the "general rule of Section 924(c) is that its penalties

11  are cumulative").  21 U.S.C. § 859, by contrast, is not ambiguous and it makes no

12  provision for cumulative or consecutive punishments.  § 859 is a relatively simple

13  sentencing enhancement that can be applied only to one statute – 21 U.S.C. § 841.

14  And it clearly and unequivocally makes an exception for cases in which 21 U.S.C.

15  § 841(b) provides for a "greater minimum punishment," as it does in this case.

16    United States v. Kakatin, 214 F.3d 1049 (9th Cir. 2000) does not dictate a

17  different result.  In that case, the defendant argued that the "safety valve"

18  provision in 18 U.S.C. § 3553(f) should apply to his conviction for distributing

19  narcotics within 1000 feet of a school under 18 U.S.C. § 860.  The Court

20  disagreed, noting that the plain language of the safety valve statute made it clear

21  that it only applied to three statutes – 21 U.S.C. §§ 841, 844, and 846.  Moreover,

22  the Court noted that the defendant's conviction for distributing drugs near a school

23  under § 860 was a more serious offense than that punished by § 841.  In the

24  context of Kakatin's case, the mere distribution of drugs pursuant to § 841 was a

25  lesser-included offense and called for a less severe punishment with no mandatory

26  minimum sentence provided for by statute.  The Court reasoned that Congress

27  could reasonably have intended that the "safety valve" provision not apply to §860

28

1  offenses because they deserved greater punishment. Id. at 1051.[2]

2       Unlike the defendant in Kakatin, Mr. Lynch does not argue that the "safety

3  valve" should apply to his § 859 conviction.  Rather, the argument is that the

4  sentencing provision provided for in § 859 does not apply to *him*.  Whereas the

5  defendant in Kakatin sought to avoid the plain language of the safety-valve

6  statute, Mr. Lynch asks that the Court follow the plain language of the sentencing

7  statute.  And unlike the Kakatin case, where the § 841 conviction was a lesser-

8  included offense to § 860, and did not provide for any mandatory minimum

9  sentence, here the § 841 conviction calls for a far *greater* minimum sentence than

10 the § 859 conviction, so it cannot be considered a lesser-included offense to § 859.

11 Indeed, as indicated herein, the fact that 21 U.S.C. § 841(b) provides for a greater

12 minimum sentence than that provided by §859 is precisely *why* the mandatory

13 minimum sentence in §859 does not apply to Mr. Lynch.

14       Nor does the application of the "safety valve" provision of 18 U.S.C. §

15 3553(f) to the mandatory minimum sentence provided by § 841 in Count One, as

16 Mr. Lynch urges the Court to do, undermine the argument that the one-year

17 minimum sentence provided in § 859 does not apply to Mr. Lynch.  The plain

18 language of § 859 provides that its sentencing provision does not apply where a

19 greater minimum sentence is "*otherwise provided* by section § 841(b) . . . ."

20 (emphasis added).  21 U.S.C. § 859 does not require that the minimum sentence

21 provided by statute be the same as the sentence ultimately imposed.  It is enough

22 that § 841(b) "provides" for a greater minimum punishment in a given case.  After

23 all, any of the mandatory minimum sentences provided for in 21 U.S.C. § 841(b)

24 may be overridden by the "safety valve" provision in 18 U.S.C. § 3553(f) where

25 the defendant meets all of the elements.  The fact that a particular defendant meets

26 the elements of the "safety valve" for a particular § 841 offense cannot be

27 ───────────────

28 [2]    21 U.S.C. § 859 is similar in structure to 21 U.S.C. § 860 and calls for like
   punishment, albeit for slightly different conduct.

determinative as to whether the sentencing provision in 21 U.S.C. § 859 applies.
And only in an extremely rare case, such as this one, would a defendant who was
subject to any of the mandatory minimum sentences provided in 21 U.S.C. §
841(b) nonetheless be likely to receive a sentence of less than one year.

## II.

**The Parsimony Principle in 18 U.S.C. § 3553(a) And the Rule of Lenity
Requires That the Court Impose a Sentence Below the Mandatory Minimum
Sentences Set Forth in 21 U.S.C. §§ 841(b) and 859 Because Applying Those
Portions of the Statutes Would Result in a Sentence That Is Greater Than
Necessary to Achieve the Purposes of The Sentencing Reform Act**

Title 21 U.S.C. § 841(b)(1)(B)(vii) imposes a mandatory minimum sentence
of five years on every defendant convicted of distributing 100 kilograms or more
of marijuana, whether or not that marijuana is for medical use.  Title 21 U.S.C. §
859 imposes a mandatory minimum sentence of one year on every defendant
convicted of distributing marijuana to any person under the age of 21, also without
regard to whether the marijuana is for medicinal use.  But the statute that governs
this Court's sentencing decision, 18 U.S.C. § 3553(a), requires that the Court
impose an *individualized* sentence that is "sufficient, but no greater than
necessary," to achieve the purposes of the Sentencing Reform Act.  See id.  These
statutes are in direct conflict as applied in this case.  Mr. Lynch respectfully
requests that the Court resolve the conflict in his favor by declining to impose the
mandatory minimum sentences called for in 21 U.S.C. § 841(b) and 859.

Pursuant to 18 U.S.C. § 3553(a), a typical defendant's sentence is
determined by a number of factors. A sentencing Court must fashion a sentence
which considers all the following factors:  (1) the nature and circumstances of the
offense and the history and characteristics of the defendant;  (2) the need for the
sentence imposed to further the purposes set forth in 18 U.S.C. § 3553(a)(2)(A-D);
(3) the kinds of sentences available;  (4) the kinds of sentence and sentencing

range applicable to the defendant as set by the United States Sentencing Guidelines as well as any pertinent policy statements issued by the Sentencing Commission;  (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).  There are no mandatory minimums contemplated in § 3553(a).

The core congressional command in 18 U.S.C. § 3553(a) is that district courts must "impose a sentence sufficient, but not greater than necessary, to comply" with the specific purposes of punishment.  The statutory language distills one of the most long-established maxims of criminology, "the principle of parsimony."  That principle provides that punishment should never exceed the minimum necessary to effect the purposes of punishment.  This consideration requirement reflects the fundamental importance of two indispensable elements of just sentencing: reasoned judgment and individualized tailoring. Section 3553(a) compels sentencing judges to think carefully about the general purposes of punishment, the history and character of the defendant, the nature of the offense and the views of the Sentencing Commission.  Judges must then exercise reasoned discretion to tailor a sentence for the particular person, who stands before the Court, and ultimately provide reasons for the sentence.  See 18 U.S.C. § 3553(c).

For the reasons set forth in Mr. Lynch's Sentencing Position Papers, Mr. Lynch submits that the application of a mandatory minimum term of imprisonment under the unique circumstances of this case would result in a sentence far *greater* than necessary to achieve the purposes set forth in the Sentencing Reform Act, and one that would undermine and undervalue those purposes.  This Court has acknowledged that a mandatory minimum sentence is not warranted in this case. See Reporter's Transcript of April 23, 2009 Sentencing Hearing at 33:18-19, attached hereto as Exhibit A ("[F]rankly, I don't think that this particular case is one which merits a mandatory minimum.").

1    Therefore, the portions of 21 U.S.C. §§ 841 and 859 that call for mandatory

2    minimum sentences are in direct conflict with 18 U.S.C. § 3553(a), which requires

3    a sentence that is "sufficient, but no greater than necessary" to achieve the

4    statutory goals of sentencing pursuant to 18 U.S.C. § 3553(a).  In United States v.

5    Larson, 558 F. Supp.2d 1103 (D. Mont. 2008), the Court held that the mandatory

6    minimum sentenced called for in 18 U.S.C. § 2252(b), as applied to the defendant

7    in that case, undermined the purposes of the Sentencing Reform Act and violated

8    the Eighth Amendment prohibition against Cruel and Unusual Punishment.  The

9    court declined to impose the mandatory minimum sentence, noting that

10   "Post-Booker, this Court's obligation is to fashion a reasonable sentence . . . ." Id.

11   at 1113.  The court went on to say that: "[n]one of these purposes will be served by

12   sending [Larson] to a federal prison for five years. . . .  Such a sentence also

13   undermines the purposes of punishment as codified by Congress." Id.

14       Likewise, in this case, the conflict between the unnecessarily harsh

15   mandatory minimum terms set forth in 21 U.S.C. §§ 841(b) and 859 must be

16   reconciled with the parsimony principle embodied by 18 U.S.C. § 3553(a).  The

17   rule of lenity requires that the Court resolve the conflict between the two criminal

18   statutes in Mr. Lynch's favor.  See Bell v. United States, 349 U.S. 81, 83 (1955).

19       When Congress leaves to the Judiciary the task of imputing to

20       Congress an undeclared will, the ambiguity should be resolved in

21       favor of lenity.  And this not out of any sentimental consideration, or

22       for want of sympathy with the purpose of Congress in proscribing

23       evil or anti-social conduct.  It may fairly be said to be a

24       presupposition of our law to resolve doubts in the enforcement of a

25       penal code against the imposition of harsher punishment.

26   Id.; see also United States v. Keen, 104 F.3d 1111, 1118 (9th Cir. 1997); United

27   States v. Bass, 404 U.S. 336, 347 (1971) ("[The Rule of Lenity] 'embodies the

28   instinctive distastes against men languishing in prison unless the lawmaker has

1   clearly said they should.'") (quoting H. Friendly, "Mr. Justice Frankfurter and the

2   Reading of Statutes," Benchmarks 196, 209 (1967)).

3        Therefore, if the Court holds that a mandatory minimum sentence is

4   required by 21 U.S.C. §§ 841 or 859, notwithstanding Mr. Lynch's arguments with

5   respect to the "safety valve" and sentencing entrapment, Mr. Lynch respectfully

6   requests that the Court decline to apply those statutes, as they are in conflict 18

7   U.S.C. § 3553(a), which requires that the Court impose a sentence that is "no

8   greater than necessary" to achieve the purposes of the Sentencing Reform Act.

9                                        **III.**

10  **Mr. Lynch's Compliance With State Law And His Intent To Provide Safe,**

11  **Legal Medicine to His Community Is Relevant To the Court's Determination**

12  **As To Whether the "Organizer/Leader" Enhancement Should Be Applied**

13       Mr. Lynch acted in compliance with California state law because he was a

14  member of a lawful medical marijuana "collective."  Under California law, there

15  are several legal methods of distributing medical marijuana, which are often

16  conflated.  One -- the primary caregiver model --  was the subject of the California

17  Supreme Court's decision in People v. Mentch, 45 Cal.4th 274 (2008), which is

18  not at issue here. The other -- the collective model -- is at issue here,

19  notwithstanding the inaccurate designation of Lynch as a primary caregiver.[3]

20       In 2003, the California Legislature passed Senate Bill 420, also known as

21  the "Medical Marijuana Program Act" or "the MMPA," which provides that

22  "Qualified patients, persons with valid identification cards, and the designated

23  primary caregivers of qualified patients and persons with identification cards, who

24  associate within the State of California in order collectively or cooperatively to

25  cultivate marijuana for medical purposes, shall not solely on the basis of that fact

26  ────────────────────

27  [3]     As set forth in the Declaration of Joseph Elford, Dkt. No. 279, both his own
    attorneys and counsel for the government previously operated under the false
28  impression that Mr. Lynch's compliance with state law depended on his role as a
    "primary caregiver."  As set forth in that Declaration and herein, it does not.

be subject to state criminal sanctions under Section 11357, 11358, 11359, 11360, 11366, 11366.5, or 11570." Cal. Health & Safety Code § 11362.775. As the court explained in People v. Urziceanu, 132 Cal.App.4th 747 (2005):

> This new law represents a dramatic change in the prohibitions on the
> use, distribution, and cultivation of marijuana for persons who are
> qualified patients or primary caregivers and fits the defense defendant
> attempted to present at trial. Its specific itemization of the marijuana
> sales law indicates it contemplates the formation and operation of
> medicinal marijuana cooperatives that would receive reimbursement
> for marijuana and the services provided in conjunction with the
> provision of marijuana. Contrary to the People's argument, this law
> did abrogate the limits expressed in the [primary caregiver] cases we
> discussed in Part IA which took a restrictive view of the activities
> allowed by the Compassionate Use Act.

Id. at 785.

Based on this new law, the California Attorney General issued Guidelines on August 25, 2008, that recognize the legality of medical marijuana collectives and cooperatives under California law. California Attorney General's Guidelines for the Security and Non-Diversion of Marijuana Grown for Medical Use [hereinafter, the "AG Guidelines"]. The AG Guidelines state "the opinion of this Office that a properly organized and operated collective or cooperative that dispenses medical marijuana through a storefront may be lawful under California law," so long as it comports with the Guidelines. AG Guidelines at 11. Lynch's operation of a storefront dispensary complied with these Guidelines.

In particular, the term one uses in describing a collective is not dispositive of its legality under California law. In People v. Urziceanu, for instance, the defendant operated a dispensary several years prior to the enactment of the MMPA. See 132 Cal.App.4th at 760-61. Although he had members of the

collective sign consent forms designating the collective as their "primary caregiver of health care services for the provision of medical cannabis as per the [C]ompassionate Use Act of 1996," id. at 760, and the court found that a primary caregiver defense was not available to the defendant, id. at 767-774, the court, nonetheless, found that he could assert a collective defense under the MMPA, see id. at 783-786.  As the AG Guidelines make clear, Mr. Lynch could also have availed himself of such a defense under state law, if he had ever been charged.

Nor does People v. Mentch (2008) 45 Cal.4th 274, which involved primary caregivers, abrogate these authorities.  Contrary to the government's representation at the last hearing before this Court, see RT (4/29/09: 98), the Mentch case did not address California Health & Safety Code § 11362.775.  To the contrary, as the California Attorney General recently recognized, the Court observed in Mentch that "the Guidelines are consistent with California law."  Attorney General's Request for Judicial Notice at 4 (quoting Mentch, 45 Cal.4th at 285 n.6) ("the guidelines are wholly consistent with case law and the statutory text") (emphasis in original), attached hereto as Exhibit B.

As stated in Mr. Lynch's position re: sentencing, the United States Sentencing Guidelines should not be blindly applied where they lead to anomalous or unfair results.  Mr. Lynch's full compliance with state law, and his manifest intention to help his community by providing safe access to medical marijuana, with the blessing of his mayor and city attorney and under the authority of a business license, are but a few of the factors that set him far apart from the traditional drug trafficker to which the "organizer-leader" enhancement in U.S.S.G. § 3B1.1 is ordinarily applied.  Clearly, Charlie Lynch is not the "organizer / leader" that the Sentencing Commission had in mind.

The United States Sentencing Commission based § 3B1.1, for example, on the assumption that "persons who exercise a supervisory or managerial role in the commission of an offense tend to profit more from it and present a greater danger

to the public and/or are more likely to recidivate." U.S.S.G. § 3B1.1, Background. None of those assumptions are correct with respect to Mr. Lynch. As set forth extensively in the sentencing briefing, Mr. Lynch did not profit at all from Central Coast Compassionate Caregivers; he lost a substantial sum.[4] Mr. Lynch is not likely to recidivate, and, in fact, has an extraordinary character for law-abidingness. Most importantly, Mr. Lynch is not now, and never was, a danger to the public; he was a compassionate, gentle man who did not cause suffering in his community, but rather, ameliorated it.

Where, as here, the advisory guidelines fail to give appropriate weight to the statutory sentencing factors set forth in 18 U.S.C. § 3553(a), courts are duty-bound to reject them in favor of a sentence that gives appropriate weight to the equities in a given case. See Kimbrough v. United States, 128 S. Ct. 558, 575 (2007). More significantly, courts must reject the advisory sentencing guidelines where those guidelines undermine or obscure, rather than help achieve, the over-arching goal of imposing a sentence that is "sufficient, but no greater than necessary" to achieve just punishment. See Rita v. United States, 127 S. Ct. 2456, 2465 (2007); Gall v. United States, 128 S. Ct. 586, 596 (2007). As the Court has acknowledged, given the unique circumstances of this case, a mandatory minimum term of imprisonment simply isn't merited for Charles Lynch. To the extent that the "organizer / leader" provision of U.S.S.G. § 3B1.1 fails to take into account those unique circumstances, the Court must reject it.[5]

---

[4]     Mr. Lynch has petitioned for bankruptcy.

[5]     To the extent this Court intends to make an adverse finding for purposes of applying the "organizer / leader" enhancement in U.S.S.G. § 3B1.1 as to whether Mr. Lynch actually complied with State law or had a good faith intent to comply with State law, Mr. Lynch respectfully requests a evidentiary hearing on the matter.

**IV.**

**If The Court Holds that a Term of Imprisonment Must Be Imposed, Mr.**

**Lynch Should Be Ordered to Serve That Term Of Imprisonment In His Home**

21 U.S.C. § 841(b) appears on its face to require the sentencing Court to impose a "term of imprisonment" which may not be less than five years. 21 U.S.C. § § 841(b). Likewise, 21 U.S.C. § 859 requires a "term of imprisonment" of not less than one year. 21 U.S.C. § 859. But as set forth herein, a straight term of incarceration would be far greater punishment than necessary to achieve the goals of the Sentencing Reform Act. Moreover, in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, sentencing courts are required to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. §3582. The term "imprisonment" as used in 21 U.S.C. §§ 841 and 859 is not defined by statute. See 21 U.S.C. § 802 (definitions). Therefore, nothing in the statute precludes this Court from ordering that Mr. Lynch serve any "term of

//

//

//

//

//

//

//

//

//

//

//

//

/

14

imprisonment" in home detention or community confinement.  To the extent that the Court holds that 21 U.S.C. §§ 841(b) and 859 apply, Mr. Lynch respectfully requests that it order that any term of imprisonment be served in home detention.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED:  June 2, 2009        By _____/s/_____
                                  REUVEN L. COHEN
                                  Deputy Federal Public Defender

DATED: June 2, 2009         By _____/s/_____
                                  JOHN LITTRELL
                                  Deputy Federal Public Defender

DATED: June 2, 2009         By _____/s/_____
                                  MICHAEL TANAKA
                                  Deputy Federal Public Defender

DATED:  June 2, 2009        By _____/s/_____
                                  GUY C. IVERSEN
                                  Deputy Federal Public Defender

15