1                 UNITED STATES DISTRICT COURT

2                CENTRAL DISTRICT OF CALIFORNIA

3                      WESTERN DIVISION

4         THE HON. GEORGE H. WU, JUDGE PRESIDING

5

6    UNITED STATES OF AMERICA,        )
                                      )
7                       Plaintiff,    )
                                      )
8            vs.                      ) NO. CR 07-689-GW
                                      )
9    CHARLES C. LYNCH, et al.,        )
                                      )
10                      Defendants.   )
     _____)

11

12

13              REPORTER'S TRANSCRIPT ON APPEAL

14                 Los Angeles, California

15

                Monday, July 7, 2008; 8:14 A.M.
16

17

18

19

20

21                            Wil S. Wilcox, CSR 9178
                              Official Federal Reporter
22                            312 North Spring Street
                              Suite 430
23                            Los Angeles, California 90012
                              Phone:(213) 290-2849
24                            Fax:  (818) 286-3910
                              Email: wswilcox@pobox.com
25

 1   **APPEARANCES:**

 2

 3   FOR THE PLAINTIFF:    THOMAS P. O'BRIEN
                          UNITED STATES ATTORNEY
 4                        By:  DAVID P. KOWAL
                          And: RASHA GERGES
 5                        ASSISTANT UNITED STATES ATTORNEYS
                          1400 United States Courthouse
 6                        312 N. Spring Street
                          Los Angeles, California 90012
 7                        (213) 894-5136

 8

 9   FOR THE DEFENDANT:    SEAN KENNEDY
                          FEDERAL PUBLIC DEFENDER
10                        By:  REUVEN L. COHEN
                          And: JOHN L. LITTRELL
11                        321 East Second Street
                          Los Angeles, California 90012
12                        (213)894-4454

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1            LOS ANGELES, CA.;  MONDAY, JULY 7, 2008; 8:14 AM

 2                              -oOo-

 3            THE COURT:  Let me call the matter of United

 4   States vs. Lynch and Tollette.  Let me have appearance of

 5   counsel.

 6            MR. KOWAL:  Good morning, Your Honor.  David Kowal

 7   for the United States.  With me at counsel table is

 8   Assistant United States Attorney Rasha Gerges and the case

 9   agent in this matter Rachel Burkdoll.

10            THE COURT:  All right.

11            MR. LITTRELL:  Good morning, Your Honor.

12            MR. COHEN:  Good morning, Your Honor.

13            MR. LITTRELL:  John Littrell here with Charles

14   Lynch.

15            MR. COHEN:  Reuven Cohen here with John Littrell.

16            MR. KROGER:  William Kroger here with

17   Dr. Tollette.

18            (USA v. Tollette matter not transcribed.)

19            THE COURT:  Okay.  In regards to United States v.

20   Lynch, let me ask counsel, do you want me to just go through

21   each one in turn?

22            MR. COHEN:  That sounds fine, Your Honor.

23            THE COURT:  All right.  Let's do the first motion

24   in limine or at least what the Court designates as the first

25   motion in limine, which is the standard ruling on the motion
```

1    to dismiss the indictment for the destruction of the

2    evidence.

3            Let me ask; does either side want to argue

4    anything about this one?

5            MR. LITTRELL:  This is the Youngblood motion, Your

6    Honor, correct?

7            THE COURT:  Yes.

8            MR. LITTRELL:  It sounds like the Court's

9    tentative is that a further hearing is necessary.

10           THE COURT:  An evidentiary hearing if you want,

11   and that is only as to Exhibit No. 5.  I find that the

12   defendant hasn't established a basis as to Exhibit No. 2 and

13   also the Court would not dismiss the indictment as a whole,

14   but there is the possibility that the Court would do

15   something in regards to those counts which are dependent

16   upon Exhibit No. 5.  And then the Court hasn't decided what

17   it would do if it finds that there is a destruction of the

18   evidence that would fall within the Youngblood parameters.

19           MR. LITTRELL:  Well, it sounds like we do have

20   quite a bit to talk about then.  May I have a moment with

21   the government, Your Honor?

22           THE COURT:  Sure.  The question is do you want to

23   talk about it now or do you want to talk about it at a

24   further hearing?  Either is fine.

25           (Discussion off the record.)

1          MR. LITTRELL:  Your Honor, I think that what might

2     make sense is to -- I think a lot of the issues are -- can

3     be resolved on paper, so I would like to urge the Court to

4     rule in our favor based on what we've submitted to the

5     extent that the Court --

6          THE COURT:  You have my tentatives.  You know what

7     my thinking is on the papers.

8          MR. LITTRELL:  That's correct.  But what seems to

9     be left open is the issue of whether -- that comparable

10    evidence is available.  The government has just informed me

11    that it's their position that these root balls are not

12    capable of being counted, so that might eliminate one of the

13    factual disputes that the Court might rely on.

14         THE COURT:  It's not really necessarily that.

15    It's a question as to -- my understanding is the items were

16    taken and initially counted, although the actual count

17    wasn't videotaped.  The items were stuck in a box.  The box

18    was sent to a laboratory.  The laboratory told the DEA agent

19    that there was mold and insects and so they wanted to

20    destroy the item.  The DEA agent said, that's fine, but in

21    fact the items weren't destroyed by the lab.  They were

22    simply re boxed.  And they are available, although the

23    laboratory which contains them refuses to reopen the box

24    because they claim it's a biohazard.  I don't know why it

25    would necessarily be a biohazard.  It's not like it's a meth

1    lab.

2          MR. KOWAL:  Your Honor, just to be precise, they

3    won't retest it.

4          THE COURT:  Oh, they won't retest it.

5          MR. KOWAL:  Defense counsel just asked whether we

6    would make it available, we will.  It is standard DEA

7    procedure.  Again, I don't think any of this is material to

8    the motion, but just so the Court is clear in its

9    understanding in the case, when defense counsel come to

10   inspect evidence you can't just have someone off the street.

11   Usually they hire their own lab.  Their own lab comes and

12   looks at it.

13         My understanding is the DEA would make that

14   available to another lab.  I don't know if another lab would

15   deign to open the box and look at it.  In any event --

16         THE COURT:  But I think there is no dispute as to

17   what the items are.  The real question is how many there

18   are.  That's the question is whether or not by reopening the

19   box one could make a count as to the number of marijuana

20   plants.

21         MR. KOWAL:  That's correct, Your Honor.  And as

22   the case agent said in her declaration, after her initial

23   count only two days later she tried to do a second count at

24   which time she was unable to due to the degradation.

25   Therefore, I think it's fair to assume that now all of these

1    months later a further count would also be impossible based

2    upon the root-ball analysis.

3         MR. LITTRELL:  Your Honor, I don't want to pick on

4    Agent Burkdoll but --

5         THE COURT:  I think she's strong enough for you to

6    attempt to do that.

7         MR. LITTRELL:  What I think the government is

8    asking us to do is to take her word for it based on a count

9    that she conducted during a raid where she had other

10   responsibilities.  She knew enough to know it was important

11   to look at the root balls, so she knew that -- and she also

12   knew that there was approximately 104 plants, that's what

13   she puts in her report, so we know it's right around the

14   threshold.  And I think the Court's already essentially

15   ruled in our favor tentatively that the exculpatory value --

16   with respect to whether the exculpatory value was --

17        THE COURT:  Let me stop you.  There is to my mind

18   at least within the Ninth Circuit a play as to whether or

19   not there has to be actual malice or bad faith and is

20   negligent treatment of evidence sufficient to raise it.  In

21   other words, you have the Cooper case, but the Cooper case

22   really is dicta or the Ninth Circuit not being quite as

23   precise as perhaps it is on occasion.  And so you really

24   have cases that kind of shade as to whether or not you

25   actually have to have a demonstration of actual bad faith

 1    which usually means more than just simple negligence,

 2    because Youngblood itself was a situation where they found

 3    the evidence and they didn't store the evidence and the

 4    evidence became incapable of proving something which was

 5    extremely important in that case.

 6            MR. LITTRELL:  I think in Youngblood and Trombetta

 7    themselves they talk about bad faith really amounts to an

 8    analysis of whether the evidence was exculpatory on its

 9    face.

10            THE COURT:  No, because it was clearly potentially

11    exculpatory because the Ninth Circuit also talks about

12    exculpatory as being potentially exculpatory is sufficient.

13    In Youngblood the evidence was clearly potentially

14    exculpatory and it was also a situation where there was

15    negligence and the combination of potentially exculpatory

16    and negligence, at least according to the U.S. Supreme Court

17    is insufficient.

18            The Ninth Circuit blurs it in terms of what

19    constitutes bad faith and also blurs it in terms of what

20    constitutes potential versus actual exculpatory evidence, so

21    therefore the real question is what does one do in this type

22    of situation.

23            Does the government want to say something?

24            MR. KOWAL:  I would, Your Honor, do you want me to

25    take the lectern?

 1              THE COURT:  No.

 2              MR. KOWAL:  Your Honor, Cooper is dicta on the

 3    point of bad faith.

 4              THE COURT:  I agree.

 5              MR. KOWAL:  As the Court knows it was conceded in

 6    that case that it was bad faith.  There was no argument.

 7    The Court wasn't addressing that issue.

 8              THE COURT:  Perhaps the government should learn if

 9    it concedes points like that the Ninth Circuit will run with

10    it.

11              MR. KOWAL:  Well, but it didn't analyze the bad

12    faith prong, Your Honor, in that case.

13              THE COURT:  But it still ran with it.

14              MR. KOWAL:  It ran with the issue of the other

15    element, but the specific language in the Supreme Court is

16    that there has to be official animus and a conscious effort

17    to suppress exculpatory evidence.  And I would like, when

18    the Court is ready, I would like to address both its

19    potential and obvious exculpatoriness at the time and also

20    the bad-faith prong.  We also have additional facts which we

21    can proffer to the Court and make them subject to

22    cross-examination, but let me know when the Court is ready.

23              On the Cooper point I think that's clear.  I don't

24    think there is any blur that you have to show that the

25    government -- as what happened in Cooper, remember in Cooper

1   defense counsel had multiple talks with the government and

2   said, this is exculpatory for these reasons.  We want to

3   examine it.  And the government went ahead and destroyed it

4   anyway.  Here there was nothing like that.

5            THE COURT:  I thought in Cooper actually the item

6   had already been destroyed.

7            MR. LITTRELL:  No, in Cooper there was specific

8   conversations between the two.

9            THE COURT:  I understand that, but at that time I

10  thought the item had already been destroyed, the government

11  just didn't know that it had been destroyed.  They knew that

12  there was a policy of the laboratory to destroy early on.

13  They did not tell the laboratory to save the materials.  The

14  laboratory had destroyed the materials but the government

15  kept on saying don't worry about it, something like that.

16           MR. KOWAL:  Well, again the exact contours of the

17  bad faith in Cooper, I don't think it blurs the rule at all,

18  nor could it blur the Supreme Court's rule of conscious,

19  willful destruction of evidence with a specific intent to

20  harm the defendant's case.

21           THE COURT:  Well, let me put it this way.  I think

22  the Supreme Court would probably say that reckless conduct

23  would be sufficient for bad faith.  The real question is

24  that clearly negligent conduct is insufficient, beyond that

25  then there is some play.

1          MR. KOWAL:  Fair enough, Your Honor.

2          THE COURT:  All right.  Yes, anything else?

3          MR. KOWAL:  As I said, we are prepared to make

4   more points about the exculpatory value at the time of loss

5   or destruction which is again somewhat overlooked in the

6   Court's tentative, that that is the relevant timeframe.

7          THE COURT:  I don't think I overlooked it.  Did I

8   overlook it?

9          MR. KOWAL:  In the sense, Your Honor, you did not

10  quote that language which is it's not potentially

11  exculpatory at some other point down the road.  It has to be

12  obvious to the government at the time of loss or

13  destruction.

14         THE COURT:  That's because the Ninth Circuit

15  doesn't quite say it that way.

16         MR. LITTRELL:  Your Honor, I think what makes

17  sense would be for the Court to let us know what factual

18  disputes need to be resolved and decide how to resolve them.

19         THE COURT:  The real question was whether or not,

20  for example, the question I had was if you took the box that

21  currently has the items in it, could there be a count, and I

22  guess it's stipulated at this point in time that, no, there

23  cannot be a count because what is contained in the box at

24  this point is so degraded that you couldn't do a count.  I

25  accept that if both sides are stipulating to that at this

1    point.

2          MR. LITTRELL:  Yes, Your Honor.

3          MR. KOWAL:  Your Honor, that is in Agent

4    Burkdoll's declaration that she couldn't do a count two days

5    later.

6          THE COURT:  She couldn't do a count two days

7    later.  Let's put it this way, we have all sorts of things

8    that are dug up and they can determine apparently to the

9    month when the item was, what it originally was, et cetera,

10   et cetera.  From a little thing you can determine a lot, but

11   I understand if both sides want to stipulate to that at this

12   point in time that can't be done as to these items I'm

13   willing to accept that as long as it's stipulated.

14         MR. KOWAL:  We would be willing to stipulate.

15         MR. LITTRELL:  Yes, Your Honor.  I think it's

16   worth pointing out we've talked a lot about destruction of

17   evidence.  Really maybe what the real harm in this case is

18   that the evidence was concealed for over a year, but with

19   the point being stipulated that it's not capable of being

20   counted now, I think that that essentially makes the point

21   that there is no comparable evidence available, because we

22   won't be able to inspect and recount the plants.

23         I think the one point that government makes in its

24   briefs is there is photographs.  There is videotape.  I've

25   looked at the photographs and the videotape. I don't think

 1    anybody could make an accurate count of the plants, not only

 2    is it true that you can't see the root balls --

 3              THE COURT:  Are we going to get a stipulation on

 4    that?

 5              MR. KOWAL:  No.  We will stipulate only that the

 6    root-ball count can't be reproduced.  But, again, the

 7    standard is not that you can have the exact evidence

 8    reproduced but that there is comparable evidence.  We

 9    believe that the photographs would tend to show this amount

10    of plants, plus cross-examination of the defendant, as the

11    Court notes in its tentative, is also found sufficient

12    comparable evidence, while not the exact evidence.

13              MR. LITTRELL:  I want to point out what this would

14    actually look like if there is no stipulation.  There is

15    videotape taken during the raid.  There is also photographs

16    taken from a number of different angles.  Those photographs

17    at best show a number of stems coming out of pots.  I don't

18    think it's possible even to count the number of pots,

19    because the photographs are taken at different angles so it

20    would be impossible.

21              THE COURT:  But isn't that something you would

22    basically be arguing to the jury?

23              MR. LITTRELL:  That would be something we would

24    have to argue to the jury were it not for the fact that the

25    government's violation of Mr. Lynch's due process really

1    prevented us from defending the case in the first place.

2            THE COURT:  Let me ask; is there any count that's

3    dependent solely upon in terms of for applying a mandatory

4    minimum that is based on the plants alone versus bulk in

5    plants?

6            MR. LITTRELL:  I think both counts one and four

7    depend on the number of plants.

8            THE COURT:  Only or are they charged as both bulk

9    and plants?

10           MR. KOWAL:  They are charged as bulk and plants.

11   And I will tell the Court, again, we do have other evidence

12   to prove up the number of plants that went through that

13   dispensary besides the physical plants themselves.

14   Nonetheless, we want to put that evidence where we believe

15   it's probative and don't believe that it should be excluded.

16           THE COURT:  But insofar as those counts

17   themselves, if you did not put in the evidence of the

18   plants, if you have evidence of the bulk at least the

19   defendant could be convicted as to bulk by itself.

20           MR. LITTRELL:  Not based on the physical evidence,

21   Your Honor.

22           THE COURT:  Why not?

23           MR. LITTRELL:  I believe the government does not

24   have -- I believe the bulk marijuana required for a

25   mandatory minimum on the conspiracy count would be 100 kilos

 1    and there is not 100 kilos.  Even by the best most

 2    aggressive estimate in this case there is 20 kilos.

 3            MR. KOWAL:  That's right.  There is two kinds of

 4    evidence; there is the marijuana actually seized and there

 5    is the business records of the store.  Those records show

 6    well over 100 kilograms, and they show well over 3,000

 7    plants.  However, the government also wants to put the

 8    physical evidence, the 104 plants which would also show

 9    again for Aprendi purposes and that's what I'm sure the

10    Court understands which is sort of the central issue, 100

11    plants is the threshold for the five-year minimum.  But we

12    could again also show that through our business records.

13    But, again, there is no reason why we shouldn't be able to

14    show what we discovered as well.

15            MR. LITTRELL:  Your Honor, my response to that is

16    a suggestion.  I think the government has conceded that a

17    lot of the case in terms of proving quantities is going to

18    depend on the business records.  What we've asked the Court

19    to do is to dismiss the indictment insofar as the physical

20    evidence is required to establish the mandatory minimums.

21            Clearly, our agenda is to get out from under the

22    mandatory minimums and I think the government's made that

23    possible for us by alleging a quantity that's barely enough

24    to trigger the mandatory minimums as to count four and then

25    destroying or losing or concealing the evidence.  I think we

1    made out a due process claim and I think that the Court

2    should respond by dismissing that count and dismissing

3    count --

4            THE COURT:  You are not going to get a dismissal

5    from this Court.  I can tell you that now.  You might get

6    something else in terms of some evidentiary type sanctions

7    or instructions, but a dismissal, no, you are not going to

8    get it.

9            MR. LITTRELL:  That's what I'm getting to, Your

10   Honor.  I apologize for being long winded.  I think that the

11   relief that we are seeking, I think that a reasonable

12   compromise would be to strike the allegations as to

13   quantities that depend on this physical evidence such that

14   the government can still make its case, but it's basically

15   waived its right to proceed with a mandatory minimum charge

16   because it's destroyed the evidence that that charge depends

17   on.

18           THE COURT:  It still sounds like you are trying to

19   get rid of the indictment.  You are not going to get rid of

20   the indictment.

21           MR. LITTRELL:  Under that suggestion, Your Honor,

22   the indictment could be amended.

23           THE COURT:  No.  Let me just stop you.  The answer

24   is no.  At best you are going to get some sort of

25   evidentiary sanction, but you are not going to get anything

1   that tampers with the indictment itself.

2           Yes.

3           MR. KOWAL:  Your Honor, a few general points,

4   again unless you are focusing on one specific issue.

5           THE COURT:  No.  I've pretty much ruled on this

6   issue at this point in time.  And really at this point in

7   time we are really discussing what would happen in terms of

8   a more clearly set motion in limine prior to trial.

9           MR. KOWAL:  And, Your Honor, if you've clearly

10  ruled I do want to make sure we don't believe there is any

11  basis for the Court to make a factual finding of bad faith.

12  And the Court would have to make that to make any kind of

13  evidentiary sanction, and I want to address that if I may.

14          THE COURT:  I am not going to dismiss the

15  indictment.  That is my ruling.

16          MR. KOWAL:  Your Honor --

17          THE COURT:  I leave open the question of an

18  evidentiary sanction.

19          MR. KOWAL:  The only points then I want to address

20  factually with respect to those.  Again, the Court has

21  talked about whether it can be reckless or negligent.

22          I can proffer to the Court and the agent could

23  testify under oath when the plants -- first of all, as to

24  the issue of whether there is potentially exculpatory

25  evidence, there is no question as to whether even in the

1   Bellman count case of multiple counts, the agent made a

2   count of 104 plants.  She put that in her report.  She had

3   no expectation that it wasn't 104, that it was 85, 83.  She

4   then tries to do another count and she can't because of the

5   state of the evidence.  But there is nothing exculpatory

6   once she sees that it can't -- basically, it was the

7   deterioration that happened.  And when she tells the lab you

8   can go ahead and destroy it, there is no knowledge of her of

9   anything exculpatory, nor has defendant pointed to anything

10  along those lines which is necessary both for the first

11  element and certainly for bad faith.

12          Remember, you would need for example Cooper, this

13  agent to say, and I will also represent to the Court --

14          THE COURT:  Couldn't that argument be that at that

15  point in time it's not bad faith because the evidence has

16  already become unusable at that point at least to her mind?

17          MR. KOWAL:  That's correct, Your Honor.  The other

18  point with respect to her mind is she will testify that at

19  that time she didn't know that --

20          THE COURT:  Let me stop you, counsel; we are

21  beating a dead horse at this point.  I've made my ruling as

22  to this first motion.  Let's move on.

23          The second motion is as to the motion to inform

24  the jury in regards to the applicable mandatory minimum

25  sentence in this particular matter.

1          MR. LITTRELL:  We are going to submit on that one,

2     Your Honor.

3          THE COURT:  I would say except for one sort of

4     aberrant Eastern District of New York case you pretty much

5     have nothing, not to sound too cruel.

6          MR. COHEN:  Your Honor, that's okay.  We can take

7     it just like Agent Burkdoll.

8          THE COURT:  All right.  But she doesn't get to

9     speak much.  You guys get to talk a lot.

10          Insofar as the next one which is the selective

11     enforcement claim.  I didn't issue a tentative on this one,

12     but let me just ask.  The criteria for showing what is

13     enough to get discovery in this area, as set forth in the

14     United States v. Armstrong, 517 U.S 456, and really the

15     defendant fails to show that his situation is similar.

16          The defendant apparently is arguing that, well,

17     there are a lot of these marijuana dispensary operations and

18     the fact that the government chooses to prosecute this one

19     shows selective prosecution.  But in order to have selective

20     prosecution one has to have the two elements of the showing

21     which are that there were other similarly situated and not

22     investigated or prosecuted and that the investigation or

23     prosecution was based upon an impermissible motive, and I

24     don't understand what the impermissible motive is here.

25          MR. COHEN:  Your Honor, I think -- here's our

1    point on selective enforcement.  If the Ninth Circuit has

2    held that this type of motion is in fact the exact same

3    thing as a selective prosecution motion we lose.  Neither

4    Mr. Littrell or myself found that.  There is Squaw Valley v.

5    Goldberg.

6         THE COURT:  In other words you are saying that it

7    is a selective investigation?

8         MR. COHEN:  We are saying that the way the

9    government chose to enforce the Controlled Substances Act in

10   this case was selectively enforcing its laws against

11   Mr. Lynch.

12        THE COURT:  Well, let me ask you; you have to

13   first then show there were certain people who were in the

14   similar situation.  Here we have assertions that the items

15   were being sold pursuant to a conspiracy which involved the

16   issuance of false or uninvestigated medical prescriptions

17   and that the prescriptions were being made out to minors.

18        Are you saying that where you have operations

19   involving marijuana dispensaries which supposedly are

20   involved in a conspiracy to issue false prescriptions and

21   have those prescriptions, some of them being given to

22   minors, that the government has failed to investigate that.

23   Is that what the defendant is saying?

24        MR. COHEN:  No.

25        THE COURT:  Well, then I don't understand how you

1    are similarly situated.  Even if you were similarly situated

2    I don't understand what the bad motive is.

3             MR. COHEN:  I think that the scheme under which

4    Goldberg operates and contemplates does not -- we are -- I

5    will be very candid with the Court, just like Mr. Littrell,

6    We are trying to circumvent the strict tenants --

7             THE COURT:  I understand you are trying to do it.

8             MR. COHEN:  We are going to do it until we can't

9    do it.

10            THE COURT:  You are very honest about that.  I

11   appreciate that.  Let's put it this way, it's so obvious

12   what you are doing that you can't help but be honest.

13                     (Laughter.)

14            MR. COHEN:  Of course, Your Honor, we have other

15   motions to argue.  Our position is really simple.  The DEA,

16   out of I think it's Camarillo or Calabasas, it's somewhere

17   up there, on the way to get to Mr. Lynch's dispensary passed

18   an inordinately large number of medical marijuana

19   dispensaries and kept going to him.  What we are simply

20   saying is, based on the facts that we've put in front of

21   this Court, the absolutely outrageous -- frankly, we make

22   some outrageous accusations that we don't normally do in

23   federal cases, and the government hasn't come back and said,

24   no, that's not true; no, we did not come into Mr. Lynch's

25   house and make ourselves comfortable in executing the search

1    warrant.  We didn't arrest him twice and --

2              THE COURT:  Let me stop you.  That is all of which

3    is more or less irrelevant to the ultimate determination in

4    terms of selective prosecution here, because again -- or

5    selective investigation -- in selective investigation the

6    two tests are also similar.  In other words, you have to

7    show that the investigation -- that there were other

8    similarly situated that were not investigated, in other

9    words the disparate impact.

10             MR. COHEN:  True.

11             THE COURT:  And you also have to show that the

12   investigation was based upon an impermissible motive, this

13   discriminatory motive.

14             MR. COHEN:  True.

15             THE COURT:  You have not set forth either what the

16   disparate impact was and what the discriminatory motive was.

17             MR. COHEN:  And, Your Honor, you are 100 percent

18   right.  The Court is speaking in the language of selective

19   enforcement -- excuse me, I wish you were.  This Court is

20   speaking in the language of selective prosecution claim.

21             THE COURT:  Let me ask you, do you have a case

22   that says that selective enforcement standard for purposes

23   of discovery is different than selective prosecution?

24             MR. COHEN:  No.  All that we have --

25             THE COURT:  Well, then if you don't then I don't

1    understand.

2          MR. COHEN:  Well, but I don't have a case other

3    than the government has a Seventh Circuit case that says

4    that, so I am simply deferring to the whole I believe or

5    trying to wiggle into the hole that I believe the

6    Ninth Circuit has opened up for us by styling this as a

7    selective enforcement motion and having or requesting that

8    the Court analyze the government's actions as we set forth

9    in the motion and in the reply under a rational basis

10   standard.  If I'm wrong, I'm wrong.  I understand the

11   Court's position and I'm happy to submit on it.

12         THE COURT:  Yes.

13         MS. GERGES:  Your Honor, there are cases that deal

14   with selective enforcement and the cases generally deal with

15   selective enforcement and selective prosecution

16   interchangeably.  There is one Ninth Circuit case that's

17   recent in 2007 where the court held to prevail on its claim

18   under the Equal Protection Clause of the Fourth amendment a

19   plaintiff must demonstrate that enforcement had a

20   discriminatory effect and the police were motivated by a

21   discriminatory purpose.

22         THE COURT:  Let me stop you.  It seems obvious to

23   me that the same two elements that are required for the

24   selective prosecution are required for selective enforcement

25   or selective investigation.  It's the same.  And the Supreme

1    Court has recognized that obviously in terms of selective

2    prosecution there is the added element of a lot of

3    discretion is given to prosecutors which is not quite the

4    same for purposes of the law enforcement agents.  However,

5    you still have to have something upon which to base a

6    request for discovery in this area such that you get

7    relevant information rather than a fishing expedition.

8             Also, let me note that insofar as the defendant is

9    making this class of one type argument, the Supreme Court in

10   the last like two weeks ago decided this Enquist v. Oregon

11   Department of Agriculture, 128 S.Ct. 2146, which discusses

12   the class of one argument in the context of a governmental

13   employee's argument of improper treatment on the basis of an

14   equal protection claim.

15            The language and the justification of the Supreme

16   Court in rejecting that argument in that context is

17   applicable here.  So the Court also would reject a class of

18   one contention insofar as a purported selective

19   investigation or enforcement claim is concerned, so in the

20   end the Court will deny this particular motion for the

21   reasons I've stated on the record.

22                 (Discussion held off the record.)

23            THE COURT:  Let's turn to the next motion which is

24   the ruling to suppress the defendant's statements and

25   evidence, and on this one the Court issued a tentative on

 1    this.

 2            MR. COHEN:  This would be the statement to the

 3    DEA; is that correct, Your Honor?

 4            THE COURT:  Yes.

 5            MR. COHEN:  We would submit on that as well.

 6            THE COURT:  All right.  In that case my tentative

 7    will be my final.

 8            I presume the government doesn't want to argue

 9    this one.

10            MR. KOWAL:  That's correct.

11            THE COURT:  Then the next one is one that I did

12    not issue a tentative on.  Before I do that one let me do --

13    All right.  I will just do this one.  This is the

14    defendant's argument regarding the Tenth Amendment.

15            The argument is really untenable.  As the

16    Supreme Court held in Gonzalez v. Raich, R-A-I-C-H, 545

17    U.S. 1, Congress's passage of the Controlled Substances Act,

18    21 U.S.C. Section 801, et seq., which contained a

19    categorical prohibition on the manufacture of marijuana as

20    applied to intrastate manufacture of marijuana for medical

21    purposes under the California law is a valid exercise of the

22    Congress's authority under the Commerce Clause.

23            Then under Raich v. Gonzalez, 500 F.3d 805 at 867

24    in footnote 17 the Ninth Circuit after the Supreme Court

25    reversed it made this statement:  The Supreme Court held in

1   Gonzalez v. Raich that Congress acted within the bounds of

2   its Commerce Clause Authority when it criminalized the

3   purely intrastate manufacture, distribution or possession of

4   marijuana in the Controlled Substances Act, see 125 S.C. at

5   2215.

6          Thus, after Gonzalez v. Raich it would seem that

7   there can be no Tenth Amendment violation in this case.

8   Raich concedes that the recent Supreme Court decision

9   largely foreclosed her Tenth Amendment claim.  She also

10  concedes that this case does not implicate the, quote,

11  commandeering, end of quote, line of cases, footnote 17.

12         Footnote 17, the commandeering cases involve

13  attempts by Congress to direct states to perform certain

14  functions to command state officers to administer federal

15  regulatory programs or to compel states to adopt specific

16  legislation, and then it has a number of citations.

17         The Controlled Substance Act by contrast does not

18  require the state legislature to enact any laws or

19  regulations and does not require state officials to assist

20  in the enforcement of federal statutes regulating private

21  individuals, end of quote, citing Reno v. Condon 528 U.S.

22  141 at 151.  End of quote.

23         That seems to put the nail on the head.

24         MR. COHEN:  It looks like I get the losers today,

25  Your Honor.  I'm happy to submit on the issue.

1          THE COURT:  Well, let me put it this way, it seems

2     sort of obvious to the Court.  Is there something the

3     Court's missing?

4          MR. COHEN:  Your Honor, we styled it frankly as an

5     as applied challenge.

6          THE COURT:  Yes, but the problem is that your as

7     applied challenge is based on the statements of a deputy

8     sheriff when he's executing a warrant.  He or she or it is

9     insufficient to establish that there has been commandeering.

10          MR. COHEN:  If that's the Court's position.  We've

11     listened to the government's evidence in this case.  Our

12     position is that one thing that we find particularly

13     interesting is that the local police department is actually

14     not the sheriff's department.

15          The local police department is the City of Morro

16     Bay.  They stood by, the City of Morro Bay Police

17     Department, like the mayor, like the city attorney, like the

18     police department itself, they stood by and understand that

19     everything that Mr. Lynch was doing is perfectly legal.

20          THE COURT:  Under state law, yes.

21          MR. COHEN:  Under state law perfectly legal.

22          THE COURT:  Excerpt for perhaps the prescriptions

23     to underage minors and the issuing of prescriptions to

24     persons who have not established the medical need for

25     marijuana, aside from that, you know, yes.

1        MR. COHEN:  Your Honor, perhaps some other day we

2   will address that.  We've got two weeks before trial.  I'm

3   happy to address that point now or at another time.  But

4   what we have here is the sheriff's department.  The

5   sheriff's department -- the only indication before this

6   Court right now are the kind of plaintive words of deputy

7   Harvey I think.  But it's clear that the government makes a

8   little bit of noise about these sort of violations,

9   neighbors are complaining.  But if these are real violations

10  of state law --

11       THE COURT:  They are not violations of state law.

12       MR. COHEN:  Well, then we are not sure why it was

13  that sheriff's department felt obliged to assist the DEA.

14  We have these noises being made by the government.

15       THE COURT:  The DEA asked the sheriffs.

16       MR. COHEN:  Well, our position is that they forced

17  them.

18       THE COURT:  How?

19       MR. COHEN:  By conscripting them.

20       THE COURT:  You mean they grabbed them like

21  shanghaied, to use that old term.

22       MR. COHEN:  Maybe.  They might have just

23  shanghaied them.

24       THE COURT:  So in other words every time the

25  federal government asks state or local law enforcement

1   agencies to assist them in an operation that's

2   commandeering?

3           MR. COHEN:  No, but what we've asked for is we've

4   asked to figure out what happened between these two

5   completely disparate entities.  We've asked for the

6   discovery.

7           THE COURT:  You make it sound like in no prior

8   situation has a sheriff's office ever assisted the DEA.  My

9   understanding is that there is a history of cooperation that

10  goes back, dare I say, decades.

11          MR. COHEN:  Probably, Your Honor.

12          THE COURT:  Let me put it this way, if we have a

13  situation where decades of cooperation has already occurred,

14  why would you say that there is commandeering in this case?

15          MR. COHEN:  Well, because we have state laws that

16  clearly contemplate that state officials just stop and allow

17  for the legal distribution of medical marijuana under Prop

18  215.  We have that.

19          THE COURT:  Let me stop you.  There has been a

20  discussion in that regard that basically says that the

21  proposition basically goes toward the user having and

22  growing and the doctor perhaps providing it.  It doesn't

23  provide for dispensaries.  So, therefore, this whole

24  discussion that this dispensary situation is protected is I

25  think a little bit of a red herring here because it isn't

1    provided for under the state law as it's currently written.

2         MR. COHEN:  Your Honor, well, I would respectfully

3    disagree.  What Congresswoman Saldana is doing is she's

4    recognizing the reality --

5         THE COURT:  Well, the operative word is she is

6    "trying to do."

7         MR. COHEN:  She's trying to do that.

8         THE COURT:  She hasn't done it yet to my

9    knowledge.

10        MR. COHEN:  She hasn't done it.

11        THE COURT:  Well, then maybe at some point in the

12   future then we will have to address it in a more full

13   scenario that befits the situation.

14        MR. COHEN:  Perhaps, Your Honor.  I hope so.

15        THE COURT:  Anything else?

16        MR. COHEN:  Nothing further.

17        THE COURT:  Okay.  Thank you.  I presume the

18   government doesn't want to say anything.

19        MS. GERGES:  No, Your Honor.  Thank you.

20        THE COURT:  The next one is motion to suppress

21   statements made to federal agents of the Drug Enforcement

22   Administration, and in this one I issued a tentative.  Does

23   anybody want to argue this one?

24        MR. COHEN:  I think we might have already

25   addressed that one.  The other suppression motion I believe

```
 1    Your Honor was about --
 2              THE COURT:  No.  This one you haven't, I don't
 3    think, because I'm doing them in order of these files.
 4              Do you wish to submit?
 5              MR. COHEN:  We do.
 6              THE COURT:  Okay.  Let me ask; does the government
 7    want to say anything?
 8              MR. KOWAL:  No, Your Honor.
 9              THE COURT:  Okay.  My tentative is my final on
10    this one.  And then on the last one I did not issue a
11    tentative on either.  Let me just read to you however what
12    my tentative would be in this case.
13              The government seeks to exclude, quote, the
14    introduction of -- oh, this is the government's motion by
15    the way.  The government seeks to exclude, quote, the
16    introduction of evidence, argument concerning the legality
17    of defendant's conduct under the California law, the
18    requirements or existence of the California Compassionate
19    Use Act, the existence or application of a, quote, medical
20    necessity, end of quote, defense, the purported medicinal
21    efficacy of marijuana, the existence, counsel, advice or
22    position of any medical marijuana advocacy group, the
23    counsel or advice of any state local public officials and or
24    any attorney regarding any of the above, the approval of any
25    state or local official, any statements by law enforcement
```

1   officers concerning the purported medicinal use of marijuana

2   or any similar arguments, end of quote.

3          The defendant has filed a, quote, statement of

4   partial opposition, end of quote.  The extent of that

5   opposition is delineated on page 5 of the statement wherein

6   the defendant argues that, quote, the jury should know that

7   the elected officials of his home town, the elected

8   officials of his state, his local police department and a

9   wide majority of his fellow Californians believe that his

10  decision to operate a medical marijuana dispensary in Morro

11  Bay was a very good thing.  Both the California legislature

12  and local government of Morro Bay gave Mr. Lynch a list of

13  rules to follow and implied if he followed those rules and

14  acted with good intentions he would be okay.

15         Charles Lynch's fellow citizens, the people vested

16  with deciding whether he should be convicted of a crime,

17  should know that he took those lawmakers and city officials

18  at their word.  Footnote omitted.  Mr. Lynch would like to

19  present witnesses in his own defense.  He would like to call

20  witnesses to talk about the nuts and bolts of purchasing

21  marijuana at the Central Coast Compassionate Caregivers

22  dispensary, end of quote.  In addition, the defendant also

23  contends that he should be allowed to proffer evidence under

24  what he calls the, quote, inextricably intertwined, end of

25  quote, doctrine in Federal Rules of Evidence 404 (b).

1          The problem with the defendant's position is that

2     his contentions are either incorrect as a matter of law and

3     or do not amount to a defense and hence would be irrelevant

4     and or confusing to the jury.

5          First, as to the evidence of defendant's purported

6     good intentions, the U.S. Supreme Court in May of 2001 in

7     United States v. Oakland Cannabis Buyer's Cooperative, 532

8     U.S. 483, held among other things, one a medical necessity

9     defense is unavailable to a charge of distribution of

10    marijuana even if the distribution is made pursuant to the

11    California Compassionate Use Act of 1996, or what is called

12    sometimes Prop 215, which authorized under state law the

13    cultivation and prescription of marijuana for medical

14    purposes by certain individuals.

15         Two, the United States Congress in the Controlled

16    Substance Act, CSA, 21 U.S.C. Section 841 made a legislative

17    finding that marijuana has no medical benefits worthy of

18    exception to the prohibition against the cultivation,

19    possession or distribution of marijuana;

20         Three, the Controlled Substance Act precludes

21    consideration by the courts of any medical necessity

22    exception even by persons who will suffer serious harm if

23    they are denied cannabis.  Therefore, it seems to this court

24    that since May of 2001 the defendant should have known that

25    even though the state law may have authorized his activities

1    he still faced prosecution under federal law.

2         Second, even if defendant was in fact ignorant of

3    his liability under federal law his knowledge or intent to

4    violate the CSA is not an element of or a defense to the

5    crime of violating 21 U.S.C. Section 841.  The Court would

6    refer to the United States v. Delgado, 357 F.3d, 1061 at

7    1067 the Ninth Circuit case, and also United States v. Cain,

8    130 F.3d 381 at 384.

9         Also, the Court would refer to Bryan v. the United

10   States, 524 U.S. 184 at 193 which talks about the term

11   knowingly for purposes of gun possession, but the statements

12   of law on that case are applicable here.  Therefore, a lack

13   of intent to violate the law is not a defense to a general

14   intent crime such as Section 841.

15        Third, the fact that Prop 215 was passed by the

16   voters in California and that elected officials in his home

17   town, his state, his local police department and fellow

18   state citizens thought that opening a medical dispensary was

19   a good thing is not relevant to the issue of guilt or

20   innocence in this case.  See the above discussion.

21        While it might be germane to this Court's

22   sentencing determination if the defendant is eventually

23   convicted, it is not relevant for purposes of the trial

24   itself.  Moreover, the primary time period at issue herein

25   is between 2006 and 2007, many years after the Supreme

1    Court's decision in the Oakland Cannabis Buyers Cooperative

2    case.   And, therefore, if the advice of the state officials

3    was not given at that point in time, it doesn't seem

4    particularly germane to this particular case.   Finally, the

5    defendant has not claimed that he was somehow misled by

6    federal agents which might give rise to an entrapment or

7    estoppel claim.

8            Fourth, as to the defendant's contention that he

9    be allowed to call witnesses to talk about the, quote, "nuts

10   and bolts," end of quote, of purchasing marijuana from the

11   dispensary, the defendant does not really articulate the

12   relevancy of that testimony other than to interject some

13   issue which this Court has already found precluded, for

14   example, the purported medicinal necessity as to the

15   defendant's customers.

16           While such evidence might be relevant depending

17   upon what the government presents by way of its witnesses,

18   at this time the defendant's witnesses on the nuts and bolts

19   of the operations would seem to be at best repetitive.

20   However, at this time the Court will not preclude such

21   evidence per say but will allow the defendant to make a

22   request during trial out of the presence of the jury after

23   the government's case in chief to present such evidence and

24   at that point in time the Court would consider that

25   particular area and whether or not the Court will allow it.

1        Furthermore, the defendant contends that he should

2    be allowed to show that he made some efforts to ensure that

3    his marijuana was distributed only for medicinal purposes

4    and in compliance with state law.  As such, it would be

5    inextricably intertwined with the facts that the government

6    would seek to prove.  However, as noted above, the

7    government seeks to prove a violation of the federal

8    statute, not any state violation.

9        However, as noted above the government seeks to

10   prove a violation -- insofar as the government seeks to

11   prove a violation of the federal statute, the defendant's

12   attempting to comply with state law is irrelevant under 21

13   USC Section 841.  Therefore, the defendant's evidence is not

14   inextricably intertwined with the government's evidence.

15       In the end since defendant's counsel is being so

16   blunt and honest, the defendant appears to be attempting to

17   proffer evidence from which he will attempt to either make

18   an argument involving some issue which is not proper or will

19   seek some sort of an attempt to get or obtain juror

20   nullification, both of which would not be proper.

21       Finally, the Court notes that a number of courts

22   have already addressed the issues that have been raised in

23   this matter, for example, United States v. Scarmazzo, 2008

24   U.S. District, Lexis 35,756, from the Eastern District of

25   California, and also United States v. Rosenthal, 266 F.Supp

1  2d 1068, Northern District of California in 2003, the latter

2  case being affirmed in relevant part and reversed on other

3  grounds by United States v. Rosenthal, 445 F.3d 1239.

4         Therefore, since arguments similar to those raised

5  by defendant here have been rejected by other courts this

6  court feels, not that I should necessarily have to follow

7  other district courts, but I'm not out of line in following

8  those decisions.

9         Does somebody want to argue anything?

10         MR. LITTRELL:  May we have a moment, Your Honor?

11         THE COURT:  Sure.

12         MR. LITTRELL:  Your Honor, we submit.

13         THE COURT:  All right.  Does the government want

14  to add anything?

15         MR. KOWAL:  Does the Court want a draft proposed

16  order on that?

17         THE COURT:  Not unless the parties -- I've made my

18  rulings on the record.  If you guys want to give me some

19  sort of joint order that summarizes just the holdings,

20  that's fine; or unless you want one, if you want one then

21  one side or another prepare an order, but it's up to you

22  guys.

23         MR. KOWAL:  We will discuss it with defense

24  counsel later.

25         THE COURT:  Okay.  Thank you.  Anything else we

1   need to discuss, gentlemen?

2           MR. KOWAL:  Your Honor, one other issue, defense

3   counsel mentioned that they might want to file some

4   additional in limine motions.  He mentioned it before the

5   hearing and during the hearing.  I want to know if we can

6   set up a reasonable schedule for such things.

7           THE COURT:  Let me ask, this case is supposed to

8   go to trial on the 22nd.

9           MR. COHEN:  That's correct, Your Honor.

10           THE COURT:  Is this going to trial on the 22nd?

11           MR. KOWAL:  It is, Your Honor.

12           THE COURT:  That's so exciting.

13           MR. KOWAL:  It is, Your Honor.  It is the 22nd.

14           THE COURT:  Let me ask; is Dr. Tollette going to

15   be a witness in that case?

16           MR. KOWAL:  I don't believe so, Your Honor.

17           THE COURT:  Okay.

18           MR. KOWAL:  We will let the Court know.  I think

19   what we intend to do is to redact the indictment to take out

20   those portions that relate to Dr. Tollette.

21           THE COURT:  All right.

22           MR. KOWAL:  And just go as to the conspiracy as to

23   Mr. Lynch to the extent that we can do that.  Again, and the

24   only other scheduling matter, I do know it's in two weeks.

25   If there are going to be some other in limine motions, I

1    would like to have those to know what they are and what the

2    rulings are in advance of trial.

3            THE COURT:  I tell you what, if there are any

4    other motions in limine they have to be filed no later than

5    the 11th of July and a response by the 17th of July and I

6    will hear the matter on the 21st of July at 8:00 o'clock.

7            MR. COHEN:  Your Honor, may I confer with

8    Mr. Kowal?

9            THE COURT:  Sure.

10           MR. COHEN:  Thank you.

11               (Discussion held off the record.)

12           MR. COHEN:  Your Honor, two real housekeeping

13   issues, one would be we respectfully request until Monday

14   the 14th.  I know Mr. Littrell and I are both going out of

15   town for the rest of the week.

16           THE COURT:  Together?

17           MR. COHEN:  Yes.

18           THE COURT:  Oh, my gosh.

19           MR. COHEN:  It's going to be fun, so if we could

20   have until the 14th.

21           THE COURT:  All right.

22           MR. COHEN:  I'm happy to give the government more

23   time if they need it.

24           THE COURT:  All right.  When did I tell the

25   government to file by, the 17th?

```
 1              MR. KOWAL:  Yes.

 2              THE COURT:  How about the 18th by noon?

 3              MR. COHEN:  No objections.

 4              THE COURT:  I presume you want me to read this

 5     stuff at some point.

 6              MR. COHEN:  I mean, sure.

 7              MR. KOWAL:  The only other thing I would let the

 8     Court know is --

 9              THE COURT:  Unless you want me to put a page

10     limitation on it.

11              MR. KOWAL:  Again, depending on the extent of it,

12     there is an additional almost 40 days under the Speedy Trial

13     Act, so if the Court wanted to set a schedule and move the

14     trial one week or something to accommodate that.

15              THE COURT:  The problem really is that if you guys

16     are going to be ready I'd rather have it sooner than later.

17              MR. KOWAL:  That's fine.

18              THE COURT:  You guys will be my first criminal

19     trial in federal court.  I've been here since April of last

20     year, so that's 15 months.  I think I hold the record of not

21     having a criminal trial more than any other federal judge

22     ever.  I don't know of any federal judge who has lasted 15

23     months without having a criminal trial, not that I'm going

24     to be necessarily mean to either side as a result of that,

25     but you guys have that particular honor.
```

```
 1            MR. COHEN:  We are looking forward to it, Your

 2   Honor.  The last housekeeping issue is Mr. Littrell and I

 3   have noticed that in the government's papers we see words or

 4   really idioms like the marijuana store.  I'm not sure if

 5   that's something -- it's really not in our vernacular.  We

 6   are happy if there is going to be a blanket rule about these

 7   sort of new words that we need to learn prior to trial.

 8            THE COURT:  You mean AUSA speak?

 9            MR. COHEN:  AUSA speak.  We are not very good at

10   it.

11            MR. KOWAL:  It's indictment speak, Your Honor.

12            THE COURT:  That can be part of some motion or

13   something like that.

14            MR. COHEN:  Sure.

15            THE COURT:  I've seen that before and I will

16   entertain it at that point.

17            MR. COHEN:  Because we would like to, obviously if

18   there is going to be an order about how we refer to the

19   marijuana dispensary, we are of course going to abide by

20   that order, but we'd like to know in advance.  I think it

21   would be helpful to both sides.

22            THE COURT:  I think it would be easiest just to

23   refer to it as a dispensary.

24            MR. KOWAL:  Your Honor, that's not going to be a

25   problem.
```

```
 1              THE COURT:  Okay, sure.
 2              MR. KOWAL:  Does the Court -- for example, we have
 3    two counsel on both sides, and would the Court allow us to
 4    break up our argument and our witnesses --
 5              THE COURT:  Yes.
 6              MR. KOWAL:  -- and things like that?
 7              THE COURT:  Yes.  But you can't tag team in the
 8    sense that only one per witness.
 9              MR. COHEN:  I'm going to let him do it all, Your
10    Honor.
11              THE COURT:  As well you probably should.  Anything
12    else, gentlemen?
13              MR. KOWAL:  Thank you.
14              MS. GERGES:  Thank you, Your Honor.
15              MR. LITTRELL:  Your Honor, I'm going to take up
16    ten more seconds of the Court's time.  I can just tell you
17    that I've looked at a proposed order regarding the motion in
18    limine.  I don't know if we are going to be able to agree on
19    this.  It sounds like what the Court's ruling is the Court
20    will make a determination as to whether evidence is relevant
21    at the time of trial at the time the evidence is presented.
22              THE COURT:  No.  I've indicated that I've already
23    ruled on several of the items which the defense has lost.
24    There are two motions where I indicated that -- that is as
25    to the first one and insofar as nuts and bolts from the
```

1  defense, it depends on the government's presentation because

2  obviously they have the first initial burden of establishing

3  what went on and so therefore what he's referring to as nuts

4  and bolts type evidence if he wants to rebut what the

5  government has presented obviously that does become relevant

6  as long as it's not duplicative.

7       But the problem is that if in his attempt to offer

8  what he's calling nuts and bolts he wants to offer evidence

9  of let's say some customer's statement, oh, I needed the

10  marijuana, otherwise I'd go blind or something of that sort.

11  As compassionate as that might be, it's not coming in.

12       MR. COHEN:  What it sounds like the Court is doing

13  or what I at least think makes sense is that the Court has

14  ruled that the government is correct that certain defenses

15  are not cognizable and that evidence relating to those

16  defenses or that's introduced only for those defenses and

17  not to rebut an element or --

18       THE COURT:  Yes.

19       MR. COHEN:  -- you've ruled with respect to the

20  defenses but not the evidence?

21       THE COURT:  Somewhat, because if the evidence does

22  not go to anything but an impermissible defense it's not

23  coming in even though it is a permissible defense.

24       MR. COHEN:  Exactly, Your Honor.

25       THE COURT:  Okay.  Anything else?

1          MR. COHEN:  Thank you, your Honor.

2          THE COURT:  Okay.  Thank you.

3

4          (At 9:38 AM proceedings were adjourned.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        --oOo--

 2                      CERTIFICATE

 3

 4

 5          I hereby certify that pursuant to Section 753,

 6    Title 28, United States Code, the foregoing is a true and

 7    correct transcript of the stenographically reported

 8    proceedings held in the above-entitled matter and that the

 9    transcript page format is in conformance with the

10    regulations of the Judicial Conference of the United States.

11

12    Date:  July 14, 2008

13

14

15          _____

16                      WIL S. WILCOX
                      U.S. COURT REPORTER
17                      CSR NO. 9178

18

19

20

21

22

23

24

25
```