1                UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3                   HONORABLE GEORGE WU

4            UNITED STATES DISTRICT JUDGE PRESIDING

5                        - - -

6
United States of America,          )
7                      PLAINTIFF,   )
                                    )
8    VS.                            )   NO. CR 07-689 GW
                                    )
9    Charles Lynch,                 )
                      DEFENDANT,    )
10   _____)

11

12

13            REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                 LOS ANGELES, CALIFORNIA

15                MONDAY, FEBRUARY 2, 2017

16

17

18    _____

19             KATIE E. THIBODEAUX, CSR 9858
               U.S. Official Court Reporter
20             312 North Spring Street, #436
               Los Angeles, California 90012
21

22

23

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    APPEARANCES OF COUNSEL:

2    APPEARANCES OF COUNSEL:

3

4    ON BEHALF OF THE PLAINTIFF, UNITED STATES OF AMERICA:

5                        U.S. DEPARTMENT OF JUSTICE
                         U.S. ATTORNEY'S OFFICE
6                        BY: DAVID KOWAL, AUSA
                         312 North Spring Street
7                        Twelfth Floor
                         Los Angeles, CA  90012
8

9

10   ON BEHALF OF THE DEFENDANT:

11                       FEDERAL PUBLIC DEFENDER'S OFFICE
                         BY: ALEXANDRA YATES, DFPD
12                       -and- JOHN LITTRELL, DFPD
                         321 East 2nd Street
13                       Los Angeles, CA  90012-4202

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          LOS ANGELES, CALIFORNIA; MONDAY, FEBRUARY 2, 2017

 2                         10:28 A.M.

 3                         - - - - -

 4

 5

 6          THE COURT:  All right.  Let me call the matter of

 7   United States versus Lynch.

 8               Let me have appearances.

 9          MR. KOWAL:  David Kowal for the United States,

10   your Honor.

11          THE COURT:  All right.

12          MS. YATES:  Good morning, your Honor.  Deputy

13   Federal Public Defender Alexandra Yates and John Littrell

14   on behalf of Mr. Lynch who is present on bond.

15          THE COURT:  All right.  We are here for this

16   motion.  Let me ask a couple of questions.

17               First question I have is this case is very

18   strange in the sense that this appeal has been pending

19   for more than six years now.  I have never heard of a

20   criminal appeal lasting this long.  Why has it been

21   taking so long?  Just out of curiosity.

22          MS. YATES:  Yes, your Honor.  I am the appellate

23   attorney.  So I will answer that.

24               A significant amount of the time when this

25   case initially started in the appeals court was ongoing
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    attempts at negotiations.  And we have gone back to the

2    table several times since.  So there was a long delay for

3    that.

4           As the court is aware, the proceedings in this

5    case were very lengthy.  There were a number of --

6           THE COURT:  Not that lengthy.

7           MS. YATES:  It was a 10-day trial with

8    four sentencing hearings and a number of pretrial issues

9    raised.

10          So, in any event, getting up to speed on the

11   record and sorting through those issues once attempted

12   negotiations had concluded took some time.  We filed an

13   80-page opening brief.

14          The government then took over -- we took

15   significant time in doing that.  The government then took

16   over a year in filing what ultimately was 150-page

17   answering brief.  And that is where we are at now.

18          THE COURT:  All right.  That is more or less

19   irrelevant to the present motion, but I was just curious.

20          All right.  These are some additional

21   questions.  The basic motion here is for the court to

22   decide whether or not it will either entertain a motion

23   that I guess is made pursuant to the Ninth Circuit's

24   decision in McIntosh.

25          Let me just ask this question:  Has any

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   district court in California actually held a McIntosh

2   evidentiary hearing?

3       MS. YATES:  Would the court like me to approach

4   the lecturn?

5       THE COURT:  As long as you speak into the

6   microphone, doesn't make any difference.  And if so, what

7   was the result?

8       MS. YATES:  There is no result.  To the best of my

9   knowledge, your Honor, there is no court that has ruled

10  one way or the other post McIntosh.

11      THE COURT:  No.  That is not my question.  My

12  question was has any court held a hearing pursuant to

13  McIntosh to make a determination that is suggested in the

14  closing portion of the McIntosh decision.

15      MS. YATES:  No, your Honor.  To the best of my

16  knowledge, all of the post McIntosh defendants have

17  hearings that are upcoming.  Two of them are set for May.

18  Another one has a hearing on some preliminary questions

19  set for later this month.  But the substantive hearing

20  has not yet been set, and I am not aware of any other

21  cases that are pending in district court.

22      THE COURT:  All right.  Has any district court in

23  the United States held or basically granted a motion to

24  enjoin the government the way that the defendant is here?

25  I know of three cases where the motions were denied but

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
1    those were pre McIntosh.

2            Has there been, since McIntosh, any decision

3    of any district court in any jurisdiction which granted a

4    defendant's request that is similar to the one that is

5    requested here.

6        MS. YATES:  Not that I am aware of, your Honor,

7    but, also, two points.  I am not aware of any district

8    court decision denying a similar request either.  I

9    simply don't believe there has been a district court

10   decision.  And the court is perhaps familiar with Judge

11   Breyer's decision in the Northern District in the Marin

12   Alliance Medical Marijuana case that predates McIntosh

13   but did grant an injunction.  It was in a civil context

14   but similar to what we are asking.

15       THE COURT:  Yes.  But if that were the response, I

16   would refer to the Ninth Circuit's decision in Olive

17   versus Commissioner of Internal Revenue Service which was

18   like a civil context as well where that request was

19   denied.

20       MS. YATES:  Yes, your Honor.  But in Olive, if I

21   recall, the specific question was whether imposing a tax

22   interfered with the statement's implementation of its

23   medical marijuana laws.

24       THE COURT:  I don't know if it necessarily was

25   imposing a tax.  I thought that, in Olive, the question
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   was whether or not an owner of a medical marijuana

2   facility could take business deductions when the bar in

3   26, U.S.C., Section 280(e) precluded such deductions for

4   any trade or business consisting of trafficking in

5   controlled substances.

6        MS. YATES:  That's right, your Honor.  And the

7   ultimate holding in Olive was not in some way confined to

8   what McIntosh had to say in the criminal context.

9        THE COURT:  Well, that is the question since

10  McIntosh doesn't reference Olive.  I don't know whether

11  or not the court in McIntosh considered its prior

12  decision in Olive.

13       MS. YATES:  Well, I would suspect, I think we

14  should expect that the court was aware of the decision.

15       THE COURT:  Not really.  I don't expect anything

16  of the circuit unless the circuit court tells me.  But if

17  they don't indicate that they are referring to one of

18  their prior decisions that deals with the issue, I don't

19  know if they have considered it.

20       MS. YATES:  Well, your Honor, I guess two-points.

21  One is Olive on its face, to the extent that we are

22  considering it relevant at all, and, again, it is pre

23  McIntosh, and it is the civil context.

24       THE COURT:  No, no.  I don't know if McIntosh --

25  let me see.  Maybe it was McIntosh, but it was a Ninth

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    Circuit decision.  And you are right, it is pre McIntosh.

2    It is a 2015 case.

3         MS. YATES:  On its merits, your Honor, the

4    decision was only that the federal government was -- it

5    was acceptable for the federal government to disallow

6    these tax exemptions because the taxes in no way

7    interfered with the state's implementation of its medical

8    marijuana laws.  People could still distribute, use.

9    Now, we may agree or disagree with that, but that was

10   what --

11        THE COURT:  I would think that one of the primary

12   facets of an operation of a medical marijuana operation

13   is financial.  And, therefore, if the government's action

14   is depriving these businesses of these deductions, it

15   would run these businesses out of business because if

16   they have no money or if their money is greatly reduced,

17   that would affect them much more so it seems than other

18   things that one can consider.

19        MS. YATES:  Well, I don't know what the underlying

20   factual record was in Olive, and I think, based on what

21   the Ninth Circuit had to say, it must have been such that

22   the medical marijuana dispensary in that case did not

23   show facts indicating that it would have gone out of

24   business because what the Ninth Circuit, I think, quite

25   clearly said was this additional tax -- inability to

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    exempt these taxes doesn't interfere with your ability to

2    do these things under state law.

3         Then, we have McIntosh which is squarely on

4    point and very clearly says that federal prosecutions

5    where a defendant was authorized by state law does

6    interfere.  So the court, I think, needs to in some way

7    reconcile these two precedents, and McIntosh is clearly

8    the one that is squarely on point.

9         THE COURT:  Well, let's put it this way, it is a

10   question.

11        Let me hear from the government.  Does the

12   government have any citations to any district court

13   decisions that have granted the relief that the

14   plaintiff -- sorry -- the defendant is seeking here?

15        MR. KOWAL:  No, your Honor.

16        THE COURT:  Okay.

17        MR. KOWAL:  Our information is that all the post

18   McIntosh remands are still pending.

19        THE COURT:  Okay.  Addressing the motion itself

20   and the government's response to the motion, I disagree

21   with the government on one point.  The government raises

22   an objection based on Rule 37 of the Federal Rules of

23   Criminal Procedure.  I wouldn't agree with those

24   objections.

25        The court would initially note that the

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   defendant filed the motion, his motion to enforce the

2   provisions of -- it is either Section 538 or 542

3   depending upon the use so I will just refer to it as 538

4   since that was the initial one -- of the continuing

5   appropriations bill.  He initially filed that in

6   February, February 24th of 2015.

7          And that was denied by the circuit court in an

8   order on April 13th of 2015 which also denied the

9   defendant's request for -- sorry -- and the Ninth Circuit

10   also denied the defendant's request for hearing en banc

11   in June of 2015.  But in the April 14th order, the Ninth

12   Circuit stated that it was denying the defendant's

13   request to enjoin the Department of Justice from

14   continuing to expend funds in the case but without

15   prejudice for the defendant's raising the matter in his

16   third cross-appeal brief.

17          And so, therefore, I don't think that the

18   circuit was indicating there was any problem with raising

19   the argument, but, in addition, the circuit court in the

20   April 13th order also stated that the defendant's

21   alternative request for a limited remand to the district

22   court was denied without prejudice for renewal.  If after

23   presentation to the district court, the district court

24   stated that it would grant the motion or stated that the

25   motion raises a substantial question.

```
 1          And the circuit court cited to Federal Rules
 2   of Appellate Procedure, Rule 12.1, not Rule 37.  But the
 3   language in Rule 12.1A, subpart A, parallels the language
 4   of the Federal Rules of Criminal Procedure 37(a)(3).  So
 5   the government's contention that the present motion is
 6   somehow improper, I would reject.
 7          The government also makes a concomitant
 8   contention that the defendant's present motion is
 9   untimely.  However, neither the Federal Rules of
10   Appellate Procedure 12.1 nor Federal Rule of Criminal
11   Procedure 37(a) defines what untimely means.  And while
12   the government does cite to the case of United States
13   versus Amado, 841 F.3d 867, at Page 871, which is a Tenth
14   Circuit 2016 case, that case merely holds for the
15   proposition as cited by the government that, quote, the
16   substance of the motion not its former label controls its
17   disposition, end of quote.  That, I obviously would agree
18   with, but I don't know how much that goes towards
19   resolving the issue of whether or not this present motion
20   is somehow untimely.
21          The government also argues that the best
22   source for the analogous time restraints would be under
23   28, U.S.C., Section 2255 which has a one-year limitations
24   period.  Again, the court would disagree.  I don't think
25   that 2255 is similar to this type of motion.  That motion
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    is entirely different.  This motion is primarily based on
 2    an affirmative request based upon the congressional
 3    enactments in the continuing appropriations that has a
 4    provision in it.  So, therefore, I don't think that it is
 5    in any way, shape or form similar to a 2255.  And so I
 6    would find that the motion itself is either barred or
 7    untimely under the rules.
 8               Does anybody want to argue that point any
 9    further?
10         MR. KOWAL:  Two points, your Honor.
11         THE COURT:  Sure.
12         MR. KOWAL:  First, on the Rule 37 applicability,
13    one of the key parts is what is Rule 37 for?
14         THE COURT:  I am not saying that it is
15    inapplicable.  I am just saying even if you apply Rule
16    37, this motion, I don't think, would be barred.
17         MR. KOWAL:  And we would argue it is.  And I guess
18    what I would point out to you is the point of Rule 37 was
19    for motions where there is a need for further factual
20    development in the record.
21               All the examples and the advisory committee
22    notes are cases in which there is material or factual
23    material on which the court of appeals would not have
24    access.
25         THE COURT:  Well, but the problem is that I think
```

```
 1    in this particular situation, first of all, Rule 37
 2    language also is adopted under the Federal Rule of
 3    Appellate Procedure 12.1.  There is virtually identical
 4    language in, as I cited, as in 12.1 as with Rule 37.  It
 5    seems to me that and the fact that the Ninth Circuit
 6    referenced to 12.1 in its discussion as to the defendant
 7    potentially going to this court and seeking this court's
 8    decision on the 12.1 process, I don't think that this
 9    Rule 37 would bar what the defendant is now doing.
10         MR. KOWAL:  I guess I would just say if the Ninth
11    Circuit knew that they were going back on a motion asking
12    for no further factual development and essentially asking
13    the court to reconsider a prior legal ruling, then it
14    would have likely --
15         THE COURT:  Well, no.
16         MR. KOWAL:  It did not prejudge whether Rule 37
17    would be appropriate or what the motion would be.  Here,
18    they have admitted factual development is not
19    appropriate.  I have cited to the court Ninth Circuit
20    case law which says that remand is not appropriate when
21    either there is a set factual record or a purely legal
22    issue.
23         THE COURT:  Well, no, but there is, you know, I
24    think that the language of both -- well, the language of
25    12.1 clearly refers to a substantial issue.  So it
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    doesn't necessarily have to be a factual issue per se.

2    It might simply be a situation where the circuit wants to

3    give the district court the opportunity if the district

4    court feels there is a substantial issue that could be

5    developed better for the court, circuit court, to rule

6    on.

7                 I mean, it is various things.  But I think in

8    terms of just the procedural argument, I am rejecting the

9    procedural argument.  I think the government makes

10   another argument which is more interesting which I want

11   both sides to discuss.  And I will get to that in a

12   moment.  But in terms of just a straight procedural

13   argument, I am rejecting because I don't think I agree

14   with the government in this regard.

15        MR. KOWAL:  The last point I would make in terms

16   of the 2255 analysis, I didn't point this out in our

17   papers, but the defense cited to Rule 2255 as the source

18   of its power to dismiss the case.

19        THE COURT:  Well, that --

20        MR. KOWAL:  That is pretty good evidence that it

21   is a good analogy.  When that is what they are trying to

22   do is dismiss a preestablished conviction.

23        THE COURT:  Well, I think that is an interesting

24   argument because it does segue into this question that I

25   have which I want the parties.  It is the fundamental

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    question, I think, at this point in time.  But insofar as

2    the procedural aspect of it is concerned, I will disagree

3    with the government in that regard and go to the next

4    issue.

5            And the issue is that, given this motion, the

6    court has three potential responses to the motions.

7    First of all, it can defer consideration of this motion

8    although, frankly, I never understood what that means

9    because, actually, I am considering this motion so I

10   can't defer it.  I can defer a decision on it, but

11   actually deferring consideration of the motion, I never

12   understood that portion because it is nonsensical.  I

13   have considered it because it has been made to me, and if

14   I didn't consider it, I couldn't rule one way or the

15   other even to defer.

16           So I don't understand that portion of it, but

17   I do understand that what may have been the intent is not

18   to render a ruling at this point in time for various

19   reasons.  So that is how I kind of view that first

20   option.

21           The second option is I can give an indication

22   as to whether or not the court would grant or deny the

23   motion.  And the third is that I can make the request for

24   the circuit court to remand the matter back to this court

25   for further proceedings and to hold a hearing.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              And, frankly, I think that was kind of the

 2      intent of the McIntosh court, not necessarily the Ninth

 3      Circuit in this case, but of the McIntosh because the

 4      McIntosh case, in that case, the circuit held that the

 5      appropriations did create a bar, but that bar had to meet

 6      certain, you know, requirements one of which is that

 7      there will be a, I guess the word that the circuit

 8      utilized was, that the conduct had to be completely

 9      authorized by state law.  And so the issue was whether or

10      not the defendant's conduct was completely authorized by

11      state law.

12              So that was the basis upon which I think a lot

13      of the other cases are referencing this matter back to

14      the district court.  And the district court's -- I guess,

15      well, let me just ask, in the cases where the district

16      courts -- are the district courts -- well, the district

17      courts are holding a hearing, but they have all agreed to

18      hold hearings.  Has any district court not agreed to hold

19      a hearing after McIntosh?

20          MR. KOWAL:  No, your Honor.  And, remember, the

21      different procedural postures.

22          THE COURT:  I agree.  We will get to that in a

23      second.

24          MR. KOWAL:  It is an interlocutory appeal.

25          MS. YATES:  I am not aware of another case.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  Okay.  All right.  Then, I guess this
 2    is the problem that I have with the defendant's motion at
 3    this point in time, and this is what I want the parties
 4    to address primarily.
 5          You know, at this point in time, it seems to
 6    the court that there really -- the issues that are
 7    outstanding are really issues of law which need to be
 8    resolved, and I don't see why this court would resolve
 9    those issues of law especially since if I resolve those
10    issues of law myself at this point in time, the Ninth
11    Circuit simply does a de novo anyway.  So it more or less
12    doesn't matter, I suppose I can throw in my hat and say,
13    well, I think this or that.
14          There is a question that I don't even know how
15    I would rule now.  And that is as follows:  As pointed
16    out by the government, this case is fundamentally
17    different from the other McIntosh types of cases because
18    in those cases, the McIntosh cases and I presume all the
19    others that have been arising, the defendants have not
20    been convicted.  They have been indicted perhaps, or
21    there have been some other actions taken by the
22    government, for example, to post some forfeitures and
23    things of that sort.
24          But there is no case that I am aware of where
25    the defendant has actually been convicted, in other
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    words, gone to trial and been convicted by a jury.  So,

2    therefore, that, to my mind, is a fundamental and big

3    difference because I don't understand even if I were to

4    order the government not to cease spending any money on

5    this case, I don't think that means that the defendant

6    gets a dismissal.

7            Or if it does, I think that is an issue that

8    is so important it really should be addressed by the

9    appellate court first.  And it can decide that based on

10   what it has now.  It doesn't need to do anything else to

11   make that decision.  It can decide that for itself, and

12   if it decides that that can be a result, then I would

13   say, okay, I can understand.  But I don't see why if I

14   order the government not to spend any more money, that a

15   dismissal is the result.

16           Now, I do understand that, as a practical

17   matter, what that may mean is that the government is no

18   longer allowed to argue anything.  But does that mean

19   that the argument that the government forfeits its

20   position in this case because of the fact that it is not

21   allowed to spend the money?  McIntosh doesn't address

22   that.

23           And it seems to me that unless something

24   happens, the defendant is still convicted.  And so, in

25   other words, I don't see a basis for setting aside the

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
1    conviction due to the fact that the government can't
2    spend any money on the case because if that were the
3    case, for example, it seems to me that there are a lot of
4    people probably in prisons now that have been convicted
5    for medical marijuana type of offenses.  Can they make a
6    motion now and say I want to be released because, you
7    know, this prosecution effects medical marijuana.  And do
8    all those people -- and the government can't oppose which
9    obviously if the position of McIntosh is correct it can't
10   oppose, do those people get to go free as well?  And if
11   the answer is yes, that is fine and dandy, I suppose, but
12   it is really not a decision for me to make at this point
13   in time.  I think it is a decision for the circuit court
14   to make, and it is one that they can make on the basis of
15   the present record.
16          So that is kind of my position.  Somebody want
17   to talk about that?
18        MS. YATES:  I would be happy to, your Honor.
19        THE COURT:  She beat you to it.
20        MS. YATES:  Your Honor, McIntosh at Page 1172
21   says, once Congress has enacted legislation deciding on
22   its priorities, for example, by issuing an appropriations
23   rider, quote, it is for the courts to enforce them when
24   enforcement is sought, and, quote, courts can not ignore
25   that determination.
```

```
 1              A bipartisan Congress has passed Section 542,

 2     Section 538 repeatedly.

 3         THE COURT:  Let me stop.  This is all kind of like

 4     water under the bridge because Congress did not

 5     decriminalize.  Congress did not take marijuana from a

 6     Schedule 1 to something else which is frankly what it

 7     should do if it wants what it is -- I mean, you don't use

 8     an appropriations bill to change a Schedule 1 drug last

 9     time I looked.  You can do it much easier.  It is either

10     up to Congress or the executive branch, neither of which

11     has done that.

12         MS. YATES:  I agree, your Honor, but what Congress

13     was plainly trying to do here was protect people like

14     Mr. Lynch.  And, in fact, the drafters have singled him

15     out as someone that they were interested in protecting

16     from prosecution, from the government wasting taxpayer

17     dollars going after someone like Mr. Lynch who is the

18     poster child for medical marijuana.  That was the entire

19     purpose of Section 542.

20              This court needs to read the appropriations

21     rider to have some effect.  And if it doesn't apply in a

22     case like this, I am not sure where it does.

23         THE COURT:  It certainly has an effect, I think,

24     insofar as unconvicted defendants because, I mean, that

25     was McIntosh.  And, then, therefore, the circuit court
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    said, well, you have to make sure that they have complied

2    with all -- completely complied with all the provisions

3    of the state's medical marijuana enactments.

4            But that is not what we have here.  It is a

5    different situation.

6        MS. YATES:  Yes, your Honor.  But I am just going

7    to go straight to the language of the rider itself.  None

8    of the funds made available in this action to the DOJ may

9    be used to prevent any of the various states including

10   California from implementing their own laws that

11   authorize the use, distribution, possession or

12   cultivation of medical marijuana.

13       THE COURT:  Let me just stop you.  I understand

14   the arguments.  It is not a question of my not

15   understanding the arguments or appreciating the

16   arguments, but the question is whether or not in this

17   situation, I should -- in other words, I don't have to

18   issue a decision on this.

19           As I said, I can defer it, making a ruling,

20   because I think this matter should really be addressed by

21   the circuit court because, again, and why should I, at

22   this point in time, say one thing or the other since the

23   circuit has already indicated that the defendant can

24   raise this issue on appeal, and it is supposed to raise

25   it in, I guess, their cross-appeal brief or whatever.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1          Why would I address it when it is an issue of

2    law to my mind.  It is not an issue of fact.  And very

3    well-versed.  And so why should I address this?

4          MS. YATES:  A few answers.

5          First of all, McIntosh specifically directed

6    district courts to be the one to address this in the

7    first instance, and that is why we have brought this.

8          THE COURT:  If there is a factual issue.

9          MS. YATES:  Well, if the court is saying there is

10   no factual issue here, we would ask the court to make a

11   specific finding that Mr. Lynch was fully authorized by

12   state law in the way that McIntosh contemplates.  So that

13   my concern is that if we end up back in the Ninth

14   Circuit, the government is going to raise all sorts of

15   fact-based arguments about compliance and the Ninth

16   Circuit it going to say we need to send this back down

17   for a factual finding on compliance.

18         THE COURT:  That is fine.  Then they can send it

19   back down at this point in time, but, hopefully, they

20   will address the more important legal issue.  I mean,

21   which they should be prepared to rule because that is the

22   issue at this point in time.  So if they want to ignore

23   the legal issue -- the issue of law that is the elephant

24   in the room and send it back to me, then I will do this.

25   I will entertain whatever they want me to entertain.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    But, again, it is an issue of law, not an issue of fact.

2         MS. YATES:  Well, with respect, although not

3    perhaps as directly as the court may like.  I would

4    suggest that McIntosh did address the legal issue.  The

5    language that I was quoting from the rider, McIntosh then

6    interpreted to mean that when -- when the federal

7    government interferes with the state by prosecuting and

8    seeking to punish a defendant who would otherwise be able

9    to benefit from the state's non prosecution laws, that is

10   something that Congress has said you cannot spend funds

11   on.

12        So that is the language that McIntosh used and

13   Mr. Lynch squarely falls within that.  What the

14   government would continue to do here is plainly seeking

15   to punish Mr. Lynch, someone who would have benefited

16   from the state's non prosecution laws.

17        So I think McIntosh, although it wasn't

18   dealing with the case in its procedural posture, makes

19   very clear based on its interpretation of the rider that

20   it applies in this particular case, and my concern is

21   that we keep, that we delay this issue, and the

22   government keeps spending funds, unauthorized, as a

23   constitutional violation that is a criminal law issue

24   under the Antideficiency Act, and it gets up the Ninth

25   Circuit.

```
 1         THE COURT:  Let me stop.  If the Ninth Circuit was

 2    really worried by it, it would have made a ruling

 3    earlier.

 4         MS. YATES:  Well, that was pre McIntosh.  When we

 5    raised it, it was pre McIntosh.  We have not brought this

 6    in the Ninth Circuit post McIntosh.  Once it has been

 7    clear that the rider does apply in criminal cases.  That

 8    wasn't an open issue pre McIntosh.  Now that that is

 9    clear, we brought the motion here first because --

10         THE COURT:  Well, no.  You first brought it in the

11    Ninth Circuit.  The Ninth Circuit entertained it.  Even

12    though it was -- I mean, the panel prior to McIntosh

13    could have addressed the issue.

14         MS. YATES:  Absolutely, your Honor.  At that point

15    in time, however, no court has held that Section 542 or

16    then Section 538 applied in the criminal context.  So the

17    court's decision to say, we can table this a little, I

18    think takes a different shape than would we have gone to

19    the Ninth Circuit post McIntosh.

20              Now, saying, yes, Congress has said the

21    Department of Justice is violating the law if they are

22    spending funds on these types of cases, and is it

23    emphatically the province of the courts, they say Marbury

24    versus Madison, to enforce the law.  We don't have

25    anything from the Ninth Circuit in our case after that.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  Again, so why shouldn't the Ninth
 2   Circuit be the first to address the issue as to whether
 3   or not the appropriations section should have this effect
 4   on cases which are where the defendant has already been
 5   convicted.  In other words, to go and, again, because the
 6   appropriations language is the language, and, frankly,
 7   the court in McIntosh said don't look at the prior
 8   legislative history in this regard, look at just the
 9   language.  It specifically said don't look at the history
10   of it.  So I can't really look at the history of it in
11   considering it.
12          So I just look at the language, but I don't
13   know what the effect is in this particular situation
14   because, again, the circuit hasn't indicated to me how it
15   can affect it, and it is an issue of law.
16          MS. YATES:  Your Honor, there is certainly nothing
17   novel about bringing a question of law to the district
18   court appropriately to rule on in the first instance,
19   and, then, that can be raised in the Ninth Circuit.
20          THE COURT:  Not when I don't have to because,
21   again, this is 37 and the 12.1 are discretionary.  There
22   was no obligation on my part to do it, and so, therefore,
23   why would I do it in this particular situation when
24   again, it would be subject to a de novo review.  I don't
25   need at this point in time to develop any other record to
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    make a decision.  I mean, it is what it is.

2           MS. YATES:  Your Honor, unless we have a factual

3    finding that Mr. Lynch was in compliance, then the court,

4    the Ninth Circuit when it inevitably reads McIntosh and

5    says, yes, we said if it is interfering by attempting to

6    punish individuals who could have benefited from non

7    prosecution, Section 542 applies, but we don't have a

8    factual finding on compliance, it will send the case back

9    down.  At that point, we have spent additional funds.

10   Congress was trying to --

11          THE COURT:  The thing I don't understand, though,

12   is, again, if that were the case, the Ninth Circuit panel

13   in and of itself should have made that decision already.

14          MS. YATES:  I agree, your Honor, but, at the time,

15   the argument we were presenting pre McIntosh and that we

16   still believe is the correct argument but McIntosh was

17   coming on was that this was a purely legal issue because

18   anybody with a colorable claim.  So there was no reason

19   for the Ninth Circuit to think that factual development

20   would have been beneficial at that point in time.  Now,

21   we have McIntosh which says we need hearings on this, or

22   in a fully developed record like this, I would argue, we

23   simply need a factual finding.

24           I do want to address the point about

25   legislative history because I think what McIntosh said

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    about that is a little bit more nuanced.  McIntosh did at

2    one point earlier in the decision say that the text is

3    not a model of clarity, but, then, when it got to

4    actually interpreting the text of the rider, it used

5    ordinary dictionary definitions and came to a conclusion

6    based on that without any indication of ambiguity.

7            The court then says we don't need to look to

8    legislative history, it cannot alter the plain text of

9    the statute.  And it cites a number of Supreme Court

10   cases which have held that when the text of an

11   appropriations rider or an appropriations provision is

12   clear, then whatever the legislatures may or may not have

13   wanted cannot alter that.  But some of those Supreme

14   Court cases or at least one of them that McIntosh cited

15   actually do look at legislative history when there is

16   ambiguity.  So I don't think McIntosh is saying you can't

17   consider --

18        THE COURT:  The problem with that is that the

19   Ninth Circuit in Olive takes a rather entirely different

20   position than you are arguing in talking about how the

21   mere fact that a subsequent Congress adopts an earlier

22   appropriations provision.  You can't infer the intent

23   from the earlier one.  I mean, again, the language that

24   the Ninth Circuit uses at times is somewhat inconsistent.

25            And, so, I understand your argument, but,

1    again, it is kind of almost like it is standing at this

2    point.  In other words, if he can't get the relief that

3    he wants because of this issue, shouldn't that issue be

4    resolved first if it is an issue of law.  And if it is an

5    issue of law, the circuit can resolve the issue itself.

6         MS. YATES:  He clearly has standing, your Honor.

7    He has a harm, the imminent possibility of going to

8    prison, that an order from this court either issuing an

9    injunction or a dismissal can --

10        THE COURT:  Nothing will happen because no matter

11   what I do the issue is still going to go to the appellate

12   court.  You think the government, if I make a ruling, is

13   going to say, oh, we are going to lay down our tools and

14   walk away.  No.  They are going to continue with the

15   appeal.  It is already on appeal.

16        MS. YATES:  Well, I think they should if this

17   court makes a ruling.  And I don't know that we know what

18   the government would do in that situation.  I also don't

19   think that we know if this court made a ruling that the

20   government was unlawfully spending funds on this case,

21   aside from dismissal, purely effectuated Section 542

22   saying this falls within the ambit of it and you can't

23   spend funds on this case.  It is not clear to me how --

24        THE COURT:  Let's put it this way, I could never

25   find that the government was unlawfully spending funds

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    unless I resolved the legal issue as to whether or not in

2    this context, it -- how the decision is rendered as to

3    whether or not my barring the government from spending

4    money in this matter will or can result in a dismissal of

5    the verdict, the jury verdict, against the defendant.

6    You know, and, frankly, the government has a right to

7    appeal that issue because it is a substantial issue.

8         And so the government is always going to

9    proceed until such time as the position is made by the

10   appellate court not by me.  So, therefore, I don't

11   understand -- it just seems to me it is faster to just

12   let the thing go to the circuit court which now has the

13   issue because they can decide, you know, that if they

14   decide that it can affect the reversal, then you are dead

15   in the water.  And if they say that it can, then, okay,

16   it can.

17        MS. YATES:  I respectfully disagree, your Honor.

18   If the court did rule in our favor, to the extent the

19   government chose to appeal and was permitted to spend

20   funds appealing, I don't think it is clear that the Ninth

21   Circuit would rack that up with cross-appeals.  The

22   court's ruling in some ways could moot the cross-appeals

23   or certainly government's ability to participate in

24   those.  It seems like a preliminary question that needs

25   to be addressed.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  I presume that even if the government

 2    does not participate, I don't know what the answer is.

 3    In other words, if the government was not allowed to say

 4    anything more in this appeal, will that result and should

 5    that result in a reversal of the jury verdict?

 6          MS. YATES:  That question is something that the

 7    Ninth Circuit would properly need to --

 8          THE COURT:  Exactly.

 9          MS. YATES:  But the preliminary question of

10    whether Mr. Lynch was in compliance and whether Section

11    542 applies to him is something that we believe is surely

12    appropriate for this court to answer.

13          THE COURT:  But in the long run, it will take more

14    time and effort because if I entertain this hearing, in

15    other words, the case would be remanded to me because,

16    again, the government is making arguments as to whether

17    or not he fully complied.  And one of the questions, for

18    example, is that compliance determined at the time that

19    he initially opened it during the entire period of time

20    that he operated it, is it determined under the new

21    provisions of the current law in the State of California

22    as to what it takes to operate a medical marijuana

23    facility?

24              There are a lot of questions that have to be

25    answered.  So, in other words, this is not a situation
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    where I would say, even today, I would give you an answer

2    because if I had -- the thing is sent back to me, it is

3    going to be sent back to me, and there are issues of both

4    fact and law that have to be resolved, and that is going

5    to take some time.

6           So the appeal would be stayed, I presume,

7    while I am doing all this.  Once I make my decision, if I

8    said, yes, that he did sufficiently comply with all of

9    the requirements, the government still -- my order, if I

10   order the government not to spend any more money on this

11   matter, the government is going to appeal my order.  And

12   they would have a right to do so.  And I think there is a

13   substantial issue as to what the effect of my order would

14   be.

15          So, therefore, it is going to be in front of

16   the circuit court anyway.  And so, I think it is faster,

17   it would be faster to let the proceedings go forward in

18   front of the Ninth Circuit for the circuit to say, on

19   this important issue, what is the effect.  And at that

20   point in time, if it is one that they say, yes, it can

21   potentially result in the application of a dismissal,

22   then I will hold a hearing at that point in time.

23          But there are a lot of questions that, in

24   other words, it is not going to be faster for the

25   defendant to go the route that you want.  It is going to

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    be faster for him to stay this thing get to the appellate

2    court and have the appellate court deal with this

3    fundamental issue.

4              Yes.

5              From the government.

6         MR. KOWAL:  We agree.

7         THE COURT:  Oh, gosh.  That is unusual.  That is

8    the first time I think you ever said that in this case to

9    the court.

10        MR. KOWAL:  I don't think that is true.  Of

11   course, the whole point of this is to slow things down.

12   It has been three years to get them to file their

13   appellate brief.  If they wanted --

14        THE COURT:  Let me stop you, Mr. Kowal.  Both

15   sides have not acted that swift in processing this

16   appeal.  I am not saying that I am blaming either side

17   because I understand there is a lot of things in

18   consideration, but I am not going to put the blame and

19   say that one side is attempting to stall this matter.

20        MR. KOWAL:  Let me put it this way, your Honor

21   said this is a question of law.  The defense have said

22   there is no further factual development needed.  The

23   Ninth Circuit has said when you have an issue of law or

24   an application of law to fact, no further factual

25   development is needed.  The circuit court is the

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    appropriate --

2        THE COURT:  Let me stop.  I think the reason the

3    defendant said that was the defendant made the argument

4    that the court had already concluded that I found the

5    defendant had met all the terms that were required by the

6    medical marijuana laws, et cetera.  I don't think I made

7    that specific finding.

8            Now, I did say to that to a large extent that

9    the defendant had decriminalized his conduct, but that is

10   different than saying that he met all of the requirements

11   of the statute that were in existence because I don't

12   know what all the terms of those statutes were during

13   that point in time.

14       MR. KOWAL:  Well, your Honor, again, that is a

15   legal question that you don't need a district court to

16   decide.  The key issue is not that further complication.

17   The key issue is are we doing anything evidentially here.

18   And they are saying, no, the record is fully developed.

19       THE COURT:  No.  That is not quite -- I disagree

20   with that.

21           If I were to say that he did not meet all the

22   terms, they would insist on an evidentiary hearing, and

23   they would be entitled to an evidentiary hearing if I

24   were to conclude that.  But the problem is I can't

25   conclude one or the other without holding an evidentiary

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    hearing on all these things.

2            But, again, I do agree with the government

3    that in the end, it would be faster for the appeal to

4    address the issue especially since the government is --

5    especially since the circuit court already indicated that

6    it was entirely appropriate for the issue to be raised

7    and decided on the -- on the, you know, the issue of the

8    appropriations.

9            And the mere fact that McIntosh has come down

10   doesn't necessarily mean that they cannot decide this

11   fundamental issue which I think controls this particular

12   portion of this case.

13   MR. KOWAL:  Well, that's right, your Honor.  The

14   court did allow this issue to be addressed.  It is an

15   issue that they can fully resolve.  And if you look at

16   Rule 37, the point of the deferring the ruling, meaning I

17   am not going to rule one way or the other, is the appeal

18   is going to narrow, change or change the circumstances so

19   much that there is no reason for me to rule and go

20   through this whole process now.

21           And, again, we have also raised the issue the

22   court of appeals may remand it back to you for further

23   findings.  It may reassign the case to another judge.

24   These are all issues that have to be decided by the Court

25   of Appeals.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  Don't raise my hopes.  I suppose I
 2   shouldn't say thing things like that because the Ninth
 3   Circuit has a tendency to read any sort of jest in the
 4   record as being a position that was taken by the court.
 5          MR. KOWAL:  It is just the point is that you are
 6   right, your Honor, that the Ninth Circuit will either
 7   narrow, obviate or handle all these things if it feels
 8   that the record needs more development, it can say so
 9   and, meanwhile, it can resolve everything else and we
10   have a full context.
11             And last point, McIntosh was remanded because
12   it was preconviction, an interlocutory appeal, of course,
13   the record wasn't developed at all, and the Rule 37
14   indicative procedure is a narrowly tailored unusual
15   procedure.  And there is no reason to delay this Ninth
16   Circuit proceedings further by further proceedings here
17   until the Ninth Circuit rules.
18          THE COURT:  All right.  Anything else from the
19   defense?
20          MS. YATES:  Yes, your Honor.
21             Faster does not necessarily mean fairer, your
22   Honor.  We are asking the court to exercise its
23   discretion to entertain this motion.
24          THE COURT:  That last argument that you made is
25   actually strange because I thought that the normal
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    phrasing of it is that -- I think you have to rephrase

2    that.

3         MS. YATES:  Let me rephrase.  We want to have this

4    happen as quickly as possibly.  The cross-appeals have

5    taken some time, but we have always moved quickly on a

6    Section 542 litigation.  Our goal is to get a ruling on

7    that as quickly as possible.  It is my sincere belief

8    that the fastest way to accomplish that is to have this

9    court rule on Mr. Lynch's compliance.  Mr. Lynch and

10   Congress, quite frankly, are also entitled to a ruling on

11   that.

12        THE COURT:  Who knows what Congress is going to do

13   next?

14        MS. YATES:  Well, they have, in a bipartisan

15   fashion -- one of the only things they seem to be able to

16   do in a bipartisan fashion, they keep reenacting this.  I

17   don't think we have any reason to think it won't

18   continue.

19             And I would just encourage the court once more

20   to look to the language of McIntosh which I do think

21   squarely addresses the main issue that the court has.

22   McIntosh is very clear that when the government is taking

23   an action, DOJ is taking an action that seeks to punish

24   somebody who would not be punished in state court for

25   medical marijuana use, distribution, et cetera, that

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    interferes with the state's implementation.
 2              There are no parameters on that that say it
 3    must apply to people who are pretrial, and, of course, an
 4    appeal is an integral part of a criminal case.  His case
 5    is not final.  This is very different from somebody who
 6    is already in prison who may well have a Section 542
 7    claim, but we don't need to go there.  His case is still
 8    not final.  So I really do think McIntosh has already
 9    squarely addressed the legal issue.  And so sending it up
10    to the Ninth Circuit so that they can consider a legal
11    issue that they have already considered and, then, of
12    course, say, yes, under McIntosh, this can apply to him
13    but we need to know if he was in compliance, we are
14    sending it back down is going to be justice delayed.
15         THE COURT:  Not since, again, whether or not I --
16    again, you are asking me to make a finding, a legal
17    finding, and I don't know what the answer would
18    necessarily be in the matter because I don't necessarily
19    agree that a failure to appropriate funds for a
20    prosecution necessarily results in a reversal of a
21    conviction.
22         MS. YATES:  Well, that is a separate issue, your
23    Honor.  And if the court is going to go along with us to
24    the point of compliance with Section 542 --
25         THE COURT:  Once the circuit says, yes, it does,
```

1    then, I could say, okay, let me go through the

2    evidentiary process, et cetera, et cetera.  But why

3    should I engage in an evidentiary hearing which is going

4    to take considerable amount of time and the court's

5    efforts and basically stop the appeal process that can

6    address that very issue.  I mean, why would I do that if

7    at some point in time, I presume in the near future,

8    because I guess even the Ninth Circuit will get tired of

9    briefing in this case, they are going to address that

10   issue?

11          MS. YATES:  Couple of reasons.

12          One, your Honor, that in the meantime, we

13   believe the government is unlawfully spending funds I

14   won't beat that dead horse, but there are serious issues

15   there.  And I think it is the obligation of the federal

16   courts to enforce Congress' legislation.

17          I don't think that we need to be concerned

18   about some extensive evidentiary hearing here.  Yes, if

19   the court thinks the burden is on us to show compliance

20   that we haven't met that burden --

21          THE COURT:  Clearly, it would be on the defendant

22   to bear the burden because the defendant is the one who

23   wants injunctive relief.

24          MS. YATES:  I disagree, your Honor.  This isn't a

25   typical injunction.  This is a bit more sui generis.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   Congress has already made the determination to enjoin the

2   DOJ.  The question is just whether that injunction, so to

3   speak, should apply to this case.

4           THE COURT:  Let me ask, then, why does the

5   McIntosh decision say if the DOJ wishes to continue these

6   prosecution, appellants --

7           MS. YATES:  To continue spending funds.

8           THE COURT:  Well, no.  It says if wishes to

9   continue prosecution, appellants are entitled to

10  evidentiary hearings to determine whether their conduct

11  is completely authorized by state law.

12          MS. YATES:  McIntosh makes very clear that it is

13  talking about enjoining spending.  It doesn't reach the

14  issue of whether a dismissal should then follow.  So this

15  isn't your typical enjoining a criminal prosecution

16  although we have argued that if the court enjoins the

17  Department of Justice from spending funds on this case,

18  it necessarily should also dismiss the case because there

19  is no other way to effectuate that order.

20              But we are not asking for your typical

21  injunction.  This isn't like a civil injunction where you

22  have a balancing of irreparable harm and whatnot and the

23  plaintiff has to meet a certain standard.  Congress has

24  already made the determination of that there should be an

25  injunction.  The question under McIntosh is just whether

 1    it applies to this case.

 2           And if you look to Gonzalez versus O Centro

 3    which is the closest case we have.  Again, this is sui

 4    generis.  But the Supreme Court in that case said when

 5    someone is seeking to enjoin enforcement of the

 6    Controlled Substances Act, they need to make a colorable

 7    claim to relief and the burden then shifts to the

 8    opposing party to justify its actions.  That is

 9    consistent with what we have in state court.

10           And, of course, a McIntosh-type hearing, the

11    court is stepping into the state court's shoes,

12    effectively, in state court.  The cases are very clear.

13    This is the Mower case and the Solis case that are cited

14    in the briefs.  That to present an affirmative defense

15    under the Medical Marijuana Program Act, or the CUA, in

16    California, the defendant has the initial burden of

17    producing enough evidence to raise a reasonable doubt,

18    but the ultimate burden is on the government, or the

19    state there, is on the prosecution to prove beyond a

20    reasonable doubt that the affirmative defense doesn't

21    apply.

22           So our position is that the ultimate burden of

23    persuasion is on the government.  The government has said

24    we don't have any additional evidence that we need to

25    present, and based on the record, they have not met that

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    burden.  And we think that is a finding that this court

2    can easily make without an evidentiary hearing.

3           The only really relevant factual question

4    which we, again, think is sCUArely resolved by the

5    current record is the non profit issue.  These other

6    issues that deal with the 2008 guidelines post date

7    Mr. Lynch's conduct.  McIntosh says defendant had to be

8    strictly compliant with all relevant state laws.  Non

9    binding advisory guidelines that came down after

10   Mr. Lynch closed his dispensary are in no way relevant to

11   whether he strictly complied with state law at the time

12   he had his dispensary.  State law, at the time, was the

13   CUA and the MMPA.  And the MMPA does allow store-front

14   dispensaries so long as they are not for profit.

15          So I really think the evidentiary question to

16   the extent there is any is a bounded one about non

17   profit, and, again, the record, even if the burden is on

18   us, I think we have met it.  But the burden is on the

19   government.  They say they have no further evidence to

20   present, and I think that the court could very well make

21   a factual finding that Mr. Lynch operated a

22   not-for-profit organization.

23          THE COURT:  Anything else from the government?

24          MR. KOWAL:  Just as the court has correctly ruled,

25   the Ninth Circuit has to decide whether a binding final

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  judgment by this court or the jurisdiction of the Court

2  of Appeals after the filing of notice of appeals and the

3  filing of briefs, whether there would be a remedy there

4  for defendant in that case either to prevent the

5  government from further arguing or unwinding a past

6  transaction that is clearly a past conviction.

7          Those are clearly legal issues as the court

8  resolve -- the Ninth Circuit has to resolve those first.

9  It should resolve them.  I have other things to say about

10  that argument, but I think since that is the real

11  threshold question here, there is no reason for this

12  court to rule.

13      THE COURT:  Also, one of the differences, because

14  this case, he has been convicted, he is on appeal, the

15  matter is really with the Court of Appeals.  It is not --

16  I mean, it is not in front of me in the sense that the

17  litigation is in front of me.  He has taken an appeal.

18          Even after I order the government insofar as

19  would I be ordering the government not to show up

20  anywhere and spend any money?  I don't know.  And if the

21  government is in front of the appellate court and not me,

22  really shouldn't it be the appellate court?  In other

23  words, I can say, now, I can bar -- I can do things so I

24  can bar attorneys from showing up in the appellate court

25  and doing things in the appellate court.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1            If I have that power, I would like the circuit

2    to tell me because I will use it.  And I will do things

3    that are, let's say, okay, I don't like what this

4    attorney has done, I am going to bar, I am not going to

5    allow him to go to the circuit court.  Do I have that

6    power?  I mean, it is interesting.  I suppose I could

7    justify it in my twisted mind.

8            But, no, I think, really, again, it is a

9    serious issue.  I don't think that either side is arguing

10   on the basis of some bad faith.  I think both sides have

11   good arguments.  But I don't think that there is an

12   obvious answer that is not -- other than a pure issue of

13   law and the matter is already geared up and the appellate

14   court can make that decision.

15       MS. YATES:  Your Honor, there is no reason that

16   the cross-appeals need to necessarily be stayed while

17   this court handles this matter.  This is an ancillary

18   proceeding, and the jurisdiction --

19       THE COURT:  Let me stop you.  I am not going to

20   make the appeal more complicated than it already is, and

21   to say that I am asking the circuit court to stay some

22   things and not stay others, again, I don't think I have

23   the authority to do any of that sort of thing insofar as

24   the appellate court is concerned.  There, you simply you

25   have made the motion because you can make the motion.  I

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1  am not obligated at this point in time under either 37 or
 2  12.1.
 3          You know, you have made a good shot.  I told
 4  you why I am not going to do it.  And it is
 5  discretionary.  Now, if the appellate court tells me I
 6  have abused my discretion and they want me to hold
 7  evidentiary hearings, I am always perfectly willing to
 8  follow what they say despite what the government may say.
 9  I am always perfectly willing to do that.  So if that is
10  what they want, then I will do that.  But, again, I think
11  that this is an important issue.
12          There is a fundamental issue that I would need
13  for -- for the circuit court to tell me about.  And it
14  has already been geared up for them, and it is one that,
15  really, I think should be addressed even before I hold
16  the evidentiary hearing because, again, in part, the
17  evidentiary hearing the court says I am supposed to
18  consider the available remedies and things of that sort.
19  Well, I don't know what the available remedies are
20  because I have a question as to whether or not one of the
21  available remedies would be that, in effect, I would
22  order the case -- the convictions overturned because I
23  don't know whether or not that is, you know, I am allowed
24  basically even allowed to do that.
25      MS. YATES:  I'm sorry.  Your Honor, I don't want
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    to beat a dead horse.  I do want to let the court know

2    the court does have the authority.  I believe Roadway

3    Express, Inc. versus Piper, 447 U.S. 752, at 767, says

4    the power of a court over members of its bar is at least

5    as great as its authority over litigants.  That is in the

6    context of a discussion about talking about the inherent

7    powers of federal courts that are necessary to exercise

8    of all others.  So the court does the authority to tell

9    the members of the Department of Justice who are members

10    of the bar practicing in this court, that Congress has

11    said, they cannot spend funds on this case.

12         What the Ninth Circuit then says that means

13    for the Ninth Circuit case is a separate question that

14    this court could opine on but does not need to.  All we

15    are asking this court to do is find that Section 542

16    applies to Mr. Lynch and that the government is enjoined

17    from spending funds.  The practical implications of that

18    can be sorted out after the fact.

19         And just as a final point, your Honor, the

20    court does have the discretion not to entertain this

21    motion, but in the interests of justice, we would really

22    ask the court to entertain this.

23         THE COURT:  Well, no.  I already entertained it so

24    it is not a question of I am not entertaining it.  But I

25    have a problem with granting the injunctive relief that

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    the defendant wants because, again, I do not know whether

 2    or not I can lawfully for all intents and purposes

 3    because I can order certain things but if the ultimate

 4    effect is something that it would be unlawful, I don't

 5    know whether or not I can do that.

 6            And I want the circuit court to tell me can I

 7    basically order the government to drop this case such

 8    that the underlying conviction is overturned.  That is

 9    what I want them to tell me.  Because if the answer is

10    no, then why am I doing this stuff?  Why am I holding an

11    evidentiary hearing which I would have to hold.  I have

12    already indicated that.  And so if they tell me it is a

13    possibility that I can order that, that the conviction

14    would be overturned, set aside, okay.  That is fine.

15            But I want them to tell me.  Because one of

16    the things, for example, McIntosh talks about is the

17    courts must appreciate the temporal nature of these

18    appropriations because they can change at any point in

19    time.

20            So, again, that is the thing, that, again,

21    that is the reason why I think it is faster to get the

22    initial answer from the circuit court and that will

23    affect what happens and what I will do because if they

24    tell me that it will have no effect because I -- I cannot

25    overturn the conviction because of an appropriations bill
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

 1    that isn't specifically addressed to it, then, okay, your

 2    client is going to lose.  If they say that I can, then I

 3    will hold the evidentiary hearing to make sure that all

 4    the I's are dotted, make sure that he has complied with

 5    all the requirements, but, again, you know, there was a

 6    period, extended period of time, well, not that extended,

 7    but there was a period of time that he operated, and I do

 8    not know whether all the requirements were always the

 9    same.

10          And, conversely, I also don't know that if, in

11    fact, those requirements have been changed and been

12    lessened, whether or not he should get the benefit of

13    that or not, things of that sort, which all would have to

14    be litigated.  And so rather than doing that, I will let

15    the circuit court to answer the question that I think is

16    the elephant in the room insofar as how to proceed in

17    this matter.

18          MS. YATES:  Very well.

19          THE COURT:  Anything else from either side?

20          MR. KOWAL:  No, your Honor.

21          THE COURT:  Okay.  So I will deny the motion

22    without prejudice for, in essence, I will be saying that

23    I am deferring ruling on the motion because I think there

24    was a legal question that I think is properly addressed

25    to the circuit court and that it should address which

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    would assist me in deciding what I do would do next.

 2              All right.  And is there anything else I need

 3    do in this matter?

 4         MS. YATES:  May I confer, your Honor?

 5         THE COURT:  Sure.

 6         MS. YATES:  No, your Honor.  Thank you.

 7         THE COURT:  All right.  Thank you.  Defendant is

 8    currently out on what, OR, bond?

 9         MS. YATES:  Effectively.  He still has reporting

10    requirements.

11         THE COURT:  So I will leave him out under all same

12    terms and conditions.

13              Thank you.  Have a very nice day.

14    (Proceedings concluded.)

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1                         CERTIFICATE

 2

 3

 4   I hereby certify that pursuant to Section 753, Title 28,

 5   United States Code, the foregoing is a true and correct

 6   transcript of the stenographically reported proceedings held

 7   in the above-entitled matter and that the transcript page

 8   format is in conformance with the regulations of the

 9   Judicial Conference of the United States.

10   Date:  February 10, 2017

11

12    /s/ Katie Thibodeaux, CSR No. 9858, RPR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**MR. KOWAL: [20]** 3/8 9/14
9/16 12/9 12/11 12/16 13/9
13/15 14/14 14/19 16/19
16/23 32/5 32/9 32/19 33/13
34/12 35/4 41/23 47/19
**MS. YATES: [45]**
**THE COURT: [65]**

**-**

**-and [1]** 2/12

**/**

**/s [1]** 49/12

**0**

**07-689 [1]** 1/8

**1**

**10 [1]** 49/10
**10-day [1]** 4/7
**10:28 [1]** 3/2
**1172 [1]** 19/20
**12.1 [9]** 11/2 11/10 13/3
13/4 13/6 13/8 13/25 25/21
44/2
**12.1A [1]** 11/3
**13th [2]** 10/8 10/20
**14th [1]** 10/11
**150-page [1]** 4/16

**2**

**2008 [1]** 41/6
**2015 [4]** 8/2 10/6 10/8 10/11
**2016 [1]** 11/14
**2017 [3]** 1/15 3/1 49/10
**2255 [5]** 11/23 11/25 12/5
14/16 14/17
**24th [1]** 10/6
**26 [1]** 7/3
**28 [2]** 11/23 49/4
**280 [1]** 7/3
**2nd [1]** 2/12

**3**

**312 [2]** 1/20 2/6
**321 [1]** 2/12
**37 [16]** 9/22 11/2 11/4 11/11
12/12 12/13 12/16 12/18 13/1
13/4 13/9 13/16 15/21 34/16
35/13 44/1

**4**

**4202 [1]** 2/13
**436 [1]** 1/20
**447 [1]** 45/3

**5**

**538 [4]** 10/2 10/3 20/2 24/16
**542 [11]** 10/2 20/1 20/19
24/15 26/7 28/21 30/11 36/6
37/6 37/24 45/15

**6**

**689 [1]** 1/8

**7**

**752 [1]** 45/3
**753 [1]** 49/4
**767 [1]** 45/3

**8**

**80-page [1]** 4/13
**841 [1]** 11/13
**867 [1]** 11/13
**871 [1]** 11/13

**9**

**90012 [2]** 1/20 2/7
**90012-4202 [1]** 2/13
**9858 [2]** 1/19 49/12

**A**

**A.M [1]** 3/2
**ability [2]** 9/1 29/23
**able [2]** 23/8 36/15
**about [14]** 19/17 22/15 25/17
26/24 27/1 27/20 38/18 39/13
41/16 42/9 44/13 45/6 45/6
46/16
**above [1]** 49/7
**above-entitled [1]** 49/7
**Absolutely [1]** 24/14
**abused [1]** 44/6
**acceptable [1]** 8/5
**access [1]** 12/24
**accomplish [1]** 36/8
**Act [3]** 23/24 40/6 40/15
**acted [1]** 32/15
**action [4]** 8/13 21/8 36/23
36/23
**actions [2]** 17/21 40/8
**actually [7]** 5/1 15/9 15/11
17/25 27/4 27/15 35/25
**addition [1]** 10/19
**additional [4]** 4/20 8/25
26/9 40/24
**address [13]** 17/4 18/21 22/1
22/3 22/6 22/20 23/4 25/2
26/24 34/4 38/6 38/9 47/25
**addressed [9]** 18/8 21/20
24/13 29/25 34/14 37/9 44/15
47/1 47/24
**addresses [1]** 36/21
**Addressing [1]** 9/19
**admitted [1]** 13/18
**adopted [1]** 13/2
**adopts [1]** 27/21
**advisory [2]** 12/21 41/9
**affect [4]** 8/17 25/15 29/14
46/23
**affirmative [3]** 12/2 40/14
40/20
**after [8]** 10/22 16/19 20/17
24/25 41/9 42/2 42/18 45/18
**again [29]**
**against [1]** 29/5
**agree [10]** 8/9 9/23 11/17
14/13 16/22 20/12 26/14 32/6
34/2 37/19
**agreed [2]** 16/17 16/18
**ALEXANDRA [2]** 2/11 3/13
**all [43]**
**Alliance [1]** 6/12
**allow [3]** 34/14 41/13 43/5
**allowed [5]** 18/18 18/21 30/3
44/23 44/24
**almost [1]** 28/1
**along [1]** 37/23
**already [16]** 21/23 25/4
26/13 28/15 33/4 34/5 37/6
37/8 37/11 39/1 39/24 43/13
43/20 44/14 45/23 46/12
**also [13]** 6/7 10/8 10/10
10/20 11/7 11/21 13/2 28/18
34/21 36/10 39/18 42/13
47/10
**alter [2]** 27/8 27/13
**alternative [1]** 10/21
**although [4]** 15/8 23/2 23/17
39/16
**always [5]** 29/8 36/5 44/7
44/9 47/8
**am [32]**
**Amado [1]** 11/13

**ambiguity [2]** 27/6 27/16
**ambit [1]** 30/21
**America [2]** 1/6 2/4
**amount [2]** 3/24 38/4
**analogous [1]** 11/22
**analogy [1]** 14/21
**analysis [1]** 14/16
**ancillary [1]** 43/17
**ANGELES [5]** 1/14 1/20 2/7
2/13 3/1
**another [4]** 5/18 14/10 16/25
34/23
**answer [10]** 3/23 19/11 30/2
30/12 31/1 37/17 43/12 46/9
46/22 47/15
**answered [1]** 30/25
**answering [1]** 4/17
**answers [1]** 22/4
**Antideficiency [1]** 23/24
**any [31]**
**anybody [2]** 12/8 26/18
**anything [10]** 7/15 18/10
18/18 24/25 30/4 33/17 35/18
41/23 47/19 48/2
**anyway [2]** 17/11 31/16
**anywhere [1]** 42/20
**appeal [22]** 3/18 3/20 10/16
16/24 21/24 21/25 28/15
28/15 29/7 29/19 30/4 31/6
31/11 32/16 34/3 34/17 35/12
37/4 38/5 42/14 42/17 43/20
**appealing [1]** 29/20
**appeals [11]** 3/25 12/23
29/21 29/22 34/22 34/25 36/4
42/2 42/2 42/15 43/16
**appearances [3]** 2/1 2/2 3/8
**appellants [2]** 39/6 39/9
**appellate [17]** 3/22 11/2
11/10 13/3 18/9 28/11 29/10
32/1 32/2 32/13 42/21 42/22
42/24 42/25 43/13 43/24 44/5
**applicability [1]** 12/12
**application [2]** 31/21 32/24
**applied [1]** 24/16
**applies [5]** 23/20 26/7 30/11
40/1 45/16
**apply [7]** 12/15 20/21 24/7
37/3 37/12 39/3 40/21
**appreciate [1]** 46/17
**appreciating [1]** 21/15
**approach [1]** 5/3
**appropriate [7]** 13/17 13/19
13/20 30/12 33/1 34/6 37/19
**appropriately [1]** 25/18
**appropriations [14]** 10/5
12/3 16/5 19/22 20/8 20/20
25/3 25/6 27/11 27/11 27/22
34/8 46/18 46/25
**April [3]** 10/8 10/11 10/20
**April 13th [2]** 10/8 10/20
**April 14th [1]** 10/11
**are [54]**
**argue [4]** 12/8 12/17 18/18
26/22
**argued [1]** 39/16
**argues [1]** 11/21
**arguing [3]** 27/20 42/5 43/9
**argument [13]** 10/19 14/8
14/9 14/10 14/13 14/24 18/19
26/15 26/16 27/25 33/3 35/24
42/10
**arguments [6]** 21/14 21/15
21/16 22/15 30/16 43/11
**arising [1]** 17/19
**as [45]**
**aside [3]** 18/25 28/21 46/14
**ask [6]** 3/16 4/25 16/15
22/10 39/4 45/22
**asking [8]** 6/14 13/11 13/12

## A

**asking... [5]** 35/22 37/16 39/20 43/21 45/15
**aspect [1]** 15/2
**assist [1]** 48/1
**attempted [1]** 4/11
**attempting [2]** 26/5 32/19
**attempts [1]** 4/1
**attorney [2]** 3/23 43/4
**ATTORNEY'S [1]** 2/5
**attorneys [1]** 42/24
**AUSA [1]** 2/6
**authority [4]** 43/23 45/2 45/5 45/8
**authorize [1]** 21/11
**authorized [5]** 9/5 16/9 16/10 22/11 39/11
**available [4]** 21/8 44/18 44/19 44/21
**aware [7]** 4/4 5/20 6/6 6/7 7/14 16/25 17/24
**away [1]** 28/14

## B

**back [13]** 4/1 13/11 15/24 16/13 22/13 22/16 22/19 22/24 26/8 31/2 31/3 34/22 37/14
**bad [1]** 43/10
**balancing [1]** 39/22
**banc [1]** 10/10
**bar [9]** 7/2 13/9 16/5 16/5 42/23 42/24 43/4 45/4 45/10
**barred [2]** 12/6 12/16
**barring [1]** 29/3
**based [9]** 8/20 9/22 12/1 12/2 18/9 22/15 23/19 27/6 40/25
**basic [1]** 4/21
**basically [4]** 5/23 38/5 44/24 46/7
**basis [4]** 16/12 18/25 19/14 43/10
**be [58]**
**bear [1]** 38/22
**beat [3]** 19/19 38/14 45/1
**because [56]**
**been [23]** 3/18 3/20 5/20 6/2 6/9 8/21 15/13 15/17 17/19 17/20 17/20 17/21 17/21 17/25 18/1 19/4 24/6 25/4 26/20 32/12 42/14 44/14 47/11 47/11
**before [1]** 44/15
**behalf [3]** 2/4 2/10 3/14
**being [1]** 35/4
**belief [1]** 36/7
**believe [5]** 6/9 26/16 30/11 38/13 45/2
**beneficial [1]** 26/20
**benefit [2]** 23/9 47/12
**benefited [2]** 23/15 26/6
**best [3]** 5/8 5/15 11/21
**better [1]** 14/5
**beyond [1]** 40/19
**big [1]** 18/2
**bill [3]** 10/5 20/8 46/25
**binding [2]** 41/9 41/25
**bipartisan [3]** 20/1 36/14 36/16
**bit [2]** 27/1 38/25
**blame [1]** 32/18
**blaming [1]** 32/16
**bond [2]** 3/14 48/8
**both [5]** 13/24 14/11 31/3 32/14 43/10
**bounded [1]** 41/16
**branch [1]** 20/10
**Breyer's [1]** 6/11

## B (cont.)

**bridge [1]** 20/4
**brief [5]** 17/10 17/20 21/25 32/13
**briefing [1]** 38/9
**briefs [2]** 40/14 42/3
**bringing [1]** 25/17
**brought [4]** 22/7 24/5 24/9 24/10
**burden [10]** 38/19 38/20 38/22 40/7 40/16 40/18 40/22 41/1 41/17 41/18
**business [4]** 7/2 7/4 8/15 8/24
**businesses [2]** 8/14 8/15

## C

**CA [2]** 2/7 2/13
**CALIFORNIA [8]** 1/2 1/14 1/20 3/1 5/1 21/10 30/21 40/16
**call [1]** 3/6
**came [2]** 27/5 41/9
**can [49]**
**can't [10]** 15/10 19/1 19/8 19/9 25/10 27/16 27/22 28/2 28/22 33/24
**cannot [6]** 23/10 27/8 27/13 34/10 45/11 46/24
**case [52]**
**cases [14]** 5/21 5/25 12/22 16/13 16/15 17/17 17/18 17/18 24/7 24/22 25/4 27/10 27/14 40/12
**cease [1]** 18/4
**CENTRAL [1]** 1/2
**Centro [1]** 40/2
**certain [3]** 16/6 39/23 46/3
**certainly [3]** 20/23 25/16 29/23
**CERTIFICATE [1]** 49/1
**certify [1]** 49/4
**cetera [4]** 33/6 36/25 38/2 38/2
**change [4]** 20/8 34/18 34/18 46/18
**changed [1]** 47/11
**Charles [1]** 1/9
**child [1]** 20/18
**chose [1]** 29/19
**circuit [72]**
**Circuit's [2]** 4/23 6/16
**circumstances [1]** 34/18
**citations [1]** 9/12
**cite [1]** 11/12
**cited [7]** 11/1 11/15 13/4 13/19 14/17 27/14 40/13
**cites [1]** 27/9
**civil [4]** 6/13 6/18 7/23 39/21
**claim [3]** 26/18 37/7 40/7
**clarity [1]** 27/3
**clear [9]** 23/19 24/7 24/9 27/12 28/23 29/20 36/22 39/12 40/12
**clearly [8]** 8/25 9/4 9/7 13/25 28/6 38/21 42/6 42/7
**client [1]** 47/2
**closed [1]** 41/10
**closest [1]** 40/3
**closing [1]** 5/14
**Code [1]** 49/5
**colorable [2]** 26/18 40/6
**come [1]** 34/9
**coming [1]** 26/17
**Commissioner [1]** 6/17
**committee [1]** 12/21
**completely [4]** 16/8 16/10 21/2 39/11
**compliance [10]** 22/15 22/17 26/3 26/8 30/10 30/18 36/9

## C (cont.)

36/13 37/24 38/19
**compliant [1]** 30/9
**complicated [1]** 43/20
**complication [1]** 33/16
**complied [5]** 21/1 21/2 30/17 41/11 47/4
**comply [1]** 31/8
**concern [2]** 22/13 23/20
**concerned [3]** 15/2 38/17 43/24
**conclude [2]** 33/24 33/25
**concluded [3]** 4/12 33/4 48/14
**conclusion [1]** 27/5
**concomitant [1]** 11/7
**conditions [1]** 48/12
**conduct [5]** 16/8 16/10 33/9 39/10 41/7
**confer [1]** 48/4
**Conference [1]** 49/9
**confined [1]** 7/7
**conformance [1]** 49/8
**Congress [15]** 19/21 20/1 20/4 20/5 20/10 20/12 23/10 24/20 26/10 27/21 36/10 36/12 39/1 39/23 45/10
**Congress' [1]** 38/16
**congressional [1]** 12/2
**consider [5]** 8/18 15/14 27/17 37/10 44/18
**considerable [1]** 38/4
**consideration [3]** 15/7 15/11 32/18
**considered [4]** 7/11 7/19 15/13 37/11
**considering [3]** 7/22 15/9 25/11
**consistent [1]** 40/9
**consisting [1]** 7/4
**constitutional [1]** 23/23
**contemplates [1]** 22/12
**contention [2]** 11/5 11/8
**context [8]** 6/13 6/18 7/8 7/23 24/16 29/2 35/10 45/6
**continue [6]** 23/14 28/14 36/18 39/5 39/7 39/9
**continuing [3]** 10/4 10/14 12/3
**controlled [2]** 7/5 40/6
**controls [2]** 11/16 34/11
**conversely [1]** 47/10
**convicted [7]** 17/20 17/25 18/1 18/24 19/4 25/5 42/14
**conviction [7]** 14/22 19/1 37/21 42/6 46/8 46/13 46/25
**convictions [1]** 44/22
**correct [3]** 19/9 26/16 49/5
**correctly [1]** 41/24
**could [11]** 7/2 8/8 14/4 24/13 26/6 28/24 29/22 38/1 41/20 43/6 45/14
**couldn't [1]** 15/14
**COUNSEL [2]** 2/1 2/2
**couple [2]** 3/16 38/11
**course [5]** 32/11 35/12 37/3 37/12 40/10
**court [125]**
**court's [6]** 13/7 16/14 24/17 29/22 38/4 40/11
**courts [10]** 16/16 16/16 16/17 19/23 19/24 22/6 24/23 38/16 45/7 46/17
**CR [1]** 1/8
**create [1]** 16/5
**criminal [10]** 3/20 7/8 9/23 11/4 11/10 23/23 24/7 24/16 37/4 39/15
**cross [6]** 10/16 21/25 29/21 29/22 36/4 43/16

**C**

cross-appeal [2] 10/16 21/25
cross-appeals [4] 29/21
 29/22 36/4 43/16
CRR [1] 49/12
CSR [2] 1/19 49/12
CUA [2] 40/15 41/13
cultivation [1] 3/21
curiosity [1] 3/21
curious [1] 4/19
current [2] 30/21 41/5
currently [1] 48/8

**D**

dandy [1] 19/11
date [2] 41/6 49/10
DAVID [2] 2/6 3/9
day [2] 4/7 48/13
de [2] 17/11 25/24
dead [3] 29/14 38/14 45/1
deal [2] 32/2 41/6
dealing [1] 23/18
deals [1] 7/18
decide [8] 4/22 18/9 18/11
 29/13 29/14 33/16 34/10
 41/25
decided [2] 34/7 34/24
decides [1] 18/12
deciding [2] 19/21 48/1
decision [25]
decisions [2] 7/18 9/13
decriminalize [1] 20/5
decriminalized [1] 33/9
deductions [3] 7/2 7/3 8/14
defendant [27]
defendant's [9] 6/4 10/9
 10/10 10/12 10/15 10/20 11/8
 16/10 17/2
defendants [3] 5/16 17/19
 20/24
Defender [1] 3/13
DEFENDER'S [1] 2/11
defense [5] 14/17 32/21
 35/19 40/14 40/20
defer [5] 15/7 15/10 15/10
 15/15 21/19
deferring [3] 15/11 34/16
 47/23
defines [1] 11/11
definitions [1] 27/5
delay [3] 4/2 23/21 35/15
delayed [1] 37/14
denied [6] 5/25 6/19 10/7
 10/8 10/10 10/22
deny [2] 15/22 47/21
denying [2] 6/8 10/12
DEPARTMENT [5] 2/5 10/13
 24/21 39/17 45/9
depending [1] 10/3
depriving [1] 8/14
Deputy [1] 3/12
despite [1] 44/8
determination [4] 5/13 19/25
 39/1 39/24
determine [1] 39/10
determined [2] 30/18 30/20
develop [1] 25/25
developed [4] 14/5 26/22
 33/18 35/13
development [7] 12/20 13/12
 13/18 26/19 32/22 32/25 35/8
DFPD [2] 2/11 2/12
dictionary [1] 27/5
did [13] 6/13 8/22 13/16
 16/5 20/4 20/5 23/4 27/1
 29/18 31/8 33/8 33/21 34/14
didn't [2] 14/16 15/14
difference [2] 5/6 18/3

**differences** [1] 42/13
different [7] 11/25 15/21
 17/17 21/5 24/18 27/19 33/10
 37/5
directed [1] 22/5
directly [1] 23/3
disagree [7] 8/9 9/20 11/24
 15/2 29/17 33/19 38/24
disallow [1] 8/5
discretion [3] 35/23 44/6
 45/20
discretionary [2] 25/21 44/5
discuss [1] 14/11
discussion [2] 13/6 45/6
dismiss [3] 14/18 14/22
 39/18
dismissal [7] 18/6 18/15
 28/9 28/21 29/4 31/21 39/14
dispensaries [1] 41/14
dispensary [3] 8/22 41/10
 41/12
disposition [1] 11/17
distribute [1] 8/8
distribution [2] 21/11 36/25
district [25]
DIVISION [1] 1/2
do [42]
does [19] 9/5 9/11 11/12
 12/8 14/24 17/11 18/7 18/18
 20/22 24/7 30/2 35/21 37/25
 39/4 41/13 45/2 45/8 45/14
 45/20
doesn't [11] 5/6 7/10 9/1
 14/1 17/12 18/10 18/21 20/21
 34/10 39/13 40/20
doing [7] 4/15 13/9 31/7
 33/17 42/25 46/10 47/14
DOJ [4] 21/8 36/23 39/2 39/5
dollars [1] 20/17
don't [60]
done [2] 20/11 43/4
dotted [1] 47/4
doubt [2] 40/17 40/20
down [8] 22/16 22/19 26/9
 28/13 32/11 34/9 37/14 41/9
drafters [1] 20/14
drop [1] 46/7
drug [1] 20/8
due [1] 19/1
during [2] 30/19 33/12

**E**

earlier [4] 24/3 27/2 27/21
 27/23
easier [1] 20/9
easily [1] 41/2
East [1] 2/12
effect [9] 20/21 20/23 25/3
 25/13 31/13 31/19 44/21 46/4
 46/24
effectively [2] 40/12 48/9
effects [1] 19/7
effectuate [1] 37/19
effectuated [1] 28/21
effort [1] 30/14
efforts [1] 38/5
either [13] 4/22 6/8 10/2
 12/6 13/21 20/9 28/8 32/16
 35/6 42/4 43/9 44/1 47/19
elephant [2] 22/23 47/16
else [7] 18/10 20/6 35/9
 35/18 41/23 47/19 48/2
emphatically [1] 24/23
en [1] 10/10
enacted [1] 19/21
enactments [2] 12/3 21/3
encourage [1] 36/19
end [3] 11/17 22/13 34/3
enforce [4] 10/1 19/23 24/24

 38/16
enforcement [2] 19/24 20/5
engage [1] 38/3
enjoin [4] 5/24 10/13 39/1
 40/5
enjoined [1] 45/16
enjoining [2] 39/13 39/15
enjoins [1] 39/16
enough [1] 40/17
entertain [7] 4/22 22/25
 22/25 30/14 35/23 45/20
 45/22
entertained [2] 24/11 45/23
entertaining [1] 45/24
entire [2] 20/18 30/19
entirely [3] 12/1 27/19 34/6
entitled [4] 33/23 36/10
 39/9 49/7
especially [3] 17/9 34/4
 34/5
essence [1] 47/22
essentially [1] 13/12
et [4] 33/6 36/25 38/2 38/2
even [12] 12/15 15/15 17/14
 18/3 24/11 30/1 31/1 38/8
 41/17 42/18 44/15 44/24
event [1] 4/10
ever [1] 32/8
everything [1] 35/9
evidence [4] 14/20 40/17
 40/24 41/19
evidentially [1] 33/17
evidentiary [15] 5/2 33/22
 33/23 33/25 38/2 38/3 38/18
 39/10 41/2 41/15 44/7 44/16
 44/17 46/11 47/3
Exactly [1] 30/8
example [5] 17/22 19/3 19/22
 30/18 46/16
examples [1] 12/21
executive [1] 20/10
exempt [1] 9/1
exemptions [1] 8/6
exercise [2] 35/22 45/7
existence [1] 33/11
expect [2] 7/14 7/15
expend [1] 10/14
Express [1] 45/3
extended [2] 47/6 47/6
extensive [1] 38/18
extent [4] 7/21 29/18 33/8
 41/16

**F**

F.3d [1] 11/13
face [1] 7/21
facets [1] 8/12
facility [1] 7/2 30/23
fact [13] 13/5 18/20 19/1
 20/14 22/2 22/15 23/1 27/21
 31/4 32/24 34/9 45/18 47/11
fact-based [1] 22/15
facts [1] 8/23
factual [18] 8/20 12/19
 12/22 13/12 13/18 13/21 14/1
 22/8 22/10 22/17 26/2 26/8
 26/19 26/23 32/22 32/24 41/3
 41/21
failure [1] 37/19
fairer [1] 35/21
faith [1] 43/10
falls [2] 23/13 28/22
familiar [1] 6/10
fashion [2] 36/15 36/16
faster [8] 29/11 31/16 31/17
 31/24 32/1 34/3 35/21 46/21
fastest [1] 36/8
favor [1] 29/18
FEBRUARY [5] 1/15 3/1 10/6

**F**

FEBRUARY... [2]  10/6 49/10
February 24th [1]  10/6
federal [14]  2/11 3/13 8/4
8/5 9/4 9/22 11/1 11/4 11/9
11/10 13/2 23/6 38/15 45/7
feels [2]  14/4 35/7
few [1]  22/4
file [1]  32/12
filed [3]  4/12 10/1 10/5
filing [3]  4/16 42/2 42/3
final [4]  37/5 37/8 41/25
45/19
financial [1]  8/13
find [3]  12/6 28/25 45/15
finding [10]  22/11 22/17
26/3 26/8 26/23 33/7 37/16
37/17 41/1 41/21
findings [1]  34/23
fine [3]  19/11 22/18 46/14
first [15]  3/17 12/12 13/1
15/7 15/19 18/9 22/5 22/7
24/9 24/10 25/2 25/18 28/4
32/8 42/8
Floor [1]  2/7
follow [2]  39/14 44/8
follows [1]  17/15
for further [1]  34/22
foregoing [1]  49/5
forfeits [1]  18/19
forfeitures [1]  17/22
form [1]  12/5
format [1]  49/8
former [1]  11/16
forward [1]  31/17
found [1]  33/4
four [1]  4/8
four sentencing [1]  4/8
frankly [6]  15/8 16/1 20/6
25/6 29/6 36/10
free [1]  19/10
front [6]  31/15 31/18 41/13
42/16 42/17 42/21
full [1]  35/10
fully [5]  22/11 26/22 30/17
33/18 34/15
fundamental [5]  14/25 18/2
32/3 34/11 44/12
fundamentally [1]  17/16
funds [16]  10/14 21/8 23/10
23/22 24/22 26/9 28/20 28/23
28/25 29/20 37/19 38/13 39/7
39/17 45/11 45/17
further [12]  12/9 12/19
13/12 15/25 32/22 32/24
33/16 34/22 35/16 35/16
41/19 42/5
future [1]  38/7

**G**

geared [2]  43/13 44/14
generis [2]  38/25 40/4
GEORGE [1]  1/3
get [10]  14/11 16/22 19/10
28/2 32/1 32/12 36/6 38/8
46/21 47/12
gets [2]  18/6 23/24
getting [1]  4/10
give [3]  14/3 15/21 31/1
given [1]  15/5
go [13]  15/3 19/10 21/7 25/5
28/11 29/12 31/17 31/25
34/19 37/7 37/23 38/1 43/5
goal [1]  36/6
goes [1]  11/18
going [31]
gone [4]  4/1 8/23 18/1 24/18
Gonzalez [1]  40/2

good [5]  3/12 14/20 14/21
14/24 44/4
gosh [1]  32/7
got [1]  27/3
government [60]
government's [4]  8/13 9/20
11/5 29/23
grant [2]  6/13 10/24 15/22
granted [3]  5/23 6/3 9/13
granting [1]  45/25
great [1]  45/5
greatly [1]  8/16
guess [9]  4/23 7/20 12/17
13/10 16/7 16/14 17/1 21/25
38/8
guidelines [2]  41/6 41/9
GW [1]  1/8

**H**

had [11]  4/12 7/8 8/21 16/5
16/8 31/2 33/4 33/5 33/9
41/7 41/12
handle [1]  35/7
handles [1]  43/17
happen [2]  28/10 36/4
happens [2]  18/24 46/23
happy [1]  19/18
harm [2]  28/7 39/22
has [52]
hasn't [1]  25/14
hat [1]  17/12
have [96]
haven't [1]  38/20
he [21]  10/5 28/2 28/3 28/6
28/7 30/17 30/19 30/20 31/8
33/10 33/21 37/13 41/11
41/12 42/14 42/14 42/17 47/4
47/7 47/12 48/9
hear [1]  9/11
heard [1]  3/19
hearing [21]  5/2 5/12 5/18
5/19 10/10 15/25 16/17 16/19
30/14 31/22 33/22 33/23 34/1
38/3 38/18 40/10 41/2 44/16
44/17 46/11 47/3
hearings [6]  4/8 5/17 16/18
26/21 39/10 44/7
held [7]  5/1 5/12 5/23 16/4
24/15 27/10 49/6
here [15]  3/15 4/21 5/24 6/5
9/14 13/17 20/13 21/4 22/10
23/14 24/9 33/17 35/16 38/18
42/11
hereby [1]  49/4
him [6]  20/14 30/11 32/1
37/12 43/5 48/11
his [7]  10/1 10/15 33/9 37/4
37/7 41/10 41/12
history [6]  25/8 25/9 25/10
26/25 27/8 27/15
hold [8]  15/25 16/18 16/18
31/22 44/6 44/15 46/11 47/3
holding [4]  7/7 16/17 33/25
46/10
holds [1]  11/14
Honor [38]
HONORABLE [1]  1/3
hopefully [1]  22/19
hopes [1]  35/1
horse [2]  38/14 45/1
how [8]  11/18 15/19 17/14
25/14 27/20 28/23 29/2 47/16
however [2]  11/9 24/15

**I**

I'm [1]  44/25
I's [1]  47/4
identical [1]  13/3

ignore [2]  19/24 22/22
imminent [1]  39/20
implementation [3]  6/22 8/7
37/1
implementing [1]  21/10
implications [1]  45/17
important [4]  18/8 22/20
31/19 44/11
imposing [2]  6/21 6/25
improper [1]  11/6
inability [1]  8/25
inapplicable [1]  12/15
Inc [1]  45/3
including [1]  21/9
inconsistent [1]  27/24
indicate [1]  7/17
indicated [4]  21/23 25/14
34/5 46/12
indicating [1]  8/23 10/18
indication [2]  15/21 27/6
indicative [1]  35/14
indicted [1]  17/20
individuals [1]  26/6
inevitably [1]  26/4
infer [1]  27/22
information [1]  9/17
inherent [1]  45/6
initial [3]  10/4 40/16 46/22
initially [4]  3/25 9/25 10/5
30/19
injunction [7]  6/13 28/9
38/25 39/2 39/21 39/21 39/25
injunctive [2]  38/23 45/25
insist [1]  33/22
insofar [5]  15/1 20/24 42/18
43/23 47/16
instance [2]  22/7 25/18
integral [1]  37/4
intent [3]  15/17 16/2 27/22
intents [1]  46/2
interested [1]  20/15
interesting [3]  14/10 14/23
43/6
interests [1]  45/21
interfere [2]  9/1 9/6
interfered [2]  6/22 8/7
interferes [2]  23/7 37/1
interfering [1]  26/5
interlocutory [2]  16/24
35/12
Internal [1]  6/17
interpretation [1]  23/19
interpreted [1]  23/6
interpreting [1]  27/4
irrelevant [1]  4/19
irreparable [1]  39/22
is [296]
isn't [4]  38/24 39/15 39/21
47/1
issue [65]
issues [11]  4/8 4/11 17/6
17/7 17/9 17/10 31/3 34/24
38/14 41/6 42/7
issuing [2]  19/22 28/8
it [195]
its [17]  6/22 7/11 7/21 8/3
8/7 11/16 11/16 13/6 14/18
18/19 19/22 23/18 23/19
35/22 40/8 45/4 45/5
itself [6]  9/19 12/6 18/11
21/7 26/13 28/5

**J**

jest [1]  35/3
JOHN [2]  2/12 3/13
judge [3]  1/4 6/10 34/23
judgment [1]  42/1
Judicial [1]  49/9
June [1]  10/11

**J**

jurisdiction [3]   6/3 42/1
43/18
jury [3]   18/1 29/5 30/5
just [21]   3/21 4/19 4/25
10/3 12/15 13/10 14/8 14/12
16/15 21/6 21/13 25/8 25/12
29/11 29/11 35/5 36/19 39/2
39/25 41/24 45/19
justice [7]   2/5 10/13 24/21
37/14 39/17 45/9 45/21
justify [2]   40/8 43/7

**K**

KATIE [2]   1/19 49/12
keep [2]   23/21 36/16
keeps [1]   23/22
key [3]   12/13 33/16 33/17
kind [5]   15/19 16/1 19/16
20/3 28/1
knew [1]   13/11
know [34]
knowledge [2]   5/9 5/16
knows [1]   36/12
KOWAL [3]   2/6 3/9 32/14

**L**

label [1]   11/16
language [15]   11/3 11/3 13/2
13/4 13/24 13/24 21/7 23/5
23/12 25/6 25/6 25/9 25/12
27/23 36/20
large [1]   33/8
last [4]   14/15 20/8 35/11
35/24
lasting [1]   3/20
later [1]   5/19
law [28]
lawfully [1]   46/2
laws [7]   6/23 8/8 21/10 23/9
23/16 33/6 41/8
lay [1]   28/13
least [2]   27/14 45/4
leave [1]   48/11
lecturn [1]   5/4
legal [13]   13/13 13/21 22/20
22/23 23/4 26/17 29/1 33/15
37/9 37/10 37/16 42/7 47/24
legislation [2]   19/21 38/16
legislative [4]   25/8 26/25
27/8 27/15
legislatures [1]   27/12
lengthy [2]   4/5 4/6
less [2]   4/18 17/11
lessened [1]   47/12
let [21]   3/6 3/8 3/16 4/25
7/25 9/11 16/15 20/3 21/13
24/1 29/12 31/17 32/14 32/20
33/2 36/3 38/1 39/4 43/19
45/1 47/14
let's [3]   9/9 28/24 43/3
like [14]   5/3 6/18 20/3
20/13 20/17 20/22 23/3 26/22
28/1 29/24 35/2 39/21 43/1
43/3
likely [1]   13/14
limitations [1]   11/23
limited [1]   10/21
litigants [1]   45/5
litigated [1]   47/14
litigation [2]   36/6 42/17
little [2]   24/17 27/1
LITTRELL [2]   2/12 3/13
long [6]   3/20 3/21 4/2 5/5
30/13 41/14
longer [1]   18/18
look [10]   25/7 25/8 25/9
25/10 25/12 27/7 27/15 34/15

36/20 40/2
looked [1]   10/6
LOS [5]   1/14 1/20 2/7 2/13
3/1
lose [1]   47/2
lot [5]   16/12 19/3 30/24
31/23 32/17
Lynch [14]   1/9 3/7 3/14
20/14 20/17 22/11 23/13
23/15 26/3 30/10 36/9 41/10
41/21 45/16
Lynch's [2]   36/9 41/7

**M**

made [14]   4/23 15/13 21/8
24/2 26/13 28/19 29/9 33/3
33/6 35/24 39/1 39/24 43/25
44/3
Madison [1]   24/24
main [1]   36/21
make [23]   5/6 5/13 14/15
15/23 18/11 19/5 19/12 19/14
19/14 21/1 22/10 26/1 28/12
31/7 37/16 40/6 41/2 41/20
43/14 43/20 43/25 47/3 47/4
makes [5]   11/7 14/9 23/18
28/17 39/12
making [2]   21/19 30/16
Marbury [1]   24/23
marijuana [16]   6/12 6/23 7/1
8/8 8/12 8/22 19/5 19/7 20/5
20/18 21/3 21/12 30/22 33/6
36/25 40/15
Marin [1]   6/11
material [2]   12/22 12/23
matter [18]   3/6 10/15 15/24
16/13 17/12 18/17 21/20
28/10 29/4 31/11 32/19 37/18
42/15 43/13 43/17 47/17 48/3
49/7
may [13]   5/17 8/9 15/17
18/17 21/8 23/3 27/12 27/12
34/22 34/23 37/6 44/8 48/4
Maybe [1]   7/25
McIntosh [62]
McIntosh-type [1]   40/10
me [48]
mean [15]   14/7 18/17 18/18
20/7 20/24 22/20 23/6 24/12
26/1 27/23 34/10 35/21 38/6
42/16 43/6
meaning [1]   34/16
means [4]   11/11 15/8 18/5
45/12
meantime [1]   38/12
meanwhile [1]   35/9
medical [15]   6/12 6/23 7/1
8/7 8/12 8/22 19/5 19/7
20/18 21/3 21/12 30/22 33/6
36/25 40/15
meet [3]   16/5 33/21 39/23
members [3]   45/4 45/9 45/9
mere [2]   27/21 34/9
merely [1]   11/14
merits [1]   8/3
met [5]   33/5 33/10 38/20
40/25 41/18
microphone [1]   5/6
might [1]   14/2
mind [3]   18/2 22/2 43/7
MMPA [2]   41/13 41/13
model [1]   27/3
moment [1]   14/12
MONDAY [2]   1/15 3/1
money [9]   8/16 8/16 18/4
18/14 18/21 19/2 29/4 31/10
42/20
month [1]   5/19
moot [1]   29/22

more [15]   3/19 4/18 8/17
9/17 10/22 23/4 23/4 27/1
30/4 30/13 31/10 35/8 36/19
38/25 43/20
morning [1]   3/12
motion [36]
motions [3]   5/25 12/19 15/6
moved [1]   36/5
Mower [1]   40/13
Mr [1]   3/14
Mr. [14]   20/14 20/17 22/11
23/13 23/15 26/3 30/10 32/14
36/9 36/9 41/7 41/10 41/21
45/16
Mr. Kowal [1]   32/14
Mr. Lynch [11]   20/14 20/17
22/11 23/13 23/15 26/3 30/10
36/9 41/10 41/21 45/16
Mr. Lynch's [2]   36/9 41/7
much [4]   8/17 11/18 20/9
34/19
must [3]   8/21 37/3 46/17
my [21]   5/8 5/11 5/11 5/15
17/12 18/2 19/16 21/14 22/2
22/13 23/20 25/22 29/3 31/7
31/9 31/11 31/13 35/1 36/7
43/7 44/6
myself [1]   17/10

**N**

narrow [2]   34/18 35/7
narrowly [1]   35/14
nature [1]   46/17
near [1]   38/7
necessarily [10]   6/24 14/1
16/2 34/10 35/21 37/18 37/18
37/20 39/18 43/16
necessary [1]   45/7
need [19]   12/19 17/7 18/10
22/16 25/25 26/21 26/23 27/7
30/7 33/15 37/7 37/13 38/17
40/6 40/24 43/16 44/12 45/14
48/2
needed [2]   32/22 32/25
needs [4]   9/6 20/20 29/24
35/8
negotiations [2]   4/1 4/12
neither [2]   11/9 20/10
never [4]   3/19 15/8 15/11
28/24
new [1]   30/20
next [3]   15/3 36/13 48/1
nice [1]   48/13
Ninth [42]
no [43]
non [6]   23/9 23/16 26/6 41/5
41/8 41/16
None [1]   21/7
nonsensical [1]   15/12
normal [1]   35/25
North [2]   1/20 2/6
Northern [1]   6/11
not [97]
not-for-profit [1]   41/22
note [1]   9/25
notes [1]   12/22
nothing [2]   25/16 28/10
notice [1]   42/2
novel [1]   25/17
novo [2]   17/11 25/24
now [17]   3/19 4/17 8/9 13/9
17/15 18/10 18/16 19/4 19/6
24/8 24/20 26/20 29/12 33/8
34/20 42/23 44/5
nuanced [1]   27/1
number [3]   4/5 4/8 27/9

**O**

objection [1]   9/22

## O

objections [1] 9/24
obligated [1] 44/1
obligation [2] 25/22 38/15
obviate [1] 35/7
obvious [1] 43/12
obviously [2] 11/17 19/9
offenses [1] 19/5
OFFICE [2] 2/5 2/11
Official [1] 1/19
oh [2] 28/13 32/7
okay [10] 9/16 9/19 17/1
18/13 29/15 38/1 43/3 46/14
47/1 47/21
Olive [9] 6/16 6/20 6/25 7/7
7/10 7/12 7/21 8/20 27/19
once [6] 4/11 19/21 24/6
31/7 36/19 37/25
one [33]
one about [1] 41/16
one has [1] 5/18
One is [1] 7/21
one of [8] 7/17 8/11 12/13
16/6 27/14 30/17 36/15 44/20
one or [1] 33/25
one side [1] 32/19
one that [4] 9/8 19/14 31/20
44/14
one thing [1] 21/22
one to [1] 22/6
one way [2] 5/10 34/17
one who [1] 38/22
one-year [1] 11/23
ongoing [1] 3/25
only [3] 8/4 36/15 41/3
open [1] 24/8
opened [1] 30/19
opening [1] 4/13
operate [1] 30/22
operated [3] 30/20 41/21
47/7
operation [2] 8/12 8/12
opine [1] 45/14
opportunity [1] 14/3
oppose [2] 19/8 19/10
opposing [1] 40/8
option [2] 15/20 15/21
order [16] 10/8 10/11 10/20
18/4 18/14 28/8 31/9 31/10
31/11 31/13 39/19 42/18
44/22 46/3 46/7 46/13
ordering [1] 42/19
ordinary [1] 27/5
organization [1] 41/22
other [25]
others [3] 17/19 43/22 45/8
otherwise [1] 23/8
our [7] 9/17 14/16 24/25
28/13 29/18 36/6 40/22
out [10] 3/21 8/15 8/23
12/18 14/16 17/16 20/15
45/18 48/8 48/11
outstanding [1] 17/7
over [4] 4/14 4/16 45/4 45/5
overturn [1] 46/25
overturned [3] 44/22 46/8
46/14
own [1] 21/10
owner [1] 7/1

## P

page [5] 4/13 4/16 11/13
19/20 49/7
panel [2] 24/12 26/12
papers [1] 14/17
parallels [1] 11/3
parameters [1] 37/2
part [3] 25/22 37/4 44/16

participate [2] 29/23 30/2
particular [5] 8/3 9/12 17/3
25/13 25/23 34/11
parties [2] 14/25 17/3
parts [1] 12/13
party [1] 40/8
passed [1] 20/1
past [2] 42/5 42/6
pending [3] 3/18 5/21 9/18
people [6] 8/8 19/4 19/8
19/10 20/13 37/3
per [1] 14/1
perfectly [2] 44/7 44/9
perhaps [3] 6/10 17/20 23/3
period [5] 11/24 30/19 47/6
47/6 47/7
permitted [1] 29/19
persuasion [1] 40/23
phrasing [1] 36/1
Piper [1] 45/3
plain [1] 27/8
plainly [2] 20/13 23/14
plaintiff [4] 1/7 2/4 9/14
39/23
point [36]
pointed [1] 17/15
points [3] 6/7 7/20 12/10
portion [4] 5/14 15/12 15/16
34/12
position [7] 18/20 19/9
19/16 27/20 29/9 35/4 40/22
possession [1] 21/11
possibility [2] 28/7 46/13
possible [1] 36/7
possibly [1] 36/4
post [7] 5/10 5/16 9/17
17/22 24/6 24/19 41/6
poster [1] 20/18
posture [1] 23/18
postures [1] 16/21
potential [1] 15/6
potentially [2] 13/7 31/21
power [4] 14/18 43/1 43/6
45/4
powers [1] 45/7
practical [2] 18/16 45/17
practicing [1] 45/10
pre [7] 6/1 7/22 8/1 24/4
24/5 24/8 26/15
precedents [1] 9/7
precluded [1] 7/3
preconviction [1] 35/12
predates [1] 6/12
preestablished [1] 14/22
prejudge [1] 13/16
prejudice [3] 10/15 10/22
47/22
preliminary [3] 5/18 29/24
30/9
prepared [1] 22/21
present [9] 3/14 4/19 11/5
11/8 11/19 19/15 40/14 40/25
41/20
presentation [1] 10/23
presenting [1] 26/15
PRESIDING [1] 1/4
presume [4] 17/18 30/1 31/6
38/7
pretrial [2] 4/8 37/3
pretty [1] 14/20
prevent [2] 21/9 42/4
primarily [2] 12/1 17/4
primary [1] 8/11
prior [5] 7/11 7/18 13/13
24/12 25/7
priorities [1] 19/22
prison [2] 28/8 37/6
prisons [1] 19/4
probably [1] 19/4

problem [6] 10/18 12/25 17/2
17/10 37/19 43/25 45/11
procedural [6] 14/8 14/9
14/12 15/2 16/21 23/18
procedure [8] 9/23 11/2 11/4
11/10 11/11 13/3 35/14 35/15
proceed [2] 29/9 47/16
proceeding [1] 43/18
proceedings [8] 1/13 4/4
15/25 31/17 35/16 35/16
48/14 49/6
process [4] 13/8 34/20 38/2
38/5
processing [1] 32/15
producing [1] 40/17
profit [4] 41/5 41/14 41/17
41/22
Program [1] 40/15
properly [2] 30/7 47/24
proposition [1] 11/15
prosecuting [1] 23/7
prosecution [10] 19/7 20/16
23/9 23/16 26/7 37/20 39/6
39/9 39/15 40/19
prosecutions [1] 9/4
protect [1] 20/13
protecting [1] 20/15
prove [1] 40/19
province [1] 24/23
provision [3] 12/4 27/11
27/22
provisions [3] 10/2 21/2
30/21
PUBLIC [2] 2/11 3/13
punish [4] 23/8 23/15 26/6
36/23
punished [1] 36/24
pure [1] 43/12
purely [3] 13/21 26/17 28/21
purpose [1] 20/19
purposes [1] 46/2
pursuant [3] 4/23 5/12 49/4
put [4] 9/9 28/24 32/18
32/20

## Q

question [30]
questions [6] 3/16 4/21 5/18
30/17 30/24 31/23
quickly [3] 36/4 36/5 36/7
quite [3] 8/24 33/19 36/10
quote [4] 11/15 11/17 19/23
19/24
quoting [1] 23/5

## R

rack [1] 29/21
raise [5] 21/24 21/24 22/14
35/1 40/17
raised [5] 4/9 24/5 25/19
34/6 34/21
raises [2] 9/21 10/25
raising [2] 10/15 10/18
rather [2] 27/19 47/14
reach [1] 39/13
read [2] 20/20 35/3
reads [1] 26/4
real [1] 42/10
really [16] 7/15 17/6 17/7
18/8 19/12 21/20 24/2 25/10
37/8 41/3 41/15 42/15 42/22
43/8 44/15 45/21
reason [8] 26/18 33/2 34/19
35/15 36/17 42/11 43/15
46/21
reasonable [2] 40/17 40/20
reasons [2] 15/19 38/11
reassign [1] 34/23

**R**
recall [1]   6/21
reconcile [1]   9/7
reconsider [1]   13/13
record [14]   4/11 8/20 12/20
 13/21 19/15 25/25 26/22
 33/18 35/4 35/8 35/13 40/25
 41/5 41/17
reduced [1]   8/16
reenacting [1]   36/16
refer [2]   6/16 10/3
reference [1]   7/10
referenced [1]   13/6
referencing [1]   16/13
referring [1]   7/17
refers [1]   13/25
regard [3]   14/14 15/3 25/8
regulations [1]   49/8
reject [1]   11/6
rejecting [2]   14/8 14/13
released [1]   19/6
relevant [4]   7/22 41/3 41/8
 41/10
relief [5]   9/13 28/2 38/23
 40/7 45/25
remand [4]   10/21 13/20 15/24
 34/22
remanded [2]   30/15 35/11
remands [1]   9/18
remedies [3]   44/18 44/19
 44/21
remedy [1]   42/3
remember [1]   16/20
render [1]   15/18
rendered [1]   29/2
renewal [1]   10/22
repeatedly [1]   20/2
rephrase [2]   36/1 36/3
reported [1]   49/6
Reporter [1]   1/19
REPORTER'S [1]   1/13
reporting [1]   48/9
request [9]   6/4 6/8 6/18
 10/9 10/10 10/13 10/21 12/2
 15/23
requested [1]   6/5
required [1]   33/5
requirements [7]   16/6 31/9
 33/10 47/5 47/8 47/11 48/10
resolve [8]   17/8 17/9 28/5
 34/15 35/9 42/8 42/8 42/9
resolved [5]   17/8 28/4 29/1
 31/4 41/4
resolving [1]   11/19
respect [1]   23/2
respectfully [1]   29/17
response [2]   6/15 9/20
responses [1]   15/6
restraints [1]   11/22
result [8]   5/7 5/8 18/12
 18/15 29/4 30/4 30/5 31/21
results [1]   37/20
Revenue [1]   6/17
reversal [3]   29/14 30/5
 37/20
review [1]   25/24
rider [8]   19/23 20/21 21/7
 23/5 23/19 24/7 27/4 27/11
right [16]   3/6 3/11 3/15
 4/18 4/20 5/22 7/6 8/1 17/1
 29/6 31/12 34/13 35/6 35/18
 48/2 48/7
Roadway [1]   45/2
room [2]   22/24 47/16
route [1]   31/25
RPR [1]   49/12
rule [27]
ruled [2]   5/9 41/24

rules [6]   9/22 11/1 11/4
 30/25
ruling [12]   13/13 15/18
 21/19 24/2 28/12 28/17 28/19
 29/22 34/16 36/6 36/10 47/23
run [2]   8/15 30/13

**S**
said [18]   8/25 21/1 21/19
 23/10 24/20 25/7 25/9 26/5
 26/25 31/8 32/8 32/21 32/21
 32/23 33/3 40/4 40/23 45/11
same [2]   47/9 48/11
say [34]
saying [10]   12/14 12/15 22/9
 24/20 27/16 28/22 32/16
 33/10 33/18 47/22
says [12]   9/4 13/20 19/21
 26/5 26/21 27/7 27/25 39/8
 41/7 44/17 45/3 45/12
Schedule [2]   20/6 20/8
sCUArely [1]   41/4
se [1]   14/1
second [2]   15/21 16/23
section [17]   7/3 10/2 11/23
 20/1 20/2 20/19 24/15 24/16
 25/3 26/7 28/21 30/10 36/6
 37/6 37/24 45/15 49/4
see [4]   7/25 17/8 18/13
 18/25
seeking [5]   9/14 13/7 23/8
 23/14 40/5
seeks [1]   36/23
seem [1]   36/15
seems [7]   8/17 13/5 17/5
 18/23 19/3 29/11 29/24
segue [1]   14/24
send [4]   22/16 22/18 22/24
 26/8
sending [2]   37/9 37/14
sense [2]   3/18 42/16
sent [2]   31/2 31/3
sentencing [1]   4/8
separate [2]   37/22 45/13
serious [2]   38/14 43/9
Service [1]   6/17
set [5]   5/17 5/19 5/20 13/21
 46/14
setting [1]   18/25
several [1]   4/2
shape [2]   12/5 24/18
She [1]   19/19
shifts [1]   40/7
shoes [1]   40/11
shot [1]   44/3
should [21]   7/14 18/8 20/7
 21/17 21/20 21/21 22/3 22/21
 25/3 26/13 28/16 30/4 38/3
 39/3 39/14 39/18 39/24 42/9
 44/15 47/12 47/25
shouldn't [4]   25/1 28/3 35/2
 42/22
show [3]   8/23 38/19 42/19
showing [1]   42/24
side [4]   32/16 32/19 43/9
 47/19
sides [3]   14/11 32/15 43/10
significant [2]   3/24 4/15
similar [5]   6/4 6/8 6/14
 11/25 12/5
simply [5]   6/9 14/2 17/11
 26/23 43/24
since [10]   4/2 6/2 7/9 10/4
 17/9 21/22 34/4 34/5 37/15
 42/10
sincere [1]   36/7
singled [1]   20/14
situation [8]   13/1 14/2 21/5
 21/17 25/13 25/23 28/18

30/25
six years [1]   3/19
slow [1]   32/11
so [62]
Solis [1]   40/13
some [16]   4/12 4/20 5/18 7/7
 9/6 17/21 17/22 20/21 27/13
 29/22 31/5 36/5 38/7 38/18
 43/10 43/21
somebody [3]   19/16 36/24
 37/5
somehow [2]   11/6 11/20
someone [4]   20/15 20/17
 23/15 40/5
something [6]   18/23 20/6
 23/10 30/6 30/11 46/4
somewhat [1]   27/24
sorry [3]   9/14 10/9 44/25
sort [5]   17/23 35/3 43/23
 44/18 47/13
sorted [1]   45/18
sorting [1]   4/11
sorts [1]   22/14
sought [1]   19/24
source [2]   11/22 14/17
speak [2]   5/5 39/3
specific [3]   6/21 22/11 33/7
specifically [3]   22/5 25/9
 47/1
speed [1]   4/10
spend [9]   18/14 18/21 19/2
 23/10 28/23 29/19 31/10
 42/20 45/11
spending [11]   18/4 23/22
 24/22 28/20 28/25 29/3 38/13
 39/7 39/13 39/17 45/17
spent [1]   26/9
Spring [2]   1/20 2/6
squarely [5]   9/3 9/8 23/13
 36/21 37/9
stall [1]   32/19
standard [1]   39/23
standing [2]   28/1 28/6
started [1]   3/25
state [16]   9/2 9/5 16/9
 16/11 22/12 23/7 30/21 36/24
 39/11 40/9 40/11 40/12 40/19
 41/8 41/11 41/12
state's [5]   8/7 21/3 23/9
 23/16 37/1
stated [4]   10/12 10/20 10/24
 10/24
statement's [1]   6/22
states [11]   1/1 1/4 1/6 2/4
 3/7 3/9 5/23 11/12 21/9 49/5
 49/9
statute [2]   27/9 33/11
statutes [1]   33/12
stay [3]   32/1 43/21 43/22
stayed [2]   31/6 43/16
stenographically [1]   49/6
stepping [1]   40/11
still [7]   8/8 9/18 18/24
 26/16 28/11 31/9 37/7 48/9
stop [7]   20/3 21/13 24/1
 32/14 33/2 38/5 43/19
store [1]   41/13
store-front [1]   41/13
straight [2]   14/12 21/7
strange [2]   3/18 35/25
Street [3]   1/20 2/6 2/12
strictly [2]   41/8 41/11
stuff [1]   46/10
subject [1]   25/24
subpart [1]   11/3
subsequent [1]   27/21
substance [1]   11/16
substances [2]   7/5 40/6

## S

**substantial [5]** 10/25 13/25 14/4 29/7 31/13
**substantive [1]** 5/19
**such [4]** 7/3 8/21 29/9 46/7
**sufficiently [1]** 31/8
**suggest [1]** 23/4
**suggested [1]** 5/13
**sui [2]** 38/25 40/3
**suppose [4]** 17/12 19/11 35/1 43/6
**supposed [2]** 21/24 44/17
**Supreme [3]** 27/9 27/13 40/4
**sure [6]** 12/11 20/22 21/1 47/3 47/4 48/5
**surely [1]** 30/11
**suspect [1]** 7/13
**swift [1]** 32/15

## T

**table [2]** 4/2 24/17
**tailored [1]** 35/14
**take [5]** 7/2 20/5 30/13 31/5 38/4
**taken [4]** 17/21 35/4 36/5 42/17
**takes [3]** 24/18 27/19 30/22
**taking [3]** 3/21 36/22 36/23
**talk [1]** 19/17
**talking [3]** 27/20 39/13 45/6
**talks [1]** 46/16
**tax [4]** 6/21 6/25 8/6 8/25
**taxes [2]** 8/6 9/1
**taxpayer [1]** 20/16
**tell [8]** 43/2 44/13 45/8 46/6 46/9 46/12 46/15 46/24
**tells [2]** 7/16 44/5
**temporal [1]** 46/17
**tendency [1]** 35/3
**Tenth [1]** 11/13
**terms [7]** 14/8 14/12 14/15 33/5 33/12 33/22 48/12
**text [4]** 27/2 27/4 27/8 27/10
**than [8]** 3/19 8/17 24/18 27/20 33/10 43/12 43/20 47/14
**Thank [3]** 48/6 48/7 48/13
**that [370]**
**that's [2]** 7/6 34/13
**their [6]** 7/18 8/16 21/10 21/25 32/12 39/10
**them [9]** 5/17 8/17 19/23 27/14 32/12 42/9 44/14 46/9 46/15
**then [29]**
**there [52]**
**therefore [8]** 8/13 10/17 12/4 18/2 20/25 25/22 29/10 31/15
**these [15]** 4/20 8/6 8/14 8/14 8/15 9/1 9/2 9/7 24/22 34/1 34/24 35/7 39/5 41/5 46/17
**they [52]**
**THIBODEAUX [2]** 1/19 49/12
**thing [8]** 21/22 26/11 29/12 31/2 32/1 35/2 43/23 46/20
**things [19]** 8/18 9/2 14/7 17/23 32/11 32/17 34/1 35/2 35/7 36/15 42/9 42/23 42/25 43/2 43/22 44/18 46/3 46/16 47/13
**think [65]**
**thinks [1]** 38/19
**third [2]** 10/16 15/23
**this [138]**
**those [14]** 4/11 6/1 9/23

**though [2]** 24/12 26/11
**thought [2]** 6/25 35/25
**three [3]** 5/25 15/6 32/12
**three cases [1]** 5/25
**three potential [1]** 15/6
**three years [1]** 32/12
**threshold [1]** 42/11
**through [3]** 4/11 34/20 38/1
**throw [1]** 17/12
**time [36]**
**times [2]** 4/2 27/24
**tired [1]** 38/8
**Title [1]** 49/4
**today [1]** 31/1
**told [1]** 44/3
**took [4]** 4/12 4/14 4/14 4/15
**tools [1]** 28/13
**towards [1]** 11/18
**trade [1]** 7/4
**trafficking [1]** 7/4
**transaction [1]** 42/6
**transcript [3]** 1/13 49/6 49/7
**trial [2]** 4/7 18/1
**true [2]** 32/10 49/5
**trying [3]** 14/21 20/13 26/10
**Twelfth [1]** 2/7
**twisted [1]** 43/7
**two [5]** 5/17 6/7 7/20 9/7 12/10
**two points [2]** 6/7 12/10
**two precedents [1]** 9/7
**two-points [1]** 7/20
**type [3]** 11/25 19/5 40/10
**types [2]** 17/17 24/22
**typical [3]** 38/25 39/15 39/20

## U

**U.S [4]** 1/19 2/5 2/5 45/3
**U.S.C [2]** 7/3 11/23
**ultimate [4]** 7/7 40/18 40/22 46/3
**ultimately [1]** 4/16
**unauthorized [1]** 23/22
**unconvicted [1]** 20/24
**under [12]** 9/2 11/22 12/7 13/2 20/4 23/24 30/20 37/12 39/25 40/15 44/1 48/11
**underlying [2]** 8/19 46/8
**understand [10]** 15/16 15/17 18/3 18/13 18/16 21/13 26/11 27/25 29/11 32/17
**understanding [1]** 21/15
**understood [2]** 15/8 15/12
**UNITED [10]** 1/1 1/4 1/6 2/4 3/7 3/9 5/23 11/12 49/5 49/9
**unlawful [1]** 46/4
**unlawfully [3]** 28/20 28/25 38/13
**unless [4]** 7/16 18/23 26/2 29/1
**until [2]** 29/9 35/17
**untimely [4]** 11/9 11/11 11/20 12/7
**unusual [2]** 32/7 35/14
**unwinding [1]** 42/5
**up [10]** 4/10 20/10 22/13 23/24 29/21 37/9 42/19 42/24 43/13 44/14
**upcoming [1]** 5/17
**upon [3]** 10/3 12/2 16/12
**us [3]** 37/23 38/19 41/18
**use [6]** 8/8 10/3 20/7 21/11 36/25 43/2
**used [3]** 21/9 23/12 27/4

**uses [1]** 27/24
**utilized [1]** 17/6

## V

**various [3]** 14/7 15/18 21/9
**verdict [3]** 29/5 29/5 30/5
**versed [1]** 22/3
**versus [6]** 3/7 6/17 11/13 24/24 40/2 45/3
**very [3]** 3/17 4/5 9/4 22/2 23/19 36/22 37/5 38/6 39/12 40/12 41/20 47/18 48/13
**view [1]** 15/19
**violating [1]** 24/21
**violation [1]** 23/23
**virtually [1]** 13/3

## W

**walk [1]** 28/14
**want [18]** 12/8 14/10 14/25 17/3 19/6 19/16 22/22 22/25 26/24 31/25 36/3 44/6 44/10 44/25 45/1 46/6 46/9 46/15
**wanted [2]** 27/13 32/13
**wants [5]** 14/2 20/7 28/3 38/23 46/1
**was [68]**
**wasn't [3]** 23/17 24/8 35/13
**wasting [1]** 20/16
**water [2]** 20/4 29/15
**way [15]** 5/10 5/24 7/7 8/6 9/6 9/9 12/5 15/14 22/12 28/24 32/20 34/17 36/8 39/19 41/10
**ways [1]** 29/22
**we [64]**
**well [34]**
**well-versed [1]** 22/3
**were [17]** 4/5 4/5 5/25 6/1 6/15 13/11 18/3 19/2 20/15 26/12 26/15 33/5 33/11 33/12 33/21 33/24 47/8
**WESTERN [1]** 1/2
**what [48]**
**whatever [3]** 21/25 22/25 27/12
**whatnot [1]** 39/22
**when [18]** 3/24 7/2 13/20 14/21 19/23 22/1 23/6 23/6 24/4 25/20 25/23 26/4 27/3 27/10 27/15 32/23 36/22 40/4
**where [12]** 4/17 5/25 6/18 9/5 12/19 14/2 16/15 17/24 20/22 25/4 31/1 39/21
**whether [29]**
**which [31]**
**while [3]** 11/11 31/7 43/16
**who [12]** 3/14 20/17 23/8 23/15 26/6 36/12 36/24 37/3 37/5 37/6 38/22 45/9
**whole [2]** 32/11 34/20
**why [16]** 3/20 17/8 18/13 21/21 22/1 22/3 22/7 25/1 25/23 38/2 38/6 39/4 44/4 46/10 46/10 46/21
**will [29]**
**willing [1]** 44/7 44/9
**wishes [2]** 39/5 39/8
**within [2]** 23/13 28/22
**without [6]** 10/14 10/22 27/6 33/25 41/2 47/22
**won't [2]** 36/17 38/14
**word [1]** 16/7
**words [10]** 18/1 18/25 21/17 25/5 28/2 30/3 30/15 30/25 31/24 42/23
**worried [1]** 24/2
**would [72]**

**W**

wouldn't [1]   9/23
**WU [1]**   1/3

**Y**

**YATES [2]**   2/11 3/13
**year [2]**   4/16 11/23
**years [2]**   3/19 32/12
**yes [14]**   3/22 6/15 6/20
 19/11 21/6 24/20 26/5 31/8
 31/20 32/4 35/20 37/12 37/25
 38/18
**yet [1]**   5/20
**you [50]**
**your [43]**