1  NICOLA T. HANNA
   United States Attorney
2  LAWRENCE S. MIDDLETON
   Assistant United States Attorney
3  Chief, Criminal Division
   DAVID KOWAL (Cal. Bar No. 188651)
4  Assistant United States Attorney
        1200 United States Courthouse
5       312 North Spring Street
        Los Angeles, California 90012
6       Telephone: (213) 894-5136
        Facsimile: (213) 894-0141
7       E-mail:   david.kowal@usdoj.gov

8  Attorneys for Plaintiff
   UNITED STATES OF AMERICA
9
                    UNITED STATES DISTRICT COURT
10
                FOR THE CENTRAL DISTRICT OF CALIFORNIA
11
   UNITED STATES OF AMERICA,          No. CR 07-689-GW
12
             Plaintiff,               GOVERNMENT'S POSITION RE
13                                    PRELIMINARY LEGAL ISSUES ON REMAND
                  v.
14                                    Hearing Date/Time:
   CHARLES LYNCH,                     June 17, 2019; 9:00 a.m.
15
             Defendant.
16

17      The United States of America, by and through its counsel of

18 record, the United States Attorney for the Central District of

19 California, hereby files its position on the preliminary legal issues

20 on remand, as identified by the Court and the parties.

21      Many of the relevant documents pertinent to this briefing have

22 been electronically filed on the docket of this Court, or on the

23 docket of the Court of Appeals, Court of Appeals case numbers 10-

24 50219 and 10-50264.  Documents in this Court are referenced by "CR"

25 followed by the clerk's docket number.  Court of Appeals documents

26 are referenced herein by "CTA" followed by their electronic filing

27 number for the document.

28
                                1

Due to the size of the Court's docket in this case, for the convenience of the Court and counsel, the government has attached pertinent parts of the record as exhibits to this Position, as follows:

| Ex. 1 | Redacted Indictment, filed on 8/2/2018 (CR 161). |
|---|---|
| Ex. 2 | Sentencing Memorandum, filed by the Court 4/29/20010 (CR 327). |
| Ex. 3 | United States v. Lynch, 903 F.3d 1061 (9th Cir. 2018). |
| Ex. 4 | Excerpt of Defendant Lynch's Reply to Government's Sentencing Position, filed 3/9/2009 (CR 255). |
| Ex. 5 | Declaration of Charles C. Lynch, dated 1/30/2009, filed 3/3/2009 (CR 246-2). |
| Ex. 6 | Declaration of Special Agent Rachel Burkdoll and Exhibits 9-11 thereto, filed 2/20/2009 (CR 236). |
| Ex. 7 | Transcript of 2/9/17 hearing (CR 465). |
| Ex. 8 | United States v. Daleman, No. 1:11-cv-385-DAD-BAM, 2017 WL 1256743 (E.D. Cal. Feb. 17, 2017). |
| Ex. 9 | Transcript of 3/6/2017 Hearing in United States v. Bagdasarian, No. 1:11-cr-352-LJO-SKO (E.D. Cal.). |
| Ex. 10 | Declaration of Joseph D. Elford in Support of Charles C. Lynch's Position Re: Sentencing, dated and filed 4/22/2009  (CR 279). |
| Ex. 11 | Amicus Curie Brief filed by Joseph D. Elford for Americans for Safe Access, filed in the Ninth Circuit on 7/9/2012 and in district court on 12/12/2016 (CR 453-2; CTA 42). |

Dated: May 9, 2019                  Respectfully submitted,

                                    NICOLA T. HANNA
                                    United States Attorney

                                    LAWRENCE S. MIDDLETON
                                    Assistant United States Attorney
                                    Chief, Criminal Division


                                    _____/s/_____
                                    DAVID KOWAL
                                    Assistant United States Attorneys

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES.................................................ii

I.    BACKGROUND....................................................2

II.   ANALYSIS......................................................7

      A.    AS THIS COURT HAS ALREADY CONCLUDED, DEEFENDANT BEARS
            THE BURDEN OF PROVING HIS ACTIONS WERE IN STRICT
            COMPLIANCE WITH STATE LAW BY A PREPONDERANCE OF THE
            EVIDENCE..............................................7

      B.    TO DETERMINE WHETHER DEFENDANT COMPLIED WITH STATE
            LAW, THIS COURT SHOULD LOOK AT THE STATUTES, CASE LAW,
            AND ATTORNEY GENERAL GUIDELINES THAT DEFINE THE
            COLLECTIVE AND COOPERATIVE PROVISIONS OF CALIFORNIA'S
            2003 MEDICIAL MARIJUANA PROGRAM ACT...................12

            1.    The Rider Should Not Apply Because the
                  Collective/Cooperative Theory Is No Longer valid
                  Under California Law............................13

            2.    Defendant Should Not Be Permitted to Improperly
                  Limit The California State Law That Defines
                  Collectives and Cooperatives....................14

III.  CONCLUSION...................................................19

**TABLE OF AUTHORITIES**

DESCRIPTION                                                            PAGE

**Federal Cases**

Gonzales v. O Centro Espirita Beneficente Unaio Do Vegetal,
  546 U.S. 418 (2006) .................................................. 9

Hamilton v. State Farm Fire & Cas. Co.,
  270 F.3d 778 (9th Cir. 2001) ....................................... 17

Hefland v. Gerson,
  105 F.3d 530 (9th Cir. 1997) ....................................... 17

Lee v. Maricopa County,
  693 F.3d 893 (9th Cir. 2010) ....................................... 17

Marx v. Loral Corp.,
  87 F.3d 1049 (9th Cir. 1996) ....................................... 17

Speilman Motor Sales Co. v. Dodge,
  295 U.S. 89 (1935) .................................................. 8

Winter v. Natural Res. Def. Counsel, Inc.,
  555 U.S. 7 (2008) ................................................... 8

United States v. Bally,
  No. 17-20135, 2017 WL 5625896  (E.D. Mich. Nov. 22, 2017) ....... 11

United States v. Blomquist,
  361 F.Supp.3d 744  (W.D. Mich. 2019) ........................... 11

United States v. Carrillo,
  No. 2:12-CR 185-TLN, 2018 WL 4638418 (E.D. Cal. Sept. 26, 2018)... 9

United States v. Daleman,
  No. 1:11-cv-385-DAD-BAM, 2017 WL 1256743 (E.D. Cal. Feb. 17, 2017)
  ........................................................... passim

United States v. Doe,
  705 F.3d 1134 (9th Cir. 2013) ...................................... 10

United States v. Dominguez-Mestas,

  929 F.2d 1379 (9th Cir. 1991) ..................................... 10

United States v. Gentile,

  No. 12-CR-360-DAD-BAM, 2017 WL 1437532  (E.D. Cal. Apr. 24, 2017) . 9

United States v. Gilmore,

  886 F.3d 1288 (9th Cir. 2018) ..................................... 7

United States v. Kleinman,

  880 F.3d 1020 (9th Cir. 2017) ................................ passim

United States v. Lazarevich,

  147 F.3d 1061 (1998) ............................................. 10

United States v. Lynch,

  903 F.3d 1061 (9th Cir. 2018) ................................ passim

United States v. McIntosh,

  833 F.3d 1163 (9th Cir. 2016) ................................ passim

United States v. Mejia,

  559 F.3d 1113 (9th Cir. 2009) .................................... 10

United States v. New York, New Haven Hartford Railroad Co.,

  355 U.S. 253 (1957) ........................................... 9, 10

United States v. Pisarski,

  274 F. Supp. 3d 1032 (N.D. Cal. Aug. 8, 2017) .................... 9

United States v. Samp,

  No. 16-cr-20263, 2017 WL 1164453 (E.D. Mich. Mar. 29, 2017) .. 10, 11

United States v. Security Indus. Bank,

  459 U.S. 70 (1982) .............................................. 19

United States v. Veon,

  538 F. Supp. 237 (E.D. Cal. 1982) ............................... 10

United States v. Villareal,

   707 F.3d 942 (8th Cir. 2013) ....................................... 10

United States v. Ziskin,

   360 F.3d 934 (9th Cir. 2003) ....................................... 10

**State Cases**

People v. Anderson,

   232 Cal.App.4th (2015) ............................................ 18

People v. Colvin,

   203 Cal.App.4th 1029 (2012) ....................................... 19

People v. Hochanadel,

   176 Cal.App.4th 997 (2009) ............................... 15, 16, 19

People v. London,

   228 Cal.App.4th 544 (2014) ............................... 15, 18

People v. Mentch,

   45 Cal. 4th 274 (2008) ............................................ 18

**Federal Statutes**

Pub. L. No. 113-235............................................. 3

Pub. L. No. 114-141............................................. 3

**State Statutes**

Cal. Health & Safety Code 11362.775............................ 13

California Health & Safety Code §§ 11362.7-11362.9............... 12

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

This brief addresses three legal questions on the issue remanded by the Ninth Circuit to this Court for factual findings with respect to defendant's claim under the Congressional appropriations rider for medical marijuana: (1) Who bears the burden of proving that defendant's activities were in compliance with state law? (2) What standard of proof applies to the party bearing that burden? (3) What state laws apply to determine whether defendant "strictly complied" with California medical marijuana laws?  (CR 483 at 2 (joint status report); CR 485 (minute order).)  As set forth below, the first two issues may be combined for efficiency.  They are readily decided by reference to a ruling by this Court when the issues were previously briefed, and by a solid wall of authority applying black-letter law. In order to sustain defendant's claim for injunctive relief under the appropriation rider, defendant bears the burden of showing by a preponderance of the evidence that the activities for which he stands convicted under federal law were strictly compliant with California medical marijuana law.

The third issue should also be readily apparent.  Defendant's claim for state law compliance has been limited by the Ninth Circuit's binding decision in this matter to his claim that his marijuana activities were part of a valid collective entitled to limited immunity from state criminal law under the terms of California's 2003 Medical Marijuana Program Act (MMPA).  Properly understood as such, defendant's claim is invalid under the appropriations rider because California's immunity for collectives and cooperatives has been repealed.  However, if this Court does not accept this preliminary contention regarding the recent changes to

1

California law, it should rule that the state law that applies to determine whether defendant complied with the collective/cooperative provisions of the MMPA include the 2008 California Attorney General guidelines and all case law interpreting the MMPA's collective and cooperative immunity. It should not accept the argument, made by defendant in the late stages of his direct appeal, that these guidelines, and the standards for the MMPA described by them, are not relevant to his claim under the rider because they were issued after he had been arrested for his federal crimes.

## I.   BACKGROUND

On August 5, 2008, a jury convicted defendant of five marijuana-related Title 21 narcotics charges in a redacted indictment arising from his ownership and operation of a marijuana business, the Central Coast Compassionate Caregivers ("CCCC"). (Ex. 1 (redacted indictment); CR 161, 175.) After post-trial motions, the Court held four sentencing hearings, during which it heard testimony from multiple defense witnesses and the parties submitted extensive briefs, including on the issue of whether defendant's activities had complied with California state marijuana law. (CR 361-64 (tr. of hearings); Ex. 2 at 2-3 (listing briefs); CR 327.)

In April 2010, the Court issued a sentencing memorandum and a judgement and commitment order, sentencing defendant to one year and one day in prison. (Ex. 2; CR 328). In its sentencing rulings, the Court said that it agreed with the government that the "CCCC was not operated in conformity with California state law" because defendant did not qualify as a "primary caregiver" under state medical marijuana law. (Ex. 2 at 33-34, n. 25). Both sides appealed.

On December 16, 2014 -- after defendant had been convicted and sentenced, and nine months after the government had filed its second brief on cross-appeal -- the President signed into law a budget bill, which became the Consolidated and Further Continuing Appropriations Act of 2015, Pub. L. No. 113-235, 128 Stat. 2130.  Section 538 of that act prohibited the use of federal funds to "prevent [California and other medical marijuana states] from implementing [their] own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana."  Id. § 538, 128 Stat. 2217 (the "appropriations rider").  The appropriations rider has been reenacted in substantially similar form in subsequent appropriations acts, and remains active under the 2018 appropriations act.  See United States v. Kleinman, 880 F.3d 1020, 1027 (9th Cir. 2017); Pub. L. No. 114-141.

In February 2015, defendant filed motions in the Ninth Circuit seeking to use the rider to prevent the government from spending further money on the direct appeal.  (CTA 91, 95.)  After extensive litigation, including a request for re-hearing en banc, the Ninth Circuit denied defendant's motion without prejudice to renewing his arguments in his final brief.  (See CTA 91, 94-95, 97, 100-12.)

In August 2016, the Ninth Circuit Court issued its opinion in United States v. McIntosh, 833 F.3d 1163 (9th Cir. 2016), holding that the appropriations rider could be used to seek injunctions to temporarily bar the expenditure of Department of Justice ("DOJ") funds on prosecutions of individuals who "strictly" and "fully complied" with state laws authorizing the production and distribution of "medical" marijuana.  Id.  The Court held that the rider "prohibits the federal government only from preventing the

3

implementation of those specific rules of state law that authorize
the use, distribution, possession, or cultivation of medical
marijuana," but "does not prevent the implementation of rules
authorizing conduct when it prosecutes individuals who engage in
conduct unauthorized under state medical marijuana laws."  Id. at
1178.

The McIntosh Court explained that the appropriations rider does
not "prohibit interference with laws that address medical marijuana
or those that regulate medical marijuana," but only prohibits
"preventing states from implementing laws that authorize the use,
distribution, possession, and cultivation of medical marijuana."  Id.
at 1178.  Defendants "who do not strictly comply with all state-law
conditions" regarding medical marijuana "have engaged in conduct that
is unauthorized, and prosecuting such individuals does not violate"
the rider.  Id.  Thus, the rider only applies to an individual who
"engaged in conduct permitted by the State Medical Marijuana Laws and
who fully complied with such laws."  Id. at 1177.  The Court remanded
the consolidated cases in McIntosh to the district courts to
"determine whether [defendants'] conduct was completely authorized by
state law," which means "that they strictly complied with all
relevant conditions imposed by state law on the use, distribution,
possession, and cultivation of medical marijuana."  Id. at 1179.  In
addition, the Ninth Circuit stressed that the rider "does not provide
immunity from prosecution for federal marijuana offenses," and that
the "manufacture, distribution, or possession of marijuana . . .
remain prohibited by federal law."  Id. at 1179 n.5.

In December 2016, defendant filed an indicative motion in this
Court seeking injunctive relief or dismissal of his case under the

4

appropriations rider.  (CR 451, 453.)  This Court held a hearing on the motion on February 6, 2017, and refused to grant or entertain it. (See CR 465 (trans. of hearing); 466 (order).)  Nonetheless, defendant filed a further motion in the Ninth Circuit seeking a remand to this Court for a hearing regarding defendant's state law compliance under McIntosh, or for separate legal rulings concerning his arguments seeking an injunction or dismissal under the rider. (See CTA 137, 147.)  The government opposed the motion (CTA 142), and a motions panel of the Ninth Circuit denied it without prejudice to defendant renewing his arguments in his final brief.  (CTA 150.)

On September 13, 2018, the Ninth Circuit issued its opinion on direct appeal.  (Ex. 3); United States v. Lynch, 903 F.3d 1061 (9th Cir. 2018).  The Ninth Circuit affirmed defendant's conviction, reversed this Court's sentencing decision granting defendant relief from the applicable five year mandatory minimum sentence, and remanded for resenting.  See Lynch, 903 F.3d at 1067.  With respect to defendant's claims under the appropriations rider, the Court summarized that "the rider may mean that Lynch has some argument that the government cannot now spend money to prosecute him, but if and only if Lynch had been strictly compliant with California law."  Id. at 1086.

The Ninth Circuit said it was "unclear" from the record whether defendant's "activities were so strictly compliant with state law." Id.  It held that there were only two potential "pathways" under California law "for a person like Lynch to be permitted to engage in marijuana activity."  Id.  First, California law allowed certain activities for "primary caregivers."  This was the theory defendant had always claimed applied to him when he ran his CCCC, and that he

claimed at sentencing demonstrated his compliance with state law. (<u>E.g.</u> Ex. 4 at 15(defendant arguing at sentencing that the CCCC "falls squarely under the primary caregiver parameters set forth" in California case law and stating "he made no attempt" to operative a collective); Ex. 5 ¶ 31 (Lynch Decl.) (defendant admits he considered himself a "primary caregiver"); Ex. 6 at Decl. Exhs 9-11 (defendant's primary caregiver forms used at CCCC).) However, the Court of Appeals correctly concluded that this theory of compliance had been "expressly ruled out by California Supreme Court precedent" and by the rulings of this Court at sentencing. <u>Lynch</u> 903 F.3d at 1086; <u>see also</u> Ex. 2 at 33-34 n. 25 (concluding at sentencing that defendant did not meet the definition of "primary caregiver.").

The Ninth Circuit further recognized that "on appeal" defendant had raised a second theory of state law compliance, that the CCCC was a "collective or cooperative" under the MMPA. <u>Lynch</u> 903 F.3d at 1086 (citing Cal. Health and Safety Code § 1162.775(a)). It noted that "it is questionable whether the CCCC was a cooperative as that statute defines the term," and described several facts in the existing record which directly contradicted defendant's theory. <u>Id.</u> Nonetheless, the Court remanded the issue for this Court to make evidentiary findings on this remaining defense theory: "whether Lynch's activities were in in compliance with state law, <u>and particularly</u> whether the CCCC operated under the required collective form." <u>Id.</u> (emphasis added).

## II.   ANALYSIS

**A.   AS THIS COURT HAS ALREADY CONCLUDED, DEEFENDANT BEARS THE BURDEN OF PROVING HIS ACTIONS WERE IN STRICT COMPLIANCE WITH STATE LAW BY A PREPONDERANCE OF THE EVIDENCE**

The Ninth Circuit has not decided the burden and standard of proof that district courts should apply in a so-called <u>McIntosh</u> hearing to resolve a defendant's claim, like the one here, that the DOJ is spending money in violation of the appropriations rider. <u>United States v. Gilmore</u>, 886 F.3d 1288, 1291 n.1 (9th Cir. 2018); <u>United States v. McIntosh</u>, 833 F.3d 1163, 1172 n.2 (9th Cir. 2016). However, earlier in this litigation, after full briefing, this Court correctly concluded that defendant would bear the burden of proving that his criminal activities "strictly complied with California marijuana law." <u>Lynch</u>, 903 F.3d at 1087. Ample authority supports that conclusion and further demonstrates that defendant's burden is by a preponderance of the evidence.

As the Court is aware, in December 2016, while the direct appeal of this matter was still pending, defendant brought an indicative motion for "<u>McIntosh</u> Relief" under the appropriations rider seeking to enjoin the government from continuing to prosecute its appeal and/or dismiss the matter. (CR 453.) As part of that motion, the parties briefed which party bears the burden of proof to establish whether defendant strictly complied with state marijuana law – the same issue before the Court now. (<u>See</u> CR 458 at 16-17 (government's brief)), 463 at 9 (defense brief).) At the February 9, 2017 hearing on the motion, defense counsel conceded that, based on the state of the existing record, "if the [C]ourt thinks the burden is on [the defense] to show compliance [then] we haven't met that burden," to which the Court responded:

7

THE COURT:    Clearly, it would be on the defendant to
bear the burden because the defendant is the one who wants
injunctive relief.

(Ex. 7 at 38 (Trans. of 2/9/17 Hearing); CR 465.)

This Court's reasoning and conclusion was correct, and supported
by a solid wall of authority, both before and after the 2017 hearing.
The party seeking injunctive relief typically bears the burden of
proof, and does so by a preponderance of the evidence. Winter v.
Natural Res. Def. Counsel, Inc., 555 U.S. 7, 20 (2008) (party seeking
injunction bears burden of proof of required elements).  That is
especially true when, as here, a party seeks the extraordinary remedy
of enjoining the government's enforcement of a criminal statute.
Speilman Motor Sales Co. v. Dodge, 295 U.S. 89, 95-96 (1935)
(interference with enforcement of criminal statute requires
exceptional circumstances and "clear showing that an injunction is
necessary") (placing burden on defendant seeking to enjoin
government).  And since the Court's statement at the 2017 hearing,
the Ninth Circuit has foreclosed any possibility that defendant's
conviction could be dismissed, leaving injunctive relief as his only
possibility.  See Kleinman, 880 F.3d at 1028 (holding that rider
"merely enjoins certain DOJ expenditures while it is in effect" but
it "does not require a court to vacate convictions that were obtained
before the rider took effect").

District Courts in the Ninth Circuit engaged in McIntosh
litigation have consistently held that the burden rests on defendant
to prove by a preponderance of the evidence the defendant's strict
compliance with California state medical marijuana law.  United
States v. Daleman, No. 1:11-cv-385-DAD-BAM, 2017 WL 1256743, at
*4  (E.D. Cal. Feb. 17, 2017) (Ex. 8) (holding defendant bears the

8

burden of proving by a preponderance of the evidence that he was in strict compliance with state law); see also United States v. Carrillo, No. 2:12-CR 185-TLN, 2018 WL 4638418, at * 4 (E.D. Cal. Sept. 26, 2018) (same, following Daleman); United States v. Pisarski, 274 F. Supp. 3d 1032, 1036 (N.D. Cal. Aug. 8, 2017) (same); United States v. Gentile, No. 12-CR-360-DAD-BAM, 2017 WL 1437532, at *7 (E.D. Cal. Apr. 24, 2017) (same, adopting Daleman and rejecting defense argument for shifting burden); United States v. McIntosh, No. 14-cr-16-MMC-1, 2017 WL 2695319, at *1 (N.D. Cal. Mar. 20, 2017) (same); United States v. Bagdasarian, No. 1:11-cr-352-LJO-SKO (E.D. Cal. Mar. 6, 2017) (oral decision; Ex. 9 at 2-3, 12) (same).

In Daleman, the court based its determination on three factors. First, considering the plain text of the appropriations rider, the court found that "Congress could have, but did not, explicitly place the burden on the government in demonstrating non-compliance when it enacted the appropriations riders." Daleman, 2017 WL 1256743, at *4, n.5. The court compared the case with the legislation at issue in Gonzales v. O Centro Espirita Beneficente Unaio Do Vegetal, 546 U.S. 418, 424 (2006), in which the Supreme Court held that Congress explicitly placed the burden on the government that it had a compelling interest in barring the use of peyote under the Religious Freedom Restoration Act.[1]  Second, the court relied on the traditional rule considering the allocation of the burden of proof which, "based on considerations of fairness, does not place the burden upon a litigant of establishing facts particularly within the knowledge of his adversary[.]"  Daleman, 2017 WL 1256743, at *3 (citing United

---

[1] The government made this same argument during the 2017 indicative motion proceedings.  (CR 458 at 16.)

States v. New York, New Haven Hartford Railroad Co., 355 U.S. 253, 256 n.5 (1957)).  Third, the court looked to the general rule that "the proponent of a motion bears the burden of proof." Id. (citing United States v. Veon, 538 F. Supp. 237, 245-46 (E.D. Cal. 1982)).

The court in Daleman also concluded that the appropriate standard required the defendant to prove by a preponderance of the evidence that he was in strict compliance.  The court observed that the issue "is similar to other ancillary proceedings outside the criminal trial where a preponderance of the evidence standard is employed." Id. at *4.  The court noted, for example, that the same standard is applied in a criminal forfeiture hearing, and that, although the appropriations rider does not provide immunity from prosecution and thus is not an affirmative defense to the crime, it is appropriate to apply the standard used in affirmative defenses, which require proof of facts and circumstances distinct from the evidence of the underlying offense, such as justification. Id.; see also United States v. Doe, 705 F.3d 1134, 1146 (9th Cir. 2013) (defendant bears burden of proving pubic authority defense); United States v. Mejia, 559 F.3d 1113, 1118 (9th Cir. 2009) (sentencing entrapment); United States v. Ziskin, 360 F.3d 934, 943 (9th Cir. 2003) (double jeopardy); United States v. Lazarevich, 147 F.3d 1061, 1065 (1998) (outrageous government conduct); United States v. Dominguez-Mestas, 929 F.2d 1379, 1383 (9th Cir. 1991) (duress); United States v. Villareal, 707 F.3d 942, 953 (8th Cir. 2013) (motion to dismiss for speedy trial violation).

One out-of-circuit district court applied a different standard, and its reasoning was rejected by two other courts in the same circuit.  In United States v. Samp, No. 16-cr-20263, 2017 WL 1164453

(E.D. Mich. Mar. 29, 2017), the defendant moved for injunctive relief to enjoin the government from prosecuting him for knowingly possessing a firearm while being an unlawful user of a controlled substance, namely marijuana.  The court held an evidentiary hearing and placed the burden of proof of compliance on the government, reasoning that the government always bears the burden of proving guilt of a crime.  Id. at *2.  The shifted burden availed the defendant little in that case, as the court held the government showed by a preponderance of the evidence that Samp possessed marijuana well in excess of the state limit.  Id. at *6-8.

More importantly, however, the flaw in Samp's reasoning as to the burden of proof was noted a few months later in United States v. Bally, No. 17-20135, 2017 WL 5625896 (E.D. Mich. Nov. 22, 2017). That court explained that "the purpose of the hearing is not to determine guilt or innocence; it is to determine whether the defendant is entitled to an injunction barring the use of DOJ funds" on the prosecution.  Id. at *5.  The court soundly reasoned that there is no reason to diverge from the general rule that the party seeking an injunction bears the burden of proof that it is entitled to it.  Id.  More recently, in United States v. Blomquist, 361 F.Supp.3d 744 (W.D. Mich. 2019), the court acknowledged that the discussion of the applicable burden of proof in Samp was "perfunctory" and followed Daleman and Bally in concluding that defendant bears the burden of proof in a McIntosh hearing by a preponderance of the evidence.  Id. at 748-49.

Thus, the weight of the case law and strength of its sound reasoning supports this Court's earlier determination that, in order to succeed on a motion to enjoin use of DOJ funds on a particular

prosecution, the defendant bears the burden of proving by a preponderance of the evidence that he had strictly complied with state medical marijuana laws.

**B.     TO DETERMINE WHETHER DEFENDANT COMPLIED WITH STATE LAW, THIS COURT SHOULD LOOK AT THE STATUTES, CASE LAW, AND ATTORNEY GENERAL GUIDELINES THAT DEFINE THE COLLECTIVE AND COOPERATIVE PROVISIONS OF CALIFORNIA'S 2003 MEDICIAL MARIJUANA PROGRAM ACT**

It is clear from the Ninth Circuit's decision on direct appeal in this case that defendant's only remaining theory of potential state law compliance under the appropriations rider is that his CCCC store was a strictly compliant "collective" under California's 2003 Medical Marijuana Program Act (MMPA), California Health & Safety Code §§ 11362.7-11362.9 (2003 ed.).  See Lynch, 903 F.3d at 1087 (remand as to "particularly whether CCCC operated under the required collective form.").  In determining which law applies to that question, the government first preserves below its argument that it is incongruous for a defendant to obtain any relief under this theory of state law compliance because the collective provisions of the MMPA are no longer operative under California state law.

Second, and more fundamentally, in making its findings regarding defendant's compliance with this state law, this Court must rely on all applicable provisions of the MMPA, including cases law and the 2008 California Attorney General's Guidelines after his criminal conduct, in defining the limited scope of state law collective/cooperative immunity under the 2003 act.  This Court should reject any defense invitation – as first asserted during appellate litigation – to evaluate defendant's compliance with the 2003 MMPA's collective and cooperative provisions only by reference to that California law that existed at the time of his federal crimes

in 2006 to 2007, and thereby improperly and illogically exclude
reference to the 2008 California Attorney General Guidelines (and/or
case law) promulgated afterwards merely because that law undermines
defendant's position.

1.   The Rider Should Not Apply Because the
Collective/Cooperative Theory Is No Longer valid Under
California Law

Preliminarily, it should be noted that in 2017, California
amended Cal. Health and Safety Code § 11362.775(a) and related MMPA
provisions to repeal the previously-existing legal protections for
collective and cooperatives under the 2003 MMPA, and replace them
with a separate, different licensing regime that gives no special
protections from criminal law to collective/cooperatives.  See
generally, Cal. Health & Safety Code 11362.775(d)&(e) (2017 ed.).
This repeal of the earlier collective/cooperative provision -- under
which defendant seeks on remand to show his state law compliance
under the appropriations rider -- became effective on January 9,
2019, after the Court of Appeals' decision in this matter.[2]  The
government hereby preserves its argument that this change in the law
undermines the entire basis for any injunction under the rider as it
might apply to this case.

The text of the rider restricts DOJ funds from being used to
prevent medical marijuana states from "implementing their own laws
that authorize the use, distribution, possession, or cultivation of
medical marijuana."  See McIntosh, 833 F.3d at 1175.  McIntosh held

---

[2] See id.; California Bureau of Cannabis Control, Collectives and
Cooperatives Fact Sheet (May 1, 2019),
https://www.bcc.ca.gov/about_us/documents/18-006_collective_faq.pdf
(noting that official notice triggering final year of
collective/cooperative provisions was posted on January 9, 2018, so
repeal became effective on January 9, 2019).

that the rider should permit injunctions against prosecutions of defendants who fully complied with state medical marijuana law, because such prosecutions could "prevent the Medical Marijuana States from giving practical effect to their medical marijuana laws." McIntosh, 833 F.3d at 1176-77.  Yet Kleinnman also clarified that while injunctions under the rider could "temporarily freeze further spending," they could not "spoil the fruits of prosecutorial expenditures made before" the rider took effect, such as those expended to obtain the conviction in this case.  See Kleinman, 880 F.3d at 1028.  Hence, in this matter, an injunction under the rider would only freeze prosecutorial expenditures in order to presumably allow California to give "practical effect" in the future to its medical marijuana law with respect to collective and cooperatives, notwithstanding the fact that this medical marijuana law no longer exists in California.  California has already implemented new laws on medical marijuana different from the medical marijuana laws at issue in this litigation.  Any future injunction in this case would thus be entirely divorced from the rider's purpose, as interpreted by the Ninth Circuit, for prosecution will logically have no impact on the state's ability to "implement" or "give practical effect" to its existing medical marijuana laws.  An injunction in these circumstances should thus be rejected as a matter of law as far outside the rider's scope.

    2.   <u>Defendant Should Not Be Permitted to Improperly Limit The California State Law That Defines Collectives and Cooperatives</u>

As the Court is aware from its sentencing memorandum in this case, and other contexts, in August 2008, the California Attorney General promulgated guidelines ("Cal. AG Guidelines") for

14

implementing California's first medical marijuana laws, the Compassionate Use Act of 1996 and the 2003 MMPA, including setting forth requirements in this guidelines for valid collectives or cooperatives under the MMPA.  (Ex. 2 at 10 (Court describing Cal. AG guidelines at sentencing).)  The Cal. AG Guidelines have been consistently adopted by California courts, and by the Ninth Circuit, in interpreting the meaning of California's medical marijuana statutes including the collective and cooperative provisions at issue here on remand.  See, e.g., People v. London, 228 Cal.App.4th 544, 554 (2014); Kleinman, F.3d at 833 (applying Cal. AG Guidelines).  Significantly for matters now before this Court, under these guidelines, as later adopted by California courts, the Cal. AG Guidelines made clear, among other things, that lawful California cooperatives must be nonprofits, distribution and sales to nonmembers is prohibited, and cooperatives may acquire marijuana only from their constituent members.  See e.g., People v. Hochanadel, 176 Cal.App.4th 997, 1010 (2009).  It is these standards, among others, that will be applied here on remand.

In the district court, on appeal in the Ninth Circuit, and in his 2016-17 indicative motion to this Court seeking relief under the appropriations rider, defendant repeatedly relied heavily on the 2008 California AG Guidelines to support his revised theory that he had complied with state law because his marijuana store was a collective under the MMPA.  Specifically, at sentencing, defendant submitted to this Court the declaration of Joseph Elford, a defense expert, that relied heavily on the Cal. AG Guidelines, to opine that defendant's CCCC was a valid collective/cooperative under the MMPA.  (Ex. 10; CR 279).  This Court also allowed Elford to argue his points at

sentencing, although it rejected them as inconsistent with the facts of this case.  (RT 4/23/09: 76-84; CR 367 at 76-84.)

On July 9, 2012, soon after defendant had filed his first brief in this Court, Elford filed an amicus brief on defendant's behalf reprising the arguments rejected by the district court at sentencing. The amicus brief relied again heavily on the 2008 Cal. AG Guidelines on medical marijuana, and cases such as Hochanadel, to suggest that defendant had run a collective or cooperative under the MMPA, or at least defendant "reasonably believed this was so." (Ex. 11 at 8-10, 12-14; CR 453-2.)  In his 2016 indicative motion seeking relief under the rider, defendant conceded that the district court had ruled that defendant had not complied with California marijuana law as a primary caregiver, but – reversing his position in his sentencing papers - claimed that he had complied with state law not because he was a primary caregiver, but because his CCCC had been a collective or cooperative under the MMPA.  (CR 453 at 12-13.)  In support, defendant expressly adopted Elford's 2012 amicus brief, including its reliance on the Cal. AG Guidelines, and attached the amicus brief as an exhibit to his motion.  However, in his final brief in the Ninth Circuit, defendant further modified his position.  He still attempted to rely on case law interpreting the MMPA to show that he ran a collective under state law, but insisted that any of his violations of the Cal. AG Guidelines were irrelevant because the Guidelines were promulgated in 2008, after his criminal conduct.  (CTA 137 at 18-20.)

Any attempt on remand to renew his final appellate arguments, and thereby exclude the 2008 AG Guidelines (or other post-2007 California law interpreting the MMPA) as valid authority for determining whether defendant complied with the

collective/cooperative provisions of California medical marijuana law must be rejected.  First, any argument limiting the scope of the applicable MMPA law should be rejected because defendant already relied on the AG Guidelines and related case law in litigating the same issues in this same litigation.  A contradictory argument by defendant would be barred by the doctrines of waiver and judicial estoppel.  Marx v. Loral Corp., 87 F.3d 1049, 1056 (9th Cir. 1996) (party waived argument by taking directly contradictory position; finding "about-face, at best, inventive" and barring revised theory), overruled on other grounds by Lee v. Maricopa County, 693 F.3d 893, 925-28 (9th Cir. 2010) (en banc); see also Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001) (applying judicial estoppel to bar party from advancing inconsistent position; litigants may not "tak[e] inconsistent positions" and "play[] fast and loose with courts"); Hefland v. Gerson, 105 F.3d 530, 535 (9th Cir. 1997) (applying judicial estoppel to inconsistent attorney arguments regarding party's intent, holding that doctrine applies both to factual and legal assertions).  At minimum, defendant's prior reliance on the Cal AG Guidelines to show his purported compliance with state law reflects the weakness of any argument that they are no longer pertinent to his existing claim.

Second, such argument is foreclosed by McIntosh, which emphasized that a defendant seeking protection under the rider must show "strict compliance" so that his conduct was "completely" authorized by "all relevant conditions imposed by state law," and further noted that the broad definition of "law" under the rider included "sets of rules," as well as "regulations" and "administrative decisions." McIntosh, 833 F.3d at 1177, 1778-79.  By

not complying with the Cal. AG Guidelines, defendant did not strictly and completely comply with "all" state laws as defined by the Ninth Circuit.  Indeed, the Ninth Circuit in Kleinman specifically relied, in part, on the Cal. AG Guidelines to conclude that the defendant before had not wholly complied with California law, even though the conduct at issue took place in 2007 and 2008, and the AG Guidelines were not issued until August, 2008.  See Kleinman, 859 F.3d at 833 (citing Cal. AG Guidelines).  Similarly, in this case, both this Court and the Court of Appeals relied on cases decided after defendant's criminal conduct was complete, such as the California Supreme Court's decision in People v. Mentch, 45 Cal. 4th 274, 284-85 (2008), to conclude that defendant's activities did not comply with California's "primary caregiver" provisions.  See Lynch, 903 F.3d at 1086 (citing Mentch); (CR 255 at 33-34 n. 25 (same).)  There is no reason to treat later cases and development in the law of collectives differently from the law of primary caregivers.

Finally, any purported violations of the Cal. AG Guidelines are not merely violations of these guidelines, but violations of the MMPA statute itself, as the statute has been interpreted by case law.  The Cal. AG Guidelines along with the numerous California cases referencing those guidelines, merely interpret the MMPA, which was existing at all relevant times during defendant's criminal conduct. See London, 228 Cal.App.4th at 554.  Indeed, nearly all the California cases cited by defendant in his 2016 indicative motions before this Court and his subsequent motion in the Ninth Circuit rely on and adopt these guidelines in their interpretation of the MMPA, and none rejects the guidelines.  See, e.g., People v. Anderson, 232 Cal.App.4th at 1277-78 (2015); London; 228 Cal.App.4th at 554-56;

People v. Colvin, 203 Cal.App.4th 1029, 1040-41 (2012); Hochanadel,

176 Cal.App.4th at 1009-10.  Moreover, unlike statutes, case law

interpreting statutes apply retrospectively.  E.g., United States v.

Security Indus. Bank, 459 U.S. 70, 79 (1982).  Thus, defendant cannot

escape the import of any failure to comply with the MMPA through an

improper limitation of the state law that interprets that statute.

### III.  CONCLUSION

For the forgoing reasons, the Court should rule that:

(1) With respect to any further evidentiary proceedings on

remand, defendant bears the burden of proving by a preponderance of

the evidence that the marijuana activities for which he was convicted

strictly complied with California state medical marijuana law.

(2) Defendant cannot obtain injunctive relief under the

appropriations rider because changes to California state law take his

claims out of the scope of the rider, and

(3) The applicable law for determining on remand whether

defendant strictly complied with California medical marijuana law

under the appropriations rider is the California law applicable to

the limited immunity for marijuana "collectives" under California's

2003 MMPA, without excluding the Cal AG Guidelines, cases, or rules

issued after defendant's criminal activity ended.