HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
ANGELA C. C. VIRAMONTES (Bar No. 228228)
(Angela_Viramontes@fd.org)
REBECCA M. ABEL (Bar. No. 298604)
(Rebecca_Abel@fd.org)
Deputy Federal Public Defenders
3801 University Avenue, Suite 700
Riverside, California  92501
Telephone: (951) 276-6346
Facsimile: (951) 276-6368

ALEXANDRA W. YATES (Bar No. 250442)
(Alexandra_Yates@fd.org)
Deputy Federal Public Defender
321 East Second Street
Los Angeles, California 90012
Telephone: (213) 894-5059
Facsimile: (213) 894-0081

Attorneys for Defendant
CHARLES LYNCH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 07-689-GW |
| Plaintiff, | |
| v. | **DEFENDANT'S OPENING BRIEF RE: *MCINTOSH* REMAND** |
| CHARLES LYNCH, | |
| Defendant. | Hearing: June 17, 2019 at 9:00 a.m. |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

In *United States v. Lynch*, 903 F.3d 1061 (9th Cir. 2018), the Ninth Circuit remanded this matter "for a factual determination from the district court as to whether Lynch's activities were in compliance with state law, and particularly whether [Central Coast Compassionate Caregivers ("CCCC")] operated under the required collective form." *Id.* at 1086-87.  In order to determine "whether Lynch strictly complied with California marijuana laws," the Ninth Circuit explained that the district court may need to make "specific findings of fact, as well as legal determinations." *Id.* at 1087.  In accordance with the Ninth Circuit's opinion, the parties' March 19, 2019 joint status report identified three preliminary legal issues for the Court's resolution:

1.  Who bears the burden of proving that Mr. Lynch's activities were in compliance with state law?

2.  What standard of proof applies to the party bearing the foregoing burden?

3.  What state laws apply in determining whether Mr. Lynch "strictly complied with California marijuana laws"?

(Dkt. No. 483 at 2).  Defendant provides his opening position on these issues,.

As initially outlined in *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016), a defendant like Mr. Lynch, who seeks to enjoin the government from spending funds on the prosecution of conduct that fully complied with the state's medical marijuana laws, is entitled to an evidentiary hearing. *Id.* at 1179 ("If DOJ wishes to continue these prosecutions, Appellants are entitled to evidentiary hearings to determine whether their conduct was completely authorized by state law, by which we mean that they strictly complied with all relevant conditions imposed by state law on the use, distribution, possession, and cultivation of medical marijuana.").  Although the *McIntosh* Court offered some guidance on the scope of state law applicable in such evidentiary proceedings, it did not address the burden of proof or standard of proof.

1

1    However, subsequent federal case law, as well as California law necessarily

2    incorporated into the standard by *McIntosh*, provide clear guidance on these questions.

3          First, at the *McIntosh* hearing, the defendant bears the initial burden to raise a

4    reasonable doubt that he was in compliance with California medical marijuana laws;

5    then the burden shifts to the government to prove noncompliance beyond a reasonable

6    doubt.  In the appellate opinion in this matter, the court found it "contestable" whether

7    Mr. Lynch was in "total compliance with state law," indicating that even without

8    further factual development, Mr. Lynch had raised doubt as to his compliance.  *Lynch*,

9    903 F.3d at 1085.  This Court similarly found evidence of Mr. Lynch's compliance

10   with state law.  (*See* Dkt. No. 327 at 35 ("Lynch took steps to have CCCC comply with

11   applicable laws such as by obtaining a business license, following federal and state

12   labor statutes, etc."); *see also id.* at 12-16, 33-34, 37-39).  Thus, as dictated by law, at

13   this stage, the burden shifts to the government to prove the CCCC was not in

14   compliance with California medical marijuana laws beyond a reasonable doubt.

15         Second, the primary question of state law that the Court must decide following

16   the evidentiary hearing is whether the CCCC operated as a collective or cooperative

17   medical marijuana dispensary in compliance with California law in effect at the time of

18   offense conduct.  The Court should not consider non-binding guidelines promulgated

19   by the California Attorney General in August 2008, as they post-date the relevant

20   conduct at issue here, which took place in 2006 and 2007.

21         Once these preliminary legal questions are resolved, Mr. Lynch expects to

22   conduct additional fact discovery, including the retention and production of evidence

23   from experts.  (Dkt. No. 483 at 2-3.)  The discovery period will be followed by briefing

24   and an evidentiary hearing on the merits of Mr. Lynch's compliance with California

25   medical marijuana laws—with the parties presenting the evidence in the order and

26   applying the burden and substantive law constraints that follow from the Court's

27   resolution of the legal issues herein.  (*Id.* at 3-4).

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.   ARGUMENT

**A.   The government bears the ultimate burden of proving noncompliance with California medical marijuana laws beyond a reasonable doubt**

The Ninth Circuit has not explicitly addressed which party bears the burden of proof in a hearing to determine whether a medical marijuana defendant strictly complied with state law, or what that burden is.  *See United States v. Gilmore*, 886 F.3d 1288, 1291 n.1 (9th Cir. 2018) ("The parties argue over the burden of proof applicable at a *McIntosh* hearing, but because § 538 does not apply in this case, we leave that issue for another day.").  However, the plain language of the appropriations rider, relevant federal and state case law, and fundamental constitutional principles indicate that the defendant bears the initial burden to raise a reasonable doubt that he was in compliance with California medical marijuana laws, then the burden shifts to the government to prove noncompliance beyond a reasonable doubt.

In addressing the question, the Court must begin with the statutory text.  *See McIntosh*, 833 F.3d at 1175 ("We focus, as we must, on the statutory text.").  Since December 2014, Congress has included in every appropriations bill and short-term extension a virtually identical rider, which states: "None of the funds made available in this Act to the Department of Justice may be used, with respect to," among others, California, "to prevent such States from implementing their own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana." Consolidated Appropriations Act, 2019, Pub. L. 116-6 § 537, 133 Stat. 13, 138 (2018) (governing expenditures through September 30, 2019).  After a thorough analysis of this language, the *McIntosh* Court concluded that the appropriations rider "prohibits DOJ from spending funds from relevant appropriations acts for the prosecution of individuals who engaged in conduct permitted by the State Medical Marijuana Laws and who fully complied with such laws." *McIntosh*, 833 F.3d at 1177.  The rider restricts the government from pursing certain prosecutions; it places no onus on the

3

1    defendant.  Therefore, "it logically follows that . . . the Government bears the burden of

2    showing the defendant's noncompliance in order to pursue prosecution."  *United States*

3    *v. Campbell*, No. 16-CR-0021-DLC, ECF No. 72, at 12 (D. Mont. May 9, 2017).

4            Placing the burden of proof on the government comports with the fundamental

5    principle that a person charged with a crime is innocent until proven guilty.  *See id.*;

6    *United States v. Samp*, No. 16-CR-20263, 2017 WL 1164453, at *2 (E.D. Mich. Mar.

7    29, 2017) (finding that the government retains the burden of proof in proving the

8    defendant was not in compliance with state medical marijuana laws).  Mr. Lynch is

9    entitled to a presumption that he complied with state marijuana laws unless and until

10   the government proves otherwise.

11           Moreover, *McIntosh* interpreted the rider as barring federal prosecutions where

12   the state's medical marijuana laws provide for non-prosecution.  *McIntosh*, 833 F.3d at

13   1176–77 ("By officially permitting certain conduct, state law provides for non-

14   prosecution of individuals who engage in such conduct.  If the federal government

15   prosecutes such individuals, it has prevented the state from giving practical effect to its

16   law providing for non-prosecution of individuals who engage in the permitted

17   conduct.").  As a result, in order to determine in this Court whether Mr. Lynch

18   complied with state law, he is entitled to the benefit of the same substantive rules that

19   he would have been afforded under California law.  Were this Court to hold otherwise,

20   it would "prevent" California from "implementing" its own medical marijuana laws, in

21   violation of the rider.  *McIntosh*, 833 F.3d at 1177.

22           Although the Ninth Circuit has not explicitly addressed the burden and standard

23   of proof in an appropriations rider proceeding, *United States v. Gloor*, 725 F. App'x

24   493 (9th Cir. 2018) is highly instructive.  *Gloor* teaches that the Court should look to

25   state law to determine who bears the burden of proof and by what standard in a

26   *McIntosh* hearing.  In *Gloor*, the Court addressed whether there was a genuine factual

27   dispute as to the defendant's strict compliance with Washington law that would warrant

28

4

1    remand for an evidentiary hearing.  *Id.* at 496.  The *Gloor* court looked to the

2    procedural mechanisms provided in Washington state law that the defendant could have

3    raised in a state court prosecution in order to determine whether the defendant could

4    demonstrate state-law compliance under *McIntosh*.  *Id.* at 495.  Different from

5    California law, Washington law provided statutory affirmative defenses to state

6    marijuana charges that had to be proven by the defendant by a preponderance of the

7    evidence.  *Id.*; Wash. Rev. Code Ann. § 69.51A.045 (2011).  Relying specifically on

8    Washington's burden and standard of proof, *Gloor* held that the defendant could not

9    "prove the elements of the . . . affirmative defense[s]" that were available to

10   Washington "state marijuana charges at the time of his relevant conduct," and thus was

11   not entitled to an evidentiary hearing.  *Gloor,* 725 F. App'x at 495; *see also United*

12   *States v. Silkeutsabay*, No. 13-CR-0140-TOR, ECF No. 441 at 4 (E.D. Wash. Dec. 13,

13   2017) (relying on Washington state law to establish the burden and standard of proof);

14   *United States v. Davis*, No. 12-CR-16-WFN, ECF No. 796 at 1 (E.D. Wash. Sept. 11,

15   2017) (holding the burden of proof is determined by applying the "[s]tate law at the

16   time of the Defendants' arrests," and applying Washington law where the defendant

17   "bore the burden to prove applicable affirmative defenses by a preponderance of

18   evidence").

19       Here, California law, not Washington law, provides the procedural framework to

20   evaluate Mr. Lynch's compliance with state medical marijuana laws.  California's

21   burden and standard of proof in medical marijuana cases is different from

22   Washington's.  The California Supreme Court has held that a defendant in a state

23   marijuana prosecution need only "raise a reasonable doubt" regarding his compliance

24   with medical marijuana laws to benefit from the protections of the Compassionate Use

25   Act ("CUA") and Medical Marijuana Program Act ("MMPA"), Cal. Health & Safety

26   Code §§ 11362.5, 11326.7 *et seq.*  *People v. Mower*, 28 Cal. 4th 457, 481 (2002); *see*

27   *also People v. Orlosky*, 233 Cal. App. 4th 257, 269 (2015) (A defendant "need only

28

                                          5

1   raise a reasonable doubt about the existence of the defense, and once this burden is met,

2   the court must provide the instruction and inform the jury that the prosecution has the

3   burden to disprove the defense beyond a reasonable doubt."); *People v. Solis*, 217 Cal.

4   App. 4th 51, 57 (2013) ("A defendant invoking the MMP[A] as a defense bears the

5   burden of producing evidence in support of that defense," but "need only produce

6   evidence that raises a reasonable doubt whether his or her acts were protected under the

7   MMP[A]."). The ultimate burden of proof is on "the prosecution" to prove the

8   defendant's activity was illegal beyond a reasonable doubt. *Solis*, 217 Cal. App. 4th at

9   57. A California trial court commits reversible error if it instructs the jury that the

10   defendant must "prove" his compliance with state medical marijuana laws "by a

11   preponderance of the evidence." *Mower*, 28 Cal. 4th at 484.

12          This standard is similar to the most closely analogous federal precedent,

13   *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006).

14   There, the Supreme Court specifically held that a party seeking to enjoin enforcement

15   of the Controlled Substances Act bears the initial burden of presenting a colorable

16   claim for relief, but the burden then shifts to the opposing party to justify its actions.

17   *See id.* at 428-30; *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115-16 (9th Cir.

18   2011). The Court held that because the government had the ultimate burden at trial, it

19   also bore the burden at the injunction stage. *Gonzales*, 546 U.S. at 428-30. Similarly,

20   because the prosecution would bear the burden of proving noncompliance at a

21   California state trial, it must shoulder that burden here.

22          Importantly, enforcement of the appropriations rider, as Mr. Lynch seeks here, is

23   unlike the pursuit of a traditional injunction, affirmative defense, or dismissal motion—

24   situations where the defense bears the burden of proof. Congress already issued an

25   injunction; this Court's sole responsibility is to determine whether to enforce that

26   injunction here. For as the Ninth Circuit explained, "[w]hen [the appropriations rider]

27   took effect, the DOJ was obligated to stop spending funds in connection with any

28

6

1  charges involving conduct that fully complied with state law." *United States v.*

2  *Kleinman*, 880 F.3d 1020, 1028 (9th Cir. 2017); *see also McIntosh*, 833 F.3d at 1172

3  (explaining that once Congress "specifically restricts DOJ from spending money to

4  pursue certain activities," "'it is for . . . the courts to enforce [that restriction] when

5  enforcement is sought'" (first alteration in original) (quoting *Tenn. Valley Auth. v. Hill*,

6  437 U.S. 153, 194 (1978)); *United States v. Carrillo*, No. 2:12-CR-00185-TLN, 2018

7  WL 4638418, at *5 (E.D. Cal. Sept. 26, 2018) ("Courts have been clear that a *McIntosh*

8  hearing is not an opportunity for the defendant to present an affirmative defense . . . .").

9  In sum, once Mr. Lynch presents sufficient evidence to raise a reasonable doubt that he

10  was in compliance with California medical marijuana laws, the burden shifts to the

11  government to prove otherwise beyond a reasonable doubt.[1]

12  **B.     The only relevant laws are the state medical marijuana laws that were**

13  **in effect when Mr. Lynch operated the CCCC**

14      The *McIntosh* court narrowly defined the scope of state laws relevant to a

15  determination of the applicability of the appropriations rider.  The Court held that "the

16  ordinary meaning of [the rider] prohibits the Department of Justice from preventing the

17  implementation of the Medical Marijuana States' laws or sets of rules and *only those*

18  *rules that authorize medical marijuana use*." *McIntosh*, 833 F.3d at 1177–78

19  (emphasis added).  In other words, in order for the appropriations rider to apply, a

20  defendant must "strictly comply with all state-law conditions regarding the use,

21  distribution, possession, and cultivation of medical marijuana." *Id.* at 1178.  As further

22  explained in *Kleinman*, the court's evaluation of state-law compliance "requires a

23  count-by-count analysis to determine which charges, if any, are restricted by [the

24

25      [1] Defendant acknowledges that district courts have come to conflicting
conclusions on who bears the burden of proof. *Compare United States v. Gentile*, No.
26  112CR00360DADBAM, 2017 WL 1437532, at *7 (E.D. Cal. Apr. 24, 2017) *with*
27  *United States v. Campbell*, No. 16-cr-0021-DLC, ECF No. 72, at 12 (D. Mont. May 9,
2017).  For the reasons previously discussed, those courts that put the burden on the
28  government have the better argument.

1    rider]."  880 F.3d at 1028 ("The prosecution cannot use a prosecutable charge (for

2    conduct that violates state medical marijuana law) to bootstrap other charges that rely

3    solely upon conduct that would fully comply with state law.").

4         To decide whether Mr. Lynch so complied, this Court looks only to the state

5    laws in effect at the time Mr. Lynch operated the CCCC, in 2006 and 2007.  As

6    explained by Judge Seeborg, "[b]ecause the compliance requirement imposed in

7    *McIntosh* is presented in the past tense, the relevant conditions will be only those

8    relevant conditions that applied at the time of defendants' charged conduct." *United*

9    *States v. Pisarski*, 274 F. Supp. 3d 1032, 1036 (N.D. Cal. 2017) (internal citation

10   omitted); *see McIntosh,* 833 F.3d at 1179 (explaining purpose of evidentiary hearing is

11   to determine whether defendants' "conduct *was* completely *authorized . . .* [and]

12   complied with all relevant conditions *imposed* by state law" (emphasis added)).  The

13   Ninth Circuit, in *Gloor*, similarly held that a court must look to the state law in effect

14   "at the time of [the defendant's] relevant conduct" to determine compliance.  *Gloor*,

15   725 F. App'x at 495.

16        The California laws that authorized medical marijuana in 2006 and 2007, were

17   the CUA and MMPA, then codified at Cal. Health & Safety Code §§ 11362.5, 11326.7

18   *et seq.*  Those laws specifically permitted the collective and cooperative cultivation and

19   distribution of marijuana, including through storefront dispensaries, so long as the

20   distribution was not for profit.  *See* Cal. Health & Safety Code §§ 11362.765,

21   11362.775 (2007); *People v. Urziceanu*, 132 Cal. App. 4th 747, 782-86 (2005); *see also*

22   *People v. Anderson*, 232 Cal. App. 4th 1259 (2015); *People v. London*, 228 Cal. App.

23   4th 544 (2014); *People v. Colvin*, 203 Cal. App. 4th 1029 (2012); *People v.*

24   *Hochanadel*, 176 Cal. App. 4th 997 (2009).  As such, the central question for this Court

25   is whether Mr. Lynch complied with the CUA and MMPA by operating the CCCC in a

26   not-for-profit manner.

27

28

8

1    In prior litigation in this case, the government has cited to the California

2  Attorney General's August 2008 guidelines concerning medical marijuana.  But those

3  guidelines are inapplicable, as they post-date the conduct at issue.  *See* Cal. Att'y Gen.

4  Edmund G. Brown, Jr., Guidelines for the Security and Non–Diversion of Marijuana

5  Grown for Medical Use, Cal. Dep't of Justice (August 2008),

6  https://oag.ca.gov/system/files/attachments/press_releases/n1601_medicalmarijuanagui

7  delines.pdf.  It would be contrary to fundamental notions of fairness and due process to

8  expect Mr. Lynch to have been clairvoyant and have foreseen his need to comply with

9  guidelines that did not yet exist.  Indeed, had he been prosecuted in state court,

10  application of these later guidelines to his case would have violated *ex post facto*

11  principles.  If this Court applies them, it will "prevent[] the state from giving practical

12  effect to its law providing for non-prosecution of individuals who engage in . . .

13  permitted conduct."  *McIntosh*, 833 F.3d at 1177.

14    Of note, the 2008 guidelines did not merely interpret the MMPA.  Rather,

15  pursuant to the statute directing their development, they added requirements beyond

16  those in the statutory text of the MMPA.  *See* Cal. Health & Safety Code § 11362.81(d)

17  ("*In addition to the requirements of this article*, the Attorney General shall develop and

18  adopt appropriate guidelines to ensure the security and nondiversion of marijuana

19  grown for medical use . . . ." (emphasis added)).  Accordingly, to the extent Mr.

20  Lynch's activities diverged from the 2008 guidelines, that conduct says nothing about

21  his conformity with the "relevant conditions imposed by state law on the use,

22  distribution, possession, and cultivation of medical marijuana" that were in effect at the

23  time of Mr. Lynch's conduct.  *McIntosh*, 833 F.3d at 1179.

24    Moreover, the 2008 guidelines do not have the force of law.  Instead, "the

25  Attorney General's views," as expressed in the guidelines, are "persuasive" but not

26  "bind[ing]" authority.  *Hochanadel*, 176 Cal. App. 4th at 1011, 1018; *see Colvin*, 203

27  Cal. App. 4th at 1040-41 & n.11.  As explained in *McIntosh*, to be relevant, the laws

28

9

1    encompassed by the appropriations rider must be "binding."  833 F.3d at 1177

2    (quotation omitted).

3           Finally, to the extent California case law was ambiguous when Mr. Lynch

4    operated the CCCC, the Court can apply a reasonable interpretation of the law in effect

5    in 2006-2007 to determine whether Mr. Lynch was in strict compliance.  In *United*

6    *States v. Silkeutsabay*, 678 F. App'x 608 (9th Cir. 2017), the Court remanded for

7    consideration of two state cases, where there was "some ambiguity" as to the number of

8    plants medical marijuana providers could grow.  *Id.* at 610.  The Court held that the

9    appropriations rider could apply if "under a reasonable reading" of the state cases, the

10   defendants were not limited to fifteen marijuana plants.  *Id.*  Similarly, to the extent

11   California medical marijuana law was ambiguous in 2007, the Court may apply a

12   reasonable reading to determine whether Mr. Lynch strictly complied.  (*See* Dkt. No.

13   327 at 34 n.25).

## III.   CONCLUSION

15          Mr. Lynch respectfully requests that the Court hold: (1) the defendant bears the

16   initial burden to raise a reasonable doubt that he was in compliance with California

17   medical marijuana laws, after which the burden shifts to the government to prove

18   noncompliance beyond a reasonable doubt; and (2) the "relevant conditions imposed by

19   state law on medical marijuana" include only the state medical marijuana laws in effect

20   at the time of Mr. Lynch's conduct in 2006 and 2007, and not the later-adopted

21   Attorney General guidelines.  *McIntosh*, 833 F.3d at 1179.[2]

---

[2] Defendant preserves for the record his position that *McIntosh* was wrongly
decided, and the rider should apply to any federal prosecution where the defendant has
a colorable claim of state-authorized medical marijuana conduct.

1

2

3

4

5

6

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED:  May 9, 2019

By   */s/ Rebecca M. Abel*

REBECCA M. ABEL
ALEXANDRA W. YATES
ANGELA C. C. VIRAMONTES
Deputy Federal Public Defender
Attorneys for CHARLES LYNCH

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11