HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
ANGELA C. C. VIRAMONTES (Bar No. 228228)
(Angela_Viramontes@fd.org)
REBECCA M. ABEL (Bar. No. 298604)
(Rebecca_Abel@fd.org)
Deputy Federal Public Defenders
3801 University Avenue, Suite 700
Riverside, California 92501
Telephone: (951) 276-6346
Facsimile: (951) 276-6368

ALEXANDRA W. YATES (Bar No. 250442)
(Alexandra_Yates@fd.org)
Deputy Federal Public Defender
321 East Second Street
Los Angeles, California 90012
Telephone: (213) 894-5059
Facsimile: (213) 894-0081

Attorneys for Defendant
CHARLES LYNCH

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 07-689-GW |
| Plaintiff, | |
| v. | **DEFENDANT'S REPLY BRIEF RE:** ***MCINTOSH*** **REMAND** |
| CHARLES LYNCH, | Hearing: June 17, 2019 at 9:00 a.m. |
| Defendant. | |

Nothing offered by the government changes the defense's well-supported contention that in a *McIntosh* proceeding, the defendant bears the initial burden to raise a reasonable doubt that he was in compliance with California medical marijuana laws, after which the burden shifts to the government to prove noncompliance beyond a reasonable doubt.  The government also fails to persuasively counter the defense's position that the Court should consider only the state medical marijuana laws in effect at the time of Mr. Lynch's conduct in 2006 and 2007, in determining whether Mr. Lynch "strictly complied with all relevant conditions imposed by state law."  *United States v. McIntosh*, 833 F.3d 1163, 1179 (9th Cir. 2016).

## I. The government bears the ultimate burden of proving noncompliance with California medical marijuana laws beyond a reasonable doubt

In arguing that the defense should bear the burden of proving compliance by a preponderance of the evidence, the government misrepresents this Court's prior rulings, and ignores the text of the rider and case law that make clear that the burden and standard of proof must match those supplied under state law.

First, the government misrepresents this Court's colloquy with counsel at the February 2, 2017 hearing on Mr. Lynch's motion for an indicative ruling.[1]  At that hearing, the Court made no holdings regarding the burden or standard of proof. Instead, it "den[ied] the motion without prejudice" and "defer[red] ruling" because it found there "was a legal question that . . . is properly addressed to the circuit court" in the first instance.  (Dkt. No. 467 at 47:21-48:1.)  The parties briefed the burden issue to the circuit, but that court also declined to reach it, remanding to this Court to decide "in the first instance . . . the [relevant] legal issues."  *United States v. Lynch*, 903 F.3d 1061, 1087 (9th Cir. 2018).  This Court's brief colloquy with counsel regarding burden is not law of the case, and the Court should consider the issue on its merits on remand.

---

[1] Misquoting and altering the transcript, the government suggests that at the hearing on the indicative motion, the defense "conceded" that if the burden is on the defendant, then Mr. Lynch has not shown compliance.  (Gov't Opn'g Br., Dkt. No. 490 at 7.)  In fact, the defense stated the opposite: "Even if the burden is on us, I think we have met it." (Dkt. No. 467 at 41:15-18.)

1

*See United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012) (explaining "the issue in question must have been decided explicitly or by necessary implication in the previous disposition" to be law of the case (internal quotation marks, alteration, and citation omitted)).

Second, the government incorrectly suggests that a *McIntosh* proceeding is equivalent to a traditional request for injunctive relief.[2] In the context of a traditional injunction, the court must consider whether the moving party is "likely to succeed on the merits" and "likely to suffer irreparable harm"; whether "the balance of equities tips in his favor"; and if "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). None of these considerations are relevant in a *McIntosh* proceeding. The Court has no need to "assess[] the balance of equities and the public interest" here because Congress already has done so. *Id.* at 26. In passing the appropriations rider, Congress already decided to enjoin DOJ from spending funds on medical marijuana prosecutions. All this court must determine is whether, as a factual matter, California law authorized Mr. Lynch's conduct. If so, the rider applies. *See Lynch*, 903 F.3d at 1087. The burden applicable in a traditional injunction proceeding is irrelevant here.

Finally, the government relies on the unpublished district court decision in *United States v. Daleman*, No. 111CR00385DADBAM, 2017 WL 1256743 (E.D. Cal. Feb. 17, 2017), and the handful of district courts that have followed *Daleman*, to argue that the burden should rest on the defendant. But *Daleman*'s reasoning is flawed. *Daleman* cites to the *absence* of language in the rider to conclude that the burden must fall to the defense. *Id.* at *4 n.5. Looking at the same text, the Ninth Circuit held that the rider directs courts to step into the shoes of state courts and apply the same

---

[2] The government also equates a *McIntosh* proceeding with an injunction of a criminal statute. *McIntosh* explicitly rejected that analogy, explaining that the rider does not affect the applicability of any criminal statute; it only "restricts the government from spending certain funds to prosecute certain individuals." *McIntosh*, 833 F.3d at 1179 n.5.

2

standards and burdens defendants would face in state medical marijuana prosecutions. *See United States v. Gloor*, 725 F. App'x 493, 495 (9th Cir. 2018); *see also McIntosh*, 833 F.3d at 1176 ("[The rider] prohibits DOJ from spending money on actions that prevent the Medical Marijuana States' giving practical effect to their state laws that authorize the use, distribution, possession, or cultivation of medical marijuana.").

*Daleman* also cites the "traditional rule" in civil cases that puts the burden on the party who has particular knowledge of the facts relevant to the issue. *Daleman*, 2017 WL 1256743, at *3. Yet this rule supports the application of California's burden-shifting framework. The defendant—who has knowledge of his compliance—bears the initial burden, which then shifts to the government—as is proper in a criminal case—to prove noncompliance. *Cf. Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1079-80 (9th Cir. 2015) (reciting the principle offered in *Daleman* and applying a burden-shifting framework).

Lastly, *Daleman* relies on the general rule that the proponent of a motion bears the burden of proof. *Daleman*, 2017 WL 1256743, at *3. But *Daleman* ignores contrary examples where the government bears the burden in criminal proceedings, even on a defense motion.[3] *See, e.g., Colorado v. Connelly*, 479 U.S. 157, 168 (1986) (holding the government bears the burden in a motion to suppress a statement in violation of *Miranda*); *United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012) (holding where defense moves to suppress, burden of proving validity of warrantless search is on the government).

Importantly, *Daleman* predates *Gloor*, where the Ninth Circuit looked to state procedural mechanisms to determine whether the defendant demonstrated state-law compliance under *McIntosh*. *Gloor*, 725 F. App'x at 495. Several Ninth Circuit district

---

[3] The government and *Daleman* also cite to the standard of proof in several contexts—criminal forfeiture, affirmative defenses, speedy trial violations—that have no applicability here. *See, e.g., United States v. Carrillo*, No. 2:12-CR-00185-TLN, 2018 WL 4638418, at *5 (E.D. Cal. Sept. 26, 2018) ("Courts have been clear that a *McIntosh* hearing is not an opportunity for the defendant to present an affirmative defense . . . .").

courts have reached the same conclusion. *See United States v. Silkeutsabay*, No. 13-CR-0140-TOR, ECF No. 441 at 4 (E.D. Wash. Dec. 13, 2017) (relying on Washington law to establish burden and standard of proof); *United States v. Davis*, No. 12-CR-16-WFN, ECF No. 796 at 1 (E.D. Wash. Sept. 11, 2017) (holding burden of proof determined by applying "[s]tate law at the time of the Defendants' arrests").

This court need not follow *Daleman*'s flawed analysis. Mr. Lynch, per California law, need only "raise a reasonable doubt" regarding his compliance with medical marijuana laws, then the burden shifts to the government to prove otherwise beyond a reasonable doubt. *People v. Mower*, 28 Cal. 4th 457, 481 (2002); *People v. Solis*, 217 Cal. App. 4th 51, 57 (2013).

## II. The only relevant laws are the state medical marijuana laws that were in effect when Mr. Lynch operated the CCCC

In straining to find noncompliance, the government argues that laws and guidelines that postdate Mr. Lynch's conduct—by as much as a decade—are relevant to the court's decision. But Mr. Lynch need not have been prescient to get relief. If he complied with California medical marijuana laws in effect in 2006 and 2007, the rider applies and the government must cease spending funds on his case. *See McIntosh,* 833 F.3d at 1179 (instructing courts to examine whether "conduct *was* completely *authorized*" and "complied with all relevant conditions *imposed* by state law" (emphasis added)); *see also Gloor*, 725 F. App'x at 495 (directing court to determine compliance by reference to state law in effect "at the time of [defendant's] relevant conduct"); *United States v. Pisarski*, 274 F. Supp. 3d 1032, 1036 (N.D. Cal. 2017) ("[T]he relevant conditions will be only those relevant conditions that applied at the time of defendants' charged conduct." (internal citation omitted)).

Recognizing the absurdity of its most extreme position, the government "preserves its argument" that a *McIntosh* hearing is unwarranted because in January 2019—over ten years after Mr. Lynch closed his dispensary—California repealed the provisions of the Medical Marijuana Program Act ("MMPA") that permitted collective

1  and cooperative marijuana cultivation, and replaced them with a new regime. (Gov't
2  Opn'g Br., Dkt. No. 490 at 12-13.) Of course, it is a "fundamental principle that the
3  required criminal law must have existed when the conduct in issue occurred." *Bouie v.*
4  *City of Columbia*, 378 U.S. 347, 354 (1964) (internal quotation omitted). Asking Mr.
5  Lynch to comply with laws that did not exist when he operated his dispensary would
6  violate the Ex Post Facto and Due Process Clauses—not to mention, common sense.
7  *See id.* at 353-54.[4]

8      *McIntosh* plainly does not suggest an injunction is warranted only if Mr.
9  Lynch's prosecution interferes with California's "existing" or "future" marijuana laws.
10 (Gov't Opn'g Br. at 14.) *McIntosh* holds the opposite: DOJ cannot prosecute
11 individuals who would not have been subject to prosecution by the state. *See McIntosh*,
12 833 F.3d at 1176-77. Under the government's interpretation, the rider would be a
13 nullity, as no state can use laws that postdate an individual's conduct to prosecute him.
14 Similarly, the government's position would render nonsensical the Ninth Circuit's
15 direction for this Court to determine if Mr. Lynch complied with the California statute
16 that allowed medical marijuana collectives and cooperatives. *Lynch*, 903 F.3d at 1086-
17 87.

18     The California Attorney General's August 2008 guidelines are equally
19 inapplicable. These non-binding guidelines amended the MMPA and postdated Mr.
20 Lynch's conduct by nearly a year. (*See* Def. Opn'g Br., Dkt. No. 491 at 9-10.) *United*
21 *States v. Kleinman,* 880 F.3d 1020 (9th Cir. 2017), does not suggest otherwise. No one
22 raised or litigated the guidelines' applicability in *Kleinman. See Webster v. Fall*, 266
23 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to

---

[4] Since the passage of the rider in December 2014, Mr. Lynch has fought to enjoin DOJ's spending in this case. (*See* 9th Cir. Dkt. No. 91 (Def. Mot. Enforce § 538, Feb. 24, 2015); 9th Cir. Dkt. No. 101 (Def. Mot. Reh'g En Banc, Apr. 27, 2015); Dkt. No. 453 (Def. Mot. Indicative Ruling, Dec. 12, 2016); 9th Cir. Dkt. No. 137 (Def. Rule 12.1 Not. & Req. *McIntosh* Remand, Mar. 3, 2017.)) The government should not benefit from any change in law that occurred while Mr. Lynch pursued a court determination that he was in compliance with relevant state law.

the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."). For good reason: Kleinman's offense conduct continued until September 2011, well past the guidelines' effective date. *See United States v. Kleinman*, No. 11-CR-893-ODW, ECF No. 467, at 16-17, 27 (C.D. Cal. June 4, 2014).

The government argues that by citing to the guidelines in pre-remand briefing, the defense inadvertently waived or is judicially estopped from arguing their inapplicability. (Gov't Opn'g Br. at 17.) Neither doctrine applies, factually or legally. Factually, the defense's citation—not to the guidelines, but to a 2012 amicus brief in a single paragraph in his 2016 motion for an indicative ruling—cannot plausibly be read as conceding that the 2008 guidelines apply here. (*See* Dkt. No. 453 at 12-13.) Instead, in his reply to that motion, Mr. Lynch made the same argument offered here—the 2008 guidelines are irrelevant because they were promulgated after the offense conduct. (Dkt. No. 463 at 10.)

Legally, the Court never passed on the question of *McIntosh* compliance, so Mr. Lynch never had the opportunity to "succeed in persuading" it that the 2008 guidelines somehow apply to his conduct, a key element of judicial estoppel. *Zedner v. United States*, 547 U.S. 489, 505 (2006). As to waiver, all but one of the record citations the government offers predate the passage of the appropriations rider, an indisputable change in the law. *See Big Horn Cty. Elec. Co-op., Inc. v. Adams*, 219 F.3d 944, 953 (9th Cir. 2000) (finding no waiver due to "intervening change[] in the law"). (Gov't Opn'g Br. at 15-16.)

Besides, contrary to the government's contention, the 2008 guidelines are not "relevant conditions imposed by state law," as defined in *McIntosh*. *McIntosh*, 833 F.3d at 1177. They are irrelevant because they postdate Mr. Lynch's conduct. And they are not a "binding" "set of rules," "regulations," or "administrative decisions," as

*McIntosh* requires. *Id.* at 1778-79; *see People v. Hochanadel*, 176 Cal. App. 4th 997, 1011, 1018 (2009) (guidelines are "persuasive" but not "bind[ing]" authority).

  Finally, the government's attempt to equate the 2008 guidelines with California cases on the MMPA is misguided. The guidelines did not merely interpret the MMPA, they added to it. *See* Cal. Health & Safety Code § 11362.81(d) ("*In addition to the requirements of this article*, the Attorney General shall develop and adopt appropriate guidelines . . . ." (emphasis added)). That some post-2008 California cases reference the guidelines does not change this conclusion; courts are free to look to persuasive authority when interpreting the meaning of statutory text. *See, e.g.*, *People v. Anderson*, 232 Cal. App. 4th 1259, 1278 (2015) ("agree[ing] with the view of [the MMPA] taken by the Guidelines"); *Hochanadel*, 176 Cal. App. 4th at 1009 (finding the "guidelines are helpful to our analysis"). Whereas cases that apply the MMPA are relevant to determining Mr. Lynch's compliance, later-adopted guidelines that change the construction and scope of the MMPA are not. Contrary to the government's contention, a court's citation to the guidelines does not give them the force of law, nor does it sanction their retrospective application.

  For the foregoing reasons, the defense respectfully requests that the Court place the ultimate burden of proving noncompliance on the government beyond a reasonable doubt, and consider only those laws in effect in 2006-2007, to determine compliance.

              Respectfully submitted,

              HILARY POTASHNER
              Federal Public Defender

DATED: May 30, 2019    By */s/ Rebecca M. Abel*
              REBECCA M. ABEL
              ALEXANDRA W. YATES
              ANGELA C. C. VIRAMONTES
              Deputy Federal Public Defender
              Attorneys for CHARLES LYNCH