NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
DAVID KOWAL (Cal. Bar No. 188651)
Assistant United States Attorney
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5136
     Facsimile: (213) 894-0141
     E-mail:    david.kowal@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 07-689-GW |
|---|---|
| Plaintiff, | GOVERNMENT'S RESPONSIVE BRIEF ON PRELIMINARY LEGAL ISSUES |
| v. | Hearing Date/Time: |
| CHARLES LYNCH, | June 17, 2019; 9:00 a.m. |
| Defendant. | |

   The United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby files its brief responding to Defendant's Opening Brief ("Def. Br.") on remand issues, filed on May 9, 2019 (CR 491).

   The Government's Position Re Preliminary Legal Issues on Remand,

//

//

//

//

//

//

filed on May 9, 2019 (CR 490), is referenced herein as "Govt. Br.".

Dated: May 30, 2019            Respectfully submitted,

                                                    NICOLA T. HANNA
                                                    United States Attorney

                                                    BRANDON D. FOX
                                                    Assistant United States Attorney
                                                    Chief, Criminal Division

                                                                   /s/
                                                  DAVID KOWAL
                                                  Assistant United States Attorneys

                                                 Attorneys for Plaintiff
                                                 UNITED STATES OF AMERICA

**I.   NONE OF DEFENDANT'S ARGUMENTS UNDERMINE THE CLEAR AUTHORITY SHOWING THAT DEFENDANT BEARS THE BURDEN OF SHOWING STRICT COMPLIANCE WITH STATE LAW BY A PREPONDERANCE OF THE EVIDENCE**

In its opening brief, the government presented substantial precedent backed by sound reasoning, and the prior conclusions of this Court, demonstrating that defendant bears the burden in a McIntosh hearing by a preponderance of the evidence. (Govt. Br. at 7-12.) Defendant addresses none of the many cases directly on point relied on by the government, and ignores this Court's prior statements about the burden of proof. Instead, he asks that the Court adopt the procedural standards employed by California state courts when considering jury instructions on an affirmative defense, so that the defendant must raise "reasonable doubt" on the issue after which the government must prove beyond a reasonable doubt that defendant did not strictly complied with California medical marijuana law. (Def. Br. at 2.) Neither precedent, nor logic supports this position. Rather, examination of defendant's arguments lends further supports the government's correct analysis.

Defendant cites to United States v. Samp, No. 16-cr-20263, 2017 WL 1164453, at *2 (E.D. Mich. Mar. 29, 2017) to claim that the government bears the burden of proof because the prosecution must prove a defendant guilty. (Def. Br. at 4). However, as set forth in the government's brief, other courts have readily exposed the flaw in Samp's "perfunctory" reasoning. The purpose of the McIntosh hearing is not guilt or innocence, but an ancillary proceeding "to determine whether defendant is entitled to an injunction barring the use of DOJ funds" and the burden applies to the moving party seeking an injunction. (Govt. Br. at 11 quoting United States v. Bally, No. 17-20135, 2017 WL 5625896, at *5 (E.D. Mich. Nov. 22, 2017)); see also

1

United States v. Blomquist, 361 F.Supp.3d 744, 749 (W.D. Mich. 2019); United States v. Carrillo, No. 2:12-CR 185-TLN, 2018 WL 4638418, at *5 (E.D. Cal. Sept. 26, 2018) ("Courts have been clear that a McIntosh hearing is not an opportunity for the defendant to present an affirmative defense, nor . . . to determine guilt or innocence.  The purpose . . . is to determine whether defendant is entitled to an injunction barring the DOJ from expending funds on his prosecution") (internal citation omitted).

Defendant's citation to Gonzales v. O Centro Espirita Beneficente Unaio Do Vegetal, 546 U.S. 418, 424 (2006), does not advance his argument that the text of the rider supports his position.  (Def. Mot. at 6.)  To the contrary, as explained previously by the government, in O Centro, the Religious Freedom Restoration Act (RFRA) explicitly, in the text of the statute, placed the burden on the government to demonstrate that prohibiting use of a controlled substance in religious ceremony represents the least restrictive means of advancing a compelling government interest.  Id.; 42 U.S.C. § 2000bb-1.  As a district court in the Eastern District of California explained in two opinions followed by other courts, in contrast to RFRA, in the rider, Congress did not include any text putting the burden on the government.  Accordingly, the burden is on the moving party seeking an injunction and with greater access to the facts.  United States v. Daleman, No. 1:11-CV-385-DAD-BAM, 2017 WL 1256743, at *3-4 & n.5 (E.D. Cal. Feb. 17, 2017); United States v. Gentile, No. 12-CR-360-DAD-BAM, 2017 WL 1437532, at *7 & n. 15  (E.D. Cal. Apr. 24, 2017).  Indeed, in other portions of the same appropriations act, Congress showed its ability to specify "what requirements must be satisfied to use the funds, and by whom" but put

no extra burdens on the government in the medical marijuana rider. Id.  Thus, the text of the rider and the example of the O Centro case from the RFRA context undermine defendant's claims.

The same flawed reliance on Samp and misunderstanding of O Centro infect defendant's citation to United States v. Campbell, No. 16-CR-21, Dkt. No. 62, (D. Mont. May 9, 2017), an unpublished decision cited by no other court.  Not mentioned by defendant, the district court in that case, without citation to any authority, said that once the government shows defendant's non-compliance with state law, the burden should then shift to the defendant to prove his compliance.  Id. at 13-14.  No court has adopted this confusing, illogical formulation, and the Ninth Circuit held in Campbell that defendant's non-compliance with state law was evident without the need for the district court's "burden-shifting framework."  United States v. Campbell, 754 F. App'x 563, 565 & n.3 (9th Cir. 2019).

Defendant further shows the weakness of his arguments by relying heavily on the unpublished Ninth Circuit opinion in United States v. Gloor, 725 Fed. F. App'x 493 (9th Cir. 2018) as "highly instructive," and by supporting that claim by citation to the unpublished district court opinion addressed in United States v. Silkeutsabay, 678 F. App'x 608 (9th Cir. 2017).  Notably, given defendant's heavily reliance on these cases, nowhere in Gloor or Silkeutsabay does the Ninth Circuit address the burden of proof in a McIntosh hearing.  In Gloor, the Court found that defendant's non-compliance with Washington's medical marijuana law was "clear" from the record, and the district court had not even conducted an evidentiary hearing. Gloor, F. App'x at 494-95.  Sikeutsabay merely remanded a McIntosh claim for an evidentiary hearing without commenting on the burden.

3

Silkeutsabay, 678 F. App'x at 610. Unsurprisingly, district courts have had no problems acknowledging these opinions while still firmly holding that defendant bears the burden by a preponderance of the evidence in a McIntosh hearing. E.g., Carillo, 2018 WL 4638418, at * 3-4 (citing Silkeutsabay and Gloor while also finding burden on defendant); Gentile, 2017 WL 143752, at *6 (same, discussing Silkeutsabay).

Finally, defendant suggests that because these cases reference Washington law regarding the proof for marijuana affirmative defenses while discussing claims under the rider, they implicitly show that district courts in McIntosh hearings must use the "procedural mechanisms provided in Washington state law," and, therefore, in this case, California procedural law should be imported. (Def. Br. at 4-5.) To the contrary, while a district court looks to a state's substantive medical marijuana law to determine compliance under the rider, state procedural laws do not govern a McIntosh hearing. Defendant's contrary position was rejected most directly on remand in the McIntosh case itself. United States v. McIntosh, No. 14-cr-16-MMC-1, 2017 WL 2695319, at *1 (N.D. Cal. Mar. 20, 2017). There, the district court held that defendant "is required to show by a preponderance of the evidence that he has strictly complied with California's medical marijuana laws." Id. at *1. Directly addressing the argument made by defendant here, the court ruled that it "did not find persuasive defendant's argument that the Court must apply state procedural law as to the burden of proof, specifically, California law requiring a defendant who requests a jury instruction on a medical marijuana defense to show only a 'reasonable doubt' that such a defendant was operating" in substantial compliance with state

law. Id. Rejecting defendant's reliance on Silkeutsabay, similar to defendant's use of that case and Gloor here, the court stated:

> Defendant's reliance on Silkeutsabay, however, is misplaced. The holding therein does not constitute a change in the applicable law, but, rather, an application of the rule established in McIntosh that a district court looks to state law to determine whether the defendant's conduct is authorized and thus exempt from federal prosecution. Contrary to defendant's arguments, nothing in Silkeutsabay, directs federal district courts, when conducting evidentiary hearings under McIntosh, to apply state procedural law, let alone state procedural law applicable to the manner in which a jury is instructed in state court.

Id. at *2.

## II. THE COURT SHOULD REJECT DEFENDANT'S ATTEMPT TO LIMIT THE SCOPE OF THE MMPA TO SUPPORT HIS NEW THEORY OF COMPLIANCE

Defendant never, in historical fact, made any effort to organize his marijuana store as a collective under California's MMPA. His theory that he presided over a marijuana collective was contrived on appeal years after his arrest and conviction, and after it was conclusively determined that neither he nor his "Caregivers" store were "primary caregivers," as he had always claimed. Thus, it comes as no surprise that defendant should seek to bolster his ill-fitting new theory by selectively picking those parts of the MMPA that he likes, and discarding those that hurt his case. Yet such attempts to limit the scope of the MMPA find no support in the law.

Defendant first suggests that, at the time of his crimes, the MMPA allowed limited immunity for collective cultivation and distribution of marijuana "so long as the distribution was not for profit." (Def. Br. at 8.) Among other things, this ignores the further, fundamental definitional issue that existed since the MMPA was passed in 2003: what is a "collective," and who is entitled to the limited immunity provided for collective cultivation under Cal.

5

1  Health & Safety Code § 11362.775.  Case law from enactment through
2  2018, and the Cal. AG Guidelines, help answer this question, define
3  the scope of the immunity and, thus, the standard of strict
4  compliance on remand.  Defendant's wish to discard legal sources
5  after his crimes on this definitional issue is essentially an
6  improper ignorance of the law defense.  It ignores repeated
7  exhortation by the Ninth Circuit that a defendant seeking to enjoin
8  the government under the rider must show strict compliance with "all"
9  laws, rules, and conditions imposed by state medical marijuana law,
10 and the common application of case law to past events.  (Govt. Br. at
11 17); United States v. McIntosh, 833 F.3d 1163, 1177, 1778-79 (9th
12 Cir. 2016).
13      Contrary to defendant's current claim, these state conditions
14 include the 2008 Cal. AG Guidelines, which defendant previously
15 embraced in this case when it was convenient for him.  As the
16 government has set forth, the Ninth Circuit in Kleinman properly used
17 the Cal. AG Guidelines to measure a defendant's state law compliance
18 for conduct that preceded the promulgation of the guidelines.  (Govt.
19 Br. at 18).  Moreover, as a district court judge conducting two
20 McIntosh hearings based on California law has properly noted, Cal.
21 Health & Safety Code § 11362.81(d) of the MMPA "required the
22 California Attorney General to establish guidelines clarifying the
23 scope of the MMPA."  Gentile, 2017 WL 1437532, at *8 at n. 17
24 (emphasis added); Daleman, 2017 WL 1256743, at *5 & n.9.  Further, as
25 recognized by California courts, the requirements for proper legal
26 collectives set forth by the Cal. AG Guidelines (such as that they be
27 closed circuits with no purchases or sales to non-members), which
28 defendant rightly fears on remand, were formed merely by looking at

6

dictionary definitions of terms like "collective" already in the statute, and by citation to the text of the MMPA.  See, e.g., People v. London, 228 Cal.App.4th 544, 555 (noting that guidelines apply dictionary definition to term "collective" to obtain standards for proper collectives); id. at 556 (noting that Cal. AG Guideline standards for payments and reimbursements within a proper collective are "[i]n accordance with section 11362.765, part of the MMPA"). Thus, again, the Cal. AG Guidelines merely clarify the applicable law that always existed during the time of defendant's crimes.  In this light, defendant's argument that application of the Cal. AG Guidelines is unfair, or (without citation) somehow raises ex post facto issues, falls flat.  Instead, the correct perspective is to recognize that defendant's crimes always violated federal law and that the appropriations rider defendant clings to now never existed during those violations.  That rider is not a personalized affirmative defense to be shaped retrospectively by a convicted defendant, but a narrow, limited, temporary, potential limitation on the background illegality of defendant's conduct.  See McIntosh, 833 F.3d at 1177-79 & n.5.

Finally, defendant asks that he be allowed to show only compliance with a "reasonable interpretation" of state law at the time of his crimes.  This attempt to loosen the standard applicable to the rider flies directly in the face of McIntosh.  There, the Ninth Circuit expressly rejected the defendants' argument that the appropriations rider be extended to include individuals out of strict, "full" compliance with "all" laws, but for whom there is a "reasonable debate" that they complied with state marijuana law.  Id. at 1177.  Like defendant's other arguments, this should be rejected.