## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| | |
|---|---|
| Case No. | CR 07-689-GW |
| Date | July 15, 2019 |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

Interpreter: NONE

| Javier Gonzalez | Katie E. Thibodeaux | David P. Kowal |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Charles C. Lynch (waiver on file) | not | | ✔ | Alexandra W. Yates, DFPD<br>Rebecca M. Abel, DFPD | ✔ | ✔ | |

**PROCEEDINGS:** HEARING ON PRELIMINARY LEGAL ISSUES ON REMAND

The Court's Tentative Rulings on Three Preliminary Legal Issues is circulated and attached hereto. Court and counsel confer. For reasons stated on the record, the hearing is continued to July 29, 2019 at 9:30 a.m., with a proposed schedule to be filed by noon on July 25, 2019.

: 06

Initials of Deputy Clerk  JG

*United States v. Lynch*; Case No. 2:07-cr-00689-GW
Tentative Rulings on Three Preliminary Legal Issues

I.   **Background**

   A.  Introduction

   In *United States v. Lynch*, 903 F.3d 1061 (9th Cir. 2018), the Ninth Circuit remanded this matter "for a factual determination from the district court as to whether Lynch's activities were in compliance with state law, and particularly whether [Central Coast Compassionate Caregivers ("CCCC")] operated under the required collective form." *Id.* at 1086-87.  In order to determine "whether Lynch strictly complied with California marijuana laws," the Ninth Circuit explained that the district court may need to make "specific findings of fact, as well as legal determinations." *Id.* at 1087.  In accordance with the Ninth Circuit's opinion, the parties' March 19, 2019 joint status report identified three preliminary legal issues for the Court's resolution:

   > 1. Who bears the burden of proving that Mr. Lynch's activities were in compliance with state law?
   >
   > 2. What standard of proof applies to the party bearing the foregoing burden?
   >
   > 3. What state laws apply in determining whether Mr. Lynch "strictly complied with California marijuana laws"?

*See* Joint Status Report, Docket No. 483, at 2.

   To address those three questions, the Court ordered the parties to file simultaneous 20-page opening briefs and simultaneous 7-page responsive briefs.  *See* Minutes of Status Conference, Docket No. 485.  The parties complied.  *See* Government's Position re Preliminary Legal Issues on Remand ("Govt. Opening"), Docket No. 490; Defendant's Opening Brief Re: *McIntosh* Remand ("Def. Opening"), Docket No. 491; Government's Responsive Brief on Preliminary Legal Issues ("Govt. Responsive"), Docket No. 493; Defendant's Reply Brief Re: *McIntosh* Remand ("Def. Responsive"), Docket No. 492.

   B.  Legal and Procedural History

   "In 1996, California voters decriminalized the use of marijuana for medical purposes.  *See* Cal. Prop. 215, codified at Cal. Health & Safety Code § 11362.5." *Lynch*, 903 F.3d at 1067.  Nonetheless, marijuana remained a Schedule I substance under the Controlled Substance Act ("CSA"), 21 U.S.C. §§ 801 *et seq.*, and therefore, "federal prohibition of and prosecution for marijuana-related activities remained permissible." *Id.* at 1067-68 (citing *United States v. Oakland*

1

*Cannabis Buyers' Co-op.*, 532 U.S. 483, 491 (2001) and *Gonzales v. Raich*, 545 U.S. 1, 22 (2005)).

On August 5, 2008, defendant Charles C. Lynch was convicted by a jury of five counts of violating the CSA.  *See* Sentencing Memorandum, Docket No. 327, at 1.  The charges arose out of his establishing and operating a medical marijuana facility, *i.e.*, the CCCC in Morro Bay, California.  *Id*.

> Following Lynch's conviction and after the failure of his new-trial motions, Lynch faced two possible mandatory-minimum sentences: a one-year mandatory minimum for distribution to persons under the age of 21, *see* 21 U.S.C. § 859(a), and a five-year mandatory minimum for the total amount of marijuana in his conspiracy, *see* 21 U.S.C. § 841(b)(1)(B)(vii).  [This Court] held that Lynch was not subject to the five-year minimum because . . . . it had discretion under the so-called "safety valve," 18 U.S.C. § 3553(f), not to apply this sentence to Lynch.  The [C]ourt determined that the safety valve could not apply to Lynch's § 859(a) sentence, however, and so it sentenced Lynch to one year and one day in prison, suspended pending this appeal.

*Lynch*, 903 F.3d at 1069; Amended Judgment, Docket No. 328.  Both sides appealed.  *See* Notices of Appeal, Docket Nos. 330, 334.

On December 16, 2014, the President signed into law a budget bill, which became the Consolidated and Further Continuing Appropriations Act of 2015, Pub. L. No. 113-235, 128 Stat. 2130.  Section 538 of that act prohibited the use of federal funds to "prevent [California and other medical marijuana states] from implementing [their] own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana."  *Id.* § 538, 128 Stat. 2217 (the "Rider").  The Rider "has been adopted by every subsequent appropriations act."  *Lynch*, 903 F.3d at 1085.

In *United States v. McIntosh*, the Ninth Circuit interpreted the Rider to bar the Department of Justice "from spending funds from relevant appropriations acts for the prosecution of individuals who engaged in conduct permitted by the State Medical Marijuana Laws and who fully complied with such laws."  833 F.3d 1163, 1177 (9th Cir. 2016).  As such, "[i]ndividuals who do not strictly comply with all state-law conditions regarding the use, distribution, possession, and cultivation of medical marijuana have engaged in conduct that is unauthorized, and prosecuting such individuals does not violate [the Rider]."  *Id.* at 1178.

On September 13, 2018, the Ninth Circuit issued its opinion on direct appeal of this case.  *Lynch*, 903 F.3d at 1067.  The Ninth Circuit affirmed Defendant's conviction, but reversed this

Court's application of the "safety valve" to the five-year mandatory minimum sentence. *Id.* The Ninth Circuit thus remanded for resentencing, and for this Court to determine whether Defendant complied with California law such that the Rider would apply to him. *See generally id.* As to whether Defendant complied with California law, the Ninth Circuit noted that "California offered two pathways for a person like Lynch to be permitted to engage in marijuana-related activities. First, California's medical marijuana statute covers certain marijuana-related activities by a patient, and by a patient's 'primary caregiver.'" *Id.* at 1086. Second, the Ninth Circuit recognized that California law also "allow[ed] medical marijuana collectives and cooperatives." *Id.* (citing Cal. Health & Safety Code § 11362.775(a)). Not only did the Ninth Circuit identify the relevant California law, it also offered commentary on whether Defendant would qualify under either California pathway. *See id.* at 1086-87. The court stated that the "'primary caregiver' pathway almost certainly did not apply to Lynch and his activities." *Id.* at 1086. And that "it is questionable whether CCCC was a cooperative as [Cal. Health & Safety Code § 11362.775(a)] so defines the term." *Id.* Therefore, the Ninth Circuit remanded with the following guidance:

> It is appropriate to remand this case for a factual determination from the district court as to whether Lynch's activities were in compliance with state law, and particularly whether CCCC operated under the required collective form. A decision whether Lynch strictly complied with California marijuana laws may depend on specific findings of fact, as well as legal determinations, and it is proper to allow the district court to find those facts in the first instance. If Lynch was not compliant with state law, he is not covered by the rider and is subject to the penalties of his conviction. Should the district court resolve the state-law-compliance issue in Lynch's favor, the court may then rule in the first instance on the legal issues that such a determination would raise.

*Id.* at 1086-87.

On July 9, 2019, after briefing was completed on the three preliminary legal questions in this case, the Ninth Circuit held that, in a *Mcintosh* hearing, defendants bear the burden of proving "it is more likely than not that the state's medical marijuana laws 'completely authorized' their conduct." *See United States v. Evans*, Case No. 17-30185, __ F.3d __, 2019 WL 2943492, at *3 (9th Cir. 2019). Lynch recognizes that *Evans* forecloses any argument on the Court's first two questions. *See* Notice of Supplemental Authority, Docket No. 497, at 1 ("The defense acknowledges that this decision resolves [the first two] preliminary legal issues in the government's favor, but preserves its prior positions regarding the burden and standard of proof

3

for later review should *Evans* be reviewed by the Ninth Circuit *en banc* or by the United States Supreme Court.").

## II.     Discussion

### A.  Who Bears the Burden and What is the Standard?

*Evans* definitively answers the first two questions at issue here.  Defendant bears the burden of proving strict compliance with state law by a preponderance of the evidence.  *Evans*, 2019 WL 2943492, at *3.

### B.  What State Laws Apply?

The only remaining question for the Court is therefore what state laws apply to determine whether Lynch was in strict compliance with California marijuana laws.  The California statutes that authorized medical marijuana at the relevant times, were the Compassionate Use Act ("CUA"), Cal. Health & Safety Code § 11362.5, and Medical Marijuana Program Act ("MMPA"), Cal. Health & Safety Code §§ 11362.7 - 11362.9.  In general, Lynch argues that the Court should consider only those laws in effect when Lynch was operating CCCC in 2006 and 2007 to determine whether he was in strict compliance.  *See* Def. Opening at 8.  The Government contends that the Court must rely on all applicable provisions of the MMPA, including subsequent case law, and the 2008 California Attorney General's Guidelines ("2008 Guidelines"), which were promulgated after Lynch's allegedly criminal conduct.[1]  Govt. Opening at 12.

The applicability of the 2008 Guidelines dominates the parties' dispute.  Lynch's primary argument is that applying the 2008 Guidelines to his conduct would violate "fundamental notions of fairness and due process" because he would have had to be "clairvoyant" to anticipate the provisions of the later-promulgated guidelines.  Def. Opening at 9.  He further contends that the 2008 Guidelines are not binding on the Court.  *See id.* at 9-10.  For its part, the Government argues that Lynch himself has relied on the 2008 Guidelines during the course of this litigation, *see* Govt.

---

[1] The Government also "preserves," but apparently does not rely on, its argument that it is incongruous for a defendant to obtain any relief under this theory of state law compliance because the collective provisions of the MMPA are no longer operative under California state law. Govt. Opening at 12. In 2017, California amended Cal. Health and Safety Code § 11362.775(a) and related MMPA provisions to repeal the previously-existing legal protections for collective and cooperatives under the 2003 MMPA, and replace them with a separate, different licensing regime that gives no special protections from criminal law to collective/cooperatives. *See generally* Cal. Health & Safety Code 11362.775(d) & (e) (2017 ed.). The repeal of these provisions did not become effective until after the Ninth Circuit's decision in this matter. Defendant calls the Government's preserved position "absurd," and argues that if applied it would clearly violate the Ex Post Facto and Due Process clauses. *See* Def. Reply at 5. Because the Government does not rely on the issue here, the Court need not address it.

4

Opening at 15-17, that the 2008 Guidelines "merely clarify the applicable law that always existed," *see* Govt. Responsive at 7, and that that *McIntosh* requires the Court to consider "all" state laws, *see* Govt. Opening at 18.

As best as the Court can tell, the parties dispute the applicability of the 2008 Guideline's direction on what constitutes a lawful operation of the cooperatives and collectives. *See id.* at 15; Def. Opening at 8-9; *see also People v. Hochanadel*, 176 Cal. App. 4th 997, 1010 (2009). For example, under the 2008 Guidelines, cooperatives and collectives must be nonprofits, must only distribute to members, and must only acquire marijuana from their constituent members. *Hochanadel*, 176 Cal. App. 4th at 1010. Defendant seems to suggest, however, that prior to the promulgation of the 2008 Guidelines, the only requirement to be a lawful collective was that the distribution of the marijuana was not for profit. Def. Opening at 8.[2]

While the Court would agree that it should apply the laws in effect at the time of Lynch's activities, *see United States v. Pisarski*, 274 F. Supp. 3d 1032, 1036 (N.D. Cal. 2017), that conclusion does not necessarily answer the question of whether the 2008 Guidelines are relevant. At this point, the Court would be inclined to conclude that it may consider the 2008 Guidelines for Defendant's *McIntosh* hearing because the guidelines were not a new law, but rather an interpretation of the CUA and MMPA.

First, the Court would not necessarily apply the 2008 Guidelines just because it has referred to them in the past. *See* Def. Responsive at 6 (asserting that Defendant did not inadvertently waive and is not judicially estopped from arguing that the 2008 Guidelines are inapplicable). However, the Court and the parties' reliance on the 2008 Guidelines in the past suggests that they have some relevance to the issues in Lynch's case. *See* Govt. at 15-16 (describing instance where Defendant and the Court cited the 2008 Guidelines); *see also* Govt. Opening, Ex. 10, Docket No. 490-10.

Next, Defendant argues that only *laws* that existed in 2006 and 2007 are applicable, and that the 2008 Guidelines were promulgated afterwards. Def. Opening at 8-9. Defendant continues that the 2008 Guidelines did not merely interpret the MMPA, but instead added requirements. *Id.* at 9. In the next breath, however, Defendant notes that the "2008 guidelines do not have the force

---

[2] The Court is skeptical of Defendant's claim about pre-2008 Guidelines law, especially considering that some of the cases he cites for his position employed the 2008 Guidelines. *See, e.g.*, *People v. Anderson*, 232 Cal. App. 4th 1259, 1278 (2015); *People v. London*, 228 Cal. App. 4th 544, 554-555 (2014).

5

of law. Instead, 'the Attorney General's views,' as expressed in the guidelines, are persuasive' but not 'bind[ing]' authority." Def. Opening at 9 (quoting *Hochanadel*, 176 Cal. App. 4th at 1011, 1018); *see also* Def. Responsive at 6-7 ("Whereas cases that apply the MMPA are relevant to determining Mr. Lynch's compliance, later-adopted guidelines that change the construction and scope of the MMPA are not."). The Government contests that the 2008 Guidelines added any new requirements to the law: the 2008 Guidelines "merely clarify the applicable law that always existed during the time of defendant's crimes. In this light, defendant's argument that application of the Cal. AG Guidelines is unfair, or (without citation) somehow raises ex post facto issues, falls flat." Govt. Responsive at 7.

       The Court would find that the Government's representation of the 2008 Guidelines is more accurate because Defendant's characterization of the 2008 Guidelines suffers from some logical issues. For example, how could the 2008 Guidelines add new *requirements* yet be non-binding? The nature of requirements is that they are mandatory. Because the 2008 Guidelines are non-binding, the Court cannot see how they imposed new requirements. Rather, the Court believes that the 2008 Guidelines were merely an interpretation of and guide for enforcing the CUA and MMPA, the laws in effect in 2006 and 2007. *See United States v. Kleinman*, 880 F.3d 1020, 1029 (9th Cir. 2018) ("The California Attorney General's guidelines for *implementing* the CUA and MMP (AG Guidelines) provide that medical marijuana collectives must only sell to those within the collective, and specifically lists as "indicia of unlawful operation" sales to non-members and out-of-state distribution.") (emphasis added). Moreover, if the 2008 Guidelines can only be used as persuasive authority, why should the Court be prohibited from considering them to the extent it finds them persuasive? *Hochanadel*, 176 Cal. App. 4th at 1011. Defendant's argument is further belied by the fact that courts have repeatedly relied on the 2008 Guidelines in cases where the alleged conduct occurred prior to the promulgation of the guidelines. *See, e.g.*, *Kleinman*, 880 F.3d at 1026 (noting that defendant began operating purported medical marijuana collectives in 2006 and continued through at least 2010, but applying the 2008 Guidelines to all of the alleged conduct regardless of when it occurred).

       Defendant's only support for his claim that the 2008 Guidelines created new requirements is a cite to Cal. Health & Safety Code § 11362.81(d), which provides: "In addition to the requirements of this article, the Attorney General shall develop and adopt appropriate guidelines to ensure the security and nondiversion of cannabis grown for medicinal use by patients qualified

6

under the Compassionate Use Act of 1996." *See* Def. Opening at 9; Def. Responsive at 7. In his briefs, Defendant italicizes the first clause of the statute, so that it reads "[*i*]*n addition to the requirements of this article*," to suggest that the 2008 Guidelines are also requirements, but this interpretation fails as a matter of plain reading. Just because the statute refers to its provisions as requirements, it does not follow that additional guidelines necessarily are also requirements. In fact, the Court thinks it uncontroversial that the plain meaning of "guideline" suggests a recommendation rather than a requirement. *See, e.g. Guideline*, Merriam-Webster, available at https://www.merriam-webster.com/dictionary/guideline (2019) ("an indication or outline of policy or conduct"); *Guideline*, Cambridge Dictionary, available at https://dictionary.cambridge.org/us/dictionary/english/guideline (2019) ("information intended to advise people on how something should be done or what something should be").

As such, the Court would be inclined to consider the 2008 Guidelines as persuasive authority on the requirements of the CUA and MMPA.[3]

### III. Conclusion

Based on the foregoing discussion, the Court concludes that Defendant bears the burden of proving strict compliance with California law by a preponderance of the evidence. The Court would also find that the applicable laws are the CUA and MMPA (those in effect in 2006 and 2007), but that the Court may consider later interpretations of those laws, including the 2008 Guidelines, as *potentially* persuasive authority for determining the requirements of the laws.

---

[3] Consistent with the use of guidelines to assist in the interpretation of the relevant California law, there was testimony at the trial as to Defendant's contacting California state and local law enforcement and governmental bodies/officials prior to his opening of his facility (and also thereafter). A question arises as to whether any statements from such officials can be utilized in the interpretation of the then-pending law.