## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-689-GW | Date | January 18, 2024 |
|---|---|---|---|

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|
| Interpreter | NONE |

| Javier Gonzalez | Terri A. Hourigan | David P. Kowal - not present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Charles C. Lynch | not | | ✔ | Rebecca M. Abel, DFPD | not | | ✔ |

**PROCEEDINGS:** **ORDER ON GOVERNMENT'S EX PARTE APPLICATION TO CONTINUE MOTION DATE (DOCKET NO. 560)**

Attached hereto is the Court's Order on Government's Ex Parte Application [560]. The Court GRANTS the Government's Continuance and extends the Motion to Dismiss dates as proposed by the Government. While the Court grants the Government's Continuance as to the Motion to Dismiss, the Court notes that the Government has not requested any extension with respect to the evidentiary hearing. Currently, the evidentiary hearing is on calendar for January 22, 2024 at 9:30 a.m. (as it was set by the Court on June 28, 2023 at the Government's request), and it will proceed as scheduled.

:

Initials of Deputy Clerk   JG

<u>USA v. Charles C. Lynch</u>; Case No. 2:07-cr-00689-GW-1
Order on Government's *Ex Parte* Application to Continue Motion Date (Docket No. 560)

## I. Background

### A. <u>Conviction</u>

On August 5, 2008, Defendant Charles C. Lynch ("Defendant" or "Lynch") was convicted by a jury of five counts[1] of violating the federal Controlled Substance Act ("CSA"), 21 U.S.C. §§ 801, *et seq*. The charges arose out of his establishing and operating a medical marijuana facility – *i.e.*, the Central Coast Compassionate Caregivers ("CCCC") in Morro Bay, California.[2] *See generally* Sentencing Memorandum, Docket No. 327. As a result of his convictions, Defendant faced a mandatory minimum sentence of five years (as to Count One) and a mandatory minimum sentence of one year (as to Counts Two and Three). *See id*. at 22. In sentencing Defendant, the Court believed it was appropriate to apply the "safety valve" provision under 18 U.S.C. § 3553(f) and depart below the five-year mandatory minimum sentence. *See id*. at 30-36. On April 29, 2010, the Court, in the exercise of its discretion, sentenced Defendant to "one year and one day as to Counts One, Two and Three (all to run concurrently) and to 'time served' as to Counts Four and Five, plus a period of supervised release of four years with concomitant provisions as to Counts One through Four and three years as to Count Five (all to run concurrently)." *Id*. at 40.

### B. <u>Appeal</u>

Following the imposition of the Court's sentence, both parties filed appeals. Defendant challenged his conviction by claiming the Court "made various errors regarding [his] defense of entrapment by estoppel, improperly warned jurors against nullification, and allowed the prosecutors to introduce various evidence tying [him] to the dispensary's activities, while

---

[1] The five counts were: (1) conspiracy - (a) to possess and distribute "at least" 100 kilograms of marijuana, "at least" 100 marijuana plants, and items containing tetrahydrocannabinol, (b) to maintain a premises for the distribution of such controlled substances, and (c) to distribute marijuana to persons under the age of 21 years - in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B), 856 and 859; (2) and (3) sales of more than 5 grams of marijuana to J.S., a person under the age of 21, on June 10 and August 27, 2006 in violation of 21 U.S.C. §§ 841(a)(1) and 859(a); (4) on March 29, 2007, possession with the intent to distribute approximately 14 kilograms of material containing a detectable amount of marijuana and at least 50 but less than 100 marijuana plants in violation of 21 U.S.C. § 841(a)(6) and (b)(1)(B); and (5) between about February 22, 2006 and March 29, 2007, maintaining a premises for the purpose of growing and distributing marijuana. *See* the Verdict (Docket No. 175); the redacted Indictment (Docket No. 161).

[2] The Court presumes a familiarity with the underlying facts of this case as detailed in its Sentencing Memorandum, Docket No. 327.

1

excluding allegedly exculpatory evidence offered by [him]." *United States v. Lynch*, 903 F.3d 1061, 1067 (9th Cir. 2018). The Government also filed an appeal challenging the Court's invocation of the "safety valve" provision to depart below the five-year mandatory minimum sentence with respect to Count One. *See id*.

While the appeal was pending, the United States Congress enacted an appropriations provision with a rider that stated: "'[n]one of the funds made available in this Act to the Department of Justice may be used, with respect to . . . California . . . to prevent [it] from implementing [its] own laws that authorize the use, distribution, possession, or cultivation of medical marijuana.'" *Id*. at 1085 (quoting Consolidated Appropriations Act of 2017 § 537, Pub. L. 115-31, 131 Stat 135). The Ninth Circuit has interpreted this appropriations provision "to prohibit the federal prosecution of persons for activities compliant with state medical marijuana laws." *Lynch*, 903 F.3d at 1067. In additional briefing submitted to the Ninth Circuit, Lynch argued that this rider provision prohibited the Government from continuing to defend his conviction. *See id*.

Ten years after the jury's verdict, the Ninth Circuit affirmed Defendant's conviction. The Circuit found that the Court did not commit reversible error in: ruling on evidentiary matters or in its handling of evidence; instructing the jury as to Lynch's entrapment by estoppel defense because Defendant did not establish facts showing he was entitled to such a defense; issuing a caution against juror nullification to prospective jurors; not informing jurors as to the possibility of mandatory minimum sentences in the case; or managing jury communications. *See id*. at 1069-83. However, the Circuit reversed this Court with respect to its sentencing of Defendant. The Ninth Circuit held that the Court "erred in applying the safety valve to Lynch." *Id*. at 1083. To qualify for the safety valve departure, a defendant cannot be "an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines." 18 U.S.C. § 3553(f)(4). Section 3B1.1 of the Sentencing Guidelines provides for an upward adjustment if the defendant was an organizer, leader, manager, or supervisor in criminal activity. *See* U.S.S.G. 3B1.1. In sentencing Defendant, the Court found Lynch did not fall within Section 3B1.1 because "the way he ran the CCCC, Lynch did not present any great danger to the public and certainly no greater danger than any of his fellow participants in the CCCC."[3] Sentencing Memorandum at 35.

---

[3] Lynch established and operated the CCCC pursuant to California's Compassionate Use Act of 1996's (which is codified in California Health & Safety Code § 11362.5) goal of providing marijuana to Californians for medical uses

The Circuit disagreed with the Court's ruling, concluding "Lynch's activities at CCCC clearly made him a leader and organizer of that enterprise" under the Sentencing Guidelines' definition of leadership and organizer status. *See Lynch*, 903 F.3d at 1084. "Although Lynch's circumstances may have been unusual, in the sense that his was not the sort of furtive scheme typical of many drug-distribution cases, Lynch's role was clearly that of a leader, and he was thus ineligible for safety-valve relief." *Id*. Thus, the Circuit reversed and remanded to the district court for resentencing. *See id*.

Additionally, in remanding the case, the Ninth Circuit addressed the potential impact of the Congressional appropriations rider at issue. "The rider raises several difficult questions with respect to Lynch's case, including, among others, whether the provision operates to annul a conviction otherwise properly obtained before its passage." *Id*. at 1085. The Ninth Circuit declined to reach those questions because it was unclear whether the rider applied to Defendant, as it only applies to persons in total compliance with state law. *See id*. "It is unclear from this record whether Lynch's activities were so strictly compliant with state law." *Id*. at 1086. Thus, the Ninth Circuit concluded "[i]t is appropriate to remand this case for a factual determination from the district court as to whether Lynch's activities were in compliance with state law, and particularly whether CCCC operated under the required collective form. A decision whether Lynch strictly complied with California marijuana laws may depend on specific findings of fact, as well as legal determinations, and it is proper to allow the district court to find those facts in the first instance." *See id*. at 1086-87.

C. <u>Remand Procedural Background</u>

---

as prescribed by their treating physicians. CCCC was distributing the marijuana products within the portions specified in Cal. H & S Code § 11362.77(a). Lynch on his own took undertook efforts to reduce/eliminate the criminal aspects and/or potential harmful consequences of CCCC's operation (aside from the essential function of obtaining and distributing marijuana to authorized recipients for medical reasons) including such steps as: (1) before opening the CCCC, he notified governmental authorities including the City of Morro Bay's mayor and city council plus various local law enforcement entities such as the county sheriffs and (according to Lynch) the DEA; (2) he had CCCC comply with applicable laws such as obtaining a business license, following federal and state labor statutes, etc.; (3) he attempted to regulate the conduct of CCCC's employees by not hiring felons and requiring workers to sign an Employee Agreement which included promises to abide by CCCC's conduct standards and the "Conditions for Issuance of Business License" issued by the City of Morro Bay; (4) CCCC's customers had to execute a "Membership Agreement" wherein they consented to obey "the laws of the State of California regarding medical cannabis;" (5) he enacted CCCC's rules barring the use of marijuana at certain locations and during certain activities, etc.; (6) he had CCCC conduct business in a prominent location with appropriate signage such that its operations were not clandestine but were, in fact, subject to apparent scrutiny by law enforcement; and (7) Lynch kept detailed records of all purchases, sales and other relevant activities of the CCCC (including the identities and other background information as to its suppliers and customers). *See* Sentencing Memorandum at 13-16.

Under Ninth Circuit precedent, courts conduct an evidentiary hearing to determine whether a defendant's conduct strictly complied with all relevant conditions imposed by state law on the use, distribution, possession, and cultivation of medical marijuana; and, if that conduct is compliant, the court can prohibit the government from spending funds to prosecute said defendant. *See United States v. McIntosh*, 833 F.3d 1163, 1179 (9th Cir. 2016). In accordance with the Ninth Circuit's directions, the Court set a status conference for January 7, 2019, to discuss how to handle the remanded issues. *See* Docket No. 475. In consultation with the parties, the January 7, 2019 status conference was continued to January 24, 2019. *See* Docket No. 476. The Court then granted a request by the parties to extend the scheduling dates to provide an opportunity to meet and confer. *See* Docket Nos. 481-82.

On March 19, 2019, the parties submitted a proposed briefing schedule as to preliminary legal issues relating to the evidentiary hearing including, who bears the burden to prove compliance with state law, what standard of proof applies, and what state laws apply. *See* Docket No. 483. On March 21, 2019, the Court ordered simultaneous opening briefs due by April 11, 2019, simultaneous responses due by May 2, 2019, and a hearing on preliminary issues set for May 20, 2019. *See* Docket No. 485. Upon multiple joint stipulations by the parties, the Court extended the briefing schedule and hearing date. *See* Docket Nos. 487, 489. On May 9, 2019, the parties filed their opening briefs and on May 30, 2019 they filed their responses. *See* Docket Nos. 490-93. The hearing on preliminary issues was continued until July 15, 2019. *See* Docket No. 496. On July 15, 2019, the Court held a hearing with respect to preliminary issues for the evidentiary hearing. *See* Docket No. 498. The Court ruled that Defendant has the burden to prove strict compliance by a preponderance of the evidence, that the applicable laws are those that were in effect in 2006 and 2007 – *i.e.*, the Compassionate Use Act ("CUA"), Cal. Health & Safety Code § 11362.5, and Medical Marijuana Program Act ("MMPA"), Cal. Health & Safety Code §§ 11362.7-11362.9, and that later interpretations of those laws (including the 2008 Attorney General Guidelines) would potentially be considered as persuasive authority. *See id*.

On August 19, 2019, based on the stipulation of the parties, the Court entered the following scheduling order: expert discovery cut off on December 13, 2019; Defendant's motion to enjoin spending due by January 27, 2020; the Government's opposition due by February 24, 2020; Defendant's reply due by March 23, 2020; final discovery cut off on April 6, 2020; and the evidentiary hearing to be held on April 27, 2020. *See* Docket No. 504. Over the next 18 months,

4

upon requests by the parties for various good reasons, the Court granted repeated extensions to the scheduling dates.[4]  *See* Docket Nos. 508, 511, 513, 515, 517, 519, 521, 523, 525, 527, 529, 534, 536, 539.  On June 21, 2022, the Court entered the following scheduling order:  Defendant's motion to enjoin spending due by July 14, 2022; the Government's opposition due by August 18, 2022; Defendant's reply due by September 15, 2022; final discovery cut off on September 29, 2022; and the evidentiary hearing to be held on October 20, 2022.  *See* Docket No. 542.

Defendant filed his motion to enjoin Government spending on July 19, 2022.  *See* Motion to Enjoin Government Spending ("Motion"), Docket No. 544.  The Court granted Defendant's *ex parte* application to accept his late filing.  *See* Docket No. 546.  On August 18, 2022, the Government requested a 157-day extension to the scheduling order to respond to Defendant's Motion, which was granted by the Court.  *See* Docket Nos. 550-51.  On January 23, 2023, the Government requested another 120-day extension to the scheduling order to respond to Defendant's Motion, which was granted by the Court.  *See* Docket Nos. 552-53.  Under the Government's new scheduling order, the Government's opposition was due by May 24, 2023, Defendant's reply by June 26, 2023, and the evidentiary hearing was set for August 7, 2023.  *See* Docket No. 553.

On May 24, 2023, the Government failed to file its opposition.  Further, the Government did not file another request for an extension of time to file its brief.  On June 27, 2023, Defendant filed his reply in support of his Motion.  *See* Reply in Support of Motion to Enjoin Government Spending, Docket No. 554.  Following Defendant's reply, the same day the Government filed a late *ex parte* application seeking to continue scheduling dates for 30 days.  *See* Docket No. 555.  While repeating many of the same reasons previously given when seeking a continuance, Assistant U.S. Attorney David Kowal additionally explained that his late extension request was due to "erroneously miscalendar[ing] the date for the government's response" as July 31, 2023.  *Id*. at 5.  AUSA Kowal stated he was not aware of his error until the Defense filed its reply.  *Id*.  AUSA Kowal added that "[c]ertainly, given the time I have expended on this matter, I would not let the time pass for a response without filing something had I realized my error previously."  *Id*.  The Court granted the Government's extension request and set new dates:  the Government's opposition was due by October 11, 2023, Defendant's reply by November 15, 2023, final discovery

---

[4] The parties disclosed experts on May 4, 2020.  *See* Docket No. 518.

cut off on December 13, 2023, a status conference on January 8, 2024, and the evidentiary hearing set for January 22, 2024. *See* Docket No. 556.

On October 11, 2023, the Government again failed to file its opposition. The Government again did not file any papers with the Court explaining its omission or asking for an extension. On November 15, 2023, Defendant filed a joint reply in support of the Motion and a new motion to dismiss the case due to the Government's repeated failures to respond. *See* Notice of Motion and Motion to Dismiss and Reply in Support of Motion to Enjoin Government Spending ("MTD"), Docket No. 557. The Court scheduled the MTD to be heard the same day as the evidentiary hearing on January 22, 2024. The Government did not file an opposition to Defendant's MTD by the deadline to respond. On January 8, 2024, the Court conducted a status conference for this case as previously scheduled in response to the Government's proposed extension. *See* Docket No. 559. While Defendant's counsel was present, no one from the Government made any appearance despite repeated attempts by the Court to contact government counsel.

## II. Government's *Ex Parte* Application to Continue Motion Dates

On January 16, 2024, the Government filed an *ex parte* application to continue the motion dates and hearing currently scheduled for Defendant's MTD.[5] *See* Government's *Ex Parte* Application to Continue Motion Dates ("Continuance"), Docket No. 560. The Government's Continuance is the first filing/communication the Government has had with the Court since June 27, 2023 – despite missing multiple deadlines and failing to appear before the Court.[6] In a supporting declaration, AUSA Kowal explains his request for more time by, among other things,

---

[5] In particular, the *Ex Parte* Application requests that: (1) "Government's opposition to defendant's motion to dismiss. (Dkt.557): February 5, 2023;" (2) "Defendant's Reply to Motion to Dismiss: February 19, 2023;" and (3) hearing on Motion: February 26, 2023."

[6] After receiving two extensions at its request to the evidentiary hearing schedule, the Government failed to meet its own proposed deadline to file its opposition on May 24, 2023. To make matters worse, the Government did not realize it had missed its self-imposed deadline until Defendant filed a timely reply on June 27, 2023. After excusing the delay, the Court granted the Government's request to continue the matter. Once again, the Government's self-imposed deadline on October 11, 2023, came and went. Again the Government did not seem to realize it had missed its own deadline to respond and did not file any type of request for a continuance with the Court. Even more surprising, after Defendant filed a reply and motion to dismiss this case due to the Government's conduct, the Government still did not file any sort of response. The Government further compounded its recent pattern of nonfeasance by failing to appear at a scheduled status conference on January 8, 2024. Despite the Court's repeated attempts to contact the Government to appear at the status conference, it took over a week for the Government to file any type of communication with the Court – *i.e.*, the *ex parte* application. Despite this being its first communication with the Court since June 27, 2023, the Government does not offer any satisfactory explanation for its repeated failures to meet deadlines or appear.

claiming Defendant filed the motion to dismiss without meeting or conferring and he needed additional time to research preliminary jurisdictional issues and prepare to respond. *See* Declaration of David Kowal, Docket No. 560. Counsel for Defendant opposed the Government's continuance request. *See id*.

      The Court **GRANTS** the Government's Continuance and extends the MTD dates as proposed by the Government. While the Court grants the Government's Continuance as to the MTD, the Court notes that the Government has not requested any extension with respect to the evidentiary hearing.[7] Currently, the evidentiary hearing is on calendar for January 22, 2024 (as it was set by the Court on June 28, 2023 at the Government's request), and it will proceed as scheduled.[8]

---

[7] While the evidentiary hearing concerns Defendant's request to enjoin the Government from spending any funds to prosecute his criminal case while those expenditures are barred by congressional appropriations, the MTD seeks the actual dismissal of the case in its entirety with prejudice in the interests of justice.

[8] As observed by the Defendant, "[t]he government has prosecuted Mr. Lynch for operating a medical marijuana dispensary for sixteen years." *See* Docket No. 557 at 1.